**No. 24-2458**

_____

**In the United States Court of Appeals
for the Eighth Circuit**

_____

United States of America,

Plaintiff-Appellee,

v.

Bradley Eugene Wendt,

Defendant-Appellant.

_____

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
No. 4:22-cr-00199-SHL-HCA
Hon. Stephen H. Locher

_____

**Defendant-Appellant's Addendum to Opening Brief**

_____

Nicholas A. Klinefeldt
Rachel A. Yaggi
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
(515) 248-9000


Counsel for Appellant Bradley Eugene Wendt

|                                                                              | **Page**  |
|------------------------------------------------------------------------------|-----------|
| Judgment in a Criminal Case                                                  | Add. 001  |
| Order denying Defendant's Motions for Judgment of Acquittal and New Trial    | Add. 010  |
| Final Jury Instructions Excerpts                                             | Add. 040  |
| Order On Motions in Limine and Motions to Exclude Expert Testimony           | Add. 058  |
| Order Denying Motion to Dismiss                                              | Add. 092  |

Dated: October 1, 2024

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*

Nicholas A. Klinefeldt, AT0008771
Rachel A. Yaggi, AT0014994
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
Email: *rachel.yaggi@faegredrinker.com*

*ATTORNEYS FOR APPELLANT*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because this document contains 47 words, excluding the parts of the document exempted by Fed. R. App. R. 32(f).

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font, 14 point.

*/s/ Nick Klinefeldt*

Dated: October 1, 2024        Nick Klinefeldt

3

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2024, I caused this Defendant-Appellant's Addendum to Opening Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Paulette Ohnemus*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA | )    **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) |
| BRADLEY EUGENE WENDT | )    Case Number:  4:22-cr-00199-001 |
| | )    USM Number: 38379-510 |
| | )    Nick Klinefeldt and Rachel A. Yaggi |
| | )    Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)    1, 3, 6, 8, 9, 13-16, 18, and 20 of the Indictment filed on December 14, 2022.
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section   [?] | Nature of Offense | Format mm/dd/yyyy <br> Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to Make False Statements to the ATF | 08/2022 | One |
| 18 U.S.C. § 1001(a)(2) | False Statements on Purchase Law Letters | 03/03/2022 | Three |
| 18 U.S.C. § 1001(a)(2) | False Statements on Demonstration Law Letters | 01/15/2019 | Six |

☑ See additional count(s) on page 2

     The defendant is sentenced as provided in pages  3  through  9  of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☑ The defendant has been found not guilty on count(s)    2, 4, 5, and 7.

☐ Count(s) _____ is ☐ are dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

July 1, 2024
Date of Imposition of Judgment

_signature_
Signature of Judge

Stephen H. Locher, U.S. District Judge
Name of Judge        Title of Judge

July 1, 2024
Date

Add. 001

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
v1                           Sheet 1A

DEFENDANT:  BRADLEY EUGENE WENDT                    Judgment Page: 2 of 9
CASE NUMBER:  4:22-cr-00199-001

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section ? | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1001(a)(2) | False Statements on Demonstration Law Letters | 07/19/2020 | Eight |
| 18 U.S.C. § 1001(a)(2) | False Statements on Demonstration Law Letters | 01/18/2021 | Nine |
| 18 U.S.C. § 1001(a)(2) | False Statements on Demonstration Law Letters | 11/29/2021 | Thirteen |
| 18 U.S.C. § 1001(a)(2) | False Statements on Demonstration Law Letters | 03/01/2022 | Fourteen |
| 18 U.S.C. § 1001(a)(2) | False Statements on Demonstration Law Letters | 03/01/2022 | Fifteen |
| 18 U.S.C. § 1001(a)(2) | False Statements on Demonstration Law Letters | 07/01/2022 | Sixteen |
| 18 U.S.C. § 1001(a)(2) | False Statements on Demonstration Law Letters | 08/28/2021 | Eighteen |
| 18 U.S.C. §§ 922(o), 924(a)(2) | Illegal Possession of Machine Gun | 04/16/2022 | Twenty |

Add. 002

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
v1                          Sheet 2 — Imprisonment

DEFENDANT:  BRADLEY EUGENE WENDT                                    Judgment Page: 3 of 9
CASE NUMBER:  4:22-cr-00199-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:

60 months as to each of Counts 1, 3, 6, 8, 9, 13-16, 18, and 20 of the Indictment filed on December 14, 2022, to run concurrently.

☑ The court makes the following recommendations to the Bureau of Prisons:

The defendant be designated at a facility as close to Iowa as possible, if commensurate with his security and classification needs.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.   on _____

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before          on _____

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
                                UNITED STATES MARSHAL

By _____
                              DEPUTY UNITED STATES MARSHAL

Add. 003

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
v1                     Sheet 3 — Supervised Release

DEFENDANT:  BRADLEY EUGENE WENDT                          Judgment Page: 4 of 9
CASE NUMBER: 4:22-cr-00199-001

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

 Three years as to each of Counts 1, 3, 6, 8, 9, 13-16, 18, and 20 of the Indictment filed on December 14, 2022, to run concurrently.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you
       pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
v1                          Sheet 3A — Supervised Release

DEFENDANT:   BRADLEY EUGENE WENDT                                    Judgment Page: 5 of 9
CASE NUMBER:   4:22-cr-00199-001

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature   _____   Date _____

DEFENDANT:  BRADLEY EUGENE WENDT
CASE NUMBER: 4:22-cr-00199-001

# SPECIAL CONDITIONS OF SUPERVISION

You must pay a fine in an amount determined by the Court. You will cooperate with the U.S. Probation Officer in developing a monthly payment plan consistent with a schedule of allowable expenses provided by the U.S. Probation Office.  You may be required to participate in an IRS Offset Program and/or Treasury Offset Program, which may include the garnishment of wages or seizure of all or part of any income tax refund and/or any government payment to be applied toward the fine balance.

You must not apply for, solicit, or incur any further debt, included but not limited to loans, lines of credit, or credit card charges, either as a principal or cosigner, as an individual, or through any corporate entity, without first obtaining written permission from the U.S. Probation Officer.

You must provide complete access to financial information, including disclosure of all business and personal finances, to the U.S. Probation Officer.

You will submit to a search of your person, property, residence, adjacent structures, office, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), and other electronic communications or data storage devices or media, conducted by a U.S. Probation Officer. Failure to submit to a search may be grounds for revocation.  You must warn any other residents or occupants that the premises and/or vehicle may be subject to searches pursuant to this condition.  An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your release and/or that the area(s) or item(s) to be searched contain evidence of this violation or contain contraband.  Any search must be conducted at a reasonable time and in a reasonable manner.  This condition may be invoked with or without the assistance of law enforcement, including the U.S. Marshals Service.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
v1                    Sheet 5 — Criminal Monetary Penalties

DEFENDANT:  BRADLEY EUGENE WENDT
CASE NUMBER:  4:22-cr-00199-001

Judgment Page: 7 of 9

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

☐ Pursuant to 18 U.S.C. § 3573, upon the motion of the government, the Court hereby remits the defendant's Special Penalty Assessment; the fee is waived and no payment is required.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 1,100.00 | $0.00 | $ 50,000.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____.  An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $0.00 | $0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☑ the interest requirement is waived for the   ☑ fine   ☐ restitution.

   ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

*Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Add 007

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
v1                Sheet 6 — Schedule of Payments

Judgment Page: 8 of 9

DEFENDANT:  BRADLEY EUGENE WENDT
CASE NUMBER:  4:22-cr-00199-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**   ☑ Lump sum payment of $ __51,100.00__   due immediately, balance due

   ☐ not later than _____ , or
   ☑ in accordance   ☐ C,   ☐ D,   ☐ E, or   ☑ F below; or

**B**   ☐ Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**   ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
   _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**   ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
   _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
   term of supervision; or

**E**   ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
   imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   ☑ Special instructions regarding the payment of criminal monetary penalties:

   All criminal monetary payments are to be made to:
   Clerk's Office, United States District Court, P.O. Box 9344, Des Moines, IA 50306-9344.

   While on supervised release, you shall cooperate with the United States Probation Office in developing a monthly payment plan,
   which shall be subject to the approval of the Court, consistent with a schedule of allowable expenses provided by the United
   States Probation Office.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
the period of imprisonment. All crimnal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate
Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Case Number
Defendant and Co-Defendant Names        Joint and Several      Corresponding Payee,
*(including defendant number)*     Total Amount      Amount      if appropriate

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:

   See next page.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment,
(5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of
prosecution and court costs.

Add. 008

Case 4:22-cr-00199-SHL-HCA   Document 395   Filed 07/01/24   Page 9 of 9
AO 245B (Rev. 09/19)   Judgment in a Criminal Case
v1                     Sheet 6B — Schedule of Payments

DEFENDANT: BRADLEY EUGENE WENDT                                    Judgment Page: 9 of 9
CASE NUMBER:  4:22-cr-00199-001

# ADDITIONAL FORFEITED PROPERTY

1) US Ordnance, model M60, 7.62 caliber, (SN: 12413);

2) H&K,  model MP7A2,  4.6 caliber, (SN: 164029336);

3) H&K, model MP5SD3, 9-millimeter, (SN: 63106832);

4) FN, model M2HB QCB, .50 caliber, (SN: 36923);

5) Grain Sporting Goods LLC, model Sporter, 7.62 caliber, (SN: S033554);

6) One Shot Inc, model LAR15, 5.56 caliber, (SN: CM64429);

7) John's Guns, model FSL, .308 caliber, (SN: X00967);

8) H&K, model HK33KA3, .223 caliber, (SN: 11387);

9) CCARM, model PPSH-41, 7.62x25 caliber, (SN: 0006);

10) [Imported NFA Firearm], model 1950, 9-millimeter, (SN: 5100018);

11) H&K, model UMP40, .40 caliber, (SN: 162001006);

12) CCARM, model 1919-A4, 30.06 caliber, (SN: 015);

13) 2A Armament, model Balios-Lite, 5.56 caliber, (SN: BC00836);

14) John's Guns, model M60E3, .308 caliber, (SN: PSXMGM60E3001); and

15) US Ordnance, model M2, .50 caliber, (SN: DS7000), as outlined in the Preliminary Order of Forfeiture filed on June 20, 2024.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | 4:22-cr-00199-SHL-HCA-1<br><br><br>**ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL** |

## I.      INTRODUCTION.

After a seven-day trial, a jury found Defendant Bradley Eugene Wendt guilty of eleven offenses and not guilty of four others relating to the alleged misuse of his position as Police Chief for the City of Adair, Iowa, to acquire and possess highly regulated machine guns. Wendt moves for judgment of acquittal and/or new trial based on alleged errors in the jury instructions, the "unconstitutionally vague" nature of the charges, and sufficiency of the evidence. The Court concludes: (i) the jury instructions accurately summarized the law; (ii) the charges were not impermissibly vague; and (iii) the evidence sufficiently supports the jury's verdict on each of the eleven counts for which Wendt was found guilty. The Court therefore DENIES Wendt's Motion for Judgment of Acquittal and/or New Trial.

## II.      BACKGROUND.

### A.  *Legal and Regulatory Background for the Possession and Transfer of Machine Guns.*

To understand the facts, it is first necessary to understand the legal and regulatory framework for the ownership, possession, and transfer of machine guns. Under federal law, it is illegal to possess and/or transport machine guns manufactured after May 19, 1986. There is, however, an exception for "a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof." 18 U.S.C. § 922(o)(2)(A). Congress delegated authority to the Attorney General to promulgate rules and regulations regarding the enforcement of section 922(o) and related laws. *See Kajmowicz v. Whitaker*, 42 F.4th 138, 146 (3d Cir. 2022); *see also* 18 U.S.C. § 926(a); 26 U.S.C. § 7805(a). The Attorney General subdelegated this authority to the ATF Director. *See Whitaker*, 42 F.4th at 146, n.2.

Appellate Case: 24-2458     Page: 14     Date Filed: 10/03/2024 Entry ID: 5442880

Pursuant to its delegated authority, and as relevant here, ATF has promulgated rules regarding the "procedural and substantive requirements relative to the importation, manufacture, making, exportation, identification and registration of, and the dealing in, machine guns." 27 C.F.R. § 479.1. These rules include requirements that must be satisfied before ATF will approve the transfer or possession of a machine gun. 27 C.F.R. § 479.105. Two types of permissible transfers of machine guns are relevant here: (i) "the sale or distribution of such weapons for the official use of Federal, State or Local governmental entities," *id.* § 479.105(c); and (ii) the transfer of machine guns to authorized dealers when "it is established by specific information [from the machine gun dealer] the expected governmental customers who would require a demonstration of the weapon, information as to the availability of the machine gun to fill subsequent orders, and letters from governmental entities expressing a need for a particular model or interest in seeing a demonstration of a particular weapon," *id.* § 479.105(d). At trial, the Government used the phrase "purchase law letter" to describe the paperwork that is typically provided to ATF in connection with the first type of transfer and "demonstration law letter" to describe the paperwork that must be provided to ATF in connection with the second type of transfer.

A "purchase law letter" is prepared by an appropriate official with a government agency (such as a police department) regarding the quantity, make, and model of the machine gun the agency seeks to purchase. The purchase law letter often states that the machine gun is being acquired "for the agency's official use and not for the purpose of resale or transfer," or words to similar effect. If the transaction is authorized and consummated, the government agency becomes the registered owner of the machine gun.

The "demonstration law letter" is designed to give a government agency the opportunity to test a machine gun without necessarily buying it. The demonstration law letter is written by an appropriate government official to a Federal Firearms Licensee with a Special Occupancy Tax license (an "FFL-SOT"); i.e., an entity authorized to possess machine guns. The demonstration law letter typically states that the agency has an interest in seeing a demonstration of a particular machine gun for possible future purchase. The FFL-SOT then submits that letter to ATF as part of an application to acquire a machine gun. If the transaction is authorized and consummated, the FFL-SOT becomes the registered owner of the machine gun. The government agency may—but is not required to—end up purchasing the machine gun from the FFL-SOT. If the government

agency chooses not to do so, the FFL-SOT retains ownership of the machine gun and may sell or transfer it subject to certain restrictions.

    *B.  Summary of Evidence.*[1]

At all relevant times, Wendt was a certified law enforcement officer in the State of Iowa and worked full-time for the City of Adair, Iowa. He also owned and operated a gun store, known as BW Outfitters, that held an FFL-SOT license. At some point in 2018, Wendt spoke with City officials in Adair about being given the title of Police Chief. It is unclear whether Wendt approached City officials about the title or if the officials approached him; regardless, he was named Police Chief in mid-2018. As a political subdivision of the State of Iowa, the City of Adair can lawfully acquire and possess machine guns pursuant to 18 U.S.C. § 922(o)(2)(A).

The Police Chief title meant Wendt could write purchase law letters and/or demonstration law letters to try to satisfy ATF regulatory requirements for the transfer of machine guns. Wendt did so on dozens of occasions between 2018 and 2022, with some of those letters serving as the basis for charges in the Indictment for making false statements. In all, Wendt was charged with one count of conspiracy to make false statements to ATF and/or defraud ATF (Count 1); two counts of making false statements to ATF in purchase law letters (Counts 2 and 3); eleven counts of making false statements to ATF in demonstration law letters (Counts 4 through 14); and one count of unlawful possession of a machine gun (Count 15).[2] The Government's overarching theory was that Wendt wrote law letters not because the City of Adair was interested in purchasing machine guns, but rather to enrich himself by stockpiling machine guns that he eventually intended to resell or to help third parties do the same.

Some of Wendt's earliest demonstration law letters were written in October 2018 and January 2019 to Marcum MFG LLC, a gun dealership in Indiana owned by Jonathan Marcum. On October 31, 2018, Wendt wrote demonstration law letters to Marcum expressing the City of Adair's putative interest in the demonstration of six Heckler & Koch ("H&K") machine guns (Count 4) and eleven FN machine guns (Count 5). (*See* ECF 348-63 through 348-69 ("Govt. Exs. 204–210").) On January 15, 2019, Wendt wrote another demonstration law letter to Marcum expressing

---

[1] Neither side ordered the trial transcript, so the Court is relying primarily on the exhibits and its own recollection of testimony. It does not appear, in any event, that there is a dispute about most of the underlying facts; instead, the case boils down to Wendt's intent.
[2] The Indictment charged Wendt with twenty counts, but the Government dismissed five of them before trial. The Court renumbered the remaining fifteen counts for trial so there would not be gaps in the numbering. All references in this Order are to the renumbered counts at trial.

3

the City's putative interest in the demonstration of four more H&K machine guns and two SIG machine guns (Count 6). (*See* ECF 348-71 and 348-72 ("Govt. Exs. 212–213").) Each of these demonstration law letters stated that "Adair Police Department is requesting a firearms demonstration by Marcum MFG LLC. This demonstration will evaluate the firearms listed below for possible purchase for official duties for our department . . . The number of sworn certified officers in our department is 6 . . . The firearm requested for demonstration is particularly suitable for use for government agencies." (*See, e.g.*, Govt. Ex. 211, p. 1.)

At trial, Marcum testified that he had an agreement with Wendt in which Marcum's business would use the demonstration law letters to obtain ATF approval to acquire the machine guns, which Marcum intended to then turn around and resell for a profit. Marcum said he and Wendt agreed the profits would be shared between Marcum's business and the City of Adair. Marcum testified that although the machine guns were obtained via demonstration law letters, they were never actually "demonstrated" to anyone. In other words, and by way of example, no one from Adair ever traveled to Indiana (or vice versa) to test the machine guns, nor was any other sort of demonstration ever performed. Marcum testified that he did not intend to break the law in his interactions with Wendt and did not believe Wendt intended to break the law, either. Still, Marcum pled guilty to charges in a separate case relating to misuse of demonstration law letters. The jury ultimately found Wendt not guilty on Counts 4 and 5 but guilty on Count 6. The jury also found Wendt guilty in Count 1 of conspiring with Marcum to make false statements to ATF.

In addition to the letters he wrote for Marcum, Wendt wrote many other demonstration law letters and purchase law letters between 2018 and 2022, often to his own gun business, BW Outfitters. In total, between 2018 and 2022, Wendt wrote purchase law letters and demonstration law letters expressing the three-person Adair Police Department's putative interest in more than fifty machine guns. The Government presented evidence at trial indicating that Wendt did not believe the City of Adair was genuinely interested in these guns, but rather that Wendt was simply using the law letters as a ruse to acquire machine guns—and, ultimately, make money—for himself and his gun business or third parties. For example, Wendt was involved in the following Facebook communications:

- <u>January 21, 2019</u>: Wendt sent a message to Noah Schilling saying, "Machine guns are worth bank money. Paid 4k for mp5sd[3] can sell for 20k." (ECF 349-4, p. 1 ("Govt. Ex. 401").) He also wrote: "I'm building machine gun arsenal"

---

[3] An "MP5SD" is a model of machine gun manufactured by H&K.

and "This chief police jig is awesome . . . Send machine guns to my own gun
store lol . . . Just need the title." (ECF 349-6, p. 1 ("Govt. Ex. 402").)

- <u>February 26, 2019</u>: alleged co-conspirator Rob Williams sent Wendt a message
  saying, "Figuring out how to get rich yet?" (Govt. Ex. 401, p. 2.) Wendt
  responded: "Oh ya just bought 2 more mp5sd," followed by a picture of a
  machine gun. (Id.; ECF 349-5 ("Govt. Ex. 401A").)

- <u>March 8, 2019</u>: Wendt sent messages to Mike Bremser saying, "Find someone
  wanting my extra mp5sd . . . 7k I'll write demo letter." (Govt. Ex. 401, p. 2.)

- <u>April 18, 2019</u>: Wendt sent messages to Matthew Stringham indicating he was
  "bored" by his job in Adair but "chief status let's me sign for machine guns for
  my indoor range. Win win." (Govt. Ex. 402, p. 1.)

- <u>August 20, 2020</u>: Wendt sent a message to Neal Cooley saying that he would
  quit his job in Adair if he was named Police Chief in Lakeview, Iowa, but
  otherwise would keep the Adair job. Wendt said: "Gotta be chief tho for
  machine guns so we'll see." (Id., p. 2.)

- <u>October 8, 2020</u>: Wendt sent a message to Matt Nicholson indicating he would
  write a demonstration law letter for Nicholson "but I wanna quit so wanna get
  it done i[n] next 6 months. I'm about done at PD too tired 100 hr weeks suck .
  . . I want mini[⁴] tho lol." (Id.)

- <u>September 26, 2021</u>: Wendt sent a message to Corey Soriano asking whether
  Soriano had any machine guns. Soriano responded, "We can make them, you
  gotta know someone with power in LE office." Wendt replied: "Lol I'm chief
  of police bitch . . . I have about 50 already need more . . . I love full autos." (Id.,
  p. 3.)

- <u>February 1, 2022</u>: Wendt sent a message to Don Powless saying, "I retire in
  December . . . Glad I got year left buying many machine guns as I can bailing."
  (Id.)

Wendt wrote additional demonstration law letters throughout this period beyond those to

Marcum, including the following letters that correspond to individual charges in the Indictment:

- <u>Count 7</u>: demonstration law letter dated March 28, 2019[⁵], to BW Outfitters stating:

  > The Adair Police Department would like a demonstration of
  > the M-249 Para 5.56 Machine Gun for possible future
  > purchase and use of our officers in the performance of their
  > official duties . . . The firearm requested for demonstration
  > is particularly suitable for use as a law enforcement weapon.
  > The M-249 Para 5.56 Machine Gun is suitable for close
  > quarters engagements and suppressive fire which is

---

[⁴] In context, a reasonable juror could—and almost certainly *would*—have interpreted the word "mini" as a reference to a high-powered machine gun known as a "minigun," which is at issue in Count 10.

[⁵] Wendt originally requested a demonstration of the M-249 Para 5.56 gun on July 19, 2018, but the ATF denied the request, so he sent another letter on March 28, 2019. (Govt. Ex. 213.)

important in dealing with well armed suspects which agencies are faced with more and more each day.

(Govt. Ex. 213, p. 4.)

- <u>Count 8</u>: demonstration law letter dated July 19, 2020, to BW Outfitters stating:

    I am writing to request a formal demonstration of the M2 HB-QCB, 12.7mmx99mm (Full Auto) Machinegun, manufactured by FNH USA LLC to be conducted for the Adair Police. Our agency would appreciate a detailed overview of the stated weapon to further determine if it is suitable for future purchase, and official use by the sworn officers within Adair Police Dept. . . . The firearm requested for demonstration is ideal for the use by the Adair Police Department in special operations and patrol, based on its price and availability.

(ECF 348-84, p. 1 ("Govt. Ex. 225").)

- <u>Count 9</u>: demonstration law letter dated January 18, 2021, to Arms Unlimited, Inc., Las Vegas, Nevada, stating:

    The Adair Police Department is requesting a demonstration of the following select-fire/automatic weapon(s) for possible future purchases and use of our officers in the performance of their official duties . . . . The firearms requested for demonstration are particularly suitable for use as law enforcement weapon. The weapon requested are particularly suitable for our officers while conducting special operations and high-risk prisoner transportation details. This demonstration is requested for the entire Adair Police Department. Each officer will have an opportunity to fire the weapon(s) which will require the machine guns to fire thousands of rounds. This type of testing during the demonstration will show the reliability of the firearm to the department.

(ECF 348-94, p. 1 ("Govt. Ex. 235").)

- <u>Count 10</u>: demonstration law letter dated November 29, 2021, to BW Outfitters stating:

    The Adair Police Department would like a demonstration of the GAU-2b/A Machine Gun manufactured by DeGroat Tactical Armaments for possible future purchase and use of our Officers in the performance of their official duties . . . . The firearm requested for the demonstration is particularly suitable for use as a law enforcement weapon. The GAU-2B/A 7.62mm Machine Gun is suitable for engagements and suppressive fire which is important in dealing with well

6

armed suspects which agencies are faced with more and more each day.

(ECF 348-108, p. 1 ("Govt. Ex. 249").)

- <u>Count 11</u>: demonstration law letter dated March 1, 2022, to TM Firearms LLC stating:

> I am writing to request a formal demonstration of the MP5SD3 (Full Auto) 9mm Machinegun, manufactured by Heckler and Koch to be conducted for the Adair Police. Our agency would appreciate a detailed overview of the stated weapon to further determine if it is suitable for future purchase, and official use by the sworn officers within Adair Police Dept. . . . The firearm requested for demonstration is ideal for the use by the Adair Police Department as it is similar in design to other approved weapons currently in use by our agency and surrounding agencies.

(ECF 348-73, p. 4 ("Govt. Ex. 214").)

- <u>Count 12</u>: demonstration law letter dated March 1, 2022, to TM Firearms LLC stating:

> I am writing to request a formal demonstration of the MP7A2 (Full Auto) 4.6x30mm Machinegun, manufactured by Heckler and Koch to be conducted for the Adair Police. Our agency would appreciate a detailed overview of the stated weapon to further determine if it is suitable for future purchase, and official use by the sworn officers within Adair Police Dept. . . . The firearm requested for demonstration is ideal for the use by the Adair Police Department as it is similar in design to other approved weapons currently in use by our agency and surrounding agencies.

(ECF 348-82, p. 11 ("Govt. Ex. 223").)

- <u>Count 13</u>: demonstration law letter dated July 1, 2022, to Palm Beach Shooting Organization LLC stating:

> I am writing to request a formal demonstration of the G36C (Full Auto) 5.56 Machinegun, manufactured by Heckler & Koch to be conducted for the Adair Police. Our agency would appreciate a detailed overview of the stated weapon to further determine if it is suitable for future purchase, and official use by the sworn officers within Adair Police Dept. . . . The firearm requested for demonstration is ideal for the use by the Adair Police Department as it is similar in design to other approved weapons currently in use by our agency and surrounding agencies.

(ECF 348-112, p. 1 ("Govt. Ex. 253").)

- <u>Count 14</u>: demonstration law letter dated August 28, 2021, to Williams Contracting LLC stating:

> I am writing to request a formal demonstration of the IO INC Model: Sporter Caliber: 7.62X39 Manufacturer: Grain Sporting Goods LLC/GRAIN SG to be conducted for the Adair Police. Our agency would appreciate a detailed overview of the stated weapon to further determine if it is suitable for future purchase, and official use by the sworn officers within Adair Police Dept. . . . The firearm requested for demonstration is ideal for the use by the Adair Police Department as it is similar in design to other approved weapons currently in use by our agency and surrounding agencies.

(ECF 348-106, p. 1 ("Govt. Ex. 247").)

The jury found Wendt guilty of making false statements in demonstration law letters as charged in Counts 6 and 8 through 14 but not guilty of making false statements in demonstration law letters as charged in Counts 4, 5, and 7.

In addition to charges arising out of demonstration law letters, the Indictment charged Wendt with two counts (Counts 2 and 3) relating to purchase law letters that were used to acquire machine guns. Count 2 was based on a purchase law letter dated October 9, 2019, for five machine guns: three H&K MP7A2s, one H&K G36k, and one H&K 416. (*See* ECF 348-80 ("Govt. Ex. 221").) The purchase law letter was signed by Wendt and stated, in part: "These firearms will be the property of our Adair Police Department and are not being acquired for the purpose of resale or transfer, They will be used to carry out its official responsibilities and duties." (Id., p. 1.) Count 3 was based on a purchase law letter dated March 3, 2022, for three MP7A2 machine guns. (*See* ECF 348-110 ("Govt. Ex. 251").) The purchase law letter was again signed by Wendt and stated, in part: "These firearms will be the property of our Adair Police Department and are not being acquired for the purpose of resale or transfer, and they will be used to carry out its official responsibilities and duties." (Id., p. 1.) The jury found Wendt not guilty of making false statements as charged in Count 2 but guilty of making false statements as charged in Count 3.

The machine guns at issue in Counts 2 and 3 were not the only machine guns purportedly acquired by the City of Adair during the relevant period. On August 19, 2021, Wendt submitted a letter to Arms Unlimited on City of Adair letterhead for the purchase of an M60E6 US Ordnance 33235 M60 E6 7.62 machine gun "for Adair Police Department, in Adair, Iowa." (ECF 348-105, p. 1 ("Govt. Ex. 246").) ATF authorized the transaction, and Arms Unlimited shipped the gun. (Id.,

pp. 2–7.) On April 16, 2022, members of the public were allowed to shoot the US Ordnance M60 E6 machine gun at a public event in Woodbine, Iowa, sponsored by BW Outfitters. Woodbine is more than fifty miles away from the City of Adair, and there was no signage at the event suggesting it was sponsored or hosted by the Adair Police Department. Moreover, Wendt advertised the machine gun shoot on his personal Facebook page, (ECF 349-10 ("Govt. Ex. 406")), and did not wear his police uniform at the event. In fact, Adair records show that he was off duty on the date and time of the event. Count 15 of the Indictment charged Wendt with unlawful possession of a machine gun at that event.

Despite being off duty, out of uniform, and more than fifty miles away from the City of Adair, Wendt argued that he possessed the machine gun at issue in Count 15 in connection with his "official duties" as Adair Police Chief. To support this defense, he presented evidence from several witnesses, including an elected official, about the value they derived from having the opportunity to shoot machine guns. Wendt successfully requested a jury instruction informing the jury that "[o]fficers of a municipal police department in the State of Iowa may perform their official duties outside of the city they serve." (ECF 330, Final Instruction No. 26.) Wendt also successfully requested a jury instruction informing the jury that "[a]n employee or agent of a governmental entity is authorized by that entity to possess a machine gun so long as his or her possession is within the scope of his or her official duties." (Id., Final Instruction No. 29.) The instruction further stated, in part: "To determine whether the defendant had the authority, or reasonably believed he had the authority, to possess the machine gun, you must consider whether his possession on the date in question was within the scope of his official duties as an officer of the Adair Police Department." (Id.) The jury found Wendt guilty of unlawful possession as charged in Count 15.

## III.   LEGAL STANDARDS.

Pursuant to Fed. R. Crim. P. 29(a), the Court must grant a motion for judgment of acquittal if "the evidence is insufficient to sustain a conviction." "A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Gonzalez*, 826 F.3d 1122, 1126 (8th Cir. 2016). The Court must view the evidence in the light most favorable to the verdict and accept all reasonable inferences supported by the evidence. *Id.* The Court may not assess the credibility of witnesses. *See United States v. Lemoine*, --- F.4th ----, 2024 WL 2968075, at *3 (8th Cir. June 13, 2024). The Rule 29(a) standard "is very strict, and the jury's verdict is not to be lightly

overturned." *United States v. Wright*, 993 F.3d 1054, 1065 (8th Cir. 2021). This is particularly true where the jury rendered a split verdict. *See Lemoine*, 2024 WL 2968075, at *3 (split verdicts are "significant" because they indicate "the jury carefully performed its duty by not simply rendering a blanket verdict on all counts").

The Court has more discretion when ruling on a motion for new trial and may grant such a motion "if the interest of justice so requires." Fed. R. Crim. P. 33(a). All the same, "[m]otions for new trial are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." *United States v. Rice*, 449 F.3d 887, 893 (8th Cir. 2006) (cleaned up). The Court should exercise its authority to grant a new trial "sparingly and with caution." *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009).

## IV.    LEGAL ANALYSIS: MOTION FOR JUDGMENT OF ACQUITTAL.

### A.    *Pretrial Issues.*

Wendt's brief devotes several pages to arguing the Government violated his constitutional rights in the investigation and prosecution of the case. (ECF 353-1, pp. 11–13.)[6] It is unclear how, if at all, these arguments are relevant to Wendt's Motion for Judgment of Acquittal and/or New Trial; at most, Wendt simply seems to be reiterating pretrial arguments that the Court has already rejected. The Court stands by its prior rulings holding that: (a) the Government did not violate Wendt's constitutional rights when it obtained search warrants for his email and social media accounts (ECF 194); (b) although the Government violated Wendt's rights by listening to statements made by him to the Adair City Council under promise of immunity, the violation was harmless beyond a reasonable doubt (ECF 262); and (c) the Government did not violate Wendt's Fifth Amendment rights in the discovery process (ECF 194). Nothing at trial changes these rulings.

### B.    *Jury Instructions and Vagueness.*

1. The Court Properly Instructed the Jury that the Adair Police Department Could Acquire and Possess Machine Guns Only "for Official Use."

As it relates to trial issues, Wendt starts by arguing that the Court erroneously instructed the jury in Final Instruction Nos. 26 and 29 that a government agency could lawfully possess machine guns only for "official use." Wendt asserts that the words "official use" are not found in 18 U.S.C. § 922(o), which instead allows post-1986 machine guns to be "transfer[red] to or by, or

---

[6] All citations are to the page number in the upper-righthand corner of each page, as auto-populated by the Electronic Case Filing (ECF) system. These page numbers are often different than the numbers placed on the bottom of each page by the parties.

possess[ed] by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof." Given this statutory language, Wendt argues that it was improper to tell the jury the Adair Police Department could only possess machine guns for "official use."

The Court cannot tell whether Wendt intends for his "official use" argument to apply to all charges against him, or just the unlawful possession charge (Count 15). Wendt admits in one place that a police department "may only have [machine] guns transferred to it for its official use. . . ." (ECF 353-1, p. 16), thus suggesting the latter. Elsewhere, however, he shifts to arguing that the words "official use" should not have been included in jury instructions relating to the purchase law letters (id., pp. 18–22), which indicates the former. The Court will assume, in an abundance of caution, that Wendt's "official use" argument is directed to all eleven counts of conviction. For several reasons, the argument is unpersuasive.

First, as a matter of statutory interpretation, the fact that section 922(o)(2)(A) does not include the words "official use" does not mean that Congress did not intend to impose such a requirement on government agency possession of machine guns. In section 922(o), Congress established the general rule that the possession of post-1986 machine guns is unlawful. Section 922(o)(2)(A) is a limited exception to that general rule: it allows possession of such machine guns "by or under the authority of . . . [a] political subdivision." In context—and, again, keeping in mind the general rule prohibiting possession of machine guns—it seems clear that Congress wanted to limit possession to "federal or state agents acting in an official capacity." *United States v. Warner*, 5 F.3d 1378, 1381 (10th Cir. 1993); *see also United States v. Neuner*, 535 F. App'x 373, 374 n.1 (5th Cir. 2013) ("Clear statutory language and Congressional intent limit lawful transfer and possession of machine guns to authorized governmental personnel for use in their official capacities."); *United States v. Bascue*, 97 F.3d 1461, 1996 WL 554488, at *2 (9th Cir. 1996) (unpublished table decision) ("Section 922(o)'s exemption for transfers to a government agency is intended to exempt from liability the purchase of machineguns by law enforcement officers and other government agencies for law enforcement uses.").

Holding otherwise would give the words "under the authority of" an unnatural reading. Typically, when analyzing whether a government official or agency has the "authority" to do something, it is implicitly understood that there must be a connection between the action in question and the person's or agency's official duties or responsibilities. *Cf. West v. Atkins*, 487 U.S.

11

Add. 020

42, 50 ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). Indeed, Black's Law Dictionary uses the word "official" in each definition of "authority" that is potentially relevant here. *See Authority*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("**Authority.** 1. The official right or permission to act . . . 2. The power a person has through an official position . . . 3. An official organization or government department with particular responsibilities and decision-making powers."). Surely Congress intended to use the word "authority" in the typical fashion in section 922(o); i.e., to allow possession of a machine gun by a government agency only for "official" purposes.

Second, to the extent the words "by or under the authority of" are ambiguous as used in section 922(o)(2)(A), the ambiguity is properly resolved by governing regulations. 27 C.F.R. § 479.105(c) states: "The registration of such machine guns . . . and their subsequent transfer shall be conditioned upon and restricted to the sale or distribution of such weapons **for the official use** of Federal, State or local government entities" (emphasis added). Wendt has not cited any cases holding that ATF exceeded its statutory authority in enacting this regulation, nor is the Court aware of any such case law. Meanwhile, in analogous circumstances, the Eighth Circuit has affirmed the use of jury instructions that summarize federal firearms regulations. *See United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) (affirming use of jury instruction that "track[ed]" federal firearms regulations), *cert. granted, judgment vacated on other grounds*, 543 U.S. 1099 (2005), *and opinion reinstated*, 414 F.3d 942 (8th Cir. 2005); *see also United States v. Stupka*, 418 F. Supp. 3d 402, 414 (N.D. Iowa 2019) (recognizing that the Eighth Circuit model jury instructions are based on federal regulations in connection with the offense of unlawful user in possession of firearm). *Cf. United States v. French*, 683 F.2d 1189, 1195 (8th Cir. 1982) (affirming conviction in case where jury instructions summarized federal regulations).

Third, Wendt's "official use" argument misunderstands the crime of making a false statement under 18 U.S.C. § 1001. "By its terms, 18 U.S.C. § 1001 covers 'any' false statement— that is, a false statement 'of whatever kind.'" *Brogan v. United States*, 522 U.S. 398, 400 (1998) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). This means a person can violate section 1001 even if the statement in question is not "legally required." *United States v. Arcadipane*, 41 F.3d 1, 5 (1st Cir. 1994) ("[Section 1001] forbids falsification of any . . . statement, whether or not legally required, made to a federal agency."); *United States v. Puente*, 982 F.2d 156, 159 (5th Cir.

Appellate Case: 24-2458   Page: 25   Date Filed: 10/03/2024 Entry ID: 5442880

1993) (affirming conviction for making a false statement in a contract bid even though a true statement would not disqualify the bidder from obtaining the contract); *United States v. Dick*, 744 F.2d 546, 553 (7th Cir. 1984) ("That a statement was not required to be made to the agency does not make the statement any less material."). In other words, the relevant question in a prosecution for making false statements is not whether the statement is per se required to satisfy the relevant statute, but rather whether the statement "has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed." *United States v. Robinson*, 809 F.3d 991, 999 (8th Cir. 2016) (cleaned up).

Here, by statute, ATF approval is required before post-1986 machine guns transactions may be consummated.[7] Consistent with its statutory authority, ATF has taken the position that whether an agency is acquiring a machine gun for "official use" is material to whether the transaction should be approved. There is ample justification for ATF to have adopted this approach. If an agency is not willing to certify that a machine gun is being acquired for "official use," it calls into question whether the agency is really the intended acquiror of the machine gun at all, or if (as the Government essentially alleged here) the agency is merely being used as a "puppet" to allow a private citizen or business to acquire machine guns for the citizen's or business's own enrichment. Similarly, even if the agency truly is acquiring the machine gun, the fact that it is doing so for some reason other than "official use" still might be material to ATF's decision to approve the transaction, as ATF might be concerned about allowing too many machine guns into circulation given Congress's decision to make possession of machine guns generally illegal. The point is that a statement about "official use" can be material to ATF's approval decision even if section 922(o) does not per se forbid the possession of a machine gun by a government agency for reasons other than "official use."

To that end, it is important to note that the jury instructions informed the jury that a false statement charge must be evaluated according to Wendt's intent *at the time the statement was made*. (ECF 330, Final Instruction Nos. 16–17.) Thus, it is irrelevant whether an agency eventually might decide to possess a machine gun for reasons other than "official use," or whether such eventual possession might be unlawful. The crucial question is instead whether Wendt made false

---

[7] 26 U.S.C. § 5812 requires the transferor of a post-1986 machine gun to obtain approval from "the Secretary" before the transaction may be consummated. "The Secretary" means "the Attorney General." 26 U.S.C. § 7801(a)(2)(A). The Attorney General delegated approval authority to the ATF Director. *Kajmowicz*, 42 F.4th at 146, n.2.

statements when he signed demonstration or purchase law letters stating that the City of Adair was interested in the actual or potential purchase of machine guns. The jury was accurately instructed on the elements of the charge of making false statements for purposes of Counts 1, 3, 6, and 8 through 14. The inclusion of language about "official use" in Final Instruction Nos. 26 or 29 does not undermine the jury's verdict on these counts.

This leaves only Count 15, which charged Illegal Possession of a Machine Gun, as being potentially affected by Wendt's argument about "official use." Wendt does not persuasively explain, however, why his argument about "official use" is connected to what the jury had to decide on Count 15. Final Instruction No. 20 informed the jury that the relevant question in Count 15 was whether *Wendt* possessed the machine gun in question, not whether the *Adair Police Department* did. (ECF 330, Final Instruction No. 20.) In other words, the point of Count 15 was that Wendt was treating the machine gun in question as his personal property, rather than Adair Police Department property. Wendt clearly understood this at trial, with his defense to Count 15 focusing on the theory that his possession of the machine gun on the date in question was connected to his work as Police Chief. He emphasized, for example, that a police chief is "always on duty" and successfully asked for a jury instruction stating that "[o]fficers of a municipal police department in the State of Iowa may perform their official duties outside of the city they serve." (*Compare* id., p. 31 (Final Jury Instructions), *with* ECF 291, p. 12 (Wendt's Proposed Final Jury Instructions).) Wendt also presented testimony from witnesses, including an elected official, about the value they derived from having the opportunity to shoot machine guns.

Against this backdrop, the disputed issue on Count 15 was not whether a government agency can possess a machine gun for reasons other than "official use," but rather whether Wendt possessed the machine gun in connection with his "official duties" as Police Chief. These are different issues. As to the latter, the Government presented evidence that Wendt was off duty, out of uniform, and at an event sponsored by his private gun business at a site more than fifty miles from the City of Adair when he possessed the machine gun at issue in Count 15. This evidence was more than sufficient to sustain the jury's conclusion that Wendt possessed the machine gun in his personal capacity, and not as part of his official duties. The Court will not overturn the jury's verdict based on an irrelevant statutory interpretation argument about whether the City of Adair could have possessed the machine gun for reasons other than "official use."

2. <u>The Court Properly Instructed the Jury on the Concept of Demonstration Law Letters.</u>

Wendt next argues that the Court improperly instructed the jury about demonstration law letters, which are written by government agencies to gun dealers to express the agencies' interest in seeing a "demonstration" of a particular type of machine gun. *See* 27 C.F.R. § 479.105(d). The gun dealer then submits the demonstration law letter to ATF as part of an application for permission to acquire the machine gun in question. The purpose of demonstration law letters is to allow government agencies to test machine guns (via the gun dealer) without being obligated to purchase them. In Counts 6 and 8 through 14, the jury concluded that Wendt made false statements in demonstration law letters.

The premise of Wendt's argument is that section 922(o) "does not permit gun dealers to acquire machine guns for purposes of demonstrations." (ECF 353-1, p. 25.) With this premise in mind, he argues that a government agency's statement about wanting a machine gun for demonstration purposes can never be material because ATF has no authority to allow a gun dealer to acquire or possess a machine gun for demonstration purposes anyway. This is an ironic argument for Wendt to make; if accepted, it would mean that every machine gun his business obtained via demonstration law letter was acquired and possessed illegally. In essence, his position is that he was committing different crimes than the ones for which he was charged.

Like Wendt's other jury instruction arguments, this one fails, first, because ATF did not exceed its authority when it allowed gun dealers to obtain machine guns for demonstration purposes for government agencies. Section 922(o) permits the possession of a machine gun "under the authority of" a government agency. When a government agency has a legitimate interest in purchasing a machine gun—and communicates the same to a gun dealer through a demonstration law letter—the gun dealer who acquires the machine gun is doing so "under the authority of" the government agency and therefore is not violating section 922(o). It follows that: (i) ATF did not exceed its authority when it enacted 27 C.F.R. § 479.105(d); and (ii) the jury instructions accurately stated the law.

Wendt's argument also fails because a statement does not cease to be "material" simply because it convinces an agency like ATF to take action that (allegedly) violates the law; instead, if anything, such a statement is more material than normal. As the Eighth Circuit explained in *United States v. Voorhees*, a defendant who uses false statements to convince the government to do something illegal "cannot escape criminal liability by claiming that the agency [taking the action]

15

Add. 024

lacked authority to do so." 593 F.2d 346, 350 (8th Cir. 1979). Instead, in *Voorhees*, the materiality requirement was satisfied even though the government agency allegedly lacked the authority to make the payments the defendant convinced the agency to make. *Id*. ("Since Voorhees applied for and received such 'illegal' payments, he is not now in a position to assert that his false statement was not material because it was incapable of producing illegal payments.").

Similarly, in *United States v. Adler*, the defendant, a doctor, was convicted for making false statements to obtain reimbursement under Medicaid and Medicare programs for medical services the doctor did not actually perform. 623 F.2d 1287, 1291 (8th Cir. 1980). The defendant argued the false statements could not have been "material" because the services—whether performed or not—were not compensable under Medicaid or Medicare. *Id.* The Eighth Circuit disagreed, holding that the defendant's position, if adopted, "would remove the criminal fraud sanction from the most egregious cases of false claims . . . We do not think Congress intended such a result in enacting a sweeping prohibition on false and fraudulent statements under 18 U.S.C. § 1001." *Id. Adler* and *Voorhees* are controlling here and defeat Wendt's position as to materiality on Counts 6 and 8 through 14.

### 3.   The Charges Are Not Unconstitutionally Vague.

Wendt next argues, in various places, that the charges against him are unconstitutionally vague. The Court disagrees. As it relates to Counts 1, 3, 6, and 8 through 14, two federal appellate courts have upheld convictions for similar conduct to that charged against Wendt, with the Sixth Circuit rejecting a void-for-vagueness challenge akin to the one Wendt appears to be raising here. *See United States v. Theunick*, 651 F.3d 578, 585–86 (6th Cir. 2011) (rejecting vagueness challenge); *see also United States v. Kelerchian*, 937 F.3d 895, 907–08 (7th Cir. 2019) (affirming conviction based on defendant's use of false statements in demonstration law letters).

Contrary to Wendt's argument, there is nothing ambiguous or vague—and certainly not to the level of constitutional infirmity—about the statutes and regulations governing the acquisition and transfer of machine guns. The principal statute is section 922(o), which makes it "unlawful for any person to transfer or possess a machine gun" but contains an exception for machine guns transferred to or possessed by the United States, a State, or a department, agency, or political subdivision thereof. Section 922(o) is buttressed by a separate statute prohibiting the transfer of machine guns unless a "written application" is filed with and approved by ATF. *See* 26 U.S.C. § 5812(a). "Applications shall be denied if the transfer, receipt, or possession of the firearm would

place the transferee in violation of law." *Id.* Federal regulations then flesh out the two permissible types of transfers of machine guns of relevance here: (i) the sale or distribution to federal, state, or local government agencies, 27 C.F.R. § 479.105(c); and (ii) the transfer of machine guns to authorized dealers for demonstration purposes when a government agency expresses interest in potential purchase, *id.* § 479.105(d).

Read collectively, the governing statutes and regulations are not ambiguous. As it pertains to purchase law letters, the applicant must submit a "written application," 26 U.S.C. § 5812(a), establishing that the machine gun is "for the official use of Federal, State or Local governmental entities," 27 C.F.R. § 479.105(c). This is a straightforward requirement designed to confirm that a local law enforcement agency intends to make "official use" of the weapon before the transfer is approved. Similarly, the demonstration law letter is part of the "written application," 26 U.S.C. § 5812(a), that must, among other things, confirm to ATF the existence of a law enforcement agency that is interested in a demonstration of the machine gun(s) for potential acquisition. Nothing in the governing statutes or regulations permits the acquisition of a machine gun for personal ownership, and thus the predominant issue in the Government's case against Wendt is the same as the one the Sixth Circuit identified in *United States v. Theunick*: "whether [Wendt] used the authority of [his] office[] as a pretext for the personal use of automatic weapons." 651 F.3d at 585; *see also Kelerchian*, 937 F.3d at 908 ("From the content of these letters, a reasonable jury could find that these were false requests for demonstrations. The letters could have had no other purpose."). There is no vagueness problem in these circumstances.

There is also no vagueness problem in Count 15, which charged Wendt with unlawful possession of a machine gun in connection with the event in Woodbine, Iowa. Wendt argues that his conviction on Count 15 is invalid under *United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006), which held that section 922(o) was unconstitutionally vague as applied to a law enforcement officer in Illinois who ordered a machine gun while serving as a rifle instructor. *Id.* at 1004. *Vest* revolved around the law enforcement exception in section 922(o)(2)(A), which allows possession of a machine gun "by or under the authority of" a government agency. The defendant argued that he had "inherent authority" to legally possess the machine gun and that his supervisor authorized him to acquire it anyway. *Id.* The Government admitted that it had no evidence the defendant ever used the machine gun for anything other than law enforcement purposes but nonetheless charged him with violating section 922(o). *Id.*

17

*Vest* concluded the language of section 922(o)(2)(A) was unconstitutionally vague because a reasonable officer in the defendant's shoes would have no guidance as to when he was possessing the firearm legally versus illegally and whose "authority" was necessary to make the possession of the firearm lawful. *Id.* at 1010. *Vest* further concluded, based on legislative history, that "the law enforcement exception was included because § 922(o) was not intended to apply to police officers, but instead its purpose was to eliminate the use of machine guns and various other weapons used to commit crimes. It does not appear that this statute was designed to criminalize police officers even if they may be guilty of mere technical violations." *Id.* at 1011. *Vest* reached this conclusion after analyzing legislative debate and discussion in the United States Senate. *Id.* at 1010–11.

*Vest* is distinguishable because the officer in that case never possessed or used the machine gun for anything other than law enforcement purposes. Here, by contrast, the whole point of Count 15 is that, in the Government's view, Wendt had no legitimate law enforcement purpose when he took the machine gun to the BW Outfitters event in Woodbine. This case therefore does not revolve around who had the authority to allow Wendt to possess the machine gun in his official capacity as a law enforcement officer, but rather whether Wendt possessed the machine gun in his official capacity at all. *Vest* does not apply in these circumstances. *See United States v. Carn*, No. 213CR00346APGGWF, 2018 WL 1413971, at *1 (D. Nev. Mar. 20, 2018) (refusing to apply *Vest* to a situation in which the defendant "possessed the weapons for commercial or personal purposes, with no connection to law enforcement use"); *cf. Theunick*, 651 F.3d at 587 (holding that *Vest* did not apply to the "central issue, namely, whether the Defendants used the authority of their positions as a pretext for acquiring multiple machine guns for their personal use").

In arguing otherwise, Wendt essentially interprets *Vest* to mean a law enforcement officer never can be prosecuted under section 922(o) if the officer has at least some arguable basis for claiming authority to possess a machine gun. This is a reasonable interpretation of *Vest*, which, although purportedly only finding the statute to be unconstitutional as applied, effectively held that the words "by or under the authority of" as used in section 922(o)(2)(A) will be fatally ambiguous whenever applied to a police officer. 448 F. Supp. 2d at 1010. The problem for Wendt, however, is that the Eighth Circuit has interpreted the words "by or under the authority of" (or similar verbiage) in a variety of contexts without ever suggesting they are ambiguous at all, much less to the point of constitutional infirmity. For example, the Eighth Circuit has repeatedly decided identity theft cases arising under a federal statute that defines "identification documents" to mean documents

created "by or under the authority of" the federal or state government. *See* 18 U.S.C. § 1028(d)(3); *United States v. Rojas*, 826 F.3d 1126, 1130 (8th Cir. 2016); *United States v. Retana*, 641 F.3d 272, 275 (8th Cir. 2011). The Eighth Circuit has never had a problem interpreting those words or allowing the factfinder to decide whether a defendant possessed or used identification documents "without lawful authority." *See Rojas*, 826 F.3d at 1130 (affirming verdict); *Retana*, 641 F.3d at 275 (same). Similarly, the Eighth Circuit has had no apparent difficulty deciding when or how to apply the "public authority defense," which requires a defendant to show reasonable reliance on "the authority of a government official" to engage in what otherwise would be unlawful activity. *United States v. Xiong*, 914 F.3d 1154, 1160 (8th Cir. 2019); *United States v. Achter*, 52 F.3d 753, 755 (8th Cir. 1995).

There is nothing about section 922(o)(2)(A) that makes the words "by or under the authority of" more difficult to interpret than when those words (or similar words) are used in other contexts. On its face, section 922(o) unambiguously establishes a general rule that the possession of post-1986 machine guns is illegal. *See United States v. Just*, 74 F.3d 902, 904 (8th Cir. 1996). Section 922(o)(2)(A) creates an exception to the general rule, which the Eighth Circuit has treated as an affirmative defense. *See id.* Section 922(o)(2)(A) is therefore essentially a codification of the public authority defense, which, as noted above, the Eighth Circuit has not struggled to apply even though it revolves around whether a defendant's conduct was authorized by a government official. *See Xiong*, 914 F.3d at 1160; *Achter*, 52 F.3d at 755. The Court cannot reconcile *Vest*'s conclusion that the words "by or under the authority of" are fatally ambiguous with Eighth Circuit precedent expressing little to no difficulty in interpreting those words.

The Court also finds *Vest* unpersuasive for other reasons. *Vest* relied heavily on legislative history in deciding that the words "by or under the authority of" were ambiguous. However, "[l]egislative history is properly consulted only in light of a textual ambiguity." *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1071 (8th Cir. 2016). Here, the Court does not find section 922(o) ambiguous, and thus sees no need to resort to legislative history. Instead, the statute should be interpreted in accordance with its plain terms: it is illegal for someone to possess a machine gun unless the person can establish that the possession is "by or under the authority of" a government agency. *See Just*, 74 F.3d at 904.

Moreover, to the extent there *is* ambiguity in section 922(o)(2)(A), the legislative history on which *Vest* relied did not actually resolve it. According to *Vest*, the problem with section

922(o)(2)(A) is that police officers have no way of knowing who has the authority to permit lawful possession of machine guns, or in what circumstances. To resolve this putative ambiguity, one would have expected *Vest* to search for clues in the Congressional record as to who in a given government agency has the power to authorize possession of a machine gun. Rather than focus on that question, however, *Vest* used stray comments from individual legislators to conclude that Congress never meant for police officers to be prosecuted at all. This is not an appropriate use of legislative history because: (a) it results in an interpretation of the statute that does not match the text itself, *see Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."); and (b) it gives outsized impact to type of legislative history that the Supreme Court and Eighth Circuit have recognized as often unreliable, *see In re Walton*, 866 F.2d 981, 983 (8th Cir. 1989) ("To the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent, not the stray comments by individual legislators on the floors of the House and Senate." (citation and internal punctuation omitted)).

Finally, the Court disagrees with *Vest*'s suggestion that courts should get into the business of deciding whether some violations of criminal statutes are "mere technical violations" for which prosecution is inappropriate. 448 F. Supp. 2d at 1011. Under separation of powers principles, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v Hayes*, 434 U.S. 357, 364 (1978). "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). Here, the Government had probable cause to believe Wendt violated section 922(o) when he, while off duty, took a machine gun purportedly owned by the City of Adair to a site more than fifty miles away for an event sponsored by Wendt's private gun business and for which the private gun business received the proceeds. Wendt had a full and fair opportunity to defend the charge by presenting evidence that the event fell within the scope of his official duties as Police Chief. The jury disagreed, concluding the Government proved each element of Count 15 beyond a reasonable doubt. It is not the Court's prerogative to decide whether the Government should have brought the charge in the first place.

20

For these reasons, the Court rejects Wendt's vagueness argument as to all eleven counts of conviction.

### C. *Sufficiency of the Evidence.*

Wendt's remaining arguments revolve around the sufficiency of the evidence. Before addressing those arguments, however, the Court must address a preliminary issue: the exaggerations in Wendt's briefs regarding the trial record. Wendt argues that "[t]he Government's case was based on scaring jurors about guns and hiding the ball on what really mattered. The Government took every opportunity to bring in guns to persuade the jury -- some one by one for effect and others in groups." (ECF 353-1, p. 33.) This argument mischaracterizes the record. The Court issued a pretrial ruling stating that the Government would not be allowed to "dwell on the issue of dangerousness [of machine guns] or otherwise attempt to appeal to jurors' emotions." (ECF 310, p. 19.) The Court also placed limits on the presence of machine guns in the courtroom. (Id.) The Government fully complied with these rulings. The Court does not recall any testimony about "dangerousness" at all, nor did the Government do anything to appeal to jurors' emotions. Moreover, the Government brought each machine gun into the courtroom only once, only briefly, and solely to provide context for the charges against Wendt, all of which—at the risk of stating the obvious—revolved around his (or his business's) acquisition and/or possession of machine guns. In these circumstances, it is unhelpful and inaccurate for Wendt to accuse the Government of "scaring jurors" or "t[aking] every opportunity to bring in guns." (ECF 353-1, p. 33.)

Wendt also complains about the Government's presentation of evidence regarding miniguns, which are high powered machine guns capable of shooting thousands of rounds per minute. Although Wendt argues that this evidence was solely designed to "scare" jurors, the reality is that Count 10 charged him with making false statements in a demonstration law letter to try to obtain ATF approval to *acquire* a minigun. (*See* Govt. Ex. 249.) In other words, the evidence about miniguns was directly relevant to one of the charges against him. It follows that the Government did not act improperly in presenting this evidence.

### 1. Count 1: Conspiracy to Make False Statements.

Turning to the merits, Wendt asks for his conviction on the conspiracy charge (Count 1) to be overturned on several grounds: (1) the alleged errors discussed above in the jury instructions; (2) one of Wendt's alleged co-conspirators, Jonathan Marcum, testified that he did not believe he or Wendt made false statements or did anything wrong; (3) another alleged co-conspirator, Robert

Williams, did not testify at all; (4) Wendt never received or intended to receive any improper benefit from the demonstration law letters he wrote to Marcum and Williams; and (5) the underlying false statement charges are unconstitutionally vague. (ECF 353-1, pp. 37–38.) All five arguments fail.

The first argument fails because, as discussed above, the jury instructions accurately summarized the law. The second fails because Marcum's subjective belief as to whether he and Wendt did something wrong is not even admissible, much less dispositive. *See United States v. Thirion*, 813 F.2d 146, 156 (8th Cir. 1987) (holding that a witness's opinion that the defendant was innocent "is inadmissible as it invades the province of the jury"). To that end, and setting aside Marcum's opinions about whether he and Wendt broke the law, the evidence showed: Wendt and Marcum traded text messages about Marcum's "ideas how to make some good money for both of us"; Wendt signed law letters for Marcum using his Police Chief title stating the Adair Police Department's purported interest in the machine guns; Wendt's letters allowed Marcum to obtain machine guns for his gun business located hundreds of miles away from Adair; Wendt never told Marcum the Adair Police Department was actually interested in purchasing such machine guns, nor did Marcum ever demonstrate them for the Adair Police Department; and Wendt and Marcum agreed that Marcum would share the proceeds from the expected resale of the machine guns with the Adair Police Department. In these circumstances, the jury had more than enough evidence to disregard Marcum's lay opinion testimony and find Wendt guilty of conspiracy to make false statements to ATF.

Wendt's third argument—that alleged co-conspirator Williams did not testify—fails for similar reasons. Wendt has not cited, and the Court is unaware, of any authority holding that the Government must present testimony from a co-conspirator to sustain a jury verdict on conspiracy. Here, even without testimony from Williams, the jury heard evidence that Wendt wrote so many demonstration law letters for Williams for so many different machine guns that Wendt finally said, "I don't know which is which now." (ECF 349-3, p. 1 ("Govt. Ex. 304").) These letters even included one that Wendt wrote for Williams *after* Williams had already started the process of acquiring a machine gun for himself. (*See* Govt. Ex. 247; ECF 349-2 ("Govt. Ex. 303").) In other words, Wendt helped Williams "backfill" the record by writing a demonstration law letter for the machine gun in question. (Govt. Ex. 247.) The jury had sufficient evidence to find Wendt guilty of conspiring with Williams irrespective of whether the latter testified.

Wendt's fourth argument—that he never intended to receive an improper benefit from conspiring with Williams and Marcum—fails because in a conspiracy to make false statements, the Government is not required to prove that a defendant received or intended to receive an improper benefit. Finally, Wendt's fifth argument fails because, for reasons explained in the preceding section, the conspiracy and false statements charges are not unconstitutionally vague. For these reasons, the Court will not disturb the jury's verdict on Count 1, which is supported by sufficient evidence.

2.   Count 3: False Statements in Purchase Law Letter.

The jury also had sufficient evidence to find Wendt guilty on Count 3, which charged him with making false statements in a purchase law letter dated March 3, 2022, for the acquisition of three MP7A2 machine guns. (*See* Govt. Ex. 251.) The purchase law letter was signed by Wendt and stated, in part: "These firearms will be the property of our Adair Police Department and are not being acquired for the purpose of resale or transfer, and they will be used to carry out its official responsibilities and duties." (Id., p. 1.) For reasons explained above, the Court rejects Wendt's argument that the inclusion of language regarding "official use" in Final Instruction Nos. 26 and 29 misstated the law or otherwise impacted the validity of the jury's verdict on Count 3.

As it relates to the sufficiency of the evidence, the jury heard evidence that Wendt had acquired or tried to acquire dozens of machine guns in the years leading up to March 2022, to the point where he sent a message to someone in September 2021 saying: "Lol I'm chief of police bitch . . . I have about 50 [machine guns] already need more . . . I love full autos." (Govt. Ex. 402, p. 3.) The jury also heard evidence that Wendt made profits from the sale of several machine guns and hoped to make more; for example, there were Facebook messages from Wendt stating, among other things, that "[m]achine guns are worth bank money" and he planned to "[b]uild up bunch [of] machine guns then once you retire or turn in your FFL you can sell them to any class three dealer. . . ." (Govt. Ex. 401, p. 1.) On February 1, 2022—just one month before the purchase law letter at issue in Count 3—Wendt sent a message stating: "I retire in December . . . Glad I got year left buying [as] many machine guns as I can [then] bailing." (Govt. Ex. 402, p. 3.) Against this backdrop, a reasonable juror could conclude that Wendt knowingly made a false statement when he said the machine guns "are not being acquired for the purpose of resale or transfer…."

A reasonable juror also could have concluded that Wendt knowingly made a false statement when he said the machine guns "will be used to carry out [the Adair Police Department's] official

Add. 032

responsibilities and duties." The Adair Police Department has two full-time officers and serves a rural community of less than 1,000 people. It is difficult to imagine that Wendt believed both full-time officers—plus the third, part-time officer—needed their own machine guns to carry out their duties. Instead, in context, the evidence was sufficient to sustain the jury's verdict on Count 3 that Wendt made one or more false statements in the purchase law letter dated March 3, 2022.

     3.   <u>Counts 6 and 8 through 14: False Statements in Demonstration Law Letters.</u>

The evidence is similarly sufficient to sustain the jury's verdict on Counts 6 and 8 through 14 that Wendt made false statements in demonstration law letters. Below, the Court will briefly summarize the evidence surrounding each of those charges. First, though, it is important to take a step back and consider the larger context. During the four-plus years after Wendt was named Police Chief, he wrote dozens of letters claiming the Adair Police Department was interested in demonstrations of, collectively, more than fifty machine guns. It strains common sense that a two-person police agency in rural Iowa would find machine guns to be "suitable" for their department's use or, even if they were, that the department was interested in potentially purchasing *dozens of them*.

Against that backdrop, the evidence on each of Counts 6 and 8 through 14 is more than sufficient to sustain the jury's verdict. Count 6 involved a demonstration law letter dated January 15, 2019, from Wendt to Marcum expressing the City's putative interest in the demonstration of four H&K machine guns and two SIG machine guns. (*See* ECF 348-70 ("Govt. Ex. 211"); Govt. Ex. 212.) The letter stated that the "Adair Police Department is requesting a firearms demonstration by Marcum MFG LLC. This demonstration will evaluate the firearms listed below for possible purchase for official duties for our department . . . The number of sworn certified officers in our department is 6 . . . The firearm requested for demonstration is particularly suitable for use for government agencies." (Govt. Ex. 211, p. 1.) At trial, Marcum testified that he had an agreement with Wendt in which Marcum's business would use the demonstration law letters to obtain ATF approval to acquire the machine guns, which Marcum intended to then turn around and resell for a profit. Marcum said he and Wendt agreed to share the profits between Marcum's business and the City of Adair.

If the jury believed this testimony—which, of course, is squarely within its province—it means the City of Adair had no interest in the "possible purchase" of the machine guns "for official duties for our department." Instead, Wendt's demonstration law letter made false statements to

24

facilitate Marcum's acquisition and resale of the firearms for his gun business in Indiana. It follows that there was sufficient evidence to conclude Wendt made materially false statements. The Court will not disturb the guilty verdict on Count 6.

The jury also had sufficient evidence to find Wendt guilty on Count 8, which involved a demonstration law letter to BW Outfitters dated July 19, 2020, for the "formal demonstration of the M2 HB-QCB, 12.7mmx99mm (Full Auto) Machinegun, manufactured by FNH USA LLC to be conducted for the Adair Police." (Govt. Ex. 225, p. 1.) Wendt's letter stated that the Adair Police Department "would appreciate a detailed overview of the stated weapon to further determine if it is suitable for future purchase, and official use by the sworn officers within Adair Police Dept. . . . The firearm requested for demonstration is ideal for the use by the Adair Police Department in special operations and patrol, based on its price and availability." (Id.) There are at least two aspects of these statements that a reasonable juror could have found materially false.

First, the statement that the Adair Police Department was interested in determining whether the firearm—which is colloquially referred to as a "Ma Deuce"[8]—was "suitable for future purchase" would have been materially false if the jury concluded that Wendt's only purpose for submitting the letter was to acquire the gun for himself or his gun store. A reasonable juror could have reached this very conclusion given, *inter alia*: (a) the overall quantity of machine guns Wendt purportedly wanted to have demonstrated for the Adair Police Department in the months and years leading up to July 2020 (far more than a small, rural police department could possibly need); and (b) Wendt's Facebook messages stating things like, "I'm building machine gun arsenal" and "This chief police [g]ig is awesome . . . Send machine guns to my own gun store lol . . . Just need the title." (Govt. Ex. 402, p. 1.)

Second, and similarly, a reasonable juror could have found the statement that the "firearm requested for demonstration is ideal for the use by the Adair Police Department in special operations and patrol, based on its price and availability" to be false. There was evidence indicating that Wendt had no interest, intent, or desire to acquire the gun for the Adair Police Department, much less put it into use in "special operations" or "patrol." Indeed, Wendt all but admitted this in Facebook messages in December 2020 to Marc Khananisho, a gun dealer/manufacturer, regarding miniguns. Khananisho told Wendt it would be difficult to obtain ATF approval for a minigun, saying: "I can't think of any legit reasoning . . . that's the tricky part with mini guns." (ECF 349-

---

[8] ECF 363, p. 57.

25

Appellate Case: 24-2458     Page: 38     Date Filed: 10/03/2024 Entry ID: 5442880

8, p. 4 ("Govt. Ex. 404").) Wendt responded: "No reason for deuce either lol I can use that letter change model." (Id.) In other words, Wendt admitted there was "[n]o reason" why a Ma Deuce would be suitable for use by a small police department in a rural area, yet Wendt wrote the demonstration law letter saying it was "suitable" anyway. The evidence was sufficient to sustain the verdict on Count 8.

The evidence was also sufficient to sustain the verdict on Count 9, which involved a demonstration law letter dated January 18, 2021, to Arms Unlimited, Inc., a gun dealer in Las Vegas, Nevada. The letter contained, in part, similar statements to the letter at issue in Count 8, including that the Adair Police Department wanted a demonstration of one or more machine guns "for possible future purchases and use of our officers in the performance of their official duties . . . The firearms requested for demonstration are particularly suitable for use as law enforcement weapon. The weapon requested are particularly suitable for our officers while conducting special operations and high-risk prisoner transportation details." (Govt. Ex. 235, p. 1.) A reasonable juror could find these statements to have been materially false for similar reasons to those identified above in connection with Count 8; namely, (i) the small Adair Police Department had no interest in the "possible future purchases and use" of the firearms, and instead Wendt was simply facilitating his business's acquisition of machine guns; and (ii) Wendt did not consider the weapon to be "particularly suitable" for the Police Department's work in "special operations" or "high-risk prisoner transportation details" given the Department's small size and rural location.

The letter at issue in Count 9 also went further in one respect than the letter at issue in Count 8, in that Wendt also stated: "Each officer will have an opportunity to fire the weapon(s) which will require the machine guns to fire thousands of rounds. This type of testing during the demonstration will show the reliability of the firearm to the department." (Id.) The evidence showed that no Adair police officer ever traveled to Las Vegas to test-fire machine guns (much less to fire "thousands of rounds"), nor did any representative from Arms Unlimited ever travel to Adair for that purpose. A reasonable juror therefore could conclude that Wendt was lying when he said Adair officers would have the opportunity to fire the weapon or that the Adair Police Department was interested in evaluating "reliability." The Court will not disturb the verdict on Count 9.

Count 10 involved a demonstration law letter dated November 29, 2021, for the putative demonstration of the minigun, which is a machine gun capable of firing thousands of rounds per

minute and typically mounted on a helicopter or other aircraft. Wendt's demonstration law letter claimed the "Adair Police Department would like a demonstration of the GAU-2b/A Machine Gun manufactured by DeGroat Tactical Armaments for possible future purchase and use of our Officers in the performance of their official duties . . . The firearm requested for the demonstration is particularly suitable for use as a law enforcement weapon." (Govt. Ex. 249, p. 1.) At the risk of stating the obvious, a reasonable juror could conclude that these statements were false given the high-powered nature of the weapon and the fact that the two or three-person Adair Police Department has no helicopter or other aircraft or vehicle on which to mount it.

Moreover, the Government presented evidence reflecting Wendt's *personal* interest in acquiring a minigun, including many Facebook messages with Khnanisho in December 2020. (*See* Govt. Ex. 404; *see also* Govt. Ex. 402, p. 2 ("I'm about done at PD too tired 100 hr weeks such . . . I want mini[gun] tho lol.").) In the course of those messages, Khnanisho expressed concerns about whether ATF would approve the transfer of a minigun, telling Wendt that "[a]pproval all depends on how your letter is stated etc." (Govt. Ex. 404, p. 3.) A few messages later, Wendt responded: "Most examiners don't even know what they are looking at [as] long as it's all done correctly." (Id.) Later, Wendt asked if there was "[a]ny specific way you think I should word [the law letter]." (Id., p. 4.) Khnanisho responded, "I can't think of any legit reasoning . . . that's the tricky part with mini guns." (Id.) Wendt replied: "No reason for deuce[9] either lol I can use that letter change model." (Id., p. 5.) In essence, Wendt admitted there was no reason why the Adair Police Department would need a minigun, yet he wrote a letter stating that it wanted a demonstration of one anyway "for possible future purchase and use of our Officers." There was sufficient evidence to allow a reasonable juror to conclude this statement was false, and thus to sustain the conviction on Count 10.

The evidence is also sufficient to support Wendt's conviction on Counts 11 and 12, which involve particularly audacious facts. Both of those Counts involved demonstration law letters dated March 1, 2022, to TM Firearms LLC (an Alabama-based gun dealer) for fully automatic machine guns, the first an MP5SD3 (Count 11) and the second an MP7A2 (Count 12). In both letters, Wendt stated: "I am writing to request a formal demonstration of the [machine gun] to be conducted for the Adair Police. Our agency would appreciate a detailed overview of the stated weapon to further determine if it is suitable for future purchase, and official use by the sworn officers within Adair

---

[9] In context, the reference to "deuce" was to the "Ma Deuce" machine gun at issue in Count 8.

Police Dept." (Govt. Ex. 214, p. 4; Govt. Ex. 223, p. 11.) These statements are remarkable because the machine guns in question *were already owned by the Adair Police Department*. It should go without saying that a reasonable juror could conclude Wendt lied when he said the Adair Police Department was interested in seeing a demonstration of machine guns it already owned. The same juror further could conclude that Wendt's real purpose in making the statements was to facilitate the sale of those machine guns at substantial profit to himself and his gun business. There is sufficient evidence to support Wendt's convictions on Counts 11 and 12.

Count 13 involved a demonstration law letter dated July 1, 2022, to Palm Beach Shooting Organization LLC, in Boynton Beach, Florida, for "formal demonstration of the G36C (Full Auto) 5.56 Machinegun . . . to be conducted for the Adair Police." (Govt. Ex. 253, p. 1.) "Our agency would appreciate a detailed overview of the stated weapon to further determine if it is suitable for future purchase, and official use by the sworn officers within Adair Police Dept. . . . The firearm requested for demonstration is ideal for the use by the Adair Police Department as it is similar in design to other approved weapons currently in use by our agency and surrounding agencies." (Id.) A reasonable juror could conclude that these statements were false given the evidence summarized above regarding the small size of the Adair Police Department and the dozens of other firearms Wendt claimed the Adair Police Department was purportedly interested in "demonstrating" during the preceding months and years, as well as Wendt's admissions in Facebook messages that his primary goal was to enrich himself and his gun business through the acquisition of machine guns. There is sufficient evidence to sustain the jury's verdict on Count 13.

Finally, Count 14 involved a demonstration law letter dated August 28, 2021, to Williams Contracting LLC stating: "I am writing to request a formal demonstration of the IO INC Model: Sporter Caliber: 7.62X39 Manufacturer: Grain Sporting Goods LLC/GRAIN SG to be conducted for the Adair Police." (Govt. Ex. 247, p. 1.) "Our agency would appreciate a detailed overview of the stated weapon to further determine if it is suitable for future purchase, and official use by the sworn officers within Adair Police Dept. . . . The firearm requested for demonstration is ideal for the use by the Adair Police Department as it is similar in design to other approved weapons currently in use by our agency and surrounding agencies." (Id.) The evidence showed that Williams approached Wendt about writing this letter after Williams had already agreed to acquire the machine gun. (*See* Govt. Ex. 303.) This is backwards from how one would expect a demonstration law letter to work; typically, the government agency should be the one expressing interest to the

gun dealer, not the other way around. In these circumstances, a reasonable juror could conclude that Wendt made false statements about the Adair Police Department's putative interest in the machine gun to help Williams "backfill" the record and acquire a machine gun he otherwise could not have acquired. Indeed, the evidence showed that Wendt had a recurring practice of writing law letters for Williams to use to acquire machine guns, with Wendt eventually complaining that he had written so many letters for Williams that "I don't know which is which now." (Govt. Ex. 304, p. 1.) There is sufficient evidence to sustain the jury's verdict on Count 14.

       4. Count 15: Illegal Possession of a Machine Gun.

       Wendt's final count of conviction, Count 15, was for unlawful possession of a machine gun at the event in Woodbine, Iowa, on April 16, 2022, in violation of 18 U.S.C. § 922(o). The machine gun in question was registered to the City of Adair, and the Government's theory was that Wendt possessed it in his *personal* capacity and not as part of his official duties as Police Chief. The Court explained above why the evidence was sufficient to support the Government's theory, particularly the evidence establishing: Wendt was off duty and not in uniform; Woodbine is more than fifty miles from Adair; the event was sponsored by Wendt's business, not the City of Adair; and all proceeds from the event went to the business, not the City. The Court therefore will not disturb the jury's verdict on Count 15.

## V.   LEGAL ANALYSIS: MOTION FOR NEW TRIAL.

       The Court has broader discretion when considering a motion for new trial. It may "weigh the evidence" and "choose to believe or disbelieve witnesses." *Lemoine*, 2024 WL 2968075, at *4. As it is, this case doesn't require the Court to re-weigh the evidence or evaluate witness credibility. For Counts 1, 3, 6, and 8 through 14, the government presented a straightforward false statements case that was corroborated by Wendt's messages and the law letters. The messages showed that, in Wendt's words, he wanted to "[b]uild up [a] bunch [of] machine guns"—a "machine gun arsenal"—to make "bank money" when he sold them upon retirement. (Govt. Ex. 401, p. 1; Govt. Ex. 402, p. 1.) Since he had a "couple ffls" and the Chief title there was "no limit to what [he] c[ould] get." (Govt. Ex. 402, p. 2.) True to his word, Wendt didn't limit himself. During his time as Chief, he authored dozens of law letters expressing a present intent for the Adair Police Department to purchase machine guns not for "resale or transfer" or to demonstrate them, to determine if they were suitable for "future purchase" and "official use." These statements were inconsistent with the statements he made to his friends and the reality of being Chief of a rural,

29

three-person police department. *See Kelerchian*, 937 F.3d at 908 ("From the content of these letters, a reasonable jury could find that these were false requests for demonstrations. The letters could have had no other purpose."). The Court cannot say that "a serious miscarriage of justice" may have occurred, *see Rice*, 449 F.3d at 893, and therefore DENIES Wendt's Motion for New Trial as to Counts 1, 3, 6, and 8 through 14.

For the reasons set out above, the Court DENIES Wendt's Motion for a New Trial as to Count 15, as well. The evidence showed that Wendt was off duty when he possessed the machine gun on April 16, 2022, during an event over fifty miles from Adair that his business sponsored. The Court cannot conclude it was a "serious miscarriage of justice" for the jury to find he possessed the machine gun in his personal capacity. *Id.*; *see also Warner*, 5 F.3d at 1381 (section 922(o)(2)(A) "was enacted so that military personnel and police officers, *when acting officially*, could utilize and possess machine guns" (emphasis added)).

## VI.   CONCLUSION.

The jury instructions adequately stated the law, and the evidence was sufficient to support the jury's verdict on each of the eleven counts of conviction, none of which were based on unconstitutionally vague charges. The Court therefore DENIES Wendt's Motion for Judgment of Acquittal and/or New Trial. (ECF 353.)


IT IS SO ORDERED.


Dated: June 20, 2024

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE

Add. 039
Appellate Case: 24-2458     Page: 43     Date Filed: 10/03/2024 Entry ID: 5442880

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | 4:22-cr-00199-SHL-HCA<br><br>**FINAL JURY INSTRUCTIONS** |

1

Add. 040

**INSTRUCTION NO. 10**
**ELEMENTS OF COUNT 1:  CONSPIRACY TO MAKE FALSE STATEMENTS TO
AND DEFRAUD THE ATF**

The crime of Conspiracy to Make False Statements to and Defraud the ATF as charged in
Count 1 of the Indictment has four elements, which are:

*One*, from in or about July 2018 and continuing to in or about August 2022, two or more
people reached an agreement to commit the crime of: (a) making a false statement to the ATF; or
(b) defrauding the ATF by using deceitful or dishonest means to impair, impede, obstruct, or defeat
the lawful government functions of the ATF in the administration of the law and regulations of the
National Firearms Act and Gun Control Act pertaining to machine guns;

*Two*, the defendant voluntarily and intentionally joined in the agreement, either at the time
it was first reached or at some later time while the agreement was still in effect;

*Three*, at the time the defendant joined in the agreement, the defendant knew the purpose
of the agreement; and

*Four*, while the agreement was in effect, a person or persons who had joined in the
agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the
agreement or understanding, with all of you agreeing on a particular overt act that you find was
committed.

Additional instructions regarding Count 1 appear in Instruction Numbers 11 through 15,
21 through 26, and 28.

If all the elements have been proved beyond a reasonable doubt as to the defendant, then
you must find the defendant guilty of the crime charged; otherwise, you must find the defendant
not guilty of the crime.

In order for you to find the defendant guilty of Count 1, you must unanimously agree on
which conspiracy (if either) he engaged in: (a) to make false statements to the ATF; or (b) to
defraud the ATF; or (c) both. You will mark on your Verdict Form which conspiracy, or both
conspiracies, you unanimously find the defendant committed.

In order for you to find the defendant guilty of Count 1, you also must unanimously agree
on the person(s) with whom he conspired: (a) Johnathan Marcum; (b) Robert Williams; or (c) both.

11

Add. 041

You will mark on your Verdict Form which of these persons, if either, you unanimously find the defendant conspired with.

12

Add. 042

**PROPOSED INSTRUCTION NO. 16**
**ELEMENTS OF COUNTS 2–3:  MAKING FALSE STATEMENTS TO THE ATF VIA**
**PURCHASE LAW LETTERS**

Counts 2 and 3 of the Indictment allege that on or about certain dates, the defendant knowingly and willfully stated on purchase law letters: (1) that the machine guns would be used to carry out the official duties and responsibilities of the Adair Police Department; and (2) that the machine guns were not being acquired for the purpose of resale or transfer.

The crime of making false statements to the ATF in purchase law letters as charged in Counts 2 and 3 of the Indictment has five elements, which are:

*One*, the defendant knowingly and intentionally made or caused to be made the following statements on a purchase law letter: (a) the machine guns would be used to carry out the official duties and responsibilities of the Adair Police Department; and (b) the machine guns were not being acquired for the purpose of resale or transfer, as follows for each count:

| Count | Letter Date | Machine guns listed on purchase law letter |
|-------|-------------|--------------------------------------------|
| **2** | October 9, 2019 | 3 H&K MP7A2, 4.6x30mm, at $2,080.00 each<br>1 H&K G36K (SF), 5.56x45mm, at $1,625.00 each<br>1 H&K 416, 5.56 14.5", at $1,795.00 each |
| **3** | March 3, 2022 | 3 H&K MP7A2, 4.6x30mm, at $2,405.97 each |

*Two*, one or more of those statements was false;

*Three*, the false statement concerned a material fact;

*Four*, the false statement was made about a matter within the jurisdiction of the ATF; and

*Five*, the defendant knew it was untrue when he made the statement.

Additional instructions regarding Counts 2 and 3 appear in Instruction Numbers 18, 19 and 21 through 26.

If all the elements have been proved beyond a reasonable doubt as to the defendant, then you must find the defendant guilty of the crime charged; otherwise, you must find the defendant not guilty of the crime.

Add. 043

**INSTRUCTION NO. 17**
**ELEMENTS OF COUNTS 4–14:  MAKING FALSE STATEMENTS TO THE ATF VIA**
**DEMONSTRATION LAW LETTERS**

Counts 4 through 14 of the Indictment allege that on or about certain dates, the defendant knowingly and willfully stated on demonstration law letters that the machine gun(s) were requested for demonstration for future potential purchase by the Adair Police Department, when in fact the defendant was acquiring the machine guns for his personal gain and profit and/or for a co-conspirator's personal gain and profit and/or to facilitate the unlawful transfer of machine guns to his own authorized dealership and other authorized dealers.

The crime of making false statements to the ATF in demonstration law letters as charged in Counts 4–14 of the Indictment has five elements, which are:

*One*, the defendant knowingly and intentionally made or caused to be made the statements on demonstration law letters that the machine gun(s) were requested for demonstration for future potential purchase by the Adair Police Department, as follows for each count:

| Count | Letter Date / Authorized Dealer | Machine guns listed on demonstration law letter |
|-------|-------------------------------|-----------------------------------------------|
| **4** | October 31, 2018 / Marcum MFG LLC | 1 H&K, MP5SD3, 9mm<br>1 H&K, G36C, 5.56mm<br>1 H&K,UMP45, 45 ACP<br>1 H&K, G36KE, 5.56mm<br>1 H&K, MP7A2, 4.6x30mm<br>1 H&K, G36KE1, 5.56mm |
| **5** | October 31, 2018 / Marcum MFG LLC | 1 FN, P90 Tactical, 5.7x28mm<br>1 FN, P90 Standard Selective Fire, 5.7x28mm<br>1 FN, P90 TR Selective Fire, 5.7x28mm<br>1 FN, P90 USG Blk Sight, 5.7x28mm<br>1 FN, SCAR-SC, 5.56x45mm<br>1 FN, SCAR 17, 7.62x51mm FDE 16 in LE<br>1 FN, SCAR 17 CQC, 7.62x51mm FDE 13 in LE<br>1 FN, SCAR 16, 5.56x45mm FDE 10-in CQC 30-Rnd<br>1 FN, SCAR 16, 5.56x45mm FDE 14-in 30-RND LE<br>1 FN, M249 SAW, 5.56mm<br>1 FN, M249 PARA, 5.56mm |

Add. 044

| Count | Letter Date / Authorized Dealer | Machine guns listed on demonstration law letter |
|-------|----------------------------------|------------------------------------------------|
| 6 | January 15, 2019 / Marcum MFG LLC | 1 H&K, MP5SD2, 9mm<br>1 H&K, UMP40, 40 S&W<br>1 H&K, MP5/40A3, 40 S&W<br>1 H&K, MP5A2, 9mm<br>1 SIG, 516, 5.56mm<br>1 SIG, SG 551-2P SWAT, 223/5.56mm |
| 7 | March 28, 2019 / BW Outfitters | 1 FN, M-249 Para, 5.56mm |
| 8 | July 19, 2020 / BW Outfitters | 1 FN, M2 HB-QCB, 12.7mmx99mm (Full Auto) |
| 9 | January 18, 2021 / Arms Unlimited, Inc. | 1 US Ordnance, M2A2, .50 caliber |
| 10 | November 29, 2021 / BW Outfitters | 1 DeGroat Tactical Armaments, GAU-2B/A, 7.62mm |
| 11 | March 1, 2022 / TM Firearms LLC | 1 H&K, MP5SD3 (Full Auto), 9mm |
| 12 | March 1, 2022 / TM Firearms LLC | 1 H&K, MP7A2 (Full Auto), 4.6x30mm |
| 13 | July 1, 2022 / Palm Beach Shooting Organization LLC | 1 H&K, G36C (Full Auto), 5.56mm |
| 14 | August 28, 2021 / Williams Contracting | 1 Grain Sporting Goods LLC, Sporter, 7.62x39mm |

*Two*, the statement was false;

*Three*, the statement concerned a material fact;

*Four*, the statement was made about a matter within the jurisdiction of the ATF; and

*Five*, the defendant knew it was untrue when he made the statement.

Additional instructions regarding Counts 4–14 appear in Instruction Numbers 18, 19, and 21 through 26.

Add. 045

If all the elements have been proved beyond a reasonable doubt as to the defendant, then you must find the defendant guilty of the crime charged; otherwise, you must find the defendant not guilty of the crime.

Add. 046

**INSTRUCTION NO. 18**
**COUNTS 2–14: ELEMENT 2 – FALSE STATEMENT**

A statement is "false" if untrue when made. Ordinarily, an opinion is not considered a statement of fact. An opinion could be a person's belief that a fact exists, a statement regarding a future event, or a judgment about quality, value, authenticity, or similar matters. An expression of present intention is a statement of fact.

22

Add. 047

**INSTRUCTION NO. 19**
**COUNTS 2–14: ELEMENT 3 – MATERIAL FACT**

A "material fact" is a fact that would have a natural tendency to influence or is capable of influencing a decision by the ATF. Whether a statement is material does not depend on whether the ATF was actually deceived or misled.

23

Add. 048

**INSTRUCTION NO. 20**
**ELEMENTS OF COUNT 15:  ILLEGAL POSSESSION OF A MACHINE GUN**

The crime of Illegal Possession of a Machine Gun as charged in Count 15 of the Indictment has two elements, which are:

*One*, at some point on or about April 16, 2022, the defendant knowingly possessed a machine gun, namely: a U.S. Ordnance, Model M60, 7.62 caliber machine gun, with serial number 12413; and

*Two*, the defendant knew, or was aware of, the essential characteristics of the firearm that made it a machine gun.

If all the elements have been proved beyond a reasonable doubt as to the defendant, then you must find the defendant guilty of the crime charged; otherwise, you must find the defendant not guilty of the crime.

Additional instructions regarding Count 15 appear in Instruction Numbers 21, 22, 26, and 29.

24

**INSTRUCTION NO. 22**
**LEGALITY OF MACHINE GUNS**

Federal law makes it unlawful for any person to transfer or possess a machine gun except for the following:

1.      A transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

2.      Any lawful transfer or lawful possession of a machine gun that was lawfully possessed before the date the law took effect, which was May 19, 1986.

26

Add. 050

**INSTRUCTION NO. 23**
**NATIONAL FIREARMS ACT AND**
**NATIONAL FIREARM REGISTRATION AND TRANSFER RECORD**

The National Firearms Act ("NFA") provides for a central registry of all post-1986 machine guns in the United States which are not under the control of the federal government. The central registry is known as the National Firearm Registration and Transfer Record ("NFRTR") and is maintained by the ATF. Post-1986 machine guns will be referred to in the remainder of these instructions as "NFA machine guns."

Whenever an NFA machine gun is transferred, the person who transfers it (the "transferor") must register the machine gun in the registry to the person or entity to whom it is being transferred (the "transferee"). To accomplish this, the transferor must file with the ATF an application for the transfer and registration of the NFA machine gun to the transferee. If the transfer is authorized in writing by the ATF, that authorization effectuates the registration of the NFA machine gun to the transferee.

Add. 051

**INSTRUCTION NO. 24**
**LAW LETTERS**

As relevant to this case, qualified dealers may import and transfer NFA machine guns in two scenarios.

<u>First</u>, qualified dealers may import and transfer NFA machine guns for sale or distribution to any department or agency of the United States or any State or political subdivision thereof. The registration of such NFA machine guns and their subsequent transfer is conditioned upon and restricted to the sale or distribution of such weapons for the official use of Federal, State or local governmental entities. This kind of transfer requires the applicant, among other things, to submit information to the ATF establishing that a law enforcement agency wants to purchase the NFA machine gun for the agency's official use. One of the ways the applicant may submit this information is through a letter that has sometimes been referred to in this case as a "purchase law letter." The applicant also may submit this information in the form of a purchase order or some other submission that the ATF determines to be satisfactory to establish that the agency wants to purchase the NFA machine gun for the agency's official use. If the application is approved and the NFA machine gun is transferred to the law enforcement agency, possession of that machine gun is restricted to official use by the law enforcement agency.

<u>Second</u>, qualified dealers may import and transfer NFA machine guns for use as sales samples, which are often referred to as "dealer sales samples." The purpose of a "dealer sales sample" is to give a law enforcement agency the opportunity to see a demonstration of a particular NFA machine gun for the agency's future possible purchase. If a law enforcement agency wants a demonstration of a weapon for this purpose, it submits a "demonstration law letter" to a qualified dealer, manufacturer, or importer. The demonstration law letter must specify the agency's need for a particular model or interest in seeing a demonstration of a particular NFA machine gun. If the application requests the transfer of more than one of a particular model of NFA machine gun, the application must establish the dealer's need for the quantity of sales samples sought. The requested demonstration must be for possible future purchase and not for some other purpose.

The law does not necessarily require a dealer who receives an NFA machine gun for use as a sales sample to provide an actual demonstration of the NFA machine gun. However, you may consider the failure to provide an actual demonstration as evidence of the truth or falsity of a

28

Add. 052

statement regarding the law enforcement agency's interest in the NFA machine gun for possible future purchase.

When a dealer does provide a demonstration, there are no specific requirements as to what form a demonstration must take. However, you may consider the nature of the demonstration as evidence of the truth or falsity of a statement regarding the law enforcement agency's interest in the NFA machine gun for possible future purchase.

Add. 053

**INSTRUCTION NO. 26**
**AUTHORITY & OFFICIAL DUTIES OF THE ADAIR POLICE DEPARTMENT**

The City of Adair is a political subdivision of the State of Iowa and therefore may lawfully acquire and possess NFA machine guns for official use. The Adair Police Department is an agency within the City of Adair.

Officers of a municipal police department in the State of Iowa may perform their official duties outside of the city they serve.

Add. 054

Appellate Case: 24-2458     Page: 58     Date Filed: 10/03/2024 Entry ID: 5442880

## INSTRUCTION NO. 28
## COUNT 1: GOOD FAITH DEFENSE

One of the government's theories in Count 1 is that the defendant participated in a conspiracy to defraud the ATF. Under this theory, the government is required to prove, among other things, that the purpose of the conspiracy was to defraud the ATF.

"Good faith" is a complete defense to the crime of conspiracy to defraud the ATF if the defendant did not act with the intent to defraud. The essence of the good faith defense is that someone who acts with honest intentions cannot be convicted of a crime requiring fraudulent intent.

Good faith includes, among other things, an opinion or belief that is honestly held, even if the opinion is in error or the belief is mistaken. However, even though a defendant honestly held a certain opinion or belief, a defendant does not act in good faith if he also knowingly made false or fraudulent representations or promises, or otherwise acted with the intent to defraud or deceive another. Proof of fraudulent intent requires more than proof that a defendant only made a mistake in judgment or management or was careless.

The government has the burden to prove beyond a reasonable doubt that the defendant acted with the intent to defraud the ATF. Evidence that the defendant acted in good faith may be considered by you, together with all the other evidence, in determining whether or not the defendant acted with the intent to defraud.

The defense of good faith does not apply to the government's alternative theory in Count 1 that the defendant participated in a conspiracy to make false statements to the ATF. If the government establishes all the elements of Count 1 under this alternative theory as set forth in Instruction Number 10—i.e., if the government establishes that a conspiracy to make false statements to the ATF existed, that the defendant voluntarily and intentionally joined in that agreement; that the defendant knew the purpose of the agreement at the time he joined it; and that while the agreement was in effect, one or more persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement—it does not matter whether the defendant was acting in good faith. This is because the law prohibits a person from knowingly and intentionally making a false statement to the ATF concerning a material fact about a matter within the jurisdiction of the ATF even if the person is acting in good

Add. 055

faith in making the false statement.  For the same reasons, the defense of good faith does not apply to Counts 2 through 15.

Add. 056

# INSTRUCTION NO. 29
## COUNT 15: POSSESSION OF A MACHINE GUN – GOVERNMENT AUTHORITY DEFENSE

The defendant has raised a defense to Count 15 based on the assertion that he had authority to possess a machine gun on or about April 16, 2022.

An employee or agent of a governmental entity is authorized by that entity to possess a machine gun so long as his or her possession is within the scope of his or her official duties.

To prevail on his defense, the defendant must prove that it is more likely true than not true that on or about April 16, 2022, he had the authority, or reasonably believed he had to the authority, to possess a machine gun, namely: a U.S. Ordnance, Model M60, 7.62 caliber machine gun, with serial number 12413.

To determine whether the defendant had the authority, or reasonably believed he had the authority, to possess the machine gun, you must consider whether his possession on the date in question was within the scope of his official duties as an officer of the Adair Police Department. If the defendant proves that it is more likely true than not true that the possession of a machine gun as alleged in Count 15 was by or under the authority of the City of Adair or the Adair Police Department, then you must find the defendant not guilty even if the government otherwise proved each element of Count 15.

Add. 057

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | 4:22-cr-00199-SHL-HCA-1<br><br><br>**ORDER ON MOTIONS IN LIMINE AND MOTION TO EXCLUDE EXPERT TESTIMONY** |

## I.     INTRODUCTION.

In this prosecution for conspiracy to defraud the United States and making false statements, the parties have very different views of what the case is about and which evidence is relevant. For reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Government's Motion to Exclude Wendt's Proffered Expert Testimony (ECF 282) and GRANTS IN PART and DENIES IN PART each side's Motions in Limine (ECF 288; ECF 296). As is often the case with rulings on motions in limine, these rulings are without prejudice and subject to reconsideration if the evidence at trial is different than the Court is anticipating.

## II.     BACKGROUND.

### A.  Summary of Charges.

The Government alleges that Defendant Bradley Eugene Wendt unlawfully exploited his position as Chief of Police for the City of Adair, Iowa, by making false statements to the Bureau of Alcohol, Tobacco, and Firearms (ATF) to obtain machine guns. The charges emanate from a federal statute criminalizing the possession and transportation of machine guns manufactured after May 19, 1986. *See* 18 U.S.C. § 922(o); 27 C.F.R. § 479.105(a). Federal law contains an exception for use by the United States, any State, or any department, agency, or political subdivision thereof with prior approval by the ATF. *See* 18 U.S.C. § 922(o)(2)(A); 27 C.F.R. § 479.105(a). The parties agree that the City of Adair is a political subdivision of the State of Iowa and that it (or, more precisely, its Police Department) can, through its Chief of Police, lawfully acquire and possess machine guns under section 922(o)(2)(A). (ECF 211-1, p. 9; ECF 223, p. 6.) The Indictment describes two methods that can be used for such acquisitions. (ECF 2, ¶¶ 8–10.) Wendt's alleged

Appellate Case: 24-2458     Page: 62     Date Filed: 10/03/2024 Entry ID: 5442880

misuse of these two methods forms the basis for the first fourteen of the fifteen charges against him in the Indictment.[1]

Under the first method, a government agency (such as a police department) submits a "purchase law letter" seeking approval from ATF to make a direct purchase of a machine gun in the agency's name. (Id., ¶¶ 7–8, 10.) The agency "typically identifies the quantity, make, model, and cost of the machine gun it seeks to purchase. The agency further represents the machine gun is being acquired for the agency's official use and not for the purpose of resale or transfer." (Id., ¶ 11.) If the transaction is authorized and consummated, the agency becomes the registered owner of the machine gun.

Under the second method, the government agency submits a "demonstration law letter" to an FFL-SOT—i.e., a federal firearms licensee authorized to possess machine guns—stating that the agency has "a need for a particular machine gun or an interest in seeing a demonstration of a particular machine gun for potential future purchase." (Id., ¶¶ 2, 12.) The FFL-SOT then submits that letter to ATF as part of an application to acquire a machine gun "for use as a sample for demonstration to potential law enforcement agency purchasers." (Id., ¶ 9.) If the transaction is authorized and consummated, the FFL-SOT becomes the registered owner of the machine gun.

"Purchase law letters" and "demonstration law letters" are "drafted by a law enforcement official, in their official capacity as a law enforcement officer." (Id., ¶ 10.) The Indictment alleges that Wendt exploited his position as Chief of Police to unlawfully obtain machine guns through both types of letters. As to purchase law letters, the Indictment alleges that, between October 2019 and August 2021, Wendt drafted, signed, and transmitted letters to ATF "in which he falsely stated: (1) that the Adair Police Department was purchasing machine guns for the official responsibilities and duties of the Adair Police Department; (2) that the machine guns would be the property of the Adair Police Department; and (3) that the machine guns were not being acquired for the purpose

---

[1] The Indictment originally contained twenty counts, but the Government voluntarily moved to dismiss Counts 10, 11, 12, 17, and 19. (ECF 289.) The Court granted the motion to dismiss (ECF 294), and thus only fifteen counts remain. For simplicity at trial, the remaining counts have been renumbered as follows:

| Count Number (Indictment) | Count Number (Trial) |
| --- | --- |
| 1 through 9 | 1 through 9 (no change) |
| 13 through 16 | 10 through 13 |
| 18 | 14 |
| 20 | 15 |

of resale or transfer." (Id., ¶¶ 19, 26.) The Indictment alleges that Wendt used purchase law letters to acquire ten machine guns for the purported official use by the City of Adair. (Id., ¶ 26.) Wendt then allegedly sold six of those machine guns for personal profit. (Id., ¶¶ 26–28.)

For example, in December 2020, the Indictment alleges that Wendt submitted a purchase law letter(s) to acquire three H&K, MP7A2 machine guns for $2,080 each for the City of Adair, which he paid for with his own funds. (Id., ¶ 27.) In July 2021, he sold two of those guns to a Florida-based buyer for $50,000, which the buyer wired directly to Wendt's personal bank account. (Id.) In February 2022, Wendt sold the third MP7A2 machine gun and an H&K, MP5SD3 machine gun—similarly acquired for official use and paid for with $3,300 of Wendt's own funds—to an Alabama-based buyer for $34,500. (Id., ¶ 28.) The check for the second transaction was addressed to "Brad Wendt" and deposited into Wendt's BW Outfitters account. (Id.) Wendt allegedly made a personal profit of $74,960 from these transactions. (Id., ¶¶ 27–28.)

The Indictment also alleges that Wendt misused demonstration law letters. It alleges that, between July 2018 and August 2022, Wendt signed and transmitted demonstration law letters in which "Wendt wrote from himself as the Adair Chief of Police to himself as the owner of BW Outfitters [and] falsely stated that the Adair Police Department wanted a demonstration of the machine guns for potential future purchase." (Id., ¶ 20.) BW Outfitters submitted those letters to ATF and acquired thirteen machine guns purportedly for demonstration by the Adair Police Department. (Id., ¶ 33.)

For example, in a demonstration letter dated July 19, 2020, which resulted in BW Outfitters acquiring an FN, M2HB, .50 caliber, belt-fed machine gun for official demonstration to the Adair Police Department, Wendt stated that the belt-fed gun was "ideal" for the police department "based on its price and availability." (Id., ¶ 34.) He personally paid $17,896 for the gun and, after BW Outfitters received it, mounted it to his personally-owned, armored Humvee. (Id.) On April 16, 2022, Wendt then charged members of the public $5 per round of ammunition to shoot it. (Id.) (The public shooting event separately gives rise to (renumbered) Count 15 of the Indictment, which alleges illegal possession of a machine gun.) (Id., ¶¶ 34, 51.) Similarly, in a demonstration letter authored on November 29, 2021, in an attempt to acquire a M134 minigun, Wendt stated the Adair Police Department wanted the gun for official demonstration "for possible future purchase and use of our officers in the performance of their official duties" because the minigun was "suitable for

engagements and suppressive fire." (Id, ¶ 36.) ATF disapproved the transfer because the minigun was "not suitable for law enforcement use." (Id.)

Wendt allegedly submitted demonstration law letters to FFL-SOTs other than BW Outfitters, including Williams Contracting and others around the country. (Id., ¶¶ 37, 41–42.) These letters allegedly contained similar false statements, including statements describing the requested machine gun as "particularly suitable for [Adair Police Department's] officers while conducting special operations and high-risk prisoner transportation details." (Id., ¶ 41.) In total, Wendt wrote twenty-two demonstration letters to these other FFL-SOTs requesting demonstrations "for potential future purchase" of fifty-two machine guns, twenty-seven of which were in fact transferred and acquired by those FFL-SOTs. (Id., ¶ 4.) The Indictment alleges that "the Adair Police Department was not interested in and was not considering purchasing the machine guns identified" in the letters. (Id., ¶ 20.)

Based on this conduct, the Indictment alleges in Count 1 that Wendt conspired with his now-dismissed co-defendant, Robert Allen Williams, to make false statements and defraud ATF in violation of 18 U.S.C. §§ 371, 1001(a)(2). (Id., ¶¶ 15–44.) In (renumbered) Counts 2 through 14, the Indictment alleges that Wendt made false statements to ATF via purchase law letters and demonstration law letters in violation of 18 U.S.C. § 1001(a)(2). (Id., ¶¶ 45–50.) Finally, in (renumbered) Count 15, the Indictment alleges Wendt illegally possessed and aided and abetted the possession of a machine gun in violation of 18 U.S.C. §§ 922(o), 924(a)(2), and 2 when he hosted a public machine gun shoot on April 16, 2022. (Id., ¶¶ 31, 51.)

### B. Evidentiary Disputes.

Both sides have filed motions in limine (ECF 288; ECF 296), plus the Government has filed a motion to exclude some of Wendt's proffered expert testimony (ECF 282). In most respects, as explained more fully below, the motions in limine do not require extensive analysis. Each side simply wants to ensure adherence to the Federal Rules of Evidence or well established principles of federal law. In a few instances, however, the motions in limine and Government's motion to exclude address overarching questions about what the case is really about; i.e., what the Government must prove to obtain convictions on each charge, which defenses are legitimately available to Wendt, and what it means for a false statement to be "material" in the circumstances presented here. For example, Wendt is prepared to offer expert testimony that ATF either would not have considered some of his statements to be "material" or literally could not have construed

those statements as "false" given his position as Chief of Police for the Adair Police Department. He also intends to offer expert testimony about what ATF considers acceptable or "legal" with respect to public machine gun shoots (which are at the center of renumbered Count 15). The Government argues that Wendt's position on these issues rests on a misunderstanding of governing law. To help sort these issues out, the Court will first summarize its understanding of the governing legal principles applicable to the offenses the Government accuses Wendt of having committed, then turn to the motions.

## III.   SUMMARY OF THE CASE.

Given the unusually high volume of pretrial motion practice, the Court has a better sense than normal about what is in dispute, how the Government plans to try to prove its case, and how Wendt intends to defend the charges. It is clear to the Court from the extensive pretrial submissions that the parties are not on the same page on a variety of important issues, including: (i) what "materiality" means in the context of the charges against Wendt; (ii) whether and to what extent the governing statutes and regulations are vague or ambiguous; and (iii) which defenses are factual in nature and should be presented to the jury versus which raise purely legal issues for the Court to decide.

Broadly speaking, the Government is bringing four categories of charges: first, in Count 1, the Government charges Wendt with conspiracy to defraud ATF or make false statements to ATF in violation of 18 U.S.C. §§ 371 and 1001(a)(2); second, in Counts 2 and 3, the Government charges Wendt with making false statements to ATF in violation of 18 U.S.C. § 1001(a)(2) when he issued purchase law letters stating that machine guns would be used to carry out the official duties and responsibilities of the Adair Police Department and were not being acquired for the purpose of resale or transfer; third, in Counts 4 through 14, the Government charges Wendt with making false statements to ATF in violation of 18 U.S.C. § 1001(a)(2) when he stated in demonstration law letters that the machine guns were being requested for demonstration for potential purchase by the Adair Police Department[2]; and fourth, in Count 15, the Government charges Wendt with illegally possessing or aiding and abetting the illegal possession of a machine gun in violation of 18 U.S.C. §§ 922(o), 924(a)(2), and 2.

---

[2] Counts 4 through 13 are distinct from Count 14 in that the Government alleges, as to the former, that Wendt intended through the false statements to acquire the machine guns for his own personal gain and profit, whereas he allegedly intended, as to the latter, to acquire the machine gun for the personal gain and profit of his former co-Defendant Williams. This distinction is not material to the governing legal principles.

Add. 062
Appellate Case: 24-2458   Page: 66   Date Filed: 10/03/2024 Entry ID: 5442880

The Government brought Count 1 (the conspiracy charge) in the alternative and therefore may prove it one of two ways: (1) Wendt conspired with one or more other persons to defraud ATF; or (2) Wendt conspired with one or more other persons to make false statements to ATF. *See United States v. Ervasti*, 201 F.3d 1029, 1039 (8th Cir. 2000) ("Though it is not divided formally into subsections, § 371 plainly establishes two offenses. . . ."). The former type of conspiracy is broader and more open-ended than the latter in that the Government may prove a conspiracy to defraud ATF by showing that the purpose of the conspiracy was to "impede, impair, obstruct, or defeat a lawful function of [ATF]" through means that "involved dishonesty, deceit, craft, or trickery." *United States v. Santisteban*, 501 F.3d 873, 881 (8th Cir. 2007); *see also United States v. Murphy*, 957 F.2d 550, 553 (8th Cir. 1992) (describing the conspiracy to defraud prong as the "more general" of the two). The Court agrees with Wendt that he should be given more latitude to present evidence in defense of this kind of "general" conspiracy charge. By contrast, a conspiracy to make false statements to ATF requires proof that, among other things, Wendt conspired with at least one other person to make knowingly false statements concerning a material fact about a matter within ATF's jurisdiction. *See United States v. Wintermute*, 443 F.3d 993, 1000 (8th Cir. 2006). This is a narrower theory for which a correspondingly narrower amount of information is relevant on both the Government and Defense sides.

Some of the most significant disputes between the parties revolve around what "material" means for purposes of the alleged conspiracy to make false statements and the individual false statements charges in Counts 2 through 14. Eighth Circuit precedent on this issue is clear: "a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed." *United States v. Robinson*, 809 F.3d 991, 999 (8th Cir. 2016) (cleaned up). "It is not necessary for the government to prove that it actually relied on the false statement for it to have been material." *Id.* The Eighth Circuit has therefore repeatedly and consistently held that it is not a valid defense to a false statement charge that the truth or falsity of the statement was not outcome determinative in the context of the particular transaction at issue. *See, e.g.*, *id.* at 1000 (affirming conviction even though government witness did not characterize the statements as "material"); *United States v. Pizano*, 421 F.3d 707, 722 (8th Cir. 2005) ("[The defendant's] argument fails because it misconstrues the materiality element of bank fraud by improperly injecting a reliance requirement into the analysis.").

In a related argument, Wendt argues there is ambiguity in the governing statutes and regulations that calls into question the legitimacy of the charges against him. This is a more appropriate subject for a motion to dismiss than a motion in limine, but the argument is unpersuasive regardless of the context in which it is made. At least two federal appellate courts have upheld convictions for similar conduct to that charged against Wendt, with the Sixth Circuit rejecting a void-for-vagueness challenge akin to the one Wendt appears to be raising here. *See United States v. Theunick*, 651 F.3d 578, 585–86 (6th Cir. 2011) (rejecting vagueness challenge); *see also United States v. Kelerchian*, 937 F.3d 895, 907–08 (7th Cir. 2019) (affirming conviction based on defendant's use of false statements in demonstration law letters).

Contrary to Wendt's argument, there is nothing ambiguous or vague—and certainly not to the level of constitutional infirmity—about the statutes and regulations governing the acquisition and transfer of machine guns. The principal statute is 18 U.S.C. § 922(o), which makes it "unlawful for any person to transfer or possess a machine gun" but contains an exception for machine guns transferred to or possessed by the United States, a State, or a department, agency, or political subdivision thereof. *See* 18 U.S.C. § 922(o)(2)(A). Federal law prohibits the transfer of machine guns unless a "written application" is filed with and approved by ATF. *See* 26 U.S.C. § 5812(a). "Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." *Id.*

Congress delegated authority to the Attorney General to promulgate rules and regulations regarding the enforcement of section 922(o) and related laws. *See Kajmowicz v. Whitaker*, 42 F.4th 138, 146 (3d Cir. 2022); *see also* 18 U.S.C. § 926(a); 26 U.S.C. § 7805(a). The Attorney General subdelegated this authority to the ATF Director. *See Whitaker*, 42 F.4th at 146, n.2. Pursuant to its delegated authority, ATF has promulgated rules for two types of permissible transfers of machine guns: (i) "the sale or distribution of such weapons for the official use of Federal, State or Local governmental entities," 27 C.F.R. § 479.105(c); and (ii) the transfer of machine guns to authorized dealers when "it is established by specific information [from the machine gun dealer] the expected governmental customers who would require a demonstration of the weapon, information as to the availability of the machine gun to fill subsequent orders, and letters from governmental entities expressing a need for a particular model or interest in seeing a demonstration of a particular weapon," *id.* § 479.105(d). The parties have used the phrase "purchase law letters" to describe the first method and "demonstration law letters" to describe the second.

Read collectively, and as relevant here, the governing statutes and regulations are not ambiguous. As it pertains to purchase law letters, the applicant must submit a "written application," 26 U.S.C. § 5812(a), confirming that the machine gun is "for the official use of Federal, State or Local governmental entities," 27 C.F.R. § 479.105(c). This is a straightforward requirement designed to confirm that a local law enforcement agency intends to make "official use" of the weapon before the transfer is approved. Similarly, the demonstration law letter is part of the "written application," 26 U.S.C. § 5812(a), that must, among other things, confirm to ATF the existence of a local law enforcement agency that is interested in a demonstration of the machine gun(s) for potential acquisition. Nothing in the governing statutes or regulations permits the acquisition of a machine gun for personal ownership, and thus the predominant issue in the Government's case against Wendt is the same as the one the Sixth Circuit identified in *United States v. Theunick*: "whether [Wendt] used the authority of [his] office[] as a pretext for the personal use of automatic weapons." 651 F.3d at 585; *see also Kelerchian*, 937 F.3d at 908 ("From the content of these letters, a reasonable jury could find that these were false requests for demonstrations. The letters could have had no other purpose.").

## IV.   ANALYSIS: THE GOVERNMENT'S MOTION TO EXCLUDE WENDT'S PROFFERED EXPERT TESTIMONY.

*A.  Legal Standards.*

With the governing principles described above in mind, the Court must evaluate the parties' respective motions, starting with the Government's Motion to Exclude Wendt's Proffered Expert Testimony. The admissibility of expert testimony is governed by Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Rule 702 serves a "gatekeeping function" to ensure scientific testimony is relevant and reliable. *Union Pac. R.R. v. Progress Rail Servs. Corp.*, 778 F.3d 704, 709 (8th Cir. 2015). "Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court, and these decisions will not be disturbed on appeal absent an abuse of that discretion." *Neb. Plastics,*

8

*Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 415 (8th Cir. 2005). Still, the trial court's gatekeeping function must not undermine the jury's responsibility to weigh experts' evidence and credibility. *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997) ("Questions of an expert's credibility and the weight accorded to his testimony are ultimately for the trier of fact to determine.").

Expert testimony is admissible if it passes a three-part test: (1) the testimony must be relevant and useful to the factfinder; (2) the expert must be qualified to assist the factfinder; and (3) the testimony must be "reliable." *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021). The proponent of the testimony bears the burden of showing the expert is qualified to render an opinion and that his or her methodology was properly applied to the facts at issue; however, doubts should be resolved in favor of admissibility. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006). The standard for determining whether expert testimony is relevant is low. *Scott v. City of Sioux City*, 68 F. Supp. 3d 1022, 1041 (N.D. Iowa 2014). "[T]o satisfy the relevance requirement of Rule 702 and *Daubert*, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Id.* (quotation omitted).

As to reliability, the district court is afforded "the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972, 991 (D. Minn. 2013) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999) (internal quotation omitted)). Experts have "wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Disability Advocs., Inc. v. Paterson*, No. 03-CV-3209(NGG)(MDG), 2008 WL 5378365, at *2 (E.D.N.Y. Dec. 22, 2008) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). The Court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Marmo*, 457 F.3d at 757 (quoting *Kumho Tire Co.*, 526 U.S. at 152 (internal quotation omitted)).

As a general matter, expert witnesses are not authorized to testify to legal conclusions or answer questions of law. *S. Pine Helicopters, Inc. v. Phx. Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003). Nonetheless, an expert's opinion "is not objectionable just because it embraces an ultimate issue." Fed R. Evid. 704(a). Expert "[o]pinions that 'merely tell the jury what result to

reach' are not admissible." *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (quoting Fed. R. Evid. 704 advisory committee note to 1972 amendment). "The evil to be avoided is having the expert offer legal conclusions on issues that will be the subject of the Court's instructions to the jury." *Klossner v. IADU Table Mound MHP, LLC*, No. 20-CV-1037-CJW-KEM, 2021 WL 3439419, at *4 (N.D. Iowa Apr. 16, 2021) (quoting *Porters Bldg. Ctrs., Inc. v. Sprint Lumber*, No. 16-06055-CV-SJ-ODS, 2017 WL 4364209, at *2 (W.D. Mo. Oct. 2, 2017)).

     B.   *The Court Grants in Part, Denies in Part, and Reserves Ruling in Part on the Government's Motion to Exclude Wendt's Proffered Expert Testimony.*

Wendt plans to offer testimony from Rick Vasquez, a former ATF employee who held positions as Acting Chief and Assistant Chief of the Firearms Technology Branch and Acting Chief of the Firearms Training Branch during his fourteen-year career with the agency. (ECF 282-2, p. 3.) During this time, he instructed ATF personnel on the definitions of firearms in the Gun Control Act and National Firearms Act and developed a machine gun identification course for ATF counsel, agents, and investigators. (Id.) He also "reviewed all Standard Operating Procedures for the NFA Branch" and made recommendations that led to the procedures being "upgraded." (Id., p. 4.) Vasquez reports a "working knowledge of NFA transfer procedures." (Id.)

The Government argues, in the first instance, that Vasquez lacks the requisite training and experience to testify about ATF licensing and transfer procedures given that his experience with ATF revolved around firearms technology, not licensure. Although this is a close call, the Court will not exclude Vasquez's testimony altogether under Fed. R. Evid. 702. The fact that his fourteen-year career with ATF revolved primarily around matters other than machine gun licensure is an appropriate subject for cross-examination but does not mean he has no knowledge on licensure issues that might "help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702.

The Government next argues that significant portions of Vasquez's testimony are inadmissible both due to deficiencies in his experience and because, among other things, the testimony is irrelevant, purports to state what the law is (which is typically the prerogative of the Court), and raises a significant risk of juror confusion as to the legal definition of "materiality."

The Court will begin by summarizing the testimony it *will* allow from Vasquez provided the defense lays adequate foundation regarding his knowledge and experience and the relevance of the testimony. First, although Vasquez's testimony is likely to be duplicative of testimony from one or more Government witnesses, the Court will allow him to explain what machine guns are,

the role of ATF in regulating them, and the basic mechanics of the licensure process for Federal Firearms Licensees (FFLs) and Federal Firearms Licensee Special Occupational Taxpayers (FFL-SOTs). <u>Second</u>, Vasquez may explain the types of licenses held by Wendt or entities with whom he is or was affiliated. <u>Third</u>, Vasquez will be allowed to explain that local law enforcement agencies and other governmental entities may acquire and possess machine guns and how they obtain permission from ATF to do so, including describing documentation requirements such as the Form 5. <u>Fourth</u>, he will be allowed to describe the purchase law letter and demonstration law letter requirements, including explaining who typically provides such letters and what purpose they serve. <u>Fifth</u>, he may testify about the importation of machine guns into the United States, including describing documentation requirements such as the Form 6. <u>Sixth</u>, he may explain what FFL-SOTs are permitted to do with machine guns they have lawfully acquired when the FFL-SOT goes of out business and surrenders the license. <u>Seventh</u>, he may testify about the types and uses of the machine guns at issue in the case, including their potential uses by law enforcement agencies.

Beyond these areas, the Court agrees with the Government that there are significant portions of Vasquez's proffered testimony that are inadmissible. For example, unless the Government opens the door during its case-in-chief, Vasquez will not be permitted to testify about the application process for becoming a dealer or manufacturer of machine guns or ATF approval standards. (ECF 281-1, p. 6, middle paragraph.) According to his expert report, Vasquez intends to opine, among other things, that ATF must decide whether an applicant has willfully violated any provision of the Gun Control Act before it can issue a manufacturer's license, during which ATF applies "a standard that is less than the criminal standard of beyond a reasonable doubt." (Id.) The Court does not view this testimony as having any relevance to the issues in dispute; instead, it appears to be a backdoor method for Wendt to treat ATF's regulatory division as a sort of "mini-jury" that evaluated his conduct and decided he did nothing wrong. *See United States v. Wintermute*, 443 F.3d 993, 1001 (8th Cir. 2006) (excluding expert testimony that agency took no action despite learning facts about allegedly false statements because the proffered testimony was based on a misunderstanding of the government's burden). This is not an appropriate subject for expert testimony because there are significant differences between an application for a manufacturer's license (which is not the subject of any charges) and requests for approval of transfers of machine guns through purchase law letters and demonstration letters (which are the subject of charges). Moreover, there is a distinction between the ATF regulatory team that reviews

Appellate Case: 24-2458   Page: 72   Date Filed: 10/03/2024 Entry ID: 5442880

licensure applications and the ATF criminal team that was responsible for investigating Wendt for potential criminal violations. The latter had full access to grand jury information, while the former did not. Finally, Wendt's desire to make an issue out of the approval of the manufacturer's license ignores the fact that, with one exception that does not involve false statements (renumbered Count 15), Wendt was not charged with violating the Gun Control Act, and thus any conclusion the ATF regulatory division might reach about his compliance with that Act is materially different from the conclusion the jury will have to reach about whether Wendt violated 18 U.S.C. §§ 371 and 1001(a). *See United States v. Blumeyer*, 114 F.3d 758, 770 (8th Cir. 1997) (upholding the exclusion of judicial fact finding in a parallel civil proceeding because the evidence was irrelevant and was "likely to confuse the jury"). In these circumstances, allowing Vasquez to testify about the manufacturer's license will lead to a distracting and irrelevant mini-trial about what the ATF regulatory team knew or did not know about the criminal investigation and how the Gun Control Act is different from the regulations governing the transfer of machine guns. *See United States v. Klaphake*, 64 F.3d 435, 438 (8th Cir. 1995) (upholding exclusion of expert testimony on "matters not directly at issue" that "could have diverted the jury's attention" from defendant's guilt or innocence). It would do this for the purpose of setting up expert testimony that is misleading anyway: that ATF "evaluated" Wendt's conduct and concluded he did nothing wrong. *See United States v. Davis*, 471 F.3d 783, 789 (7th Cir. 2006) ("Experts are permitted to testify regarding how their government agency applies rules as long as the testimony does not incorrectly state the law or opine on certain ultimate legal issues in the case.").

Importantly, nothing about this aspect of the Court's ruling will prevent Wendt from presenting evidence and argument about the significance of ATF's approval of Wendt's requests to obtain and transfer machine guns through purchase law letters and demonstration letters. Wendt intends to argue that he made full and accurate disclosures in connection with those requests about, among other things, the size of the Adair Police Department and the intended use of the machine guns. He will have the full opportunity to argue this position. He simply will not be allowed to present expert testimony from Vasquez that ATF also approved a different application involving a different type of license unless the Government opens the door to such testimony during its own case-in-chief.

The Court also will not permit Vasquez to testify about the level of authority possessed by a chief of police to act on behalf of a local law enforcement agency, as summarized in the first full

Add. 069
Appellate Case: 24-2458   Page: 73   Date Filed: 10/03/2024 Entry ID: 5442880

paragraph of page 8 and the last sentence of page 9 of his report. (ECF 281-1, pp. 8, 9.) The level of authority possessed by a police chief will vary by jurisdiction and must be established as to Wendt and the City of Adair through fact witnesses, not expert witnesses. *See Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1334 (11th Cir. 1988) (considering witness testimony about police department practices under Fed. R. Evid. 701).

The Court further concludes that substantial portions of Vasquez's testimony are inadmissible because they: (a) purport to state what the law is in situations where the jury needs no additional information beyond what the Court will provide in the jury instructions; (b) misstate the law; and/or (c) opine that Wendt literally could not have violated the law based on how Vasquez interprets the governing statutes and regulations. Specifically—and unless the Government opens the door during its case-in-chief—Vasquez will not be permitted to testify to the topics identified in the first, third, and fourth paragraphs of page 10 of his report (ECF 281-1, p. 10). In those paragraphs, Vasquez purports to summarize the interplay between the federal statute (18 U.S.C. § 922(o)) and regulations (27 C.F.R. 479.105) governing "demonstrations" of machine guns; whether a law enforcement agency or firearms dealer must "certify" anything about "potential future sales" of a machine gun that is obtained for "demonstration" purposes; and whether ATF has the authority to deny an application for machine gun transfer when the police chief of a local law enforcement agency confirms that an FFL-SOT has been authorized to acquire a machine gun.

The first problem with Vasquez's proffered testimony on these topics is that it involves his personal interpretation of the relevant statutes and regulations. The is a subject for the Court to address in jury instructions, not for expert opinion testimony. *See Police Ret. Sys. of St. Louis v. Midwest Inv. Advisory Serv., Inc.*, 940 F.2d 351, 357 (8th Cir. 1991) ("Explaining the law is the judge's job."). Moreover, the Court disagrees with Vasquez's interpretation of the statutes and regulations. His view appears to be that a local police chief per se cannot make a "false statement" in a demonstration law letter because if the police chief says his agency is interested in seeing a demonstration of a machine gun, it is ipso facto true. This is not an accurate interpretation of the law. *See Kelerchian*, 937 F.3d at 908 (affirming defendant's conviction on conspiracy charge involving false demonstration requests made by Deputy Chief of Sheriff's Department).

Stated differently, Vasquez essentially wants to testify that Wendt could not, as a matter of law, have committed the crime of making false statements to ATF through the use of demonstration law letters because Wendt's position as Police Chief for the Adair Police Department gave him

13

Appellate Case: 24-2458   Page: 74   Date Filed: 10/03/2024 Entry ID: 5442880

unilateral authority to decide what the Adair Police Department was "interested" in seeing. To the extent this argument is viable—which it isn't—it must be made in the form of a motion to dismiss directed to the Court, not expert opinion testimony directed to the jury. *See S. Pine Helicopters, Inc.*, 320 F.3d at 841 (expert testimony on "whether federal law was contravened" is inadmissible).

Other aspects of Vasquez's proposed testimony are similarly inadmissible. In the second paragraph of page 11 of his report, he proposes to explain that the terms "official use" and "official duties and responsibilities" as used in governing regulations are terms of art that simply mean "the machine gun is going to be registered to a law enforcement agency." (ECF 281-1, p. 11.) He further wants to testify that ATF "may not second guess the law enforcement agency's use of the machine gun." (Id.) Again, these are not accurate summaries of the law. As used in 27 C.F.R. § 479.105(c), "official use" does not simply mean that the machine gun is going to be *registered* to a law enforcement agency, but also that the machine gun is genuinely for the *official use* of that agency. In other words, an official cannot claim to be acquiring a machine gun for the use of a local police department if the official actually wants to acquire the machine gun for his own personal reasons. *See Theunick*, 651 F.3d at 586. By suggesting otherwise, Vasquez will confuse and mislead the jury in an impermissible way. *See Wintermute*, 443 F.3d at 1001; *see also United States v. Rothenberg*, 328 F. App'x 897, 902 (5th Cir. 2009) ("[O]pinion testimony about 'what the law is' or some expert's 'understanding' about what the law means is inadmissible.").

Vasquez's testimony is also inadmissible insofar as he wants to describe "ATF's positions regarding the extent to which registered owners of machineguns are permitted to allow others to fire them and machineguns shoots and rentals, including their existence and popularity, common practices, and the ATF's position regarding them." (ECF 281-1, pp. 11–12.) The same is true for the remainder of Vasquez's proposed testimony regarding machine gun shoots, as summarized in pages 12 and 13 of his report. (Id., pp. 12–13.) Assuming for sake of argument that Vasquez's report is accurate and ATF's position indeed "has always been that the registered owner is not violating the law so long as the registered owner [of a machine gun] or his representative continues to exert control over the situation" (id., p. 12), this is irrelevant. It is the jury, not ATF, that is ultimately responsible for deciding what conduct "violat[es] the law" with the benefit of instructions from the Court. *See United States v. Smith*, 573 F.3d 639, 655 (8th Cir. 2009) (holding "it is the judge and not a witness" that instructs on the law). Vasquez's proposed testimony violates this core principle by suggesting that a defendant should not be convicted of an offense if a federal

14

agency did something to suggest the conduct in question was legal. This is impermissible in the circumstances presented here. To that end, it is important to note that Vasquez's testimony about machine gun shoots does not relate to the conspiracy to defraud and false statement charges. In some circumstances, testimony about an agency's custom and practices might be relevant to *those* types of charges because the testimony would help the jury understand the element of materiality. As it relates to machine gun shoots, however, materiality is irrelevant. Accordingly, Vasquez simply wants to use ATF's putative "positions" on machine gun shoots as a form of argument for jury nullification. This is improper.

Finally, the Court will not allow Vasquez to offer opinion testimony about the "documents responsive to the defense discovery requests that have not been produced in this case" or the "guidance that appears to be missing from discovery," as stated in the first full paragraph of page 14 of his report. (ECF 281-1, p. 14.) Vasquez does not explain the "guidance" to which he is referring, nor has Wendt explained the relevance of any such "guidance." This is reason enough to exclude the testimony. *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th at 777 (testimony must be relevant). Moreover, given the other verboten topics in Vasquez's expert report, the Court is concerned that Vasquez intends to opine that ATF has provided unidentified "guidance" indicating that certain conduct is "legal" or "does not violate the law" irrespective of what governing statutes and regulations say. Neither ATF nor Vasquez is entitled to encourage the jury to accept their own interpretations of the law; instead, the Court will explain what the law does and does not permit.

In sum—and, again, absent the Government opening the door—Vasquez will not be permitted to testify about the matters set forth in the following sections of his report: (a) the second paragraph of page 6; (b) the last sentence of the carryover paragraph starting on page 7 and ending on page 8; (c) the first full paragraph of page 8; (d) the last sentence of page 9; (e) the first, third, and fourth paragraphs of page 10; (f) the second full paragraph of page 11; (g) the carryover paragraph starting on page 11 and ending on page 12; (h) the entirety of page 12; (i) the first two paragraphs of page 13; and (j) the first full paragraph of page 14.

There are a few areas of Vasquez's proposed testimony for which the Court cannot make a definitive ruling as to admissibility. For example, in the second paragraph of page 10, Vasquez proposes to offer testimony about ATF's "position" on what a demonstration of a machine gun might entail. The Court will need to see how the Government presents its case-in-chief before it

15

Add. 072

Appellate Case: 24-2458   Page: 76   Date Filed: 10/03/2024 Entry ID: 5442880

can decide whether this is an appropriate subject. In addition, Vasquez will have to establish that he has sufficient foundation to offer testimony about it.

In the last two paragraphs of page 8 (the second of which carries over to page 9) (ECF 281-1, pp. 8, 9), Vasquez's report says he will offer testimony about how ATF examiners review applications and what information an ATF examiner would have had with respect to Wendt's applications. As written, the report appears to simply summarize facts and therefore is likely to be admissible, if not terribly meaningful. In context, however, Vasquez appears to be implying that the allegedly false statements made by Wendt must not have been "material" because ATF knew how many machine guns the Adair Police Department already possessed but approved additional machine gun transfers anyway. Under well-established precedent from the Eighth Circuit and other federal appellate courts, such testimony may rest on a misleading and inaccurate definition of "material."

*United States v. Wintermute* is illustrative. 443 F.3d 993. There, the defendant was charged with conspiracy to defraud the United States and making false statements to the Office of the Comptroller of the Currency ("OCC"). *Id.* at 996. As part of her defense, the defendant proffered testimony from the former chief counsel of the OCC, who intended to testify that the allegedly false statements must not have been "material" given the OCC's failure to take certain action once it was fully informed of the facts. *Id.* at 1001 & n.2. The Eighth Circuit affirmed the district court's decision to exclude the witness from testifying, holding that the "proffered testimony misrepresented the government's burden of proving materiality" and "misconstrue[ed] the legal question at issue." *Id.* at 1001. The proper question, *Wintermute* explained, was whether the "false statements were *capable* of influencing the OCC's decision," not whether they "actually *succeeded* in influencing the OCC, or influenced that decision within any specific period of time." *Id.*; *accord, e.g.*, *United States v. Benton*, 890 F.3d 697, 712 (8th Cir. 2018) ("A false statement is material if it has a natural tendency to influence or was capable of influencing the government agency or official to which it was addressed."), *judgment corrected* (May 15, 2018). "If offered, the expert testimony would have served to confuse rather than assist the jury in the jury's attempt to understand the evidence on this issue." *Wintermute*, 443 F.3d at 1001; *see also Benton*, 890 F.3d at 712 (affirming false statement conviction despite defendants' argument that the false statements did not change the government entity's action).

16

The Sixth Circuit reached a similar conclusion in *United States v. Gordon* in the context of a prosecution for bank and tax fraud. 493 F. App'x 617, 626–27 (6th Cir. 2012). The district court refused to permit the defendant to call IRS employees to testify about what the IRS would consider "material" and whether the IRS would have taken the same action even without the false statement. *Id.* at 626. The Sixth Circuit affirmed because the testimony "essentially sought to introduce legal conclusions about materiality in the guise of expert testimony" and was "not probative of whether Gordon's statements were material" under the correct legal definition of the word "material." *Id.* at 626–27; *see also id.* at 628 ("It is not necessary to show that the statement actually influenced an agency, but only that it had the capacity to do so. Whether the IRS would have [taken the same action] does not determine materiality." (internal citation omitted)).

The same principles apply here. It is "unlawful for any person" other than (as relevant here) a local law enforcement agency or FFL-SOT "to transfer or possess a machine gun," 18 U.S.C. § 922(o), and ATF is forbidden from approving an application for the transfer or possession of a machine gun "if the transfer, receipt, or possession of the firearm would place the transferee in violation of law," 26 U.S.C. § 5812(a). In other words, ATF cannot lawfully approve an application for a machine gun transfer if the gun: (a) will not be for the official use of a local law enforcement agency; and (b) is not of interest to the local law enforcement agency for possible purchase. It follows that the fact that ATF approved any particular application or the amount of information ATF had about the Adair Police Department or Wendt's businesses at the time of such approval does not mean statements regarding the local law enforcement agency's interest or intended use of the machine guns are not material. The Court will not allow Wendt to use expert testimony to argue otherwise.

The Court likewise will reserve ruling on other aspects of Vasquez's testimony. On pages 11 and 13 of his report, Vasquez proposes to offer testimony on the "types and uses of the machineguns involved in this case," "the existence of these machineguns in the possession of law enforcement and/or FFL-SOTs," "the existence of machineguns in the possession of private companies/individuals and law enforcement; and the machineguns that have been acquired by law enforcement." (ECF 281-1, pp. 11, 13.) The Court does not have sufficient detail or context to evaluate the admissibility of this evidence, although it suspects it will be admissible given that the Government apparently intends to offer evidence and argument that Wendt must not have intended for the machine guns to be used by the Adair Police Department given the small size of that

Appellate Case: 24-2458   Page: 78   Date Filed: 10/03/2024 Entry ID: 5442880

Department. If so, Wendt will be allowed in his defense to rebut the Government's position by pointing out the number of machine guns possessed by other, similarly sized law enforcement agencies. Such testimony is particularly likely to be admitted if the defense presents evidence that Wendt was aware of such possession by these other agencies, as this would indicate his genuine belief in the Adair Police Department's need for machine guns either for purchase or demonstration purposes.

Finally, the Court reiterates that its ruling on the permissible boundaries of Vasquez's testimony may change if, for instance, the Government's expert covers ground the Court was not expecting or that might itself exceed the boundaries the Court has summarized above. If so, it would only be fair to allow Vasquez to rebut the Government's evidence. The Court will make this evaluation during trial when it has greater context.

## V.    ANALYSIS: WENDT'S MOTIONS IN LIMINE.

Turning to the motions in limine, most involve issues that do not appear to be in serious dispute. Each side simply wants to ensure the other side follows the Federal Rules of Evidence or other governing legal principles. Nonetheless, in the interest of clarity, the Court will evaluate each request made by each side.

### A. *The Court Grants in Part and Denies in Part Wendt's Motion in Limine No. 1 ("Jury Emotions, Fear, Danger of Guns, and Politics").*

Wendt asks the Court to prevent the Government from presenting "any evidence, testimony, or argument with the intention or effect of appealing to the jury's emotions, fear, danger of guns, or politics." (ECF 296, p. 1.) More specifically, he asks the Court to exclude evidence of the power or danger of machine guns, speculation about how such guns might be used, political symbols like "the Trump flag," and any suggestion about what might happen if machine guns "end[] up in the wrong hands." (Id., pp. 1–2.) The Court generally agrees that the Government should not be permitted to inject fear, danger, or politics into the case and therefore GRANTS IN PART Motion in Limine No. 1.[3]

---

[3] Relatedly, the Court DENIES WITHOUT PREJUDICE Wendt's Motion Regarding the Admission of Audio and Video Evidence at Trial. (ECF 297.) The Government indicates that it does not plan to offer audio recordings of Wendt's statements but does plan to offer three videos from the machine gun shoot that forms for the basis for renumbered Count 15 and a marketing video promoting a minigun at issue in the case. Without additional context, the Court will wait until trial to rule on the admissibility of these and other audio or video recordings, any portion thereof, or the production of transcripts related thereto.

Add. 075

The Court DENIES IN PART Motion in Limine No. 1 in a few respects. The Government will not be prohibited from offering brief testimony or evidence explaining why machine guns are regulated so heavily even if such testimony states or implies that such weapons are dangerous, provided that the Government does not dwell on the issue of dangerousness or otherwise attempt to appeal to jurors' emotions. In addition, the Government will be permitted to offer photographs of the machine guns and/or the machine guns themselves into evidence, notwithstanding the possibility that a juror might find the guns threatening or intimidating. The Government will not, however, be permitted to have the machine guns in the courtroom everyday throughout the trial. Finally, to the extent evidence of dangerousness or political symbols are inextricably intertwined with evidence that is admissible for other reasons—such as, for example, if video footage captures Wendt making statements about the power of a machine gun or shows a Trump flag at the scene of the machine gun shoot at issue in renumbered Count 15—the evidence will not be excluded.

### B. The Court Denies Without Prejudice Wendt's Motion in Limine No. 2 ("Exculpatory, Impeachment, or Prior Statements Discovery").

Wendt next asks the Court to prohibit the Government from introducing "any evidence where relevant exculpatory, impeachment, and prior statement discovery has not been produced." (Id., p. 3.) He suggests, among other things, that the Government has improperly withheld discoverable information regarding law letter approvals and ATF practices, interpretations, and guidance "different from that portrayed in this case" as well as "[o]ther ATF actions that would support positions contrary to the positions taken by the Government in this case." (Id., pp. 3–4.)

For the most part, this is not a true motion in limine, and thus the Court DENIES it. Wendt is instead reiterating complaints about the discovery process. For reasons explained above, these complaints largely emanate from Wendt's interpretation of the relevant legal issues in the case, including the definition of "materiality" and whether it is for ATF (as opposed to the jury) to decide whether the Government has satisfied the elements of the offense. The denial is, however, without prejudice so that Wendt can raise objections at trial if the Government truly attempts to introduce evidence that was withheld from discovery in violation of *Giglio v. United States*, 405 U.S. 150 (1972) or the Jencks Act, 18 U.S.C. § 3500.

### C. The Court Grants Wendt's Motion in Limine No. 3 ("Character Evidence or Evidence of Other Crimes, Wrongs, or Acts").

Wendt asks the Court to exclude any prior bad acts evidence that the Government might offer pursuant to Fed. R. Evid. 404(b). (ECF 296, p. 4.) The Government reports that it does not

intend to present prior bad acts evidence (ECF 299, p. 2), and thus Motion in Limine No. 3 is GRANTED.

    *D. The Court Denies Without Prejudice Wendt's Motion in Limine No. 4 ("Statements by Third Parties or Alleged Co-Conspirators").*

Wendt asks the Court to exclude hearsay statements by third parties or alleged co-conspirators. (ECF 296, p. 5.) The Court cannot, however, rule on such a motion in a vacuum. Some statements by third parties are admissible for non-hearsay purposes, such as to provide context for statements made by Wendt. Similarly, co-conspirator statements are admissible pursuant to Fed. R. Evid. 801(d)(2)(E) if made "during and in furtherance of the conspiracy." As Wendt has not identified any particular statement he wants to have excluded, the Court must DENY WITHOUT PREJUDICE Motion in Limine No. 4. Wendt may object at trial if he believes the Government is offering inadmissible hearsay.

    *E. The Court Denies Without Prejudice Wendt's Motion in Limine No. 5 ("Completeness of Wendt's Statements").*

The Court likewise does not have sufficient context to evaluate Wendt's request to have his statements admitted in their entirety pursuant to Fed. R. Evid. 106, which is often called the "rule of completeness." (ECF 296, p. 5.)  If and when the Government offers one of Wendt's statements into evidence, the Court can evaluate whether there are other portions of the same statement "that in fairness ought to be considered at the same time." *See* Fed. R. Evid. 106. Until then, Wendt's Motion in Limine No. 5 is DENIED WITHOUT PREJUDICE.

    *F. The Court Denies Without Prejudice Wendt's Motion in Limine No. 6 ("Testimonial Statements in Violation of <u>Crawford</u> & the Confrontation Clause").*

The Court also DENIES WITHOUT PREJUDICE Wendt's Motion in Limine No. 6, which asks for the exclusion of testimonial statements pursuant to the Sixth Amendment and *Crawford v. Washington*, 541 U.S. 36 (2004). (ECF 296, p. 6.) As with many other aspects of his Motions in Limine, Wendt does not identify any particular statements that might trigger *Crawford*; instead, he simply generically asks for the exclusion of such statements. The Court cannot provide relief—or even useful guidance—without more context.

    *G. The Court Grants in Part and Denies in Part Wendt's Motion in Limine No. 7 ("Authority of the ATF to Define Terms, Unlawful Interpretations of the Law, and Unlawful Practice by ATF").*

Wendt's Motion in Limine No. 7 identifies an issue that is important for both sides: the possible introduction of testimony and evidence regarding the interpretation of governing laws and

Add. 077

regulations. (Id.) As explained above in connection with the Government's Motion to Exclude, the Court expects the parties to adhere to the following principles: (i) both sides will be permitted, to some degree, to explain the legal backdrop against which ATF regulates machine guns, including, e.g., basic information about who is permitted to possess or transfer machine guns, how the regulatory process works, which documents must be filed and for what purpose, and similar issues; (ii) neither side will be permitted to offer testimony, evidence, or argument stating or suggesting that the law is something different than it is; and (iii) neither side will be permitted to offer testimony directly stating whether something Wendt or ATF did (or failed to do) is "legal" or "illegal" or words to similar effect, such as "violates the law." Wendt's Motion in Limine No. 7 is GRANTED IN PART to the extent it asks for adherence to these principles and is DENIED IN PART to the extent it is asking for something different.

> H.  *The Court Denies Without Prejudice Wendt's Motion in Limine No. 8 ("Amendment of or Variance from the Indictment").*

Wendt's Motion in Limine No. 8 seeks to preclude the Government from constructively amending or impermissibly varying from the Indictment. (ECF 296, p. 7.) For the most part, this topic is better addressed in connection with jury instructions and post-trial motions than as a motion in limine. Moreover, the relief Wendt seeks is sometimes not tethered to governing Eighth Circuit precedent regarding constructive amendments and variances. For example, he asks the Court to prevent the Government from attempting to rely upon "[a]ny notion that somehow the ATF did not have the ability to make inquiries of Wendt, the Adair City Council, or others in making its determinations." (Id., p. 8.) The Court does not understand how this might constitute a constructive amendment or variance from the Indictment. The Court therefore DENIES Wendt's Motion in Limine No. 8.

> I.  *The Court Denies Wendt's Motion in Limine No. 9 ("Limits on Conspiracy Charge").*

Wendt's Motion in Limine No. 9 contains four subparts, none of which are true motions in limine. First, he argues that "the conspiracy charge runs afoul of the protections afforded in the Gun Control Act." (Id.) Other than quoting a statute, however, he provides no legal authority or argument to help the Court understand what he is alleging. Moreover, and in any event, this is an appropriate topic for a motion to dismiss or post-trial motion, not a motion in limine.

Second, Wendt argues that the conspiracy to defraud the ATF charge is too vague. For reasons explained in detail above, the Court would reject this argument if it were presented as a motion to dismiss. There is nothing impermissibly vague about laws limiting the possession of

Add. 078

machine guns to governmental entities, nor about a regulatory regime in which information must be provided to ATF to confirm that a governmental entity either intends to purchase such a weapon or, at minimum, is genuinely interested in a demonstration of such a weapon. *See Theunick*, 651 F.3d at 585–86 (rejecting vagueness challenge); *Kelerchian*, 937 F.3d at 907–08 (affirming conviction based on defendant's use of false statements in demonstration law letters).

Third, Wendt argues that there is "danger of confusion" if the Government pursues a conviction based on both prongs of the conspiracy to defraud statute, 18 U.S.C. § 371. There is nothing improper, however, about the Government's decision to charge conspiracy in the alternative in Count 1. *See United States v. Fletcher*, 322 F.3d 508, 519 (8th Cir. 2003); *United States v. Derezinski*, 945 F.2d 1006, 1010 (8th Cir. 1991) At most, the Court and parties simply must ensure the jury instructions require unanimity as to which prong of section 371 (if either) the jury believes the Government has proven beyond a reasonable doubt. In addition, the Court will give Wendt greater latitude to present evidence in defense of the conspiracy charge to the extent it is not based on false statements.

Fourth, and similarly, jury instructions will protect against Wendt's concern that the jury might be confused by "the possibility of multiple conspiracies." (ECF 296, pp. 9–10.) The Court is willing to give the multiple conspiracy instruction if the evidence at trial so warrants; for now, there is nothing that needs to be handled in a motion in limine.

For these reasons, the Court DENIES Wendt's Motion in Limine No. 9.

*J.  The Court Denies Wendt's Motion in Limine No. 10 ("Vagueness").*

Like his Motion in Limine No. 9, the vagueness argument in Wendt's Motion in Limine No. 10 is better understood as a motion to dismiss than a motion in limine. (Id., p. 10.) The Court reiterates that the governing statutes and regulations are not impermissibly vague. To the contrary, the regulatory regime is straightforward. ATF cannot approve the transfer of machine guns unless they are going to be used by—or demonstrated for—governmental entities. ATF therefore requires, consistent with governing statutes, the submission of documents confirming that (in this instance) the Adair Police Department was either purchasing the weapons for its own "official use" or was genuinely interested in the weapons and therefore wanted an FFL-SOT to obtain them for demonstration purposes.

Relatedly, Wendt argues that the Government is seeking to impose "ambiguous" requirements. The Court cannot understand, however, which statutory or regulatory provisions he

22

contends are ambiguous or why, nor does his citation to *United States v. Johnson*, 937 F.2d 392, 399 (8th Cir. 1991) provide clarity. In *Johnson*, the defendant parroted back to the government the same ambiguous language the government gave to him in the first instance, and thus the Eighth Circuit reversed his conviction. *See id.* at 399 ("Having relied on the government's directives, Johnson cannot now be found guilty of making a material false statement. . . ."). More recent Eighth Circuit cases confirm that the issue of ambiguity arises in fraud cases only when the allegedly false statements are "facially ambiguous" or "subject to multiple reasonable interpretations." *United States v. Parker*, 364 F.3d 934, 945 (8th Cir. 2004). In such circumstances, "the government bears the burden of negating literally truthful interpretations of statements in a fraud case." *Id.*

Here, Wendt does not appear to be claiming that his *own* statements are ambiguous. Rather, he complains that the governing regulations are ambiguous. It follows that cases like *Johnson* and *Parker* are not on point. Instead, the predominant issue is what the Sixth Circuit described in *Theunick*: "whether [Wendt] used the authority of [his] office[] as a pretext for the personal use of automatic weapons." 651 F.3d at 586; *see also, e.g.*, *United States v. Huntsman*, 959 F.2d 1429, 1437 (8th Cir. 1992) (holding that defendants were properly convicted of making false statements when they misrepresented their intentions as to the use of their farmland). If the Government can convince a jury beyond a reasonable doubt that Wendt made false statements when he submitted documents to ATF stating that the Adair Police Department was purchasing weapons for its own "official use" or was interested in them for demonstration purposes, Wendt will be guilty of the charges. If the Government cannot convince a jury of this—if, for example, Wendt creates a reasonable doubt about whether the statements in question were true—he will be not guilty of the charges. Either way, there is nothing for the Court to do through a ruling in limine, and thus the Court DENIES Wendt's Motion in Limine No. 10 as it relates to the false statement charges.

The Court also DENIES Wendt's Motion in Limine No. 10 as it relates to the renumbered Count 15, which charges him with illegally possessing or aiding and abetting the illegal possession of a machine gun. (ECF 296, p. 11.) The Court explained in a prior ruling why it did not believe *United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006) invalidated the charge against Wendt. (ECF 260, pp. 13–14.) The Court stands by its prior analysis.

Finally, the Court DENIES Wendt's Motion in Limine No. 10 as it relates to his argument that he is somehow protected from the charges against him by qualified immunity. (ECF 296, p.

23

12.) Again, the Court rejected this argument in its prior ruling and stands by the prior analysis. (ECF 260, p. 13.)

## VI.    ANALYSIS: GOVERNMENT'S MOTIONS IN LIMINE.

### A.    *The Court Grants Government Motion in Limine No. 1 (Evidence or Argument of ATF's Approval of BW Outfitters's Application for License to Manufacture Firearms).*

Government Motion in Limine No. 1 arises out of the following facts. (ECF 288, pp. 2–5.) On June 3, 2022, BW Outfitters applied for a Type 07 license to manufacture firearms in accordance with 27 C.F.R. § 478.47. (Id., p. 3.) By statute, applicants qualify for a manufacturer's license if they are at least twenty-one years old, are not prohibited under the Gun Control Act, have not "willfully violated" the Gun Control Act, have not made false statements or willfully failed to disclose material information in connection with the application, and have a valid business premises. *See* 18 U.S.C. § 923(d)(1); 27 C.F.R. § 478.47(b). Federal regulations state that ATF "shall approve a properly executed application" if these requirements are satisfied. 27 C.F.R. § 478.47(b). BW Outfitters's application was finalized on October 11, 2022, thus triggering an obligation on ATF's part to act on the application within sixty days. (ECF 288, p. 3.) ATF approved the application on November 16, 2022. (Id.) This was approximately one month before the grand jury returned the indictment against Wendt on December 14, 2022.

The Government submitted a declaration from William Miller, the Director of Industry Operations for the ATF's Kansas City Field Division ("KCFD"), to provide more context for how BW Outfitters's application for a manufacturing license moved through the approval process. (ECF 288-1, ¶¶ 2–3.) The KCFD covers the Southern District of Iowa and, as the director, Miller is "required to approve applications for a Federal firearms license[] absent evidence" the applicant is not qualified under 27 C.F.R. § 478.47. (Id., ¶ 3.) The Federal Firearms Licensing Center forwarded BW Outfitters's application for a Type 07 license to the KCFD on June 22, 2022. (Id., ¶ 8.) Miller was "generally aware" of the ongoing criminal investigation into Wendt's activities, but neither he nor any members of his Industry Operations staff were on the disclosure list for grand jury information (i.e., the "Rule 6(e) list"). (Id., ¶ 9.) Miller therefore did not know what specific evidence was obtained during the criminal investigation. (Id.) He directed that BW Outfitters's license should be approved because he was aware of "no disclosable basis" that would have permitted denial. (Id., ¶ 10.)

Add. 081

The Government argues that Wendt should be precluded under Fed. R. Evid. 403 from presenting evidence of ATF's approval of his manufacturer's license. Wendt, by contrast, argues that the license approval is highly relevant because, in his view, it means ATF concluded just one month before his indictment that he had not willfully violated the Gun Control Act. In Wendt's words, ATF "determin[ed] that Wendt did not do what the Government claims he did." (ECF 295, p. 2.) For three reasons, the Court agrees with the Government and will exclude evidence and argument regarding ATF's decision to approve BW Outfitters's application for a manufacturer's license.

First, it is not for ATF—or any other witness or entity—to say whether Wendt violated the law. *See Warger v. Shauers*, 721 F.3d 606, 612–13 (8th Cir. 2013) (affirming district court's exclusion of expert testimony regarding whether either of the drivers in a car accident violated state law); *see also United States v. Robinson*, 255 F. Supp. 3d 199, 206 (D.D.C. 2017) (precluding witness from testifying that the defendant's conduct was "criminal" or "illegal" or that he "violated the Controlled Substances Act"); *United States v. Okoroji*, No. 3:15-CR-00559-0, 2018 WL 8756434, at *1 (N.D. Tex. June 12, 2018) ("Accordingly, while an expert may explain a complicated area of the law and the facts related to it, he may not conclude that a defendant violated the law."). Thus, even if ATF's approval of the manufacturer's license application is properly interpreted as a determination by the agency that Wendt did not violate the Gun Control Act in connection with his acquisition of machine guns between 2018 and 2022, evidence of this determination would not be admissible. *See id.*

Second, and relatedly, Wendt does little to explain why ATF's approval of the manufacturer's license application is relevant to whether he committed each element of the charged offenses. Instead, he argues broadly that the fact of the approval "undercuts" the Government's allegations and amounts to an admission by ATF that it was not defrauded. (ECF 295, p. 3.) The closest he comes to mentioning elements of the offenses is when he characterizes the case as being "about what the ATF regulatory side considered to be false statements and material statements versus what the Government now claims." (Id.) In other words, to the extent Wendt is tying the license approval to the elements of the offense at all, his argument appears to be that ATF's decision to approve the license in November 2022 helps show that his statements on other applications in prior months and years were either not false or not material.

The Eighth Circuit addressed a similar issue in *Wintermute*. There, the defendant's expert intended to testify that allegedly false statements to the OCC must not have been material because "the OCC took no action after learning the facts more fully." 443 F.3d at 1001 & n.2. The Eighth Circuit affirmed the district court's decision to exclude such testimony, concluding that it "presents an erroneous understanding of section 1001's materiality element. As previously stated, to prove materiality, the government needed to show only the false statements were *capable* of influencing the OCC's decision. The government was not required to prove the false statements actually *succeeded* in influencing the OCC, or influenced that decision within any specific period of time." *Id.* at 1001. The same conclusion is appropriate here. Whether ATF approved the manufacturer's license application in November 2022 is not relevant to whether Wendt's statements to ATF in other applications in prior months and years were "*capable* of influencing" ATF's decisions regarding the transfer of machine guns. *Id.* As the Seventh Circuit has explained, "there is no requirement that the statement must in fact influence the decisionmaker (that would be reliance)." *United States v. Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999); *see also United States v. Yoon*, 128 F.3d 515, 525 (7th Cir. 1997) (rejecting defendant's argument in bank kiting case that "because the banks' officers testified that they knew the Yoons were bouncing checks, the banks were alerted to this conduct and were not actually defrauded").

Third, and in any event, ATF's approval of the manufacturer's license application for BW Outfitters is not equivalent to a determination by ATF that Wendt had not violated the Gun Control Act, much less that he had not violated 18 U.S.C. §§ 371 and 1001, neither of which are part of the Gun Control Act. As the Miller declaration explains, ATF's regulatory branch did not have access to the details of the grand jury investigation and therefore had, at most, incomplete information regarding Wendt's conduct. If the Court nonetheless allowed Wendt to present evidence and argument regarding the significance of ATF's decision to approve the manufacturer's license, the Court would have to hold a distracting and time consuming trial-within-the-trial on the overlap (if any) between the ATF regulatory team responsible for the license application and the ATF criminal team responsible for the criminal investigation, the extent to which information was (or even could be) shared between the two teams, the extent of ATF's authority to deny an application for a manufacturer's license when a criminal investigation is pending, the extent to which potential criminal conduct by Wendt would be attributable to BW Outfitters, and the difference between the Gun Control Act and the conspiracy (18 U.S.C. § 371) and false statement

26

(18 U.S.C. § 1001) statutes Wendt is accused of having violated. And all for the purpose of deciding whether ATF's actions in approving a manufacturer's license should be interpreted to mean something that no ATF witness would be allowed to testify about anyway: whether Wendt violated the law in connection with his separate applications to transfer machine guns. To the extent there is any minimal probative value in these circumstances from the fact that ATF approved the manufacturer's license application, it is more than substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed. R. Evid. 403; *see also United States v. Stull*, 743 F.2d 439, 445 (6th Cir. 1984) ("Here the potential confusion engendered by lengthy testimony about an administrative action (which the defendants knew did not preclude criminal penalties) was properly avoided."); *United States v. Murgio*, No. 15-CR-769(AJN), 2017 WL 365496, at *16 (S.D.N.Y. Jan. 20, 2017) (finding the risk of prejudice under Rule 403 "particularly clear" where government sought to introduce document that "does little more than inform the jury that an independent governmental agency, reviewing the same evidence that the jury must review, has concluded that [defendant] is guilty of the charges in the Indictment").

For these reasons, the Court GRANTS Government Motion in Limine No. 1 and will exclude evidence and argument regarding ATF's approval of BW Outfitters's application for a manufacturer's license in November 2022.

B. *The Court Grants in Part and Denies in Part Government Motion in Limine No. 2 (Evidence or Argument Regarding Public Authority /Entrapment by Estoppel Defense).*

The Eighth Circuit has "recognized three defenses based on perceived government authority: public authority, entrapment by estoppel, and innocent intent." *United States v. Xiong*, 914 F.3d 1154, 1159 (8th Cir. 2019). "'Public authority' has been described as an affirmative defense where the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in covert activity." *Id.* "Entrapment by estoppel applies when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct." *Id.* (internal punctuation omitted). "Under the innocent intent defense, a defendant claims that he lacked criminal intent." *Id.* (internal punctuation omitted). "The public authority and entrapment by estoppel defenses require pretrial disclosures, including notice and a list of witnesses, under Federal Rule of Criminal Procedure 12.3." *Id.* at 1159–60.

The Government appears to misunderstand Fed. R. Crim. P. 12.3 as it relates to possible testimony from City of Adair officials that they approved Wendt's acquisition of machine guns.

Such testimony is not part of a "public authority" defense as that phrase is used in Fed. R. Crim. P. 12.3, which focuses instead on whether a member of law enforcement somehow ensured a defendant that he would not be prosecuted for what would otherwise be unlawful conduct. Wendt will be allowed to present testimony and evidence from City of Adair officials that he was appointed as Police Chief, the responsibilities that come with that position, and the extent to which they knew about or approved his acquisition of machine guns. Such testimony does not constitute a "public authority" defense for purposes of Fed. R. Crim. P. 12.3 but rather is relevant to whether Wendt was genuinely purchasing machine guns for the "official use" of the Adair Police Department and/or whether the Police Department had a genuine interest in "demonstrations" of such weapons. To the extent Government Motion in Limine No. 2 is designed to cut off such testimony, it is DENIED.

Government Motion in Limine No. 2 fares better on the issue of entrapment by estoppel. Wendt argues, vaguely, that ATF "approved of the conduct the Government has alleged in the Indictment with respect to Wendt" and that such approval "came from the personnel, including the ATF NFA Division, who communicated with Wendt; who otherwise acted with respect to the conduct alleged in the Indictment; and who provided communications and guidance to the public." (ECF 295, p. 3.) The Court cannot tell what this means. To the extent Wendt simply wants to present evidence that ATF approved his applications to transfer firearms, this is fair game. To the extent Wendt wants to present evidence that ATF approved the application from BW Outfitters for a manufacturer's license, the evidence is inadmissible for reasons explained in the preceding section. To the extent Wendt intends to present some other sort of evidence of entrapment by estoppel—such as evidence that an ATF employee told him what he was doing was ok—the Court will need to hear the testimony outside the presence of the jury before it can rule on admissibility. For such testimony to be admissible, Wendt will need to prove the ATF employee engaged in "affirmative misconduct" by giving him information that led Wendt to believe his conduct was legal. *United States v. Benning*, 248 F.3d 772, 775 (8th Cir. 2001). The Court doubts Wendt will be able to meet this burden, as it would require him to show that the ATF employee told him it was ok to make false statements in transfer application paperwork, which seems highly unlikely. *See United States v. Kieffer*, 621 F.3d 825, 833 (8th Cir. 2010) ("In order for his reliance to be reasonable, the defendant must establish that a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further

Appellate Case: 24-2458     Page: 89     Date Filed: 10/03/2024 Entry ID: 5442880

inquiries." (quoting *United States v. Treviño–Martinez*, 86 F.3d 65, 69 (5th Cir.1996)) (internal citation omitted)). Indeed, the Court does not even understand this to be part of Wendt's defense; instead, the Court understands Wendt's position to be that the machine guns were in fact for the "official use" of the Adair Police Department or for demonstration purposes for the Police Department. If so, his defense is that his statements were true, not that he was entrapped into making false statements. Consistent with this paragraph, the Court GRANTS IN PART and RESERVES RULING IN PART on Government Motion in Limine No. 2 as it relates to entrapment by estoppel.

   C. *The Court Grants in Part and Denies in Part Government Motion in Limine No. 3 (Evidence of the City of Adair's Employment Decisions).*

   After Wendt was indicted, the City of Adair suspended him for some period of time before deciding to reinstate him to his position as Police Chief. Wendt argues that he should be permitted to present testimony and evidence regarding the reinstatement decision, as (in his view) it shows that he must not have exploited his position for personal gain. Wendt notes that "the City's decision to not discipline Wendt after its investigation was concluded was undertaken pursuant to a lower standard than proof beyond a reasonable doubt." (ECF 295, p. 6.)

   For the most part, the Court agrees with the Government that this testimony and evidence is inadmissible. Wendt appears to regard the Adair City Council as a sort of "mini-jury" that evaluated the evidence against him and concluded he did nothing wrong. This is problematic from an evidentiary standpoint because, first, it usurps the role of the jury. Moreover, it is premised on a misleading characterization of relevant events. Based on the Court's review during earlier motion practice of recordings from City Council meetings, City officials had nothing remotely close to the full body of evidence against Wendt; in fact, the City Attorney complained about his inability to get information from the FBI or U.S. Attorney's Office. Moreover, even as to the limited universe of information the City possessed, there was disagreement among City officials regarding whether Wendt engaged in misconduct and, if so, if this warranted termination. At least one City Council member appeared to misunderstand the nature of the charges against Wendt and what evidence might be material to his guilt or innocence, while others purported not to know much about the underlying facts at all. To the extent there was "consensus" among those officials, it was: (a) the criminal justice system should determine Wendt's guilt or innocence; (b) pending that determination, their small Police Department needed someone to help the other full-time officer

29

who had been covering all the shifts; and (c) it made more sense to reinstate Wendt to perform that function than to undertake the time and resources necessary to hire someone else.

Against this backdrop, the Court would be opening the door to yet another trial-within-the-trial if it allowed Wendt to offer testimony and argument suggesting that the City of Adair's decision to reinstate him means he did nothing wrong. The Government would have to respond by pointing out through evidence and testimony that the reasons for the reinstatement varied among City officials and were either disconnected from the criminal justice process or based on a misunderstanding of the relevant legal and factual issues. In these circumstances, any probative value from the City's decision to reinstate Wendt is substantially outweighed by the risk of confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 403. Courts regularly hold that evidence from—and the outcome of—parallel proceedings has minimal relevance in criminal trials. *See, e.g.*, *United States v. Hager*, 879 F.3d 550, 556 (5th Cir. 2018) (upholding exclusion of defense expert testimony that sought to "discuss the prior [civil] lawsuit and compare it to the Government's present one," as there was "little insight" to be gained from company's previous civil defense that certain data was not propriety in fraud case where defendant was accused of using company's confidential information for personal gain).

To that end, it is worth reiterating that whether Wendt violated the law is a decision for the *jury* to make, not the Adair City Council. Thus, even if City officials were fully informed of the nature and circumstances surrounding the charges against Wendt, the opinion of those officials on whether he violated the law would be just as irrelevant and inadmissible as testimony from an expert witness or ATF agent on the same topic. The Court GRANTS IN PART Government Motion in Limine No. 3 insofar as it asks the Court to preclude Wendt from offering evidence or argument about the City's decision to reinstate him or that the decision is evidence that he did nothing wrong.

The Court DENIES IN PART Government Motion in Limine No. 3 insofar as it seeks to prevent Wendt from testifying or present evidence regarding: (a) the fact that he remains the Police Chief to this day; (b) the responsibilities that come with that position; and (c) whether and to what extent City officials approved or knew about his acquisition of machine guns. Those are all appropriate topics for the presentation of evidence and argument.

### D. The Court Grants Government Motion in Limine No. 4 (Selective Prosecution).

Both sides agree that Wendt should not be allowed to present evidence or argument of selective prosecution in the sense that charges were brought against him for discriminatory reasons.

Appellate Case: 24-2458     Page: 91     Date Filed: 10/03/2024 Entry ID: 5442880

Wendt argues, however, that he should be permitted to testify that machine gun shoots are "common" and that "ATF believes they are legal." (ECF 295, p. 6.)

Unless Wendt can provide sufficient evidence to make the entrapment by estoppel defense viable, he will not be permitted to present evidence on these topics. As explained in multiple places above, it is for the Court to decide what the law allows, not ATF. ATF's putative "belief" that machine gun shoots are legal is therefore not an appropriate topic for testimony or argument except as part of an entrapment by estoppel defense for which Wendt must make a preliminary showing. *See Benning*, 248 F.3d at 775. Until and unless he makes this showing, Government Motion in Limine No. 4 is GRANTED.

E. *The Court Denies Without Prejudice Government Motion in Limine No. 5 (Business Records).*

Assuming proper certification, the Court is ready and willing to admit documents into evidence pursuant to the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6), 902(11). No foundational witness will be necessary. As the Government has not specifically identified the documents it believes are governed by the exception, however, the Court cannot grant any relief at this time. The Court instead DENIES WITHOUT PREJUDICE Government Motion in Limine No. 5.

F. *The Court Grants Government Motion in Limine No. 6 (Second Amendment).*

Although Wendt argued in a motion to dismiss that the charges against him violate the Second Amendment, both sides acknowledge this is not an appropriate topic for argument to the jury. The Court agrees and therefore GRANTS Government Motion in Limine No. 6. Neither side may present evidence or make arguments to the jury regarding the Second Amendment.

G. *The Court Denies Without Prejudice Government Motion in Limine No. 7 (Wendt's Communications with Third Parties).*

The Government argues, correctly, that Wendt's communications with third parties are likely to be admissible notwithstanding hearsay rules because any statements made by the third parties are being offered to provide context for Wendt's own statements, not for the truth of the matter asserted by the third party. *See, e.g.*, *United States v. Lamm*, 5 F.4th 942, 949 (8th Cir. 2021). As the Government has not, however, identified any specific third party statements (or exhibits containing third party statements) that it intends to offer pursuant to this principle, there is nothing for the Court to admit at this time. The Court therefore DENIES WITHOUT PREJUDICE Government Motion in Limine No. 7.

Add. 088

### H. The Court Denies Without Prejudice Government Motion in Limine No. 8 (Wendt's Self-Serving Hearsay).

The Government correctly notes that although it can introduce Wendt's out-of-court statements in accordance with Fed. R. Evid. 801(d)(2)(A), the Rule only permits admission of an opposing party's out-of-court statement. It does not permit a party to offer evidence of its own out-of-court statement. Wendt therefore cannot rely on Fed. R. Evid. 801(d)(2)(A) as a basis for offering his own out-of-court statements into evidence.

All the same, there are other grounds on which a party might be permitted to offer evidence of its own out-of-court statement. For example, if the statement is not being offered for the truth of the matter asserted, it might be admissible as non-hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: . . . a party offers in evidence to prove the truth of the matter asserted in the statement."). Wendt also might be permitted to offer his own out-of-court statement as a prior consistent statement under Fed. R. Evid. 801(d)(1)(B) or under the "rule of completeness" set forth in Fed. R. Evid. 106, which states: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time."

Until and unless Wendt offers one of his own statements into evidence, the Court cannot make a determination has to whether he has a legitimate basis for doing so. The Court therefore DENIES WITHOUT PREJUDICE Government Motion in Limine No. 8.

### I. The Court Grants Government Motion in Limine No. 9 (ATF's Lack of Diligence).

Government Motion in Limine No. 9 revisits an issue the Court has addressed elsewhere: the relevance (or lack thereof) of how ATF handled Wendt's applications for the transfer of machine guns. For reasons explained above, the Court agrees that ATF's putative "negligence or lack of diligence in uncovering the fraud is not a defense." *United States v. Hoffecker*, 530 F.3d 137, 177 (3d Cir. 2008). The Court therefore GRANTS Government Motion in Limine No. 9 and will not permit Wendt to present testimony or argument that ATF's failure to uncover the alleged fraud or false statements is a defense to the charges against him. This does not mean, of course, that ATF's approval of the transfer applications is irrelevant or that Wendt cannot attach significance to ATF's approval decisions, particularly as it relates to elements like falsity and materiality.

Add. 089

*J.   The Court Grants Government Motion in Limine No. 10 (Discovery Matters).*

With one exception, Wendt agrees not to present evidence or argument that the Government allegedly failed to comply with its discovery obligations. He does, however, wish to have his expert testify ATF failed to produce certain guidance that, in Wendt's view, would help demonstrate that his statements in the purchase law letters and demonstration law letters were not false or material. For reasons set forth above, the Court will not permit the expert to offer testimony on this issue, nor will it otherwise allow Wendt to present evidence or argument about alleged deficiencies in the Government's discovery. The Court therefore GRANTS Government Motion in Limine No. 10.

*K.   The Court Grants Government Motion in Limine No. 11 (Jury Nullification).*

Both sides agree it would be impermissible for Wendt to present evidence or argument regarding jury nullification. The Court therefore GRANTS Government Motion in Limine No. 11.

*L.   The Court Denies Without Prejudice Government Motion in Limine No. 12 (Reasonable Doubt).*

Finally, the Government asks the Court to prevent both sides from redefining reasonable doubt. While it is true that the definition of reasonable doubt is for the Court to provide in jury instructions, it is too difficult in the abstract to grant a motion in limine on this topic. The Court therefore DENIES WITHOUT PREJUDICE Government Motion in Limine No. 12. As with other Motions in Limine that have been denied without prejudice, the Government may renew Motion in Limine No. 12 during trial if it believes Wendt's counsel is exceeding the boundaries of permissible advocacy as it relates to the definition of reasonable doubt.

**VII.   CONCLUSION.**

The Court GRANTS IN PART and DENIES IN PART the Government's Motion to Exclude Wendt's Proffered Expert Testimony (ECF 282), GRANTS IN PART and DENIES IN PART each side's Motions in Limine (ECF 288; ECF 296), and DENIES Wendt's Motion Regarding the Admission of Audio and Video Evidence at Trial (ECF 297). Most of these rulings are WITHOUT PREJUDICE and subject to reconsideration at trial when the Court will have greater context for evaluating the parties' positions.

Appellate Case: 24-2458   Page: 94   Date Filed: 10/03/2024 Entry ID: 5442880

IT IS SO ORDERED.

Dated: February 2, 2024

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE

34

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | 4:22-cr-00199-SHL-HCA-1<br><br><br>**ORDER DENYING<br>MOTION TO DISMISS** |

The Government alleges that Defendant Bradley Eugene Wendt exploited his position as Chief of Police for the City of Adair, Iowa, by making false statements to the Bureau of Alcohol, Tobacco, and Firearms (ATF) to obtain machine guns. Wendt argues that any false statements he allegedly made are not material because the applicable federal regulation violates the Second Amendment and sometimes does not require any statements at all. The Court disagrees and holds that the Government can lawfully prosecute someone for allegedly making false statements about the intended purpose and transferee of machine guns. Thus, Wendt's Motion to Dismiss is DENIED.

## I.    BACKGROUND

When ruling on a motion to dismiss, the Court accepts the allegations in the Indictment as true. *United States v. McKee*, 68 F.4th 1100, 1102 (8th Cir. 2023). Since July 2, 2018, Wendt has been employed as the Chief of Police for the City of Adair, Iowa. (ECF 2, ¶ 1.) Approximately 800 people live in Adair, and the Adair Police Department employs two full-time police officers, including Wendt. (Id.) In addition to being the Chief of Police, Wendt owns and operates two firearms supply stores: BW Outfitters, Inc., and B Wout Fitters, Inc. (Id., ¶ 2.) B Wout Fitters, Inc., is a Federal Firearms License (FFL) with Special Occupational Tax (SOT). (Id.) Wendt and, by extension, the Government, refer to both stores collectively as "BW Outfitters." (Id., n.1.)

This case arises out of a federal statute criminalizing the possession and transportation of machine guns manufactured after May 19, 1986. *See* 18 U.S.C. § 922(o); 27 C.F.R. § 479.105(a). Federal law contains an exception, however, for use by the United States, any State, or any department, agency, or political subdivision thereof with prior approval by the ATF. *See* 18 U.S.C. § 922(o)(2)(A); 27 C.F.R. § 479.105(a). The parties agree that the City of Adair is a political

Appellate Case: 24-2458     Page: 96     Date Filed: 10/03/2024 Entry ID: 5442880

subdivision of the State of Iowa and that it (or, more precisely, its Police Department) can, through its Chief of Police, lawfully acquire and possess machine guns under section 922(o)(2)(A). (ECF 211-1, p. 9; ECF 223, p. 6.) The Indictment describes two methods that can be used for such acquisitions. (ECF 2, ¶¶ 8–10.) Wendt's alleged misuse of these two methods forms the basis for the first nineteen of the twenty charges against him in the Indictment.

Under the <u>first</u> method, a government agency (such as a police department) submits a "purchase law letter" seeking approval from ATF to make a direct purchase of a machine gun in the agency's name. (Id., ¶¶ 7–8, 10.) The agency "typically identifies the quantity, make, model, and cost of the machine gun it seeks to purchase. The agency further represents the machine gun is being acquired for the agency's official use and not for the purpose of resale or transfer." (Id., ¶ 11.) If the transaction is authorized and consummated, the agency becomes the registered owner of the machine gun.

Under the <u>second</u> method, the government agency submits a "demonstration law letter" to an FFL-SOT—i.e., a federal firearms licensee authorized to possess machine guns—stating that the agency has "a need for a particular machine gun or an interest in seeing a demonstration of a particular machine gun for potential future purchase." (Id., ¶¶ 2, 12.) The FFL-SOT then submits that letter to ATF as part of an application to acquire a machine gun "for use as a sample for demonstration to potential law enforcement agency purchasers." (Id., ¶ 9.) If the transaction is authorized and consummated, the FFL-SOT becomes the registered owner of the machine gun.

"Purchase law letters" and "demonstration law letters" are "drafted by a law enforcement official, in their official capacity as a law enforcement officer." (Id., ¶ 10.) The Indictment alleges that Wendt exploited his position as Chief of Police to unlawfully obtain machine guns through both types of letters. As to purchase law letters, the Indictment alleges that, between October 2019 and August 2021, Wendt drafted, signed, and transmitted letters to ATF "in which he falsely stated: (1) that the Adair Police Department was purchasing machine guns for the official responsibilities and duties of the Adair Police Department; (2) that the machine guns would be the property of the Adair Police Department; and (3) that the machine guns were not being acquired for the purpose of resale or transfer." (Id., ¶¶ 19, 26.) The Indictment alleges that Wendt used purchase law letters to acquire ten machine guns for the purported official use by the City of Adair. (Id., ¶ 26.) Wendt then allegedly sold six of those machine guns for personal profit. (Id., ¶¶ 26–28.)

2

For example, in December 2020, the Indictment alleges that Wendt submitted a purchase law letter(s) to acquire three H&K, MP7A2 machine guns for $2,080 each for the City of Adair, which he paid for with his own funds. (Id., ¶ 27.) In July 2021, he sold two of those guns to a Florida-based buyer for $50,000, which the buyer wired directly to Wendt's personal bank account. (Id.) In February 2022, Wendt sold the third MP7A2 machine gun and an H&K, MP5SD3 machine gun—similarly acquired for official use and paid for with $3,300 of Wendt's own funds—to an Alabama-based buyer for $34,500. (Id., ¶ 28.) The check for the second transaction was addressed to "Brad Wendt" and deposited into Wendt's BW Outfitters account. (Id.) Wendt allegedly made a personal profit of $74,960 from these transactions. (Id., ¶¶ 27–28.)

The Indictment also alleges that Wendt misused demonstration law letters. It alleges that, between July 2018 and August 2022, Wendt signed and transmitted demonstration law letters in which "Wendt wrote from himself as the Adair Chief of Police to himself as the owner of BW Outfitters [and] falsely stated that the Adair Police Department wanted a demonstration of the machine guns for potential future purchase." (Id., ¶ 20.) BW Outfitters submitted those letters to ATF and acquired thirteen machine guns purportedly for demonstration by the Adair Police Department. (Id., ¶ 33.)

For example, in a demonstration letter dated July 19, 2020, which resulted in BW Outfitters acquiring an FN, M2HB, .50 caliber, belt-fed machine gun for official demonstration to the Adair Police Department, Wendt stated that the belt-fed gun was "ideal" for the police department "based on its price and availability." (Id., ¶ 34.) He personally paid $17,896 for the gun and, after BW Outfitters received it, mounted it to his personally-owned, armored Humvee. (Id.) On April 16, 2022, Wendt then charged members of the public $5 per round of ammunition to shoot it. (Id.) (The public shooting event separately gives rise to Count 20 of the Indictment, which alleges illegal possession of a machine gun.) (Id., ¶¶ 34, 51.) Similarly, in a demonstration letter authored on November 29, 2021, in an attempt to acquire a M134 minigun, Wendt stated the Adair Police Department wanted the gun for official demonstration "for possible future purchase and use of our officers in the performance of their official duties" because the minigun was "suitable for engagements and suppressive fire." (Id, ¶ 36.) ATF disapproved the transfer because the minigun was "not suitable for law enforcement use." (Id.)

Wendt allegedly submitted demonstration law letters to FFL-SOTs other than BW Outfitters, including Williams Contracting and others around the country. (Id., ¶¶ 37, 41–42.)

3

Add. 094

These letters allegedly contained similar false statements, including statements describing the requested machine gun as "particularly suitable for [Adair Police Department's] officers while conducting special operations and high-risk prisoner transportation details." (Id., ¶ 41.) In total, Wendt wrote twenty-two demonstration letters to these other FFL-SOTs requesting demonstrations "for potential future purchase" of fifty-two machine guns, twenty-seven of which were in fact transferred and acquired by those FFL-SOTs. (Id., ¶ 4.) The Indictment states that "the Adair Police Department was not interested in and was not considering purchasing the machine guns identified" in the letters. (Id., ¶ 20.)

Based on this conduct, the Indictment alleges in Count 1 that Wendt conspired with his now-dismissed co-defendant, Robert Allen Williams, to make false statements and defraud ATF in violation of 18 U.S.C. §§ 371, 1001(a)(2). (Id., ¶¶ 15–44.) In Counts 2 through 19, the Indictment alleges that Wendt made false statements to ATF via purchase law letters and demonstration law letters in violation of 18 U.S.C. § 1001(a)(2). (Id., ¶¶ 45–50.) Finally, in Count 20, the Indictment alleges Wendt illegally possessed and aided and abetted the possession of a machine gun in violation of 18 U.S.C. §§ 922(o), 924(a)(2), and 2 when he hosted a public machine gun shoot on April 16, 2022. (Id., ¶¶ 31, 51.)

## II.  LEGAL ANALYSIS.

### A.  Motion to Dismiss Standard.

A motion to dismiss an indictment should be granted if, accepting the factual allegations as true, they cannot form the basis of the charged offense. *See United States v. Hansmeier*, 988 F.3d 428, 436 (8th Cir.) (citations omitted), *cert. denied*, 142 S. Ct. 262 (2021). The Indictment alleges Wendt committed two categories of offenses: conspiring to and making false statements (Counts 1–19) and illegally possessing a machine gun or aiding and abetting the same (Count 20).

Regarding Counts 1 through 19, 18 U.S.C. § 1001(a)(2) makes it a crime to, "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . (2) make[] any materially false, fictitious, or fraudulent statement or representation." To establish a violation of section 1001(a)(2), the Government must prove: "(1) the defendant made a statement; (2) the statement was false, fictitious or fraudulent as the defendant knew; (3) the defendant made the statement knowingly and willfully; (4) the statement was within the jurisdiction of a federal agency; and (5) the statement was material." *United States v. Rice*, 449 F.3d 887, 892 (8th Cir. 2006) (quotation omitted). The materiality

4

element does not require the Government to show that the agency "actually relied" on the statement. *United States v. Hicks*, 619 F.2d 752, 754 (8th Cir. 1980). Rather, a statement is "material" if it "has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made." *United States v. Cowden*, 677 F.2d 417, 419 (8th Cir. 1982) (quotation omitted).

As to Count 20, 18 U.S.C. § 922(o) makes it a crime to transfer or possess a machine gun. To establish a violation of section 922(o), the Government must prove the defendant possessed a machine gun or aided and abetted the possession of a machine gun. *United States v. Mann*, 701 F.3d 274, 286 (8th Cir. 2012); *see also* 18 U.S.C. § 921(a)(24) (defining "machine gun"). The exception for possession by federal, state, or local government agents is an affirmative defense, not an element that must be charged in the Indictment. *United States v. Just*, 74 F.3d 902, 904 (8th Cir. 1996).

Wendt[1] makes two primary arguments in support of his Motion to Dismiss. <u>First</u>, he argues that the Second Amendment provides law enforcement agencies with an unqualified right to possess machine guns, and thus ATF's regulation, 27 C.F.R. § 479.105, is unconstitutional in purporting to impose restrictions or conditions on the exercise of that right. (ECF 211-1, pp. 12–19.) If the regulation is unconstitutional, the argument continues, any false statements allegedly made by Wendt cannot be "material" for purposes of section 1001(a)(2). (ECF 234, p. 3.) <u>Second</u>, Wendt argues that the regulatory process he followed to acquire the machine guns either did not cover his conduct because "purchase law letters" are not actually required under the governing regulation or *should not* have covered his conduct because the regulatory requirement is inconsistent with the language of section 922(o)(2)(A). (Id., pp. 2–3; ECF 211-1, pp. 8–12, 19–20.) Again, this argument, if accepted, means his allegedly false statements could not have been material for purposes of section 1001(a)(2). (Id.)

B.    *Federal Laws and Regulations Governing the Acquisition and Possession of Machine Guns Do Not Violate the Second Amendment.*

Wendt concedes, as he must, that the Eighth Circuit has upheld the constitutionality of the federal statute prohibiting machine gun possession as it applies to individuals. *See United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) (rejecting constitutional challenge to 18 U.S.C. §

---

[1] Wendt also joins the motion to dismiss filed by Williams, his former co-defendant, which raised many of the same arguments. (ECF 211; ECF 177.) To the extent Williams' motion advanced different arguments, those will be addressed as if raised by Wendt directly.

Add. 096

Appellate Case: 24-2458    Page: 100    Date Filed: 10/03/2024 Entry ID: 5442880

922(o)). He argues, however, that law enforcement officers like himself are in a different position for Second Amendment purposes than private citizens. The latter, he argues, only have the constitutional right to possess firearms "in common use," whereas the former have broader constitutional rights to possess unusually dangerous weapons like machine guns.

Wendt's argument revolves partly around *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which held that courts cannot engage in means-end scrutiny to determine the constitutionality of a firearm law or regulation. Instead, courts must engage in a two-step analysis: "<u>first</u>, courts must determine whether 'the Second Amendment's plain text covers an individual's conduct,' and, if so, <u>second</u>, the Government must provide historical evidence to show the regulation is sufficiently analogous to Founding-era [gun] restrictions." *United States v. Hammond*, --- F. Supp. 3d ----, 2023 WL 2319321, at *2 (S.D. Iowa Feb. 15, 2023) (quoting *Bruen*, 142 S. Ct. at 2129–30). Wendt argues that both steps are satisfied here because, in his view, the Second Amendment's plain text covers the possession of machine guns for law enforcement purposes, and there are no analogous Founding-era regulations that would allow the Government to prohibit such possession by law enforcement agencies.

Wendt's constitutional argument fails for multiple reasons, starting with the fact that it ignores the repeated allegations in the Indictment that he was acquiring the machine guns for himself *personally*, not the Adair Police Department. The Indictment alleges, for example, that Wendt acquired the machine guns "for his own personal profit and gain" (ECF 2, ¶ 19), "for his personal use, enjoyment, profit, and gain" (id., ¶ 20), and with the expectation that he would achieve "a significant personal profit" (id., ¶ 4). Indeed, the main thrust of the Indictment is that Wendt "exploited his position as the Adair Chief of Police" by lying repeatedly to ATF so he could acquire machine guns for his own benefit. (Id., ¶ 3.) For present purposes, the Court must accept these allegations as true. *See McKee*, 68 F.4th at 1102. It follows that the Court must evaluate the constitutionality of the relevant laws and regulations under the standards applicable to *individuals*, not *law enforcement agencies*. This means *United States v. Fincher* is governing, and Wendt's possession of machine guns "is not protected by the Second Amendment." 538 F.3d at 874. In other words, Wendt's constitutional argument fails at the first *Bruen* step.

One of the very first sentences of Wendt's Brief illustrates the problem when it asserts that "Wendt was actually purchasing machine guns for the use of the Adair Police Department." (ECF 211-1, p. 3.) The Indictment alleges the opposite: that Wendt was *lying* when he claimed to be

6

purchasing machine guns for the use of the Adair Police Department. The Government may or may not be able to prove this allegation beyond a reasonable doubt at trial, but Wendt offers no reason—much less any persuasive authority—why the Court would be permitted to ignore it on a motion to dismiss and accept his "facts" instead.

To the extent Wendt is arguing that *Fincher* is no longer good law in light of *Bruen*, the argument is similarly meritless. The Court must follow *Fincher* unless it has been "repudiated or undermined by later authority, such as a statute, an intervening Supreme Court decision, or en banc decision*." Dean v. Searcey*, 893 F.3d 504, 511 (8th Cir. 2018) (quoting Bryan A. Garner et al., The Law of Judicial Precedent 38 (West 2016)). In all material ways, the Court concludes *Fincher* was not undermined by *Bruen*. *Fincher* followed *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008), for the proposition that the Second Amendment only protects the possession of weapons "in common use," as opposed to unusually dangerous weapons like machine guns. *See Fincher*, 538 F.3d at 874. The Eighth Circuit has already recognized, post-*Bruen*, that this proposition remains good law. *See United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) (citing *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.)). This Court must follow the Eighth Circuit's lead.

Moreover, *Fincher* did not engage in the sort of means-end scrutiny held by *Bruen* to be inappropriate. Instead, the Eighth Circuit did exactly what *Bruen* requires: it evaluated whether the defendant's conduct was covered by the text of the Second Amendment. *Compare Bruen*, 142 S. Ct. at 2129–30, *with Fincher*, 538 F.3d at 874. In that respect, *Fincher* is one of many Eighth Circuit cases that essentially foreshadowed *Bruen* by focusing on the text of the Second Amendment and Founding-era firearm regulations, rather than engaging in means-end scrutiny. *See, e.g.*, *United States v. Adams*, 914 F.3d 602, 605–07 (8th Cir. 2019); *United States v. Bena*, 664 F.3d 1180, 1183–84 (8th Cir. 2011). Since *Bruen* was decided last year, the Eighth Circuit has already twice affirmed pre-*Bruen* precedent upholding the constitutionality of other subsections of 18 U.S.C. § 922. *See Jackson*, 69 F.4th at 502 (re-affirming constitutionality of section 922(g)(1)); *United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023) (re-affirming constitutionality of section 922(g)(5)). The Court is confident it will do the same as to section 922(o) and *Fincher*.

Wendt has not, in any event, cited a single case from anywhere in the country striking down section 922(o) or the relevant regulation, 27 C.F.R. § 479.105, on Second Amendment grounds. Nothing in *Bruen* or other governing authority suggests the Government is prohibited from

requiring a person to provide information prior to obtaining an unusual and dangerous weapon like a machine gun. To the contrary, *Bruen* kept intact the following language from *Heller*:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

> We also recognize another important limitation on the right to keep and carry arms. [*United States v.*] *Miller*[, 307 U.S. 174, 59 S.Ct. 816 (1939)] said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.' 307 U.S., at 179, 59 S.Ct. 816. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'

*Heller*, 554 U.S. at 626–27. In concurring opinions in *Bruen*, three justices from the majority expressly reaffirmed the continuing vitality of this portion of *Heller*. *See Bruen*, 142 S. Ct. 2111, 2157 (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.). Accordingly, several courts have held post-*Bruen* that making false statements in connection with the acquisition or transfer of firearms falls outside the scope of the Second Amendment altogether. *See, e.g.*, *United States v. Scheidt*, No. 1:22-CR-49-HAB, 2023 WL 2865349, at *3 (N.D. Ind. Apr. 10, 2023); *United States v. Soto*, No. SA-22-CR-JKP, 2023 WL 1087886, at *3 (W.D. Tex. Jan. 27, 2023); *United States v. Gonzalez*, No. 1:22-cr-054, 2022 WL 17583769, at *2 (D. Utah Dec. 12, 2022). While this Court need not go that far today, it has no trouble concluding that the Second Amendment does not preclude the Government from prosecuting Wendt for allegedly making false statements that allowed him to obtain machine guns for his personal use and benefit.

### C. The Indictment Does Not Misstate the Law as It Relates to Purchase Law Letters.

With two exceptions (only one of which is relevant here), Congress has declared that "it shall be unlawful for any person to transfer or possess a machine gun." 18 U.S.C. § 922(o); *see also United States v. Pearson*, 8 F.3d 631, 633 (8th Cir. 1993) (recognizing that section 922(o) "adequately addresse[s] the relationship between the proliferation of machine guns, violent crime, and narcotics trafficking"). The relevant exception applies to machine guns transferred to or possessed by the United States, a State, or a department, agency, or political subdivision thereof.

8

*Id.* at § 922(o)(2)(A).[2] Congress delegated authority to the Attorney General to promulgate rules and regulations to enforce section 922(o) and other firearms laws. *See Kajmowicz v. Whitaker*, 42 F.4th 138, 146 (3d Cir. 2022); *see also* 18 U.S.C. § 926(a); 26 U.S.C. § 7805(a). The Attorney General subdelegated this authority to the Director of ATF. *See Whitaker*, 42 F.4th at 146, fn. 2.

Pursuant to its delegated authority, ATF has promulgated rules regarding the "procedural and substantive requirements relative to the importation, manufacture, making, exportation, identification and registration of, and the dealing in, machine guns." 27 C.F.R. § 479.1. These rules include requirements that must be satisfied before ATF will approve the transfer or possession of a machine gun. 27 C.F.R. § 479.105. Two types of permissible transfers of machine guns are relevant here: (i) "the sale or distribution of such weapons for the official use of Federal, State or local governmental entities," *id.* § 479.105(c); and (ii) the transfer of machine guns to authorized dealers when "it is established by specific information the expected governmental customers who would require a demonstration of the weapon, information as to the availability of the machine gun to fill subsequent orders, and letters from governmental entities expressing a need for a particular model or interest in seeing a demonstration of a particular weapon," *id.* § 479.105(d). The parties have used the phrase "purchase law letters" to describe the first method and "demonstration law letters" to describe the second.

Wendt argues that section 479.105 "does not cover the purchase of machine guns by a law enforcement agency" and therefore the Indictment misstates the law every time it refers to a "purchase law letter" requirement. (ECF 211-1, p. 19.) Wendt's argument arises out of the contrast between section 479.105(d), which expressly mentions "letters" in connection with the demonstration of machine guns, and section 479.105(c), which does not mention "letters" in connection with the possession or use of machine guns by Federal, State, or local governmental entities. Wendt concedes that requiring "demonstration law letters" is consistent with the regulation but argues that requiring "purchase law letters" is not. (ECF 234, pp. 2–3.)

Wendt's position falls apart quickly when scrutinized. Federal law prohibits the transfer of machine guns unless a "written application" is filed with and approved by ATF. *See* 26 U.S.C. § 5812(a); *see also Whitaker*, 42 F.4th at 145–46 (explaining the interrelationship between 26 U.S.C. § 5812 and firearm laws and regulations set forth in 18 U.S.C. §§ 921–28 and 27 C.F.R. Chapter

---

[2] The second exception applies to the lawful transfer or possession of a machine gun before section 922(o) took effect in 1986. *Id.* at § 922(o)(2)(B); *see also* 27 C.F.R. § 479.105(b).

Appellate Case: 24-2458      Page: 104      Date Filed: 10/03/2024 Entry ID: 5442880

479). Unsurprisingly, federal law states that "[a]pplications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." 26 U.S.C. § 5812(a). This obviously would include a transfer that, if consummated, would place the transferee in violation of section 922(o). Thus, considered collectively, section 5812(a) and section 922(o) clearly envision that applicants will submit *something* in writing to ATF to establish that the proposed transferee of the firearm is a qualifying governmental entity. Whether one calls it a "purchase law letter" or something else is immaterial. The point is that it must enable ATF to discern whether the transferee can lawfully possess the machine gun.

Ironically, Wendt raises the issue of *Chevron*[3] deference in his Brief, arguing that it does not apply here. (ECF 211-1, pp. 9–12.) The Court agrees that it does not apply but has a very different view than Wendt for why this is so. Section 5812(a) is a federal statute—i.e., an Act of Congress—requiring an applicant to demonstrate, in writing, that the proposed transferee of a machine gun is entitled to lawfully possess it. Section 922(o) is likewise a federal statute prohibiting the transfer or possession of machine guns except in two circumstances. If, as Wendt argues, 27 C.F.R. § 479.105(c)—a federal *regulation*—does not require a person to submit anything in writing to ATF before transferring a machine gun, the regulation would appear to contradict the plain language of the statute. This is impermissible under *Chevron*. *See* 467 U.S. at 842–43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). In other words, it is *Wendt's* interpretation of the regulation, not the Government's, that creates *Chevron* problems. In these circumstances, the Court has little difficulty concluding that the Indictment does not misstate the law as it relates to "purchase law letters."

Wendt cites no cases holding otherwise, nor are any cited in his former co-defendant's motion to dismiss (ECF 177), which Wendt joins by reference. His position instead rests, as the Government argues, on "half-baked legal arguments" that analyze 27 C.F.R. § 479.105(c) and (d) in a vacuum and without the surrounding context provided by 26 U.S.C. § 5812(a) and 18 U.S.C. § 922(o). (ECF 223, pp. 1, 8–9.) Once the surrounding context is considered—as it must be— Wendt's argument fails. When someone wants to transfer a machine gun to a governmental entity, federal law clearly requires the submission of something in writing to ATF establishing that the

---

[3] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

10

proposed transferee is lawfully entitled to possess the firearm under 18 U.S.C. § 922(o)(2)(A). The Indictment does not misstate the law on this issue.

> D. *The Indictment Correctly Recognizes That It Is a Criminal Offense to Lie About the Purpose or Transferee of a Proposed Transfer of Machine Guns.*

Because federal law requires an applicant to affirm, in writing, that the proposed transferee of a machine gun is lawfully permitted to possess it, lying about the identity of the proposed transferee or purpose of the proposed transfer is clearly a criminal offense that can be prosecuted under section 1001(a)(2). *See United States v. Kelerchian*, 937 F.3d 895, 907–08 (7th Cir. 2019). Indeed, section 1001(a)(2) is broad in scope and imposes criminal liability even for materially false statements that are *not* required by law or regulation. *See Brogan v. United States*, 522 U.S. 398, 400 (1998) ("By its terms, 18 U.S.C. § 1001 covers 'any' false statement—that is, a false statement 'of whatever kind.'" (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)); *see also Cohen v. United States*, 201 F.2d 386, 391 (9th Cir. 1953) (rejecting defendant's argument that section 1001 is limited to statements "which were required to be made by some law or regulation"). Accordingly, the Court rejects Wendt's request for the Court to review grand jury proceedings to see if grand jurors were properly instructed on the law. *See United States v. Hintzman*, 806 F.2d 840, 843 (8th Cir. 1986) (defendants face a "heavy burden" in overcoming the "strong presumption of regularity" in grand jury proceedings).

The Court likewise rejects Wendt's other arguments for dismissal, including his position that the allegedly false statements are not "material" as a matter of law. *See Hansmeier*, 988 F.3d at 436. A statement is material if it has a "natural tendency to influence or was capable of influencing" the government actor. *United States v. Benton*, 890 F.3d 697, 712 (8th Cir. 2018) (quotation omitted), *judgment corrected* (May 15, 2018). This standard is met even when the statement did not "succeed[] in doing so." *Id.* Under the facts alleged in the Indictment, this is not a close call: a reasonable juror could find Wendt's allegedly false statements to be material.

To understand why, it is again necessary to review section 922(o)(2)(A), which states that it "shall be unlawful" for a person to transfer or possess a machine gun except "a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof." 18 U.S.C. § 922(o)(2)(A). In turn, ATF is required, by statute, to "approve[] the transfer and registration of the firearm" before any proposed transaction may be consummated. 26 U.S.C. § 5812(b). "Applications shall be

denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." *Id.* § 5812(a).

Against this backdrop, Wendt allegedly submitted letters on City of Adair letterhead expressing an intent to buy machine guns "for the . . . Adair Police Department" and "not . . . for the purpose of resale or transfer." (ECF 2, ¶ 19; *see also* ECF 223-1.) Wendt also allegedly submitted letters on City of Adair letterhead to FFL-SOTs expressing the City's putative interest in the demonstration of firearms. The Government alleges that these statements were false, and that Wendt intended to acquire the machine guns for himself or for his personal benefit. If these allegations are proven, it would mean ATF approved the transfer of machine guns that ATF was forbidden by statute from approving. It is difficult to imagine a more clear-cut case for materiality.

The Eighth Circuit has repeatedly upheld the materiality of allegedly false statements in analogous circumstances. In *United States v. Kieffer*, for example, the Eighth Circuit affirmed a conviction under section 1001 when the defendant falsely claimed to be an attorney to gain admission to federal court. 621 F.3d 825, 833 (8th Cir. 2010). Similarly, *United States v. Henderson* affirmed the conviction of a pageant competitor who lied about her physical health to obtain social security benefits. 416 F.3d 686, 692 (8th Cir. 2005). Indeed, the Eighth Circuit has affirmed convictions under section 1001 in the context of far less consequential statements. *United States v. Benton* affirmed a conviction under section 1001 for false statements in a report to the Federal Election Commission because it was "possib[le]" the FEC "might have taken different action" if the report had been truthful. 890 F.3d at 712. *United States v. Robinson* held that a false statement to an FBI agent was "material" because it was designed to deflect suspicion from the defendant and therefore was "capable" of influencing the investigation. 809 F.3d 991, 1000 (8th Cir. 2016); *see also United States v. Mitchell*, 388 F.3d 1139, 1143 (8th Cir. 2004) (false statement to INS that defendant was raped was material because it influenced visa fraud investigation against alleged rapist despite not being "determinative" as to the outcome of that investigation); *United States v. Chmielewski*, 218 F.3d 840, 842–43 (8th Cir. 2000) (understating value of goods on export declaration form was material where customs officials considered it in determining which cargo to inspect and values were used for statistical purposes in trade negotiations with other countries). These cases overwhelmingly support the materiality of Wendt's statements regarding the intended purpose and transferee of the machine guns.

Ultimately, the jury will have to decide if Wendt's statements were material. *See United States v. Turner*, 189 F.3d 712, 722 (8th Cir. 1999) (citing *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995)). For purposes of determining whether the facts set forth in the Indictment could reasonably allow a juror to reach that conclusion, however, the allegations of the Indictment are clearly sufficient. *See Hansmeier*, 988 F.3d at 436.

      E.   *The Court Rejects Wendt's Remaining Arguments.*

Wendt's final arguments for dismissal are also meritless. He argues that he is entitled to qualified immunity because his decision to submit law letters was a discretionary function that did not violate clearly established law. (ECF 211-1, p. 21.) This argument is a non-starter because "[q]ualified immunity shields government officers from **civil** damages liability." *Kuessner v. Wooten*, 987 F.3d 752, 755 (8th Cir. 2021) (emphasis added). This is a criminal case. Moreover, the main thrust of the Indictment is that Wendt was *not* performing a discretionary function when he tried to acquire dozens of machine guns for a two- or three-person police department in a rural community, but rather was trying to enrich himself personally. It is clearly established that people cannot lie to federal agencies to make money. *See, e.g.*, *Henderson*, 416 F.3d at 692; *see also Kelerchian*, 937 F.3d at 907–08.

Similarly, the Court rejects Wendt's position that the Indictment should be dismissed because the law is ambiguous. (ECF 211-1, pp. 20–22.) It is difficult to tell from his Brief which "law" he is even referring to, which is reason enough to defeat his position. Section 1001(a) is, in any event, not ambiguous. It makes it a criminal offense to lie to the federal government on a material matter—here, *inter alia*, whether machine guns were for the possession and use of a law enforcement agency or Wendt personally. There is no ambiguity or void-for-vagueness problem in these circumstances. *See United States v. Theunick*, 651 F.3d 578, 585–87 (6th Cir. 2011) (rejecting void-for-vagueness challenge to laws regulating the possession and use of machine guns).

Finally, the Court rejects Wendt's challenge to the legal sufficiency of Count 20. Unlike Counts 1 through 19, which revolve around false statements, Count 20 charges Wendt with a straightforward violation of section 922(o), as well as aiding and abetting the same. Meaning: he is accused of possessing a machine gun in his personal capacity and aiding and abetting others to do the same. The Indictment provides context in paragraphs 23, 31, and 32, which allege that Wendt took money from private citizens at an event in Woodbine, Iowa, on April 16, 2022, in exchange for allowing the private citizens to shoot machine guns registered to the City of Adair. It

Add. 104

is not difficult, in context, to understand the Government's theory. On the aiding and abetting charge, a person generally must "possess" a gun, at least temporarily, in order to shoot it. Private citizens are usually not, however, understood as operating "by or under the authority of" a government agency. The Government's theory on Count 20 is thus that Wendt aided and abetted the unlawful possession of machine guns by private citizens—a theory that would be supported if the Government proves that the public event resulted in payments to Wendt (as opposed to the City of Adair) and occurred in a town other than Adair.

Count 20 is on somewhat shakier footing as it relates to Wendt's alleged *personal* possession of the machine gun. *See United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006) (dismissing indictment and concluding that section 922(o)(2)(A) was unconstitutionally vague as applied to police officer who possessed machine gun). Still, the Indictment alleges enough to survive. The Government's theory appears to be that by taking money from private citizens in a town other than Adair in exchange for allowing them to shoot a machine gun, Wendt was treating the machine gun as his personal property rather than the City's. This theory is buttressed by surrounding allegations of the Indictment that Wendt lied to ATF when he said machine guns were being purchased by or for the City of Adair. Accepting these allegations as true, the Court cannot conclude that Count 20 fails as a matter of law as it pertains to Wendt's personal possession of the machine gun. *See Theunick*, 651 F.3d at 587 (rejecting void-for-vagueness challenge where "the Defendants appear to have possessed the weapons exclusively in a personal capacity, without any legitimate law enforcement purpose").

## III.    CONCLUSION

The Second Amendment does not prohibit Congress from making it a criminal offense to lie about the intended purpose and transferee of machine guns. Nor can those alleged lies, if proven, be deemed immaterial as a matter of law given their close relationship to federal restrictions on the possession and transfer of machine guns. Wendt's Motion to Dismiss (ECF 211) is therefore DENIED.

IT IS SO ORDERED.

Dated: August 17, 2023

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE

Add. 105