**No. 24-2458**

_____

**In the United States Court of Appeals
for the Eighth Circuit**

_____


United States of America,


Plaintiff-Appellee,

v.

Bradley Eugene Wendt,

Defendant-Appellant.


_____

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
No. 4:22-cr-00199-SHL-HCA
Hon. Stephen H. Locher

_____

**Appellant's Opening Brief**

_____


Nicholas A. Klinefeldt
Rachel A. Yaggi
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
(515) 248-9000


Counsel for Appellant Bradley Eugene Wendt

# SUMMARY OF THE CASE

With this case, a federal agency—the Bureau of Alcohol, Tobacco, and Firearms ("ATF")—sought to make an end run around Congress and the Constitution by improperly engaging in regulation by means of criminal prosecution.

The Government charged Wendt with one count of conspiracy to either (a) make false statements to the ATF or (b) defraud the ATF in relation to machine guns, in violation of 18 U.S.C. § 371; 13 counts of false statements concerning the acquisition or transfer of machineguns, in violation of 18 U.S.C. § 1001(a)(2); and one count of illegal possession of a machinegun, in violation of 18 U.S.C. § 922(o). (R. Doc. 1.) After trial, the jury returned a split verdict. Wendt was acquitted of the initial false statement counts as well as of conspiring to defraud the ATF but convicted of the subsequent false statement counts, conspiring to make false statements, and illegal possession of a machine gun. (R. Doc. 341.)

This verdict was the result of incorrect jury instructions that created and implemented new requirements and charges that violated Wendt's Constitutional rights. In a final blow to justice, the District Court then allowed the Government to ambush Wendt at sentencing by reversing its position and holding Wendt responsible for new unsupported violations of federal firearms law.

Wendt respectfully requests oral arguments be heard in this case and 15 minutes to present oral argument.

Appellate Case: 24-2458    Page: 2    Date Filed: 10/09/2024 Entry ID: 5444542

# TABLE OF CONTENTS

SUMMARY OF THE CASE.................................................................. II

TABLE OF CONTENTS................................................................... III

TABLE OF AUTHORITIES ................................................................V

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUES .........................................................2

STATEMENT OF THE CASE .............................................................3

    A.    Wendt Was The Adair Police Chief And Owner Of A Gun Store. ......... 3

    B.    The City Of Adair Asked Wendt To Become Its Police Chief And Wendt Immediately Revamped The Police Department. ......................... 3

    C.    Wendt Sought And Received Approval From The City Council To Acquire Machineguns Even Though City Council Approval Was Not Required.................................................................................................... 4

    D.    The ATF Knew About And Approved Every Machinegun Purchase. .... 4

    E.    Wendt Sought Demonstrations And Purchases Of The Machineguns.... 5

    F.    On April 16, 2022, Wendt Hosted A Public Machinegun Shoot............. 7

    G.    After Almost Ten Hours Of Deliberations, The Jury Returned A Split Verdict.......................................................................................... 8

SUMMARY OF THE ARGUMENT ...................................................9

ARGUMENT ...................................................................................... 10

I.    THE DISTRICT COURT ALLOWED THE ATF TO CREATE AND THEN RETROACTIVELY ENFORCE NEW LEGAL REQUIREMENTS FOR MACHINE GUNS................................... 10

    A.    The District Court's Jury Instructions Are Erroneous And Require Remand.................................................................................. 10

        1.    The Statute Did Not Include These Requirements. ...................... 13

        2.    The Regulation Does Not Include These Requirements.............. 13

        3.    The ATF's Guidance Did Not Include These Requirements. ..... 21

        4.    The ATF Expert Testimony Did Not Support The Requirements.................................................................................. 23

        5.    The New Requirements Are Inconsistent With State Law. ......... 24

Appellate Case: 24-2458    Page: 3    Date Filed: 10/09/2024 Entry ID: 5444542

6.    The New Requirements Are Inconsistent With Recent Supreme Court Decisions. ................................. 27

B.    The District Erred by Denying Wendt's Request for a *Harra* Ambiguity Instruction. .............................................. 34

II.   THE ILLEGAL POSSESSION OF A MACHINEGUN CHARGE IS UNCONSTITUTIONAL AND THE DISTRICT COURT SHOULD HAVE DISMISSED IT. ............................................................ 36

A.    Section 922(o) is Unconstitutionally Vague as Applied to Wendt. ......... 36

B.    Section 922(o) Violates Wendt's Second Amendment Rights. ................ 39

III.  THE DISTRICT COURT ERRED BY SENTENCING WENDT BASED ON A CHARGE THAT WAS NEITHER ALLEGED NOR PROVEN. ........................................................................... 43

**STANDARDS OF REVIEW** ............................................................. **47**

I.    Jury Instructions ........................................................................ 47

II.   Constitutionality ....................................................................... 47

III.  Sentencing ................................................................................. 48

**CONCLUSION** ...................................................................................... **48**

Appellate Case: 24-2458    Page: 4    Date Filed: 10/09/2024 Entry ID: 5444542

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ................................................................. 40

*First Nat'l Bank v. Nat'l Bank of South Dakota,*
667 F.2d 708 (8th Cir. 1981) ..................................................... 18

*Fischer v. United States,*
603 U.S. ___ (2024) .........................................................2, 27, 28

*Gall v. United States,*
552 U.S. 38 (2007) ..................................................................... 2

*Garland v. Cargill,*
602 U.S. 406 (2024) ............................................................2, 28

*Loper Bright Enters. v. Raimondo,*
603 U.S. ___ (2024) ............................................................2, 27

*Mohasco Corp. v. Silver,*
447 U.S. 807 (1980) .................................................................. 18

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
597 U.S. 1 (2022) .............................................................. Passim

*Second Amend. Found., Inc. v. BATFE,*
702 F. Supp. 3d 513 (N.D. Tex. 2023) ...................................... 19

*Sikeston Production Credit Assoc. v. Farm Credit Admin.,*
647 F. Supp. 1155 (E.D. Mo. 1986) ........................................... 18

*Texas v. United States,*
497 F.3d 491 (5th Cir. 2007) ..................................................... 19

*United States v. Anderson,*
579 F.2d 455 (8th Cir. 1978) ..................................................... 34

*United States v. Bah,*
439 F.3d 423 (8th Cir. 2006) ................................................2, 44

*United States v. Barker,*
556 F.3d 682 (8th Cir. 2009) ..................................................... 47

*United States v. Boston & M.R.R.,*
380 U.S. 157 (1965) .................................................................. 19

v

*United States v. Carn*,
2018 WL 1413971 (D. Nev. Mar. 20, 2018) ....................................... 31

*United States v. Chan*,
2024 WL 4028019 (D. Haw. Sept. 3, 2024) ...................................... 40

*United States v. Fincher*,
538 F.3d 868 (8th Cir. 2008) .............................................. 40, 41

*United States v. Fine*,
975 F.2d 596 (9th Cir. 1992) .................................................. 45

*United States v. Griffith*,
115 F. Supp. 3d 726 (S.D. W. Va. 2015) ...................................... 44, 45

*United States v. Harra*,
985 F.3d 196 (3d Cir. 2021) .................................................. 34

*United States v. Henry*,
688 F.3d 637 (9th Cir. 2012) ................................................. 40

*United States v. Jackson*,
69 F.4th 495 (8th Cir. 2023) ................................................. 40

*United States v. Larionoff*,
431 U.S. 864 (1977) .......................................................... 18

*United States v. Morgan*,
2024 WL 3936767 (D. Kan. Aug. 26, 2024) ............................... 40, 41, 42

*United States v. Pereyra-Gabino*,
563 F.3d 322 (8th Cir. 2009) ................................................. 46

*United States v. Rahimi*,
144 S. Ct. 1889 (2024) .................................................. 2, 40, 41

*United States v. Rowe*,
144 F.3d 15 (1st Cir. 1998) .................................................. 35

*United States v. Rush-Richardson*,
574 F.3d 906 (8th Cir. 2009) ................................................. 47

*United States v. Theunick*,
651 F.3d 578 (6th Cir. 2011) ................................................. 31

*United States v. Turner*,
842 F.3d 602 (8th Cir. 2016) .............................................. 2, 47

*United States v. Vest*,
448 F. Supp. 2d 1002 (S.D. Ill. 2006) ................................... Passim

Appellate Case: 24-2458     Page: 6     Date Filed: 10/09/2024 Entry ID: 5444542

*United States v. White,*
   863 F.3d 784 (8th Cir. 2017) ................................................................ 46

*United States v. Whiteside,*
   285 F.3d 1345 (11th Cir. 2002) ........................................................... 34

*United States v. Wiltberger,*
   18 U.S. 76 (1820) ................................................................................ 19

*United States v. Wisecarver,*
   598 F.3d 982 (8th Cir. 2010) ........................................................... 2, 47

**Statutes**

5 U.S.C. § 706 ......................................................................................... 19

18 U.S.C. § 371 ..................................................................................... 2, 1

18 U.S.C. § 922 ................................................................... 30, 31, 45, 46

18 U.S.C. § 922(o) ......................................................................... Passim

18 U.S.C. § 1001 ................................................................... 45, 2, 1, 30

18 U.S.C. § 3231 ..................................................................................... 1

22 U.S.C. § 2778 ................................................................................... 14

26 U.S.C. § 5812 .............................................................................. 13, 30

26 U.S.C. § 5822 ................................................................................... 13

26 U.S.C. § 5861 .............................................................................. 46, 30

28 U.S.C. § 1291 ..................................................................................... 1

Iowa Code § 724 ................................................................ 24, 25, 26, 31

Mont. Code § 45-8-303 ......................................................................... 26

Mont. Code § 45-8-304 ......................................................................... 26

Va. Code § 18.2-289 ............................................................................. 26

Va. Code § 18.2-290 ............................................................................. 26

**Regulations**

27 CFR § 479.105 ......................................................................... Passim

Appellate Case: 24-2458    Page: 7    Date Filed: 10/09/2024 Entry ID: 5444542

## JURISDICTIONAL STATEMENT

Defendant Bradley Eugene Wendt appeals his judgment of conviction on one count of Conspiracy to Make False Statements to the ATF, *see* 18 U.S.C. § 371; nine counts of False Statements, *see* 18 U.S.C. § 1001(a)(2); and one count of Illegal Possession of a Machine Gun, *see* 18 U.S.C. §§ 922(o), 924(a)(2). The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. The District Court entered its judgment and commitment order on July 1, 2024. (R. Doc. 395.) Wendt timely filed his notice of appeal on July 11, 2024. (R. Doc. 397.) This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred—and thereby abused its discretion—in presenting jury instructions that reflected incorrect statements of law and refusing to permit proper defense instructions?

Most apposite cases:

*United States v. Wisecarver*, 598 F.3d 982 (8th Cir. 2010)

*Loper Bright Enters. v. Raimondo*, 603 U.S. ___ (2024)

*Fischer v. United States*, 603 U.S. ___ (2024)

*Garland v. Cargill*, 602 U.S. 406 (2024)

2. Whether the criminal charges in this case are constitutionally impermissible pursuant to the Fifth Amendment and Second Amendment?

Most apposite cases:

*United States v. Turner*, 842 F.3d 602 (8th Cir. 2016)

*United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006)

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)

*United States v. Rahimi*, 144 S. Ct. 1889 (2024)

3. Whether the district court committed procedural error at sentencing by miscalculating the applicable Sentencing Guidelines range?

Most apposite cases:

*Gall v. United States*, 552 U.S. 38 (2007)

*United States v. Bah*, 439 F.3d 423 (8th Cir. 2006)

## STATEMENT OF THE CASE

### A. Wendt Was The Adair Police Chief And Owner Of A Gun Store.

Wendt was a career police officer and the Chief of the Adair Police Department ("APD"). (Trial TR. Vol. III 618:13-15.) Wendt became a police officer in 1999 and was an officer until 2024 except during a period where he was a military contractor with Blackwater in Iraq. (Trial TR. Vol. V 984:15-16; 986:6-15.) In 2008, Wendt opened a firearms store, BW Outfitters ("BWO"). (Trial TR. Vol. V 989:11-21.) BWO is an FFL-SOT firearms dealer and has the legal authority to deal in firearms, including machineguns. (Trial TR. Vol. V 990:12-24.)

### B. The City Of Adair Asked Wendt To Become Its Police Chief And Wendt Immediately Revamped The Police Department.

The City of Adair asked Wendt to be its Police Chief in 2018 (Trial TR. Vol. IV 743:24-744:5; 751:9-20.) Once in the role, Wendt immediately sought to revamp the department with new equipment, including acquiring new computers, a new police car, and new equipment, including machineguns. (Trial TR. Vol. V 994:14-19; 1005:14-25.) It is undisputed that, as the Police Chief, Wendt had the authority to purchase machineguns pursuant to 18 U.S.C. § 922(o). Moreover, police officers in Iowa are generally required to purchase their own equipment. (Trial TR. Vol. V 995:22-996:25.) This equipment includes machineguns, which are not uncommon among Iowa police departments. (*See, e.g.*, Trial TR. Vol. V 1002:7-21.) As the owner of BWO, Wendt was

in a unique position because he had the financial means to provide his department with updated equipment.

### C. Wendt Sought And Received Approval From The City Council To Acquire Machineguns Even Though City Council Approval Was Not Required.

The Adair City Council approved Wendt's purchase of machineguns with his own money for the benefit of Adair. (Trial TR. Vol. IV 736:13-22; 745:8-746:9; 753:6-25.) Wendt did not need City approval to write the law letters but acquired it regardless. Further, Adair's Mayor and City Council members testified that Wendt even showed them some of the law letters, and the City Clerk testified that she helped Wendt write the letters. (Trial TR. Vol. IV 754:3-13; 766:22-768:17.) The Mayor also saw machineguns being delivered to City Hall. (Trial TR. Vol. IV 756:3-13.) Moreover, the City continued to support Wendt, and he remained the Police Chief during the pendency of the trial. (Trial TR. Vol. IV 778:14-16.)

### D. The ATF Knew About And Approved Every Machinegun Purchase.

The ATF approved all the machinegun transfers except for the minigun.[1] (Trial TR. Vol. III 686:10-15; Vol. V 1060:6-19.) The ATF knew Wendt was both the owner

---

[1] Around November 2021, Wendt wrote a demonstration letter to BWO for the demonstration of a minigun from a manufacturer specializing in miniguns. (Trial TR. Vol. V 1060:5-11.) The ATF denied the transfer of the minigun, the only transfer they ultimately denied. (Trial TR. Vol. V 1060:12-19.) However, during the pendency of the case, the ATF granted Wendt a manufacturing license, allowing him to manufacture machineguns without further ATF approval, including a minigun. (Trial TR. Vol. III 687:21-23.)

4

of BWO and the Police Chief because he made it clear in the letters and because Wendt explicitly told the ATF. (Trial TR. Vol. V 1026:4-14.) Wendt discussed that he was both the Police Chief and the owner of BWO with the chief of ATF's NFA branch–who in response told Wendt that he could obtain any type of machinegun he wanted. (Trial TR. Vol. V 1025:14-1026:21.) Additionally, Wendt emailed the ATF regarding the transactions in several instances. (R. Doc. 350-1–350-4.) Moreover, the ATF knew of all the guns that it had approved because it tracks the information in the National Firearms Registration and Transfer Record. (Trial TR. Vol. II 277:16-278:7.)

E.   **Wendt Sought Demonstrations And Purchases Of The Machineguns.**

In July 2018, Wendt purchased a machinegun from Johnathan Marcum, the owner of an FFL-SOT. (Trial TR. Vol. II 368:17-369:21.) To facilitate the transfer of this machinegun, Wendt wrote a demonstration law letter from the APD to BWO. (*Id.*) After this transaction, Marcum began soliciting demonstration law letters from Wendt to facilitate the transfer of machineguns to Marcum's FFL-SOT. (Trial TR. Vol. V 1021:17-23.)

Wendt is a gun enthusiast who had a genuine interest in purchasing machineguns for the APD. (Trial TR. Vol. V 1022:22-24.) Therefore, it made sense for Wendt to want to see several types of machineguns before making a purchase, particularly because it did not cost Wendt anything to demonstrate the various machineguns through

_____

5

Marcum. (*Id.*) Unbeknownst to Wendt, Marcum was a target in a federal case where a police chief wrote law letters to gun dealers, including Marcum, so the gun dealers could acquire the machineguns to resell them for profit and provide a kickback to the police chief. (Trial TR. Vol. II 395:20-396:8.) Marcum was cooperating with the Government in that case and started attempting to implicate Wendt. (Trial TR. Vol. II 365:13-23.)

Marcum offered to show Wendt machineguns to help him with his future purchase decisions. (Trial TR. Vol. V 1021:15-1022:3.) However, the police chief writing the letter does not receive notice or any information from the ATF regarding whether the dealer has acquired the requested machinegun. (Trial TR. Vol. V 1021:6-14; 1022:4-11.) Marcum never followed up with Wendt on the demonstrations because, again unbeknownst to Wendt, the ATF told Marcum not to communicate with Wendt. (Trial TR. Vol. V 1027:22-24.) Wendt had no control over and could not force Marcum to conduct the demonstrations.

Because Marcum did not conduct the demonstrations, Wendt began relying on himself and other individuals that Wendt knew to conduct the demonstrations. One of those individuals was former co-defendant Robert Williams ("Williams"), who owned an FFL-SOT. Wendt received no improper benefit from writing demonstration law letters to Marcum and Williams. (Trial TR. Vol. V 1030:19-1031:1; 1053:19-22.)[2]

---

[2] Wendt was acquitted on two of the Marcum letters. (R. Doc. 341.)

In total, Wendt purchased ten machineguns for the APD and 13 machineguns for BWO. (Trial TR. Vol. III 680:18-20; 685:22-24.) Every APD machinegun was at the APD when federal law enforcement conducted a raid on August 31, 2022. (Trial TR. Vol. III 685:8-19.) Wendt sold only four machineguns for a total profit of less than $50,000.00. (Trial TR. Vol. II 460:1-6; 465:18-23.) He attempted to sell two more for a total of approximately $30,000.00, but those sales never went through and Wendt returned the money. (Trial TR. Vol. III 611:3-11; 616:6-8.) At trial, the Government did not call Williams; and Marcum testified that he did not believe either himself or Wendt ever made a false statement to the ATF or intended to break the law. (Trial TR. Vol. II 406:1-407:2.) The Government relied heavily on cutting and pasting together Facebook messages from Wendt's 45,000-page Facebook Account. (*See* Trial TR. Vol. III 668:2-672:21; Vol. V 1067:4-9; R. Doc. 349-4, 349-6, 349-7, 349-8.) But the messages constituted a handful of offhand, informal conversations. (*Id.*) Many were conversations between law enforcement officers and included jokes between friends. (Trial TR. Vol. V 1067:13-1070:22.)

### F. On April 16, 2022, Wendt Hosted A Public Machinegun Shoot.

This machinegun shoot was the basis for the illegal possession of a machinegun charge. (R. Doc. 1, at 22.) The Government alleged Wendt illegally possessed a machinegun that he purchased for the APD by bringing it to the machinegun shoot. (*Id.*) But both the Mayor and the City Council members testified that the machinegun shoot and the use of machineguns registered to the APD was consistent with their

7

understanding of Wendt's authority and the permission they gave him. (Trial TR. Vol. IV 739:17-25; 746:23-747:3; 758:4-7.) This was underscored by other witnesses, including the City Attorney and current Mayor, who testified that Wendt was always the Police Chief. (Trial TR. Vol. IV 781:4-21; 537:19-20.)

### G. After Almost Ten Hours Of Deliberations, The Jury Returned A Split Verdict.

The jury found Wendt not guilty on four false statement counts and guilty on the remaining counts. (R. Doc. 341.) Specifically, the jury found Wendt guilty of conspiracy to make false statements to the ATF (finding that the conspiracy included Marcum and Williams), but not guilty to conspiring to deceive or defraud the ATF. (*Id.*) On the two "purchase law letter" false statement counts, the jury acquitted Wendt of one and found him guilty of the other. (*Id.*) On the "demonstration law letter" counts, the jury found Wendt guilty of eight counts and not guilty of three counts. (*Id.*) Notably, Wendt was found not guilty of all counts regarding alleged behavior occurring before early 2019.

## SUMMARY OF THE ARGUMENT

This case was an attempt by the ATF to regulate by prosecution. Unable to enact new statutes or regulations, the ATF attempted to create new law through prosecution and the use of broad criminal statutes against Wendt and in violation of his Constitutional rights. The District Court allowed the ATF to establish new legal requirements: (1) the requirement that any machine gun purchased on behalf of a government entity is limited to "official use"; and (2) the requirement that any machine gun authorized for purchase by a dealer be limited to a "demonstration for potential purchase.". No court has ever applied an "official use" restriction; relied upon the violation of a registration requirement under § 922(o); or upheld a prosecution of a police officer under § 922(o).

The District Court allowed the ATF to change the law through the jury instructions used in this case. Moreover, the purported new law–as amended by the ATF through this prosecution–violates Wendt's Constitutional rights because the charges are unconstitutionally vague and violate the Second Amendment. Finally, the District Court erroneously allowed the Government to hold Wendt responsible at sentencing for violations of federal firearms laws, even though the Government asserted throughout the case that it was not charging Wendt with violations of federal firearms law.

Appellate Case: 24-2458    Page: 16    Date Filed: 10/09/2024 Entry ID: 5444542

The Court should enter judgment of acquittal as to all counts. In the alternative, the Court should overturn Wendt's convictions and remand to the District Court for a new trial on all counts.

## ARGUMENT

## I. THE DISTRICT COURT ALLOWED THE ATF TO CREATE AND THEN RETROACTIVELY ENFORCE NEW LEGAL REQUIREMENTS FOR MACHINE GUNS.

### A. The District Court's Jury Instructions Are Erroneous And Require Remand.

This case was an attempt by the ATF to regulate by prosecution. Unable to enact new statutes or regulations, the ATF has now attempted to create new law through prosecution and the use of broad criminal statutes. Specifically, the District Court allowed the ATF to establish new legal requirements: (1) the requirement that any machine gun purchased on behalf of a government entity is limited to "official use"; and (2) the requirement that any machine gun authorized for purchase by a dealer be limited to a "demonstration for potential purchase." These new requirements prevented Wendt form receiving a fair trial with respect to all the charges against him.

The District Court's jury instructions that implemented these new requirements were as follows: In an instruction entitled "Law Letters," the District Court instructed the jury with an incorrect statement of the law:

> As relevant to this case, qualified dealers may import and transfer NFA machine guns in two scenarios.
>
> <u>First</u>, qualified dealers may import and transfer NFA machine guns for sale or distribution to any department or agency of the United

States or any State or political subdivision thereof. The registration of such NFA machine guns and their subsequent transfer is conditioned upon and restricted to the sale or distribution of such weapons for the official use of Federal, State or local governmental entities. This kind of transfer requires the applicant, among other things, to submit information to the ATF establishing that a law enforcement agency wants to purchase the NFA machine gun for the agency's official use. One of the ways the applicant may submit this information is through a letter that has sometimes been referred to in this case as a "purchase law letter." The applicant also may submit this information in the form of a purchase order or some other submission that the ATF determines to be satisfactory to establish that the agency wants to purchase the NFA machine gun for the agency's official use. If the application is approved and the NFA machine gun is transferred to the law enforcement agency, *possession of that machine gun is restricted to official use by the law enforcement agency.*

Second, qualified dealers may import and transfer NFA machine guns for use as sales samples, which are often referred to as "dealer sales samples." The purpose of a "dealer sales sample" is to give a law enforcement agency the opportunity to see a demonstration of a particular NFA machine gun for the agency's future possible purchase. If a law enforcement agency wants a demonstration of a weapon for this purpose, it submits a "demonstration law letter" to a qualified dealer, manufacturer, or importer. The demonstration law letter must specify the agency's need for a particular model or interest in seeing a demonstration of a particular NFA machine gun. If the application requests the transfer of more than one of a particular model of NFA machine gun, the application must establish the dealer's need for the quantity of sales samples sought. *The requested demonstration must be for possible future purchase and not for some other purpose.*

The law does not necessarily require a dealer who receives an NFA machine gun for use as a sales sample to provide an actual demonstration of the NFA machine gun. However, you may consider the failure to provide an actual demonstration as evidence of the truth or falsity of a statement regarding the law enforcement agency's interest in the NFA machine gun for possible future purchase.

11

> When a dealer does provide a demonstration, there are no specific requirements as to what form a demonstration must take. However, you may consider the nature of the demonstration as evidence of the truth or falsity of a statement regarding the law enforcement agency's interest in the NFA machine gun for possible future purchase.

(R. Doc. 330, at 28.)

The jury instructions on the False Statements charges took it a step further. Instruction number 17 raised the bar from "possible future purchase" to "potential future purchase." (R. Doc. 330, at 19.) This instruction put words in Wendt's mouth held him to an even greater standard: "demonstration for future potential purchase." This is important because demonstration by itself was not limited to future purchase at all, and "possible" only means having the authority whereas "potential" means some connection to a sale. *See Possible*, Oxford English Dictionary ("that is capable of being; that may or can exist, be done, or happen"); *Potential*, Oxford English Dictionary ("having or showing the capacity to develop into something in the future").

In addition, with respect to the Illegal Possession of a Machine Gun, the District Court instructed the jury that Wendt's possession of the M60 machinegun purchased by him and registered to the APD was illegal unless Wendt proved by a preponderance of the evidence that it was under the authority of the APD and, in making that decision, the jury "must consider whether his possession on the date in question was within the scope of his official duties as an officer of the [APD]." (R. Doc. 330, at 35.)

Appellate Case: 24-2458   Page: 19   Date Filed: 10/09/2024 Entry ID: 5444542

### 1. The Statute Did Not Include These Requirements.

In 1986, Congress enacted 18 U.S.C. § 922(o) (the "Statute") which states:

> Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machine gun. (2) This subsection does not apply with respect to—(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or (B) any lawful transfer or lawful possession of a machine gun that was lawfully possessed before the date this subsection takes effect.

18 U.S.C. § 922(o). There is no such requirement on the face of the statute. Also, the statute treats the prohibition on a "transfer" of a machinegun very differently than the prohibition on the "possession" of a machinegun. The Government attempts to lump them together in a completely distorted way. The statute does not prohibit a "transfer to or by" a governmental entity. It does not prohibit the "possession by or under the authority of" a governmental entity. In other words, the statute distinguishes between "transfer" and "possession" in that the federal government – or a State or local government – may authorize the possession of a machinegun. The fact that the statute allows a State or local government to authorize the possession of machineguns is made clear by the State of Iowa having done so. *See infra*.

### 2. The Regulation Does Not Include These Requirements.

The regulation at issue in this case is 27 C.F.R. § 479.105(a) (the "Regulation") which states:

> (a) General. As provided by 26 U.S.C. 5812 and 26 U.S.C. 5822, an application to make or transfer a firearm shall be denied if the

13

making, transfer, receipt, or possession of the firearm would place the maker or transferee in violation of law. Section 922(o), Title 18, U.S.C., makes it unlawful for any person to transfer or possess a machine gun, except a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or any lawful transfer or lawful possession of a machine gun that was lawfully possessed before May 19, 1986. Therefore, notwithstanding any other provision of this part, no application to make, transfer, or import a machine gun will be approved except as provided by this section.

(b) Machine guns lawfully possessed prior to May 19, 1986. A machine gun possessed in compliance with the provisions of this part prior to May 19, 1986, may continue to be lawfully possessed by the person to whom the machine gun is registered and may, upon compliance with the provisions of this part, be lawfully transferred to and possessed by the transferee.

(c) Importation and manufacture. Subject to compliance with the provisions of this part, importers and manufacturers qualified under this part may import and manufacture machine guns on or after May 19, 1986, for sale or distribution to any department or agency of the United States or any State or political subdivision thereof, or for use by dealers qualified under this part as sales samples as provided in paragraph (d) of this section. The registration of such machine guns under this part and their subsequent transfer shall be conditioned upon and restricted to the sale or distribution of such weapons for the official use of Federal, State or local governmental entities. Subject to compliance with the provisions of this part, manufacturers qualified under this part may manufacture machine guns on or after May 19, 1986, for exportation in compliance with the Arms Export Control Act (22 U.S.C. 2778) and regulations prescribed thereunder by the Department of State.

(d) Dealer sales samples. Subject to compliance with the provisions of this part, applications to transfer and register a machine gun manufactured or imported on or after May 19, 1986, to dealers qualified under this part will be approved if it is established by specific information the expected governmental customers who

14

would require a demonstration of the weapon, information as to the availability of the machine gun to fill subsequent orders, and letters from governmental entities expressing a need for a particular model or interest in seeing a demonstration of a particular weapon. Applications to transfer more than one machine gun of a particular model to a dealer must also establish the dealer's need for the quantity of samples sought to be transferred.

(e) The making of machine guns on or after May 19, 1986. Subject to compliance with the provisions of this part, applications to make and register machine guns on or after May 19, 1986, for the benefit of a Federal, State or local governmental entity (e.g., an invention for possible future use of a governmental entity or the making of a weapon in connection with research and development on behalf of such an entity) will be approved if it is established by specific information that the machine gun is particularly suitable for use by Federal, State or local governmental entities and that the making of the weapon is at the request and on behalf of such an entity.

(f) Discontinuance of business. Since section 922(o), Title 18, U.S.C., makes it unlawful to transfer or possess a machine gun except as provided in the law, any qualified manufacturer, importer, or dealer intending to discontinue business shall, prior to going out of business, transfer in compliance with the provisions of this part any machine gun manufactured or imported after May 19, 1986, to a Federal, State or local governmental entity, qualified manufacturer, qualified importer, or, subject to the provisions of paragraph (d) of this section, dealer qualified to possess such, machine gun.

27 CFR § 479.105.

Subsection (a) of the Regulation simply restates the basis for the regulation and makes clear that the regulation governs applications "to make, transfer, or import a machine gun." It does not state the regulation governs the possession or use of machineguns. Indeed, the only reason the regulation includes "possession" in the title

15

is because of the prohibition language in 18 U.S.C. § 922(o) and the only thing it says below in subsection (b).

Subsection (b) is the only other part of the regulation that mentions possession and again it does not attempt to regulate it in any way. Rather, this subsection merely states that a machinegun made prior to May 19, 1986 (the date of enactment) must still be registered. Again, there is no language anywhere else regarding possession. Notably, this subsection makes clear that "registration" and "possession" are two separate and distinct legal issues.

Subsection (c) does not in any way attempt to regulate the use or possession of the machinegun after it is transferred. This is made clear in the registration documents itself. The only restriction on the registration is as follows: "RESTRICTED REGISTRATION-Possession limited to continued compliance with provisions of Public Law-308." However, this is a reference to FOPA and not a regulation. It just means that this machinegun was manufactured after May 19, 1986, and is not what is referred to as a "transferable" machinegun. It appears on all the registrations whether it was a governmental entity purchase or a dealer purchase. Also, by definition, every machinegun that is subject to the regulation is either imported into the United States or manufactured in the United States. And it is undisputed that any machinegun may subsequently be transferred from the initial transferee to a subsequent transferee and that the subsequent transferee can be either a governmental entity or a dealer. Lastly,

16

just as with the other subsections, the purpose element applies solely to the transfer. It does not follow the transfer as a restriction on its use.

Subsection (d) addresses transfers to dealers. First, it states that the transfer "will be approved"—it is mandatory. Second, it states that it will be approved if certain items are established by specific information." Third, it does not require a demonstration let alone a demonstration for future potential purchase. Rather, it requires a governmental entity "express[] a need for a particular model or interest in seeing a demonstration of a particular model." Further, it is undisputed that the demonstration never needs to take place and, if it does take place, there are no requirements for how it takes place or what it involves. Moreover, there is no restriction following the transfer on the use of the machinegun—which is made clear by the ATF guidance.

Subsection (e) only addresses the ability to manufacture a machinegun after May 19, 1986, by someone who does not have a license to manufacture. Licensed manufacturers do not apply for or need the ATF's permission to make a machinegun. Rather, all that is required is that they register it.

Subsection (f) identifies what happens when a manufacturer, importer, or dealer gives up its license. It expands the ability to transfer presumably because the license holder will not be able to continue to possess them.

It is important to understand this is a tax and transfer regulation. It cannot restrict what Congress has allowed through the statute. The regulation is not a "permitting" or "licensing" regulation. It does not place restrictions on the use of the machinegun once

they are lawfully required. It does not provide for a permit that one would carry with it. For example, the Government has admitted that a dealer can rent out a machinegun possessed on a demonstration letter without regard to whether it is connected to a potential governmental purchase so long as it does not amount to a transfer. (Mot. for Acquittal TR. 41:19-42:9.) The regulation only places a limit on the transfer of the machinegun. It does not grant a license or permit whereupon the purpose for which it was transferred continues to be policed by the ATF. Finally, nowhere does the regulation limit a governmental entity's ability to transfer a machinegun or have one transferred to it.

To be valid, regulations must be consistent with the statute under which they are promulgated. *See United States v. Larionoff*, 431 U.S. 864, 873 (1977); *First Nat'l Bank v. Nat'l Bank of South Dakota*, 667 F.2d 708, 712 (8th Cir. 1981). An agency's interpretation cannot supersede the language chosen by Congress or alter or amend a law of Congress. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980). Regulations that are inconsistent with a statute must be set aside as contrary to law. *Sikeston Production Credit Assoc. v. Farm Credit Admin.*, 647 F. Supp. 1155, 1163-64 (E.D. Mo. 1986).[3]

"The APA requires reviewing courts to 'hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction,

---

[3]     It should again be noted that Section 479.105 is a National Firearms Act regulation and not a Gun Control Act regulation. Section 922(o) is, of course, found in the Gun Control Act.

18

authority, or limitations, or short of statutory right.'" *Second Amend. Found., Inc. v. BATFE*, 702 F. Supp. 3d 513, 528 (N.D. Tex. 2023), *appeal dismissed as moot sub nom. Watterson v. BATFE*, No. 23-11157, 2024 WL 3935446 (5th Cir. Aug. 26, 2024) (quoting 5 U.S.C. § 706(2)(C)). "Even when acting within its authority, an agency is constrained by the language of the statute it must administer and may not rewrite or redefine terms in a way that contradicts the original statute." *Id.* (citing *Texas v. United States*, 497 F.3d 491, 500-01 (5th Cir. 2007)).

An "official use" requirement cannot be added to the statute. The statute must be strictly construed:

> A criminal statute is to be construed strictly, not loosely. Such are the teachings of our cases from *United States v. Wiltberger*, 5 Wheat. 76, down to this day. Chief Justice Marshall said in that case: "The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.

*United States v. Boston & M.R.R.*, 380 U.S. 157, 160 (1965). Thus, the term "official use" cannot be added as a requirement into Section 922(o).

The post-1986 restriction stamped on transfer forms does not impose an "official use" requirement for possession. As previously noted, federal law regarding machineguns underwent a dramatic change in 1986 that created the distinction between fully transferrable pre-May 1986 machineguns and transfer-restricted post-May 1986 machineguns. Given the fact that the registration, transfer, and possession laws between the two differed in virtually every aspect, ATF needed to identify which machineguns

were subject to which set of laws. Thus, it created a stamp to let the public know which machineguns were which:[4]



**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

Control Number: 2021676111

**RESTRICTIONS**

Line No.

1. RESTRICTED REGISTRATION-Possession limited to continued compliance with provisions of Public Law 99-308.

(*See, e.g.*, R. Doc. 348-106, at 3.) The Government, however, argued, and the Court accepted, that this restriction somehow imposes an "official use" requirement on post-May 1986 machineguns that is found nowhere in the law. While this argument makes no sense as it is circular (possession is limited to compliance with the law—but that is understood as to Public Law 99-308 and every other applicable law), it is also directly contrary to ATF's own guidance on the issue:

> A licensee can identify these machineguns [post-1986 machineguns] from the restriction stamped in the approval block of the registration form. The restriction reads: RESTRICTED REGISTRATION – Possession limited to continued compliance with provisions of Public Law 99-308.
>
> \* \* \* \*
>
> Enacted in 1986, 18 U.S.C. 922(o) prohibits the possession, transfer, and importation of machineguns not lawfully registered as of May 19, 1986, with certain exceptions. Machineguns (commonly termed as "post-1986" machineguns) may be possessed by Government agencies [with no mention whatsoever of official use] or by qualified FFLs for use as sales samples based on criteria in 27 CFR § 479.105. This restriction is stamped

---

[4] This language was originally a rubber stamp. It is now placed electronically, but the language and point are the same—to let people know that the machine gun at issue is a post-May 1986 machine gun. Public Law 99-308 is FOPA, so this is merely a reference to Section 922(o) as created by FOPA.

Appellate Case: 24-2458    Page: 27    Date Filed: 10/09/2024 Entry ID: 5444542

on the forms as "RESTRICTED REGISTRATION – Possession limited to continued compliance with provisions of Public Law 99-308" <u>As noted, this restriction applies to any machinegun manufactured or imported subsequent to enactment of 18 U.S.C. 922(o).</u>

ATF FFL Newsletter at 3 (Aug. 1998), https://www.atf.gov/firearms/docs/newsletter/federal-firearms-licensees-newsletter-%E2%80%93-august-1998/download; ATF FFL Newsletter at 8 (Feb. 2011), https://www.atf.gov/firearms/docs/newsletter/federal-firearms-licensees-newsletter-february-2011/download (emphasis added). Accordingly, a ministerial identification stamp that merely delineates between pre- and post-1986 machineguns cannot possibly provide any legal basis for including an "official use" requirement under § 922(o) in the jury instructions.

### 3. The ATF's Guidance Did Not Include These Requirements.

In 1999, the ATF issued an open letter regarding the "Law Letter" requirement (the "1999 Letter"). (R. Doc. 350-5.) The 1999 Letter was last revised in February 2006. (*Id.*) It states that the ATF will look for the following information in evaluating a law letter:

- written on agency letterhead and signed by the agency head or by someone with delegated authority to sign for the agency head

- dated within one year of the date of the receipt of the application

- identification of the particular machinegun being transferred (for example, M16A2)

- identification of the agency's interest in the machinegun (for example, purchase, or demonstration)

21

- documentation of the need for more than one machinegun of a particular model[.]

(*Id.*) The 1999 Letter was the guidance in place at the time of the events in this case.

After the Indictment in this case, the ATF amended this guidance to include the new requirement. *Open Letter to All Federal Firearms Licensees Regarding Machinegun Dealer Sales Sample Letters* (Jan. 11, 2023), https://www.atf.gov/firearms/docs/open-letter/all-ffls-jan-2023-open-letter-machinegun-dealer-sales-sample-letters/download. But the District Court excluded this and other key pieces of evidence at trial. First, Wendt was not allowed to admit internal ATF communications regarding Wendt and the transfers at issue. (Trial TR. Vol. I 7:21-8:7.) Second, Wendt was not allowed to admit evidence of ATF's evolving positions on the interpretations of the regulations. For example, Wendt was not allowed to admit into evidence or question the ATF experts regarding the ATF open letter/guidance issued in 2023 with the express stated purpose of clarifying the requirements for machinegun transfers. (Trial TR. Vol. I 16:1-14.) Third, Wendt was not allowed to admit evidence of the City of Adair's position that Wendt had not abused his position of trust or in any other way violated the code of conduct for his position. (R. Doc. 310, at 29-30.) Effectively, the District Court put Wendt in a straitjacket and prevented him from challenging the falsity and materiality of his statements. Further, the Government admits that there is no subsequent use restriction on a gun purchased by a dealer for demonstration. (Mot. for Acquittal TR. 41:19-42:9.)

### 4. The ATF Expert Testimony Did Not Support The Requirements.

Even though ATF expert testimony cannot create new law, ATF branch chief William Swift testified for the Government as an expert. (Trial TR. Vol. I 227:22-24.) Swift was not involved in any of the applications regarding Wendt, and in fact, did not serve as a branch chief during the relevant time in this case. (Trial TR. Vol. I 227:19-21; Vol. II 279:11-13.) However, Swift testified that the ATF does not regulate how a machinegun is possessed or used after it is transferred; it only regulates the transfer itself. (Trial TR. Vol. II 282:14-23.) The ATF does not do any follow-up to see how machineguns are being used after the transfer is approved. (Trial TR. Vol. II 285:14-19.) Further, the ATF does not make any type of suitability determination, and there is no prohibition on the type of machinegun a law enforcement agency can acquire. (Trial TR. Vol. II 295:24-296:6.) Swift testified that if "everything is in order," an agency can have any kind of machinegun it wishes. (Trial TR. Vol. II 296:17-19.)

Swift also testified that, if a demonstration law letter did not include the statement that the demonstration was for possible future purchase, it "could" impact the NFA's review and action on the application. (Trial TR. Vol. I 243:4-8.) And that, if the law letter stated that the demonstration was for something else like training or education or to familiarize with the weapon, it "could" impact the NFA's review and action on the application. (Trial TR. Vol. I 243:11-15.)

23

Finally, Swift was shown two sample letters from the back of the NFA Handbook. (R. Doc. 349-122, 349-123.) Swift confirmed that these were merely samples and that the exact language from the NFA handbook sample letter does not need to be used in a demonstration letter for it to be approved. (Trial TR. Vol. II 300:14-25.) He also confirmed that there is "no formal definition of a demonstration" and nowhere in the NFA handbook is demonstration defined as it is in the sample letter (Trial TR. Vol. II 301:17.)

### 5. The New Requirements Are Inconsistent With State Law.

As contemplated by the federal statute, Iowa state law authorizes the "possession" of machineguns by police officers and dealers. The State of Iowa identifies a machinegun to be among a category of weapons it labels "offensive" weapons. Iowa Code § 724.1. The State authorizes certain individuals to possess such weapons:

> Any of the following persons or entities is authorized to possess an offensive weapon when the person's or entity's duties or lawful activities require or permit such possession:
>
> a.      Any peace officer
>
> . . . .
>
> e.      Any person who under the laws of this state and the United States, is lawfully engaged in the business of supplying those authorized to possess such devices.

Iowa Code § 724.2(1). Notably, the law does not limit the authority to possess only those machineguns registered to you or your employer or make any other type of

distinction. Nor does it limit when or where within the State of Iowa. Rather, the only limitation is whether you are not otherwise violating the law with it.

In addition, the State of Iowa provides for the ability to obtain a "permit" to carry weapons.

> A person may be issued a permit to carry weapons when the person's employment in a private investigation business or private security business licensed under chapter 80A, or a person's employment as a peace officer, correctional officer, security guard, bank messenger or other person transporting property of a value requiring security, or in police work, reasonably justifies that person going armed.
>
> . . . .
>
> A permit so issued, other than to a peace officer, shall authorize the person to whom it is issued to go armed anywhere in the state, only while engaged in the employment, and while going to and from the place of employment.
>
> A permit issued to a certified peace officer shall authorize that peace officer to go armed anywhere in the state at all times, including on the grounds of a school.

Iowa Code § 724.6. Wendt was both a certified police officer (with a professional permit to carry weapons) and a licensed dealer. (Trial TR. Vol. III 618:13-15; Vol. V 989:11-21.) When read together, it is impossible to say Wendt did not have the authority to have the machinegun in question on April 16, 2022.

In other words, consistent with § 922(o), the State of Iowa has affirmatively authorized police officers and dealers to possess machineguns not just in the course of their duties but categorically so long as their possession of it is otherwise unlawful. This makes sense especially when viewed in conjunction with the legislative history of

Section 922(o) and the ATF's permission of police officers not just possessing machineguns owned by police departments but purchasing their own machineguns.

To be clear, federal law leaves it up to the states regarding the authorization to possess machineguns. 18 U.S.C. § 922(o). Specifically, while § 922(o) limits the transfer of machineguns to governmental entities, it treats possession differently and allows for "possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof." *Id.* In other words, while a State or City government may not permit the transfer and/or ownership of a machinegun, it may authorize the possession of one unless the State further restricts that right.

While some states do not have any additional laws on machineguns, leaving possession or transfer of machineguns up to state agencies and cities without any further restrictions, other states have chosen to pass their own statutes restricting their cities' ability to authorize the possession of machineguns. Iowa is such an example. *See* Iowa Code § 724.3. Notably, some states' laws track the Supreme Court's Second Amendment analysis. For example, Maryland, Montana, and Virginia only prohibit the possession of a machinegun if used in an aggressive or offensive manner or to commit a crime. *See* Md. Code §§ 4-404, 4-405; Mont. Code §§ 45-8-303, 45-8-304; Va. Code §§ 18.2-289, 18.2-290.

### 6. The New Requirements Are Inconsistent With Recent Supreme Court Decisions.

On the Friday before Wendt's Monday morning sentencing, the United States Supreme Court issued its opinion in *Loper Bright*. The Supreme Court had also recently issued other relevant decisions. Nevertheless, the District Court refused to continue the sentencing. (Sent. TR. 5:7-9.) The District Court should have continued the sentencing and then reconsidered and granted Wendt's motion for new trial. Instead, the District Court simply concluded that it read *Loper Bright* and that it did not change its opinion because it exercised independent judgment. (Sent. TR. 5:10-19.) However, the District Court did, in fact, improperly rely upon the ATF both explicitly and implicitly in establishing the new requirements.

On June 28, 2024, the United States Supreme Court issued its opinion in *Loper Bright Enters. v. Raimondo*, 603 U.S. ___ (2024) ("*Loper Bright*) and *Fischer v. United States*, 603 U.S. ___ (2024) ("*Fischer*"). In *Loper Bright*, the Supreme Court struck down the *Chevron* doctrine regarding courts' deference to agency interpretations of the statutes those agencies administer. *Loper Bright*, slip op. at 1. First, the Supreme Court held that courts should no longer defer to an agency's interpretation of a statute where they find the statute to be ambiguous. *Id.* at 35. In addition, the Supreme Court emphasized the danger of the amorphous nature of courts' deference to an agency's interpretation of a statute. Specifically, it noted that courts often simply rely on the agency's interpretation implicitly, without any overt statement of such. *Id.* at 28. Further, the Supreme Court

Appellate Case: 24-2458    Page: 34    Date Filed: 10/09/2024 Entry ID: 5444542

expressed its concern with the hard-to-define nature of "ambiguity" itself. *Id.* at 30-31. The Supreme Court noted: "But the concept of ambiguity has always evaded meaningful definition. As Justice Scalia put the dilemma just five years after Chevron was decided: 'How clear is clear?'" *Id.* at 30. (citation omitted).

In *Fischer v. United States*, 603 U.S. ___ (2024), the Supreme Court held the district court had improperly allowed the government to read the obstruction of justice statute too broadly with respect to the defendant's conduct on January 6. *Fischer*, slip op. at 1, 16. The Supreme Court considered the context of other statutes passed by Congress. *Id.* at 11. And the Court explained that cabining its reading of the statute at issue "affords proper respect to 'the prerogatives of Congress' in carrying out the quintessentially legislative act of defining crimes and setting the penalties for them." *Id.* at 15 (citation omitted). It also stated that the government's reading of the statute "would intrude on that deliberate arrangement of constitutional authority over federal crimes, giving prosecutors broad discretion . . . ." *Id.* at 15-16.

On June 14, 2024, the United States Supreme Court issued its opinion in *Garland v. Cargill*, 602 U.S. 406 (2024). There, the Supreme Court held that the ATF exceeded its statutory authority by issuing a rule that classifies a bump stock as a machinegun. *Id.* at 407. Notably, the Supreme Court did not defer to the ATF and held fast to a strict interpretation of Congress's definition of a "machinegun." *Id.* at 423, 428. In doing so, it relied on dictionary definitions of the terms used in the statute and held that the government is constrained to the literal meanings of those words and phrases. *Id.* at

415-16. Furthermore, the Court rejected the argument that its narrow interpretation of the definition of a "machinegun" would make the statute less effective. *Id.* at 428. Lastly, the Supreme Court noted that ATF's new interpretation of the definition of a "machinegun" was inconsistent with its own prior interpretation—an "about-face" that undermined ATF's ability to "plausibly argue" that its new interpretation was correct. *Id.* at 413, 428.

In a short concurrence, Justice Alito cut to the heart of the case. He noted that—even though Congress may not have seen a material difference between a machinegun and a semiautomatic rifle equipped with a bump stock at the time it enacted the relevant legislation; and that even though the ATF's change in its interpretation of "machinegun" was brought about by the horrible shooting spree in Las Vegas in 2017—changing the law to be anything other than the literal meaning of the statutory text was up to Congress, not the ATF. *See id.* at 429 (Alito, J., concurring).

*First*, the District Court improperly relied on the ATF's purported "official use" requirement. The Court relied on the ATF's regulations and interpretations of terms extensively in the jury instructions and its Order. For example, the Court concluded: "[r]ead collectively, the governing statutes and regulations are not ambiguous." (R. Doc. 381, at 17.) However, as the Supreme Court has now made clear, courts cannot rely on such regulations and agency interpretation to define a criminal offense. The Court acknowledged that section 922(o) does not contain the Government's requested language of "official use." *Id.* at 11. Also, the Court relied on a definition of "written

application" in 26 U.S.C. § 5812(a) as requiring a purchase law letter. However, the "written application" does not include a law letter, as the Government has now conceded. Rather, the "written application" is simply the ATF Form. The Government has conceded this point.

Congress set forth what it wished to make a criminal offense in 26 U.S.C. § 5861 and 18 U.S.C. § 922. Congress has specifically set forth the possession, transfers, and other activities regarding NFA items that are punishable as criminal offenses. *See* 26 U.S.C. § 5861. Likewise, in sections 5861(l) and 922(m), Congress specifically set forth the false statements that it wishes to criminalize regarding federal firearms transactions. As the Government has now conceded, Wendt's actions do not qualify under any of these statutes.[5]

No court has ever applied an "official use" restriction to 18 U.S.C. § 922(o). Nor has any court ever relied upon the violation of a registration requirement under 18 U.S.C. § 922(o). And no court has ever upheld the prosecution of a police officer under 18 U.S.C. § 922(o). The cases the District Court and the Government relied upon do not involve police officers and do not actually rely on an official use requirement for a particular machine. (*See* R. Doc. 361, at 4-6.) The only case to address the prosecution

---

[5] The only statute the Government latched onto was 18 U.S.C. § 922(a)(6), for the first time in its sentencing brief, under an ill-fated attempt to change the theory of the case into Wendt attempting to deceive other dealers after the jury acquitted him of attempting to deceive the ATF.

Appellate Case: 24-2458    Page: 37    Date Filed: 10/09/2024 Entry ID: 5444542

of a police officer was *Vest*, and it held it unconstitutionally vague. *United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006). And *Vest* is not distinguished by the cases the Court cites: *United States v. Theunick*, 651 F.3d 578 (6th Cir. 2011); *United States v. Carn*, No. 13CR000346, 2018 WL 1413971 (D. Nev. Mar. 20, 2018). Neither of those cases involved a section 922(o). As the *Theunick* court itself explained: "By contrast, § 922(o) is not charged in this case, and the law enforcement defense in § 922(o)(2)(A) does not appear in the statutes charged." *Theunick*, 651 F.3d at 587.

The Government and the ATF were allowed to manipulate § 922(o)(a)(2) and convict Wendt essentially of violating the registration requirement of a particular machinegun. Though sometimes referred to as a law enforcement exception, § 922(o)(a)(2) is much broader than just law enforcement. It is undisputed that it also applies to dealers and their possession of sales samples. In fact, as the Government properly concedes, it goes even further and applies to the customers of dealers regardless of whether the customer's possession has anything at all to do with a government purchase. Further, Iowa law permits both dealers and police officers to possess machineguns so long as they are not otherwise committing a crime. *See* Iowa Code § 724.2. Indeed, this is consistent with the legislative history of § 922 in that the statute is only meant to apply to crime guns. Moreover, § 922 must be read in this case in the context of both Congress and the ATF approving police officers to purchase machineguns with their own money. The point is that § 922(a)(2) only refers to the authority to permit possession generally, not the use restriction of a particular firearm.

Appellate Case: 24-2458     Page: 38     Date Filed: 10/09/2024 Entry ID: 5444542

In addition, this improper application of an "official use" requirement also fatally infected the "purchase law letter" false statement count. Between the "purchase law letter" false statement instructions and the illegal possession instructions, the jury was invited to conclude that any subsequent use of a machinegun outside the official use of it would effectively render that transaction illegal. As such, because the "official use" term should have been read as no more than a purchase authorized by a law enforcement agency, that count is also flawed.

*Second*, the Court's Order improperly relied on the ATF's "demonstration law letter" requirements. Again, Court relied on the ATF's regulations and interpretations of terms extensively in the jury instructions and its Order in this regard. Essentially, what occurred here is that the Court: (1) adopted the Government's incorrect interpretation of what should be required in a "demonstration law letter," and then (2) improperly included it into the jury instructions wherein it effectively assigned that meaning to Wendt's statements and convicted him of failing to meet these new requirements.

The ATF's purported demonstration law letter requirements are not contained in any statute nor in any regulation. Rather, they started getting used in practice through a sample letter from the ATF. Then the ATF issued informal guidance stating that the letter was now the required standard. However, the ATF issued that informal guidance after the law letters and transactions in this case. In fact, Wendt never even made those statements in any of his law letters. And Wendt was not allowed to challenge this after-

32

the-fact nature of the requirement by putting it into evidence or obtaining discovery from the Government on other approvals during the time that did not include the purported required language. Indeed, even the ATF's own regulation expressly prohibits the ATF from requiring anything beyond "expressing a need for a particular model or interest in seeing a demonstration of a particular weapons." *See* 27 C.F.R. § 479.105(a).

The District Court allowed the jury instructions to adopt the ATF's new interpretation of the regulation, creating an after-the-fact requirement that Wendt had to meet, otherwise his statement was per se false. The instructions stated that the request had to be in connection with a potential future purchase, as opposed to a possible purchase, or even just interest in seeing a demonstration unrelated to a purchase. Here, none of the law letters even stated "for future potential purchase." And the law does not require the potential future purchase language. The trial was then about whether Wendt met this new requirement, rather than whether he made a false statement. In short, Wendt was convicted for not meeting the newly-imposed requirements rather than for making a false statement.

In conclusion, the ATF's attempt to regulate by prosecution here is even more egregious than its attempt to legislate through rulemaking in *Cargill* and is now further belied by the Supreme Court's decisions in *Loper Bright* regarding the deference heretofore given to an agency, and in *Fischer*, regarding the importance of the role of the legislature in defining crimes. When read together, these three new cases send a

33

clear and powerful message from our nation's highest court about that overreach of the Executive Branch that relates directly to this case.

**B.    The District Erred by Denying Wendt's Request for a *Harra* Ambiguity Instruction.**

The alleged false statements by Wendt were ambiguous and required a *Harra* instruction, which the District Court did not allow. (Trial TR. Vol. V 902:3-17.) Wendt raised this issue consistently in the case beginning with his motion to dismiss briefing. (R. Doc. 234.) Wendt again requested the *Harra* instruction in his proposed jury instruction number 22. (R. Doc. 291, at 25 ("The government must prove beyond a reasonable doubt that Mr. Wendt's statement was actually false and that Mr. Wendt knew it was actually false at the time he made it. To do this, the government has the burden to prove beyond a reasonable doubt that Mr. Wendt's statement was false under any reasonable interpretation of the statement.").)

The *Harra* instruction follows the law in stating that if a defendant subjectively believed their statements were true and that interpretation was objectively reasonable, even if wrong, the defendant cannot be guilty. *United States v. Anderson*, 579 F.2d 455 (8th Cir. 1978); *United States v. Harra*, 985 F.3d 196, 204 (3d Cir. 2021) ("[T]o prove falsity beyond a reasonable doubt in this situation, the Government must prove either that its interpretation of the reporting requirement is the only objectively reasonable interpretation or that the defendant's statement was also false under the alternative, objectively reasonable interpretation."); *United States v. Whiteside*, 285 F.3d 1345, 1351

Appellate Case: 24-2458    Page: 41    Date Filed: 10/09/2024 Entry ID: 5444542

(11th Cir. 2002) ("In a case where the truth or falsity of a statement centers on an interpretive question of law, the government bears the burden of proving beyond a reasonable doubt that the defendant's statement is not true under a reasonable interpretation of the law."); *United States v. Rowe*, 144 F.3d 15, 21-23 (1st Cir. 1998) (finding that government bore the burden of negating reasonable interpretations because a reasonable interpretation of the underlying disclosure requirement would render the defendant's statement true).

The District Court denied the *Harra* instruction, finding that the statute was not ambiguous. (Trial TR. Vol. V 904:2-23.) But the District Court erred because it is not the statute that is ambiguous, it is the statement itself. The Court did not directly address the statement ambiguity issue or the proof problem of "possible" versus "potential." Wendt testified that he believed his statements were true when he made them. (Trial TR. Vol. V 1072:11-16.) Even Wendt's alleged co-conspirator, Marcum, testified that he believed Wendt thought his statements were true. (Trial TR. Vol. II 406:1-407:2.) The statements were a matter of legal interpretation. Even the District Court acknowledged this case was not about a dispute of the facts, but rather a dispute about the law. (R. Doc. 381, at 3 n.1.) Moreover, the evidence showed that the statements were passed to Wendt by dealers who took the language from the ATF sample letters. (Trial TR. Vol. V 106:5-11; 1018:24-25; R. Doc. 349-122.) This was no different than an applicant checking a box next to a purported legal requirement. In that regard, the

35

District Court erred in refusing to give the *Harra* ambiguity instruction. This Court should vacate and remand.

## II. THE ILLEGAL POSSESSION OF A MACHINEGUN CHARGE IS UNCONSTITUTIONAL AND THE DISTRICT COURT SHOULD HAVE DISMISSED IT.

### A. Section 922(o) is Unconstitutionally Vague as Applied to Wendt.

The only court to have addressed the prosecution of a police officer for illegal possession of a machine gun under 18 U.S.C. § 922(o) dismissed the case as unconstitutionally vague. In *United States v. Vest*, the government charged Vest, who was an Illinois State Trooper and lead rifle instructor for the Illinois State Police, with illegal possession of a machinegun. 448 F. Supp. 2d 1002, 1004 (S.D. Ill. 2006). The government's theory was that Vest illegally seized letterhead to compose a letter to acquire the machinegun. *Id.* As such, the government claimed Vest lacked the authority to purchase the machinegun on behalf of the Illinois State Police and therefore illegally possessed the machinegun.

Vest, on the other hand, claimed he had inherent authority to legally possess the machinegun. *Id.* Vest argued that without the requisite criminal intent present in the statutes, charging him with knowing possession of a machinegun when possession is an inherent part of his employment was unconstitutional. *Id.* at 1005. He contended that the "under the authority" phrase is capable of differing interpretations and thus failed to give law enforcement officers proper notice of what behavior is prohibited. *Id.* at 1006. The court held this "lack of a structured definition for what constitutes proper

36

'authority' under the law enforcement exception is what makes the statutes susceptible to arbitrary enforcement." *Id.* Vest noted there had not been a prosecution of a police officer for possession of a machinegun under § 922(o) in the 20 years since the enactment of the statute. *Id.* at 1007.

The court noted: "one may challenge the constitutionality of a penal statute based upon the argument that the statute is vague, as the vagueness doctrine incorporates notions of fair notice or warning." *Id.* (cleaned up). A penal statute may be void for vagueness if it fails to provide: (1) "the kind of notice that will enable ordinary people to understand what conduct it prohibits" or (2) "explicit standards to prevent arbitrary and discriminatory enforcement." *Id.* at 1008 (cleaned up). The court determined it would be "inappropriate to allow the case to proceed on the merits, as it deems the statutes discussed within are unconstitutionally vague as applied to Vest" and observed the following:

> Everyone can likely agree that the proper definition of who is to legally possess what kind of gun is not properly bestowed upon prosecutors, the judicial system or members of a jury. In a democracy which prides itself on the rights of due process, fair notice and warning, a particular situation has arisen that calls for the adherence to constitutional fundamentals.

*Id.* at 1003. In making this ruling, the court reviewed the legislative history which is on point with this case:

> In a colloquy put on the record, Senator Dole inquired about the law enforcement exception to § 922(*o*), stating that it is "somewhat ambiguous language." During his response, Senator Hatch stated that "[a]ny local police would be specifically covered by the

37

language in this [law enforcement exception] provision permitting the transactions and possession to or by or under the authority of a subdivision of a State." Another explanatory statement made by Senator Hatch which the Court feels is particularly insightful when discussing the law enforcement exception was: "This amendment was designed to deal with *crime guns,* not weapons used to fight crime on a domestic or international scale."

[. . .]

**Mr. DOLE.** The language of this new section intends that a machine gun may be transferred under the authority of a State or a subdivision thereof. The House purposely did not choose to use the language "on behalf of" such an agency or subdivision, which is language contained in other provisions of current gun law. Could this be read to permit a State or local police force to authorize its officers to purchase for themselves a machine gun which they might use in the line of their law enforcement work but which would be owned by the officer, not the police force itself?

**Mr. HATCH.** The Senator makes a good point. Some police forces with financial difficulties have authorized their officers to purchase and register automatic weapons to prevent themselves from being outgunned if they should ever confront well-armed drug dealers or organized criminals. This language appears to encompass that practice. *It seems to me, however, that under these circumstances regulations would be necessary to govern disposition of those weapons in the event the officer leaves the police force. In other words, possession or transfer of those weapons would cease to enjoy the authorization of the State agency or subdivision when the officer was no longer on the police force.* The police force would then have to exercise its authority to guarantee that the machine gun was transferred to another entity authorized by the State or the United States to possess such weaponry.

*Id.* at 1010-11 (cleaned up) (emphasis in original).

The court also held that the statute was unconstitutionally vague because it allowed for arbitrary enforcement. *Id.* at 1012. The court explicitly reasoned "because there is not a statutory definition of authority for Vest, it will be left to the jury to

38

ultimately determine what type of authority is proper and whether Vest therefore had the proper authority in order for the law enforcement exception to exonerate him." *Id.* The court found that "§ 922(o)(2)(A) allows for arbitrary enforcement because it allows the prosecution to essentially define the criminal behavior." *Id.* Further, the court explicitly rejected the government's argument that the law enforcement exception was only meant to apply to law enforcement officers *in the performance of their official duties. Id.*

Wendt's circumstances are an even clearer unconstitutional application of § 922(o). Wendt was the Police Chief and a licensed dealer. (Trial TR. Vol. III 618:13-15; 990:12-24.) And while Wendt did not need the City's authority because he had the inherent authority, Wendt obtained the City's permission regardless. (Trial TR. Vol. IV 736:13-22; 745:8-746:9; 753:6-25.) The facts here are clear that the charges against Wendt were unconstitutionally vague, and this Court should vacate the District Court's finding and remand for dismissal.

### B. Section 922(o) Violates Wendt's Second Amendment Rights.

18 U.S.C. § 922(o) violates the Second Amendment as applied to Wendt and this Court should vacate the District Court's ruling otherwise and remand for dismissal. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ("*Bruen*"), the Supreme Court articulated a framework for evaluating the constitutionality of firearms regulations. The analysis begins with the Second Amendment's text. If a defendant's conduct falls within that text, then that conduct is presumptively protected. *Id.* at 17. If the plain text of the Second Amendment applies to a defendant's conduct, it is the

Appellate Case: 24-2458    Page: 46    Date Filed: 10/09/2024 Entry ID: 5444542

government's burden to show that the regulation is consistent with this nation's historical firearm regulation tradition. *Id.* This requires a "historical analogue" between the modern regulation and historical regulations, not a "historical twin." *United States v. Rahimi*, 144 S. Ct. 1889, 1902–03 (2024).

Here, 18 U.S.C. § 922(o) is unconstitutional as applied to Wendt. Under the first step of *Bruen*, the plain text of the Second Amendment applies to the conduct because Wendt is charged with possession of a machinegun that can be carried in hand. "[B]y definition, the machinegun [is a bearable arm] within the plain text of the Second Amendment." *United States v. Morgan*, No. 23-10047, 2024 WL 3936767, at *2 (D. Kan. Aug. 26, 2024).[6] The District Court here rejected the notion that the text of the Second Amendment covers machineguns, citing *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008), and stating:

> *Fincher* was not undermined by *Bruen*. *Fincher* followed *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008), for the proposition that the Second Amendment only protects the possession of weapons "in common use," as opposed to unusually dangerous weapons like machine guns. The Eighth Circuit has already recognized, post-*Bruen*, that this proposition remains good law. *See United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023).

---

[6] The District of Kansas appears to be the only court to address the constitutionality of § 922(o) after *Rahimi* and *Bruen* that was not bound authority regarding whether the text of the Second Amendment covers machineguns. Other district courts to assess the constitutionality of § 922(o) after *Rahimi* and *Bruen* were bound by mandatory authority issued by appellate courts before *Rahimi* and *Bruen*. *See, e.g.*, *United States v. Chan*, No. 22-CR-00109, 2024 WL 4028019, at *6 (D. Haw. Sept. 3, 2024) (citing *United States v. Henry*, 688 F.3d 637 (9th Cir. 2012)).

Appellate Case: 24-2458     Page: 47     Date Filed: 10/09/2024 Entry ID: 5444542

(R. Doc. 260, at 7.)

The District Court held that *Fincher* "followed [*Heller*] for the proposition that the Second Amendment only protects the possession of weapons 'in common use,' as opposed to unusually dangerous weapons like machine guns." (R. Doc. 260, at 7.) While this Court held in *Fincher* that machineguns are not covered by the text of the Second Amendment, that holding was before *Rahimi* and *Bruen*. *Fincher*, 538 F.3d at 874. And *Rahimi* and *Bruen* changed the analysis. In fact, *Rahimi* and *Bruen* "addressed this category of laws at some length . . . describing them as prohibitions against 'going armed' or 'affray,' the latter word being a term derived from a French word meaning 'to terrify.'" *Morgan*, 2024 WL 3936767, at *4 (citing *Rahimi*, 144 S. Ct. at 1900–01; *Bruen*, 597 U.S. at 46-50). The Supreme Court in *Rahimi* and *Bruen* "observed that these laws combined the elements of going about in a manner to terrorize the public with dangerous and unusual weapons." *Id.*

Thus, *Rahimi* clarifies that the use of the weapon matters. Here, however, § 922(o) criminalizes mere possession without any regard to the way the machinegun is used. "If an individual purchases such a weapon and locks it away in a gun safe in his basement for twenty years without touching it, he is just as guilty of a violation of § 922(o) as one who takes the same weapon out on the public streets and displays it in an aggressive manner." *Morgan*, 2024 WL 3936767, at *4. The criminalization of mere possession is inconsistent with the Second Amendment as analyzed in *Rahimi* and *Bruen* because there is no regard for how the gun is used. Moreover, here, there is no allegation

41

that the machinegun at issue was used to terrorize the public. Quite the opposite, Wendt was a police officer and the machineguns were not used in any way to terrorize.

Additionally, machineguns may not be prohibited on the basis that they are "dangerous and unusual" because they are not unusual at all. *See Bruen*, 597 U.S. at 47. As the District Court in Kansas recognized in finding § 922(o) unconstitutional, "[t]here are over 740,000 legally registered machineguns in the United States today." *Morgan*, 2024 WL 3936767, at *4 (citing the Annual Statistical Update). And there is no historical ban on machineguns. To the contrary, § 922(o) was not enacted until 1986 and only covers machineguns manufactured after 1986:

> Machineguns have been in existence for well over a century. While the federal government has regulated transfer and possession of such weapons since passage of the National Firearms Act in 1934, it did not outright prohibit possession of machineguns until passage of the Firearms Owners Protection Act in 1986. Even then, the law did not prohibit the possession of all machineguns; rather, § 922(o) merely prohibits possession of machineguns that were not lawfully possessed as of the date that prohibition went into effect in 1986. § 922(o)(2)(B). Thus, even today, it is perfectly legal for a person who has not been divested of his firearm rights under some other provision of law to acquire and possess a machinegun, so long as it was lawfully possessed by someone before the relevant date in 1986, and so long as he complies with the National Firearms Act's requirements to obtain and possess the weapon. In that sense, machineguns are not unusual.

*Id.* At sentencing, the District Court found that the evidence at trial demonstrated that "machine guns are common among law enforcement in Iowa. . . ." (Sent. TR. 12:22-25.)

42

In sum, when properly analyzed under current Supreme Court precedent, § 922(o) is unconstitutional as applied to Wendt. The District Court erred in finding it constitutional and this Court should vacate its judgment and remand for dismissal.

## III. THE DISTRICT COURT ERRED BY SENTENCING WENDT BASED ON A CHARGE THAT WAS NEITHER ALLEGED NOR PROVEN.

The Government ended its prosecution with a "back door" sentencing of Wendt whereby the Government was able to punish Wendt for violations of federal firearms laws under a new theory. But Wendt was not convicted of such violations, and the Government maintained throughout the prosecution that Wendt was not being charged with violating federal firearms laws. The District Court then incorrectly calculated the relevant conduct based on this and the previously identified misinterpretations of the law.[7] This completed the Government's wholesale amendment of federal firearms laws.

The District Court incorrectly applied the Guideline for federal firearms violations to the Conspiracy and False Statements charges. At the Government's request, the District Court applied the cross reference, USSG § 2B1.1(c)(3), and

---

[7] The District Court also incorrectly calculated the enhancements. The District Court should have found two groups of charges under the Guidelines: (1) Conspiracy & False Statements; and (2) Illegal Possession of Machine Gun. Then, it should have made individual determinations about the enhancements as to each group. USSG § 3G1.2, 3. The number of firearms enhancements therefore would not apply. Further, the enhancements abuse of trust and obstruction of justice should not have applied to the Illegal Possession of a Machine Gun group. *Id.* In addition, Wendt should have received an acceptance of responsibility reduction for the Illegal Possession of a Machine Gun group.

Appellate Case: 24-2458   Page: 50   Date Filed: 10/09/2024 Entry ID: 5444542

incorrectly determined the applicable Guideline to be USSG § 2K2.2. But the District Court should have applied USSG § 2B1.1 for the conspiracy and false statement counts and USSG § 2K2.2 only for the illegal possession count. The cross-reference only applies if "the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline." USSG § 2B1.1(c)(3).

The "count of conviction" is limited to the substantive offense set forth in the Indictment. In *United States v. Bah*, this Court confirmed this unambiguous reading of the cross-reference and held "this cross-reference is applicable 'only if the conduct alleged in the count of the indictment of which the defendant is convicted establishes the elements of another offense.'" 439 F.3d 423, 427-28 (8th Cir. 2006) (quotation omitted). "[N]umerous courts have analyzed the Guidelines, as a whole – including the definition of "offense of conviction" provided in Section 1B1.2(a) – and the history of the Guidelines and determined that the phrase 'offense of conviction' describes only the precise conduct constituting the crime for which the defendant was convicted, and does not include non-offense relevant conduct." *United States v. Griffith*, 115 F. Supp. 3d 726, 733-34 (S.D. W. Va. 2015) (internal quotations omitted) (collecting cases).

First, this bait-and-switch tactic of charging and convicting someone of one offense and sentencing them for another offense is exactly what is prohibited. "A definition of 'offense of conviction' that includes only the substantive crime charged ensures that defendants have notice of the precise nature of the charges provided in the indictment or information." *Id.* at 734. This definition "preserves 'the compromise'

44

made by the Sentencing Commission 'between real offense sentencing and charged offense sentencing' that forms the foundation of the entirety of the Guidelines." *Id.* (quoting *United States v. Fine*, 975 F.2d 596, 604 (9th Cir. 1992)). Wendt only received one week's notice of the change—from the time of the Government's sentencing memorandum to the sentencing. And the District Court refused to grant Wendt's request for an extension. This was an entirely new theory that Wendt did not have an opportunity to investigate, to test at trial, or to prepare a defense.

Second, unlike the false statement charges, § 922(a)(6) requires an intent to deceive or likelihood to deceive—an element not required nor met in this case. *See* 18 U.S.C. § 1001; 18 U.S.C. § 922(a)(6). The jury found Wendt did not intend to defraud the ATF by using deceitful or dishonest means to impair, impede, obstruct, or defeat the lawful government functions of the ATF. (R. Doc. 330, at 11.) Any theory under § 922(a)(6) would be flatly inconsistent with that finding. Rather, the Government relied on a convoluted theory that somehow Wendt did not intend to deceive the ATF but did deceive some intermediary between himself and the ATF. The Government never identified precisely who would have been deceived. Regardless, it would be impossible to attempt to deceive an intermediary to obtain the machinegun without also attempting to deceive the ATF.

Third, also unlike the False Statement charges, § 922(a)(6) required a false statement that was not just material to the ATF but required by the chapter. *See* 18 U.S.C. § 922(a)(6). The District Court completely ignored that the false statement had

45

to be "with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter." 18 U.S.C. § 922(a)(6). However, the law letters were not required by the chapter. Notably, the Government concedes—as it must and it has always—that Wendt did not violate 26 U.S.C. § 5861(l). That statute provides that it is illegal "to make, or cause the making of, a false entry on any application, return, or record required by this chapter, knowing such entry to be false." 26 U.S.C. § 5861(l). In other words, the law letters at issue are not part of the "written application" required by 26 U.S.C. § 5812(a). Again, this was something the District Court had mistakenly assumed. Accordingly, the District Court incorrectly calculated Wendt's sentence and it should be vacated and remanded for a new sentence.

Appellate Case: 24-2458     Page: 53     Date Filed: 10/09/2024 Entry ID: 5444542

# STANDARDS OF REVIEW

## I.     JURY INSTRUCTIONS

This Court reviews the trial court's jury instructions for abuse of discretion. *United States v. White*, 863 F.3d 784, 790 (8th Cir. 2017) (en banc). "We will reverse a jury verdict . . . when the [jury instruction] errors misled the jury or had a probable effect on the jury's verdict." *United States v. Pereyra-Gabino*, 563 F.3d 322, 328 (8th Cir. 2009) (reversing jury conviction and remanding for reconsideration of motion to dismiss). Reversal is required where "the jury instructions failed to sufficiently apprise the jury of the government's burden." *White*, 863 F.3d at 792 (reversing firearm possession charges and remanding).

Furthermore, a jury instruction that incorrectly states the law is an abuse of discretion per se because it constitutes legal error. *See United States v. Wisecarver*, 598 F.3d 982, 989 (8th Cir. 2010) (reversing conviction due to incorrect statement of law in jury instruction); *United States v. Rush-Richardson*, 574 F.3d 906, 911 (8th Cir. 2009) (same). Indeed, a jury instruction that incorrectly states the law is not mere error; it is *plain error*. *Wisecarver*, 598 F.3d at 989. For the reasons stated herein, this Court should reverse.

## II.    CONSTITUTIONALITY

Constitutional challenges to criminal charges raised through a motion to dismiss are reviewed de novo, with no deference owed to the district court's determinations. *United States v. Turner*, 842 F.3d 602, 604 (8th Cir. 2016).

Appellate Case: 24-2458     Page: 54     Date Filed: 10/09/2024 Entry ID: 5444542

## III.   SENTENCING

"In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the guidelines de novo." *United States v. Barker*, 556 F.3d 682, 689 (8th Cir. 2009).

### <u>CONCLUSION</u>

Wendt's convictions should be reversed and the case remanded for a new trial or for entry of judgment of acquittal.

Dated: October 8, 2024

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt
Rachel A. Yaggi
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000

*Counsel for Appellant Bradley Eugene Wendt*

# CERTIFICATE OF COMPLIANCE AND VIRUS SCANNING

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 12,402 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Garamond.

Pursuant to Local Rule 28A(h)(2), I certify that the Brief and the Addendum have been scanned for viruses and are virus-free.

Respectfully submitted,

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt
Counsel for Appellant Bradley Eugene Wendt

## CERTIFICATE OF SERVICE

In accordance with Rule 25 of the Federal Rules of Appellate Procedure and Circuit Rule 28A(d), I hereby certify that on the 8th day of October, 2024, I served a copy of the foregoing **Appellant's Opening Brief** by filing a copy on the Court's CM/ECF system, which will serve electronic copies on all registered counsel.

*/s/ Nick Klinefeldt*

Nicholas A. Klinefeldt
Counsel for Appellant Bradley Eugene Wendt