# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

BRADLEY EUGENE WENDT,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Iowa
The Honorable District Court Judge Stephen H. Locher
Case No. 4:22-cr-00199-SHL-1

## BRIEF FOR *AMICI CURIAE* FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC., GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, PALMETTO STATE ARMORY, LLC, B&T USA, LLC, AND THE STATES OF WEST VIRGINIA, MISSOURI, ARKANSAS, KANSAS, MONTANA, NEW HAMPSHIRE, SOUTH CAROLINA, AND UTAH IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL

Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Ave. W., Ste. 4
Vienna, VA 22180
Tel: (703) 356-5070
rob@wjopc.com

Michael D. Faucette
Colin J. Cloherty
Isaac J. Wyant
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
MFaucette@wiley.law

*Additional Counsel Listed on Signature Page*

# CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 29(a)(4)(A), *Amici Curiae* state as follows:

*Amicus Curiae* Firearms Regulatory Accountability Coalition, Inc. ("FRAC") is a non-stock, non-profit corporation. FRAC has no parent corporation. No publicly held company has any ownership interest in FRAC.

*Amicus Curiae* Palmetto State Armory, LLC ("PSA") is wholly owned by JJ Capital, LLC, a holding company. No publicly held company has any ownership interest in JJ Capital, LLC.

*Amicus Curiae* B&T USA, LLC ("B&T USA") has no parent corporation. No publicly held company has any ownership interest in B&T USA.

*Amicus Curiae* Gun Owners of America, Inc. ("GOA") is a non-stock, non-profit corporation. GOA has no parent corporation. No publicly held company has any ownership interest in GOA.

*Amicus Curiae* Gun Owners Foundation ("GOF") is a non-stock, non-profit corporation. GOF has no parent corporation. No publicly held company has any ownership interest in GOF.

*/s/ Michael D. Faucette*
Michael D. Faucette
*Counsel of Record for*
Amici Curiae

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................. i

TABLE OF CONTENTS ................................................................ ii

TABLE OF AUTHORITIES ........................................................... iii

INTERESTS OF *AMICI CURIAE* ....................................................1

INTRODUCTION AND SUMMARY ..................................................4

ARGUMENT ..........................................................................6

    I.    WENDT WAS IN LAWFUL POSSESSION OF THE
        MACHINEGUN..................................................................6

        A.    Section 925(a)(1) categorically exempts the machinegun from
                the Gun Control Act. ................................................6

        B.    Section 922(o)(2)(A) further exempts law enforcement from the
                GCA's machinegun prohibition. ................................9

        C.    The district court's jury instruction contravened the law. ........11

        D.    The district court's interpretation of the statute violates the Rule
                of Lenity. ...........................................................15

    II.    WENDT'S LAW LETTER STATEMENTS WERE NOT
        MATERIAL. ..................................................................21

    III.    THIS CASE PERPETUATES ATF'S PATTERN OF ABUSE. ........26

CONCLUSION ......................................................................28

CERTIFICATE OF COMPLIANCE

CIRCUIT RULE 28A(h) CERTIFICATION

CERTIFICATE OF SERVICE

Appellate Case: 24-2458    Page: 3    Date Filed: 10/18/2024 Entry ID: 5447638

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramski v. United States*,
573 U.S. 169 (2014)..................................................................17

*Advanced Energy United, Inc. v. FERC*,
82 F.4th 1095 (D.C. Cir. 2023)...............................................22

*AT&T Corp. v. FCC*,
448 F.3d 426 (D.C. Cir. 2006) ..................................................5

*Bailey v. United States*,
516 U.S. 137 (1995)..................................................................13

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) ...................................15, 16, 19

*Davis Enters. v. EPA*,
877 F.2d 1181 (3d Cir. 1989) .............................................20, 22

*Encino Motorcars, LLC v. Navarro*,
584 U.S. 79 (2018)......................................................................6

*FEC v. Cruz*,
596 U.S. 289 (2022)..................................................................18

*FRAC v. Garland*,
112 F.4th 507 (8th Cir. 2024) ...........................................25, 27

*Fraternal Ord. of Police v. United States*,
173 F.3d 898 (D.C. Cir. 1999)..................................................7

*Garland v. Cargill*,
602 U.S. 406 (2024)..................................................................26

*Hardin v. ATF*,
65 F.4th 895 (6th Cir. 2023) ...................................................15

Appellate Case: 24-2458    Page: 4    Date Filed: 10/18/2024 Entry ID: 5447638

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024) ........................................................................18

*Marks v. United States*,
  430 U.S. 188 (1977) ............................................................................17

*Mock v. Garland*,
  75 F.4th 563 (5th Cir. 2023) ...............................................................27

*NLRB v. Okla. Fixture Co.*,
  332 F.3d 1284 (10th Cir. 2003) ...............................................5, 18, 19

*Pfoutz v. State Farm Mut. Auto Ins. Co*,
  861 F.2d 527 (8th Cir. 1988) ................................................................8

*Skilling v. United States*,
  561 U.S. 358 (2010) ............................................................................20

*Snyder v. United States*,
  144 S. Ct. 1947 (2024) ........................................................................17

*Stafford v. Ford Motor Co.*,
  790 F.2d 702 (8th Cir. 1986) ................................................................8

*Texas v. ATF*,
  2024 U.S. Dist. LEXIS 103441 (N.D. Tex. June 11, 2024) ...............26

*United States v. Buford*,
  54 F.4th 1066 (8th Cir. 2022) .........................................................5, 15

*United States v. Davis*,
  588 U.S. 445 (2019) ............................................................................15

*United States v. Faulkner*,
  636 F.3d 1009 (8th Cir. 2011) ......................................................14, 21

*United States v. Garcia*,
  707 F. App'x 231 (5th Cir. 2017) ........................................................18

*United States v. Introcaso*,
  506 F.3d 260 (3d Cir. 2007) ...............................................................18

iv

*United States v. Lazaro-Guadarrama,*
   71 F.3d 1419 (8th Cir. 1995) ...............................................................16

*United States v. Olano*,
   507 U.S. 725 (1993).........................................................................8

*United States v. Pereyra-Gabino*,
   563 F.3d 322 (8th Cir. 2009) ...............................................................11

*United States v. Qaisi*,
   779 F.2d 346 (6th Cir. 1985) ...............................................................23

*United States v. Sheek*,
   990 F.2d 150 (4th Cir. 1993) ...............................................................18

*United States v. Thurber*,
   106 F.4th 814 (8th Cir. 2024) ...............................................................13

*United States v. Vest*,
   448 F. Supp. 2d 1002 (S.D. Ill. 2006)....................................................19, 20, 27

*Warren v. City of Lincoln*,
   864 F.2d 1436 (8th Cir. 1989) ...............................................................8

**Statutes**

18 U.S.C. § 922 ......................................................................*passim*

18 U.S.C. § 924 ..........................................................................13

18 U.S.C. § 925 ......................................................................*passim*

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 ...................................6

Md. Code Ann. § 4-404 .....................................................................13

Md. Code Ann. § 4-405 .....................................................................13

Mont. Code Ann. § 45-8-303 .................................................................13

Mont. Code Ann. § 45-8-304 .................................................................13

Va. Code Ann. § 18.2-289 ...................................................................13

Appellate Case: 24-2458     Page: 6     Date Filed: 10/18/2024 Entry ID: 5447638

Va. Code Ann. § 18.2-290 ...................................................................13

**Legislative Materials**

132 Cong. Rec. (1986) .....................................................................10

**Executive Materials**

27 C.F.R § 479.105 ......................................................................22, 23

ATF, Open Letter to All Federal Firearms Licensees Regarding
    Machinegun Dealer Sales Sample Letters (Jan. 11, 2023),
    https://tinyurl.com/8fr4nnp7 ..................................................24, 25

Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018) ........................26

Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88
    Fed. Reg. 6,478 (Jan. 31, 2023).............................................26, 27

Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp.
    Pres. Doc. 298 (Apr. 8, 2021)...................................................27

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation
    of Legal Texts* (2012) ........................................................6, 15

*Authority*, *Black's Law Dictionary* (5th ed. 1979) ...................................9

Appellate Case: 24-2458     Page: 7     Date Filed: 10/18/2024 Entry ID: 5447638

## INTERESTS OF *AMICI CURIAE*[1]

*Amici curiae* consist of firearms associations, States, and two companies that design, produce, and sell firearms. This case is about the scope of the federal government's authority to regulate local police departments' use of legally acquired firearms, and its ability to criminally prosecute individuals for noncompliance with agency regulations and guidance. The prosecution perpetuates ATF's disturbing trend of targeting small town sheriffs and police chiefs and circumscribing their federally and state-granted authorities to possess the firearms necessary for their duties.

The Firearms Regulatory Accountability Coalition, Inc. is the premiere national trade association representing U.S. firearms manufacturers, retailers, importers, and innovators on regulatory and legislative issues impacting the firearms industry in the United States. An important part of FRAC's mission is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, FRAC regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the firearms community.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for *amici curiae* state that no party's counsel authored this brief in whole or in part, and that no person other than *amici curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2).

1

Gun Owners of America, Inc. and Gun Owners Foundation are non-profit organizations exempt from federal taxation under section 501(c)(4) and 501(c)(3) of the Internal Revenue Code. Both are dedicated to the correct construction, interpretation, and application of law. In addition to litigating dozens of firearms cases around the country on behalf of their members and supporters, GOA and GOF have filed nearly 200 *amicus* briefs in state and federal courts on a variety of topics important to the Second Amendment community.

FRAC, GOA, GOF, and the other firearms industry members have an interest in this case because it represents another example of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") unilaterally expanding its regulatory authority with criminal consequences—this time by incorporating guidance documents and regulatory provisions into jury instructions. As a result of this and other recent prosecutions, many federal firearms licensees have stopped engaging in business with law enforcement entities that require machinegun demonstrations, fearing prosecution under ATF's ever-shifting interpretation of the law.

The coalition of States—which includes the States of Missouri, Arkansas, West Virginia, South Carolina, Montana, Utah, Kansas, and New Hampshire—has a unique interest in this case because the outcome threatens their law enforcement discretion to possess and use firearms in accordance with their inherent authority. Further, it leaves individual officers, sheriffs, and police chiefs in fear of prosecution

2

should ATF decide they have used certain firearms outside of their so-called "official duties." And it threatens to impose onerous new obligations on local departments, as they could be compelled to continually evaluate whether the covered firearms are always employed for these ambiguously defined "duties." Unfortunately, this case is part of a larger ATF effort to impose new restrictions on the authority of local law enforcement agencies through *ad hoc* prosecutions. But in passing the Gun Control Act ("GCA") and its amendments, Congress explicitly left certain areas—including the right of law enforcement to possess and use certain firearms—to the States. This congressional choice precludes the federal government from interrogating whether a Chief of Police has sufficient authority to use a machinegun in any lawful manner that he or she sees fit. The GCA's provisions were meant to assist law enforcement officers, not ensnare them.

In addition to the substantial injustice inflicted upon Defendant Wendt, this prosecution improperly expands the lawful powers of the federal government by permitting unlawful applications of federal authority and intrusion into matters Congress explicitly reserved to the States. *Amici* offer this submission to clarify the proper scope and interpretation of the GCA and the materiality of purportedly false or misleading statements made to a regulatory agency.

Appellate Case: 24-2458     Page: 10     Date Filed: 10/18/2024 Entry ID: 5447638

## INTRODUCTION AND SUMMARY

Adair Police Chief Bradley Wendt was convicted of unlawfully possessing a machinegun and submitting false statements to the government supporting his purchase and demonstration letters. Both theories for conviction, however, rest on misinterpretations of law.

*First*, as the Chief of Police, Wendt was entirely exempt from the firearms prohibitions at issue here. By its own terms, section 925(a)(1) removes firearms acquired by police officers from the GCA—rendering Wendt's prosecution unlawful. The law empowers ATF to regulate the transfer and possession of machineguns but is silent as to their use. Nevertheless, the government asserts that ATF can regulate the way sovereign States and local governments use machineguns. Failure to adhere to the ATF's regulations, according to the government, is a criminal act. But section 922(o)(2)(A) wholly excludes the "possession" or "transfer" of machineguns "by or under the authority of" a lawful government entity. In other words, it expressly prohibits the federal government from interfering in a local police department's authority to acquire, possess, and issue machineguns to its police officers. As Chief of Police, Wendt possessed the authority of the department and possessed a machinegun under that authority. That alone made his possession lawful. The trial court misinterpreted the law by adopting the government's reading

4

and instructing the jury that a local police officer's possession could only be for "official duties," a term conspicuously missing from the statutory text.

If the Court disagrees that the statute unambiguously foreclosed Wendt's prosecution, then the statute is at least ambiguous, and the rule of lenity applies. "The rule of lenity states that ambiguities in criminal statutes should be resolved in favor of the defendant." *United States v. Buford*, 54 F.4th 1066, 1068 (8th Cir. 2022). And exceptions to criminal statutes "must be interpreted broadly." *NLRB v. Okla. Fixture Co.*, 332 F.3d 1284, 1288 (10th Cir. 2003). If the GCA's repeated, express exemptions do not categorically exclude law enforcement, then they are ambiguous.

*Second*, the false statement charges are defective. "[I]t is elementary that an agency must adhere to its own rules and regulations." *AT&T Corp. v. FCC*, 448 F.3d 426, 434 (D.C. Cir. 2006). But Wendt was charged with submitting false statements which the ATF—under the terms of its own regulations—could not consider. False or not, the materiality of statements submitted to an agency that lacked the discretion to consider them is an issue of law which never should have reached the jury.

This Court should reverse the convictions and remand the case for entry of judgment of acquittal.

5

## ARGUMENT

## I.   WENDT WAS IN LAWFUL POSSESSION OF THE MACHINEGUN.

### A.   Section 925(a)(1) categorically exempts the machinegun from the Gun Control Act.

By its own terms, the GCA forecloses Wendt's prosecution.  The GCA regulates interstate and foreign commerce of firearms and imposes steep penalties for those found in violation of the Act.  In enacting the statute, Congress's express purpose was to "provide support to Federal, and local law enforcement officials in their fight against crime and violence."  Gun Control Act of 1968, Pub. L. No. 90-618, § 101, 82 Stat. 1213.  Consistent with that purpose, Congress explicitly exempted from its scope weapons sold or shipped to law enforcement:

> The provisions of this chapter, except for sections 922(d)(9) and 922(g)(9) . . . shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

18 U.S.C. § 925(a)(1).

Accordingly, covered firearms are exempt from the GCA's prohibitions if they meet section 925(a)(1)'s criteria.  The inquiry that triggers the exemption is whether the firearm was "sold [to]," "shipped to," "*or* issued for the use of" a domestic government entity.  *Id.* (emphasis added).  Importantly, these conditions are disjunctive.  That is, if a firearm meets "any one (or more)" of the listed criteria,

6

the firearm is covered under the provision.  *See* Antonin Scalia & Bryan A. Garner,

*Reading Law: The Interpretation of Legal Texts* 116 (2012); *see also Encino*

*Motorcars, LLC v. Navarro*, 584 U.S. 79, 80 (2018) ("[T]he word 'or' . . . is 'almost

always disjunctive.'").  And if a firearm is covered, the "provisions of [the GCA]

*shall not apply*."  18 U.S.C. § 925(a)(1) (emphasis added).

To illustrate, both a felon and a domestic violence misdemeanant are

expressly prohibited from possessing a firearm under the GCA.  *Id.* § 922(g)(1), (9).

Under section 925(a)(1), however, the felon may still possess a firearm if he is issued

the firearm as a police officer.  *See Fraternal Ord. of Police v. United States*, 173

F.3d 898, 903 (D.C. Cir. 1999) ("[G]un possession by persons convicted of a crime

punishable by at least one year of imprisonment is subject to § 925(a)(1)'s

exemption for government-issued firearms . . . .").  This is because section 925(a)(1)

excludes entirely the felon's issued firearm from the GCA's prohibitions.  In other

words, the exemption attaches to the firearm, removing it from the GCA and

rendering inapplicable the individualized prohibition found in section 922(a)(1).  In

contrast, 925(a)(1) specifically excludes the domestic violence misdemeanant from

the exemption and prohibits him from possessing a firearm.  *See* 18 U.S.C.

§ 925(a)(1) ("except for sections 922(d)(9) and 922(g)(9)"); *see also Fraternal Ord.*

*of Police*, 173 F.3d at 901 ("Thus, domestic violence misdemeanants, unique among

Appellate Case: 24-2458     Page: 14     Date Filed: 10/18/2024 Entry ID: 5447638

persons forbidden to possess guns under the Act, are not allowed to possess even government-issued firearms.").

Here, there is no disagreement that "[t]he City of Adair is a political subdivision of the State of Iowa." *See* R.Doc. 330, at 31. Thus, when the machinegun at issue in Count 15 was "sold" *and* "shipped to" the Adair Police Department, "receipt" and "possession" of that firearm fell outside the scope of the prohibition by operation of law. *See* 18 U.S.C. § 925(a)(1). Thus, neither section 922(o) nor any other provision of the GCA could operate to criminalize its possession.[2]

Because there was no issue of fact with respect to the material elements under section 925(a)(1), the trial court erred in allowing the case to proceed to a verdict. The district court should have dismissed the section 922(o) charge with prejudice before trial, and this Court should reverse the conviction below.

---

[2] Wendt has consistently argued that he is exempt from the GCA's machinegun prohibitions and thus has preserved his argument under 925(a)(1). *See, e.g.*, R.Doc. 320, at 8; *Pfoutz v. State Farm Mut. Auto Ins. Co*, 861 F.2d 527 (8th Cir. 1988). Even if the Court disagrees, however, it should still resolve section 925(a)(1)'s application to the Defendant because failing to do so would manifest a substantial injustice and substantially affect the Defendant's rights. *United States v. Olano*, 507 U.S. 725, 735-36 (1993). In addition, this is a question of law and the facts are sufficiently developed, which further weighs in favor of this Court exercising its discretion. *See, e.g.*, *Warren v. City of Lincoln*, 864 F.2d 1436, 1439 (8th Cir. 1989); *Stafford v. Ford Motor Co.*, 790 F.2d 702, 707 (8th Cir. 1986).

8

**B.    Section 922(o)(2)(A) further exempts law enforcement from the GCA's machinegun prohibition.**

Even if section 925(a)(1) is somehow read to permit Wendt's prosecution—which it cannot be—the GCA still plainly forecloses liability. Wendt was convicted under section 922(o)(1), which makes it unlawful to "transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). Section 922(o)'s exception provision, however, specifically excludes "transfer to or by, or possession by or under the authority of . . . a State, or any department, agency, or political subdivision thereof." *Id.* § 922(o)(2)(A). Thus, as a matter of law, a police chief—vested with the authority of the political subdivision—cannot be subject to the prohibition. *See Authority*, *Black's Law Dictionary* (5th ed. 1979) ("Right to exercise powers" and "[t]he power delegated by a principal to an agent").

The structure of the GCA only confirms the text. As discussed, section 925(a)(1) completely exempts from the GCA firearms sold, shipped, or issued to state and local political subdivisions. *See id.* § 925(a)(1). Section 922(o) reaffirms this exemption. Congress passed the GCA—which included 925(a)(1)—in 1968. Almost two decades later, Congress passed the Firearm Owner Protection Act of 1986 ("FOPA"), which introduced section 922(o)'s blanket prohibition on the transfer and possession of machineguns. Despite this sweeping ban, however, the drafters still included section 922(o)(2)(A)'s exception for state and local governments. Thus, Congress doubled-down on section 925(a)(1) with respect to

9

machineguns by reasserting the prohibition's inapplicability to government weapons. Read together, section 922(o)'s use of the phrase "by or under the authority" is coextensive with 925(a)(1)'s exclusion for firearms "sold" or "shipped to" government authorities. That is, both statutes unambiguously permit the official authority of a political entity to acquire and arm its personnel with firearms—including machineguns—without those firearms falling within the ambit of the GCA.

The legislative history reinforces the text and structure. In enacting section 922(o), lawmakers were concerned that any ambiguity in the statute would be interpreted to limit law enforcement's ability to possess firearms. The drafters made clear, however, that "[a]ny local police would be specifically covered by the language in this [exception] permitting the transactions and possession to or by or under the authority of a subdivision of a State." 132 Cong. Rec. 9600 (1986). Indeed, Senator Hatch elaborated that section 922(o)'s exempting provision was drafted to encompass instances where a "police force[] with financial difficulties . . . have authorized their officers to purchase and register automatic weapons" with their own funds. *Id.* at 9601. In other words, Congress specifically sought to foreclose prosecutions of this sort, where the federal government targets small-town police officers for possessing firearms that are otherwise unavailable to the public.

10

Applied here, Wendt's possession was lawful under section 922(o)(2)(A). As Chief of Police, Wendt was the principal of the City of Adair Police Department. Wendt had the authority to set possession and use guidelines for the police department, and authorize members of the department, including himself, to possess machineguns. Trial TR. Vol. IV 739:17-25; 746:23-747:3; 758:4-7 (Wendt's use of machinegun consistent with Mayor's understanding of Police Chief's authority). Managing a department of three officers, Wendt authorized himself to possess the firearm. But even so, Wendt went above what the statute requires, and sought further approval from the political authorities in the City of Adair before making capital investments in the police department, including the purchase of the machinegun that formed the basis of his 922(o) charge. In fact, Adair's Mayor and City Council were aware of and approved of Wendt's purchase and possession of the firearm at issue.[3] Put differently, Wendt acted both "by . . . the authority" vested in him as the Adair Police Chief and "under the authority" of the city when he possessed the machinegun. *See* 18 U.S.C. § 922(o)(2)(A).

### C. The district court's jury instruction contravened the law.

Rather than affirm the State and local government's categorical exemption from the GCA's machinegun ban, the district court adopted the Government's

---

[3] Trial TR. Vol. IV 754:3-13; 766:22-768:17 (Mayor, City Council, and City Clerk were aware of the law letters); 756:3-13 (Mayor saw delivery of machineguns).

Appellate Case: 24-2458    Page: 18    Date Filed: 10/18/2024 Entry ID: 5447638

strained reading of the statute. In its jury instruction, the court misinterpreted the meaning of "by or under the authority"—a phrase granting broad protection to law enforcement—to inject an inappropriate factual inquiry. As a result, the court added an element to the affirmative defense that prejudiced the Defendant. This Court should reverse the conviction. *See United States v. Pereyra-Gabino*, 563 F.3d 322, 328-29 (8th Cir. 2009) (reversing jury conviction and remanding for reconsideration of motion to dismiss).

As explained above, section 922(o)(2)(A) provides a categorical exception to the generalized prohibition against the transfer and possession of machineguns for State and local government. Over Defendant's objection, the court largely adopted the government's proposed instruction, which included language that limited the scope of a political subdivision's authority over its officers and firearms:

> An employee or agent of a governmental entity is authorized by that entity to possess a machine gun *so long as his or her possession is within the scope of his or her official duties* . . . To determine whether the defendant had the authority, or reasonably believed he had the authority, to possess the machine gun, you must consider *whether his possession on the date in question was within the scope of his official duties as an officer of the Adair Police Department.*

R.Doc. 330, at 35 (emphases added).

Thus, instead of requiring that Wendt prove he possessed the machinegun *under the authority* the City of Adair Police Department—which he did—the court

demanded that he prove he *used* the firearm in the course of his *official duties*. The instruction injected a *use*-dependent inquiry found nowhere in the text.

This was wrong. Section 922(o) addresses neither use nor conduct. The statute addresses only the transfer and possession of machineguns. Elsewhere in the GCA, when Congress wanted to regulate use, it did so. Consider section 924(c)(1)(A). There, Congress not only prohibited the "possession" of a "firearm in furtherance of [a] crime," it separately prohibited the "use" of a firearm for the same purpose. 18 U.S.C. § 924(c)(1)(A); *see also Bailey v. United States,* 516 U.S. 137, 147–48 (1995) (distinguishing possession from use). Congress thus did not bury an "official use" requirement in the text of its exception. Instead, it purposefully left untouched the use of machineguns by law enforcement, committing the issue to the relevant authority to which the machinegun was issued.

And for good reason—States are competent and better positioned to enact legislation regulating machineguns under their control. And they do. *See, e.g.*, Md. Code Ann. §§ 4-404, 4-405; Mont. Code Ann. §§ 45-8-303, 45-8-304; Va. Code Ann. §§ 18.2-289, 18.2-290. Further, cities and police departments are equipped to proscribe improper use through policies and procedures based on their individual needs and community objectives. While the federal government may control the transfer or possession of a machinegun, the GCA gives it no authority to limit or interrogate the use of that firearm once it is under the control of a State or one of its

13

political subdivisions.  Any attempt to do so is nothing more than direct interference in the affairs of a co-equal sovereign.

When a party timely objects to a jury instruction, the Eighth Circuit will "usually review[] for abuse of discretion, but where . . . statutory interpretation is required, it is an issue of law that we consider *de novo*." *United States v. Thurber*, 106 F.4th 814, 829 (8th Cir. 2024) (internal quotations omitted).  "Proper jury instructions must . . . adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." *United States v. Faulkner*, 636 F.3d 1009, 1019-20 (8th Cir. 2011) (quoting *Pereyra-Gabino*, 563 F.3d at 328).  This Court must "reverse a jury verdict when the errors misled the jury or had a probable effect on the jury's verdict." *Id*.  Even assuming this prosecution should have reached a jury (it should not have), the trial court improperly invited the jury to determine what *uses* constituted the so-called "official duties" of the Adair Police Chief, when it is precisely the Adair Police Chief who is empowered to specify the appropriate uses of firearms "possess[ed] . . . by [and] under the authority of" his department.  18 U.S.C. § 922(o)(2)(A).

As discussed, nothing in the statute regulates the use of a machinegun by state and local law enforcement or otherwise cabins a department's authority over its firearms.  Indeed, the government admits that it has no authority to control what a private firearms dealer does with its machineguns.  Mot. for Acquittal TR.

14

41:19-42:9.  The dealer could, for example, conduct its own public machinegun shoot and ATF would find that conduct to be lawful.  *Id.* ("[The Court]: [I]s it illegal for [a] gun dealer to hold a private machine gun shoot and charge members of the public money to come in and take possession of that machine gun and fire it? Is that illegal? [AUSA]: My understanding is that it's not . . . .").  That ATF's position is that it can regulate the activities of state and local government entities but is powerless to prohibit the same activities if conducted by private dealers only underscores the absurdity.

Finally, the district court faulted Wendt for his reference to legislative history in "search for clues in the Congressional record as to who in a given government agency has the power to authorize possession of a machinegun" which did "not match the text itself."  R.Doc. 381, at 20.  Yet the court inserted its own requirement that the possession exception under the statute is limited to "official use."  *Id.* at 13; R.Doc 330, at 31.  Because this requirement is untethered from the statutory text, the jury instructions were unlawful.

### D.  The district court's interpretation of the statute violates the Rule of Lenity.

The statute's text, purpose, and history point the same direction.  But if any doubt remains that section 922(o)(2)(A) categorically exempts law enforcement, lenity requires reversal.  "The rule of lenity states that ambiguities in criminal statutes should be resolved in favor of the defendant."  *Buford*, 54 F.4th at 1068;

*Cargill v. Garland*, 57 F.4th 447, 469-71 (5th Cir. 2023); *accord Hardin v. ATF*, 65 F.4th 895, 898 (6th Cir. 2023). Lenity commands that those meaning to punish speak with clarity. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 299 (2012). The rule is "founded on 'the tenderness of the law for the rights of individuals' to fair notice of the law." *United States v. Davis*, 588 U.S. 445, 464 (2019) (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.)).

Here, the GCA forecloses Wendt's conviction twice over. *See* 18 U.S.C. § 925(a)(1); § 922(o)(2)(A). But if the Court disagrees, then the exempting provision is at least grievously ambiguous as applied to Wendt. The phrase "by or under the authority" in section 922(o)(2)(A) is "at best ambiguous." *United States v. Lazaro-Guadarrama*, 71 F.3d 1419, 1421 (8th Cir. 1995). The provision offers no guidance as to what "authority" is proper, without which possession of a machinegun is unlawful. In other words, it is unclear what further authority Wendt needed to render his conduct exempt from the machinegun prohibition. Indeed, local officials knew of and supported his possession. Was he required to obtain written authorization from the mayor? A public vote from Adair's city counsel? The statute does not say. "And because there is no definitive answer, lenity compels reversal." *Cargill*, 57 F.4th at 478 (Ho, J., concurring), *aff'd*, 602 U.S. 406 (2024).

Section 922(o)'s ambiguity only compounds when examining its broader application. Consider whether a junior officer acting under Wendt's express authority to possess a machinegun at a public shoot would be safe from the statute's ambit. How would the junior officer know what type of authority was sufficient? Further, if Wendt supposedly lacked authority, how could a subordinate claim authority in the face of section 922(o)(1)'s strict liability? That kind of federal interference in the day-to-day supervision of state police departments' use of lawfully-*possessed* weapons has no basis in the statute and plainly cannot be its unambiguous meaning. *See Snyder v. United States*, 144 S. Ct. 1947, 1956 (2024) (refusing to construe statute in a way that "would significantly infringe on bedrock federalism principles"). The Court should cast a wary eye on statutes that purport to "regulate[] state and local officials" but leave their "outer boundaries ambiguous." *Id.* at 1958. Indeed, without a clear statement, it is "unfathomable" that Congress would subordinate state and local authority to the uncertain discretion of the federal government. *Id.* To perpetuate this uncertainty is to leave law enforcement at the mercy of some "unforeseeable judicial construction of the statute." *Marks v. United States,* 430 U.S. 188, 192 (1977).

The district court's reliance on agency constructions of criminal statutes is equally problematic. Indeed, it relied on ATF's interpretations when it shoehorned its "official duties" construct into the definition of "authority." R.Doc. 330, at 35.

17

The court read ATF's interpretation and section 922(o) "collectively" to resolve the statute's ambiguity. R.Doc. 381, at 17.

But ATF's interpretation of section 922(o) is not only wrong—it is irrelevant. "[C]riminal laws are for courts, not for the Government, to construe." *Abramski v. United States*, 573 U.S. 169, 191 (2014). Indeed, any suggestion that an agency can change the scope of the statute through regulatory fiat gets things backwards. "An agency, after all, literally has no power to act—including under its regulations— unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022) (cleaned up). And this Court—not ATF—is tasked with "exercis[ing]" its "independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). Thus, the district court's express reliance on ATF's interpretation—as opposed to the text alone—to divine the meaning of the statute only highlights the case for lenity.

Perhaps most importantly, the rule requires that lenity extend to those individuals Congress expressly intends to protect. Exceptions to criminal statutes "must be interpreted broadly." *NLRB*, 332 F.3d at 1288. Consistent with this rule, courts routinely invoke lenity where ambiguity obscures the scope of an exception. *See United States v. Introcaso*, 506 F.3d 260 (3d Cir. 2007) (reversing firearms conviction where pre-1899 firearm exception was ambiguous); *United States v.*

18

*Garcia*, 707 F. App'x 231 (5th Cir. 2017) (vacating firearm conviction where statute was unclear whether illegal resident was unlawfully in the United States); *United States v. Sheek*, 990 F.2d 150 (4th Cir. 1993) (applying rule of lenity in interpretation of the term "parent" in a statutory exemption to Federal Kidnapping Act); *see also NLRB*, 332 F.3d at 1292 (Briscoe, J., concurring) ("Under the rule of lenity, the exception . . . should be construed broadly to eliminate possible bases of criminal liability that do not violate the intent and purpose of the statute.").

This makes sense. Congress includes exceptions to criminal statutes to provide clear safe harbor, not to lay a minefield for the unwitting innocent. *See Cargill*, 57 F.4th at 478 (Ho, J., concurring) ("It would be dangerous . . . to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated."). Here, Congress's consistent purpose in enacting 925(a)(1) and 922(o)(2)(A) was to exclude state and local law enforcement from its general machinegun ban. The GCA's preamble says just that. If the Court disagrees that the sweeping language of those provisions are categorical, the glaring ambiguity in the scope of 922(o)'s exclusion must be resolved consistent with Congress's protective purpose. To rule otherwise is to turn lenity on its head— construing criminal prohibitions broadly while adopting cramped interpretations of their express exceptions. *See NLRB*, 332 F.3d 1284.

19

When a close reading of a criminal statute "fail[s] to establish that the Government's position is unambiguously correct," the courts must intervene. *See Cargill*, 57 F.4th at 473 (Ho, J., concurring). In the only other prosecution of a police officer under section 922(o) (of which *amici* are aware), the District Court for the Southern District of Illinois did just that. Almost two decades ago, ATF and DOJ prosecuted an Illinois State Trooper for violating section 922(o). *See United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006). The District Court for the Southern District of Illinois rightly dismissed the charges, finding that the government's application of section 922(o) to police officers unconstitutionally deprived the defendant of fair notice and promoted arbitrary enforcement of the statute. The court specifically found that section "922(o) was not intended to apply to police officers . . . even if they may be guilty of mere technical violations." *Id.* at 1011.

Section 922(o)'s reference to "authority"—whether "by" or "under"—is at the very least ambiguous. And the presence of this "ambiguity concerning the ambit of [a] criminal statute[]" requires the case be "resolved in favor of lenity." *Skilling v. United States*, 561 U.S. 358, 410 (2010) (citation omitted). Accordingly, this Court should at least confirm what is not ambiguous: that, without further clarity from Congress, a city's chief law enforcement officer cannot lack sufficient authority under the statute.

20

## II. WENDT'S LAW LETTER STATEMENTS WERE NOT MATERIAL.

Wendt's false statement convictions are equally defective. As a matter of law, Wendt's statements in the Law Letters were incapable of influencing ATF because they fell outside the scope of what the agency could properly consider. *See Davis Enters. v. EPA*, 877 F.2d 1181, 1186 (3d Cir. 1989). Accordingly, the statements were immaterial and thus, not actionable.

"Proper jury instructions must, taken as a whole adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." *Faulkner*, 636 F.3d at 1019-20 (quoting *United States v. Pereyra-Gabino*, 563 F.3d 322, 328 (8th Cir. 2009)). This Court must "reverse a jury verdict when the errors misled the jury or had a probable effect on the jury's verdict." *Id.*

Wendt was convicted under 18 U.S.C. § 1001 for making false statements to secure ATF's approval of Demonstration Letters, thus allowing the department to obtain transfer of a machinegun. Two of the five elements of that crime are relevant here. First, that "the defendant knowingly and intentionally made or caused to be made a false statement on the demonstration letter that the machine gun(s) *were requested for demonstration for future potential purchase by the Adair Police Department.*" R.Doc. 330, at 19 (emphasis added). Second, that "the statement concerned a material fact." *Id.* at 20. The jury was instructed that a material fact is

21

"a fact that would have a natural tendency to influence or is capable of influencing *a decision by the ATF*." *Id.* at 23 (emphasis added). These instructions misled the jury to understand that Wendt's statement, that "the machineguns were for demonstration for future potential purchase," had a natural tendency or was capable of influencing ATF's decision to approve Wendt's Demonstration Letter application.

Yet the statements were outside the scope of ATF's consideration. Indeed, ATF's regulations required approval of Wendt's letters notwithstanding his purpose for seeking the demonstrations. It is hornbook law that ATF "must adhere to its own rules and regulations." *Advanced Energy United, Inc. v. FERC*, 82 F.4th 1095, 1116 (D.C. Cir. 2023). And once ATF enumerates by regulation the factors it will consider, "the agency effectively has limited its own discretion and would not be free to make a decision" based on other factors left unwritten in the rule. *Davis Enters.*, 877 F.2d at 1186 (citing *Service v. Dulles*, 354 U.S. 363, 388 (1957)).

The regulations governing the transfer of firearms to dealers for the purpose of demonstration to law enforcement agencies provides for *mandatory* approval of an application provided that the applicant provide three relevant pieces of information:

> "applications to transfer and register a machine gun manufactured or imported on or after May 19, 1986, to dealers qualified under this part *will be approved* if it is established by specific information [1] the expected governmental customers who would require a demonstration of the weapon, [2] information as to the availability of the machine gun to fill subsequent orders, and [3] letters from governmental entities

22

expressing . . . interest in seeing a demonstration of a particular weapon."

27 C.F.R § 479.105(d) (emphasis added).

The phrase "will be approved" removes all discretion from ATF to disapprove or reject an application that meets the criteria specified. Put differently, if the application met the three requirements set forth in the rule, ATF must approve the application under section 479.105(d).

Notably absent from the "specific information" required for approval is any certification that the request is connected to a potential or possible purchase. That representation is not necessary, nor is it permissible for ATF to deny an application for an applicant's failure to include it. Interest alone suffices. *See id.* Thus, the statements were not only devoid of any tendency to influence the agency's determination, but they were also entirely outside the scope of its consideration. *See, e.g.*, *United States v. Qaisi*, 779 F.2d 346, 348 (6th Cir. 1985) (holding statements not material where they were tangential to the issue upon which the agency's decision turned).

The district court's instructions misled the jury in suggesting otherwise. The instructions cast Wendt's statement regarding a potential future purchase as the central issue for ATF's consideration in approving the letters. Jury Instruction 24, titled "Law Letters," stated that "[t]he requested demonstration must be for possible future purchase and not for some other purpose." R.Doc. 330, at 28. While that may

23

be *a* purpose for the demonstration, it cannot form the basis for, or even influence, ATF's decision to deny a Demonstration Letter application. *See* 27 C.F.R. § 479.105(d). Because Wendt's statements regarding the department's purpose for the demonstration were not capable of influencing ATF's approval decision, they were not material.

ATF's operative guidance during all times relevant to Wendt's supposed false statements confirms their immateriality. In 1999, ATF outlined the information it would consider in evaluating a Demonstration Letter:

- written on agency letterhead and signed by the agency head or by someone with delegated authority to sign for the agency head
- dated within one year of the date of the receipt of the application
- identification of the particular machinegun being transferred (for example, M16A2)
- identification of the agency's interest in the machinegun (for example, purchase, or demonstration)
- documentation of the need for more than one machinegun of a particular model[.]

R.Doc. 350-5, at 1.

Again, there is no mention that any demonstration must relate to a potential future purchase. Instead, "demonstration" and "purchase" appear as separate and permissible objects of a department's interest. Wendt's supposed misrepresentation could not influence ATF's approval decision because the misrepresentation concerned an issue the agency had no interest in evaluating.

Appellate Case: 24-2458     Page: 31     Date Filed: 10/18/2024 Entry ID: 5447638

ATF knew this. Indeed, nearly one month to the day after Wendt was indicted, ATF for the first time issued an open letter clearly requiring that approval of Demonstration Letters be in connection with a potential purchase. *See* ATF, Open Letter to All Federal Firearms Licensees Regarding Machinegun Dealer Sales Sample Letters (Jan. 11, 2023), https://tinyurl.com/8fr4nnp7. There, ATF identified "the government entity's interest in considering purchase of the machinegun requested" as a prerequisite for approval of a Demonstration Letter. *Id.* at 3. In effect, ATF merged the 1999 law letter requirement that a government entity state its interest in either a purchase or demonstration, to impose a condition that any interest in a demonstration be related to purchase. *Id.*

It offends notions of fairness then for ATF to find material a statement concerning information that—for 30 years since the passage of FOPA—ATF never definitively identified in even its guidance documents as necessary. While ATF now claims the information is both relevant and material to support Wendt's conviction, at no time before Wendt's indictment was it ever material under ATF's rules and guidance. Accordingly, the district court erred in permitting the government to bootstrap its newly published guidelines to prove the elements of its case.

The false statements convictions should be reversed.

## III. THIS CASE PERPETUATES ATF'S PATTERN OF ABUSE.

This prosecution does not exist in a vacuum. Indeed, this case is only the latest episode in a series of ATF abuses. In recent years, the agency has aggressively tested the boundaries of its statutorily-conferred authority through unlawful rulemakings, leaving groups and states—like *amici* here—to oppose the agency's attempts to expand the scope of its own power. *See, e.g.*, *FRAC v. Garland*, 112 F.4th 507 (8th Cir. 2024). At each turn, federal courts have repeatedly reminded ATF of the limits of its authority. *See, e.g.*, *Texas v. ATF*, 2024 U.S. Dist. LEXIS 103441 (N.D. Tex. June 11, 2024) (recently enjoining ATF's "engaged in the business" rule, in a case brought by amici GOA and GOF).

Indeed, ATF embraces a strategy of blindsiding the public with abrupt policy shifts and atextual interpretations of law. For example, after issuing multiple classification letters confirming its position that "bump stocks" were not machineguns under the National Firearms Act ("NFA"), ATF inexplicably reversed course. In a 2018 final rulemaking, the agency decided that all its previous classifications—which correctly found that bump stocks were not machineguns— did not reflect the best interpretation of the statute, rendering thousands of law-abiding citizens criminals overnight. Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018). After years of costly litigation, the Supreme Court last term

confirmed that ATF's newfound "best interpretation," was in fact entirely wrong. *See Garland v. Cargill*, 602 U.S. 406, 415 (2024).

In a similar episode, ATF attempted to criminalize pistol stabilizing braces, a popular firearms accessory, through rulemaking. *See* Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023). Prior to the rule, ATF repeatedly issued letter rulings assuring manufacturers and the public that a stabilizing brace does not alter a gun's classification as a pistol under federal law. But with a change in administrations came a change in legal interpretations. Frustrated with perceived congressional inaction, President Biden ordered ATF to abandon its longstanding practice and "to treat pistols modified with stabilizing braces" as "subject to the National Firearms Act." Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298, at 3 (Apr. 8, 2021). ATF complied, promulgating a rule that recharacterized pistols equipped with stabilizing braces as short-barreled rifles. Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023). Both this Court and the Fifth Circuit rightly rejected ATF's attempt to create new crimes through rulemaking. *See FRAC v. Garland*, 112 F.4th 507 (8th Cir. 2024); *Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023).

Thus far, the judiciary has been a formidable check against agency overreach. Repeatedly meeting failure, ATF apparently has turned to discrete prosecutions,

27

where vulnerable defendants are ill-equipped to resist the force and weight of the federal government. ATF's tactic is clear: pursue through prosecution what it cannot achieve by regulation—much less legislation.

Finally, the Court should not overlook that this case is not ATF's first attempt at redirecting section 922(o)'s barrel at law enforcement officers who lawfully possess a machinegun. *See United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006). After the *Vest* court rejected the government's theory, the ATF heeded the court and refrained from using section 922(o) to impose steep criminal penalties on state police officers.

The prosecution of Bradley Wendt revives ATF's failed theory. Like the district court in *Vest*, this Court should reject ATF's naked attempt to chill State and local governments from exercising their congressionally-prescribed authority under the Gun Control Act.

## CONCLUSION

For the foregoing reasons, the Court should reverse Wendt's convictions.

28

/s/ *Robert Olson*
Robert J. Olson
**WILLIAM J. OLSON, P.C.**
370 Maple Ave. W., Ste. 4
Vienna, VA 22180
Tel: (703) 356-5070
wjo@mindspring.com

*Counsel for* Amici Curiae
*Gun Owners of America and Gun Owners Foundation*

Respectfully submitted,

/s/ *Michael D. Faucette*
Michael D. Faucette
Colin J. Cloherty
Isaac J. Wyant
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
MFaucette@wiley.law

*Counsel for* Amici Curiae *FRAC, Palmetto State Armory, LLC, and B&T USA, LLC*

PATRICK MORRISEY
   Attorney General of West Virginia
/s/ *Michael R. Wiliams*
Michael R. Williams
   Solicitor General
**OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL**
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Michael.R.Williams@wvago.gov

*Counsel for* Amicus Curiae
*State of West Virginia*

October 17, 2024

## ADDITIONAL COUNSEL

TIM GRIFFIN
Attorney General
State of Arkansas

KRIS W. KOBACH
Attorney General
State of Kansas

ANDREW BAILEY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

JOHN M. FORMELLA
Attorney General
State of New Hampshire

ALAN WILSON
Attorney General
State of South Carolina

SEAN D. REYES
Attorney General
State of Utah

30

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because this brief contains 6,496 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 11 in Times New Roman font 14-point type face.

October 17, 2024

*/s/ Michael D. Faucette*
Michael D. Faucette

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to

Circuit Rule 28A(h), a version of the brief in non-scanned PDF Format. I hereby

certify that the file has been scanned for viruses and that it is virus-free.


October 17, 2024                                    */s/ Michael D. Faucette*
                                                    Michael D. Faucette

## CERTIFICATE OF SERVICE

I certify that on October 17, 2024, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system, and that the CM/ECF system will accomplish service on all parties represented by counsel who are registered CM/ECF users.

October 17, 2024

*/s/ Michael D. Faucette*
Michael D. Faucette