**No. 24-2458**
_____

**In the United States Court of Appeals
for the Eighth Circuit**
_____


United States of America,


Plaintiff-Appellee,


v.


Bradley Eugene Wendt,

Defendant-Appellant.


_____


ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
No. 4:22-cr-00199-SHL-HCA
Hon. Stephen H. Locher

_____


**Appellant's Motion for Release Pending Appeal**

_____

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...............................................2

    A.    Wendt Was The Adair Police Chief And Owner Of A Gun Store. ..........2

    B.    The City Of Adair Asked Wendt To Become Its Police Chief And Wendt Immediately Revamped The Police Department............................2

    C.    Wendt Sought And Received Approval From The City Council To Acquire Machineguns Even Though City Council Approval Was Not Required. ...............................................................................................3

    D.    The ATF Knew About And Approved Every Machinegun Purchase......3

    E.    Wendt Sought Demonstrations And Purchases Of The Machineguns. ...4

    F.    On April 16, 2022, Wendt Hosted A Public Machinegun Shoot..............6

    G.    After Almost Ten Hours Of Deliberations, The Jury Returned A Split Verdict. ..........................................................................................7

    H.    Wendt Moved For Release Pending Appeal And The District Court Wrongfully Denied It. .................................................................................8

STANDARD FOR RELEASE PENDING APPEAL....................................................9

LEGAL ARGUMENT...................................................................................................11

I.    WENDT IS NEITHER A FLIGHT RISK NOR A DANGER TO THE COMMUNITY .........................................................................................11

II.    WENDT RAISES SUBSTANTIAL QUESTIONS ON APPEAL...................12

III.    WENDT WILL END UP SERVING UNWARRANTED TIME IN PRISON .....................................................................................................16

    A.    Wendt Is Entitled To A New Trial ..........................................................16

    B.    At Minimum, Wendt Is Entitled To A Reduced Sentence .....................17

CONCLUSION ............................................................................................................19

Appellate Case: 24-2458    Page: 2    Date Filed: 10/23/2024   Entry ID: 5449458

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*United States v. Bayko*, 774 F.2d 516 (1st Cir. 1985)................................................11

*United States v. Giancola*, 754 F.2d 898 (11th Cir. 1985) ......................................... 10, 11

*United States v. Morgan*, No. 23-10047, 2024 WL 3936767 (D. Kan. Aug. 26, 2024)....................................................................................................15

*United States v. Pollard*, 778 F.2d 1177 (6th Cir. 1985)...........................................9

*United States v. Powell*, 761 F.2d 1227 (8th Cir. 1985) ........................9, 10, 11, 12

*United States v. Shoffner*, 791 F.2d 586 (7th Cir. 1986) ..........................................11

*United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006)..................................15

**Statutes, Rules & Regulations**

18 U.S.C. § 371............................................................................................................7

18 U.S.C. § 922(o)..............................................................................................2, 7, 13, 15

18 U.S.C. § 1001(a)(2) ...............................................................................................7

18 U.S.C. § 3143(a)(1) ...............................................................................................8

18 U.S.C. § 3143(b) ...................................................................................1, 9, 16, 17

18 U.S.C. § 3143(b)(1)(B) ........................................................................................10

Fed R. App. P. 9(b) ......................................................................................................1

USSG § 2B1.1(c)(3)...................................................................................................18

USSG § 2K2.2 ..................................................................................................... 18, 19

USSG § 3G1.2, 3 ................................................................................................ 18, 19

Appellate Case: 24-2458     Page: 3     Date Filed: 10/23/2024 Entry ID: 5449458

# INTRODUCTION

Bradley Eugene Wendt ("Wendt") is sitting in prison based on the ATF's latest unlawful effort to put a stop to lawful conduct that it does not like but cannot change by statutory amendment or proper rulemaking, this time via the even more egregious mechanism of criminal prosecution. Wendt recognizes that motions such as this are the exception rather than the rule, but if this case does not present the exact situation where the requested relief is warranted, it is hard to imagine one that ever would.

Wendt clearly raises substantial questions of law in Appellant's Opening Brief, which has now been supported by an amicus brief filed on behalf of Firearms Regulatory Accountability Coalition, Inc.; Gun Owners of America, Inc; Gun Owners Foundation; Palmetto State Armory, LLC; B&T USA, LLC; and the States of West Virginia, Missouri, Arkansas, Kansas, Montana, New Hampshire, South Carolina, and Utah. Wendt hereby incorporates those briefs in this motion. There is no dispute that Wendt is neither a flight risk nor a danger to the community. Nor can there be any dispute that if Wendt prevails on these substantial questions of law, that he would end up serving unwarranted time in prison. Accordingly, Wendt respectfully requests this Court release him pending appeal, pursuant to Fed R. App. P. 9(b) and 18 U.S.C. § 3143(b).

1

# FACTUAL AND PROCEDURAL BACKGROUND

## A. Wendt Was The Adair Police Chief And Owner Of A Gun Store.

Wendt was a career police officer and the Chief of the Adair Police Department ("APD"). (Trial TR. Vol. III 618:13-15.) Wendt became a police officer in 1999 and was an officer until 2024 except during a period where he was a military contractor with Blackwater in Iraq. (Trial TR. Vol. V 984:15-16; 986:6-15.) In 2008, Wendt opened a firearms store, BW Outfitters ("BWO"). (Trial TR. Vol. V 989:11-21.) BWO is an FFL-SOT firearms dealer and has the legal authority to deal in firearms, including machineguns. (Trial TR. Vol. V 990:12-24.)

## B. The City Of Adair Asked Wendt To Become Its Police Chief And Wendt Immediately Revamped The Police Department.

The City of Adair asked Wendt to be its Police Chief in 2018 (Trial TR. Vol. IV 743:24-744:5; 751:9-20.) Once in the role, Wendt immediately sought to revamp the department with new equipment, including acquiring new computers, a new police car, and new equipment, including machineguns. (Trial TR. Vol. V 994:14-19; 1005:14-25.) It is undisputed that, as the Police Chief, Wendt had the authority to purchase machineguns pursuant to 18 U.S.C. § 922(o). Moreover, police officers in Iowa are generally required to purchase their own equipment. (Trial TR. Vol. V 995:22-996:25.) This equipment includes machineguns, which are not uncommon among Iowa police departments. (*See, e.g.*, Trial TR. Vol. V 1002:7-21.) As the owner of BWO, Wendt was

2

in a unique position because he had the financial means to provide his department with updated equipment.

### C. Wendt Sought And Received Approval From The City Council To Acquire Machineguns Even Though City Council Approval Was Not Required.

The Adair City Council approved Wendt's purchase of machineguns with his own money for the benefit of Adair. (Trial TR. Vol. IV 736:13-22; 745:8-746:9; 753:6-25.) Wendt did not need City approval to write the law letters but acquired it regardless. Further, Adair's Mayor and City Council members testified that Wendt even showed them some of the law letters, and the City Clerk testified that she helped Wendt write the letters. (Trial TR. Vol. IV 754:3-13; 766:22-768:17.) The Mayor also saw machineguns being delivered to City Hall. (Trial TR. Vol. IV 756:3-13.) Moreover, the City continued to support Wendt, and he remained the Police Chief during the pendency of the trial. (Trial TR. Vol. IV 778:14-16.)

### D. The ATF Knew About And Approved Every Machinegun Purchase.

The ATF approved all the machinegun transfers except for the minigun.[1] (Trial TR. Vol. III 686:10-15; Vol. V 1060:6-19.) The ATF knew Wendt was both the owner

---

[1] Around November 2021, Wendt wrote a demonstration letter to BWO for the demonstration of a minigun from a manufacturer specializing in miniguns. (Trial TR. Vol. V 1060:5-11.) The ATF denied the transfer of the minigun, the only transfer they ultimately denied. (Trial TR. Vol. V 1060:12-19.) However, during the pendency of the case, the ATF granted Wendt a manufacturing license, allowing him to manufacture machineguns without further ATF approval, including a minigun. (Trial TR. Vol. III 687:21-23.)

Appellate Case: 24-2458    Page: 6    Date Filed: 10/23/2024 Entry ID: 5449458

of BWO and the Police Chief because he made it clear in the letters and because Wendt explicitly told the ATF. (Trial TR. Vol. V 1026:4-14.) Wendt discussed that he was both the Police Chief and the owner of BWO with the chief of ATF's NFA branch–who in response told Wendt that he could obtain any type of machinegun he wanted. (Trial TR. Vol. V 1025:14-1026:21.) Additionally, Wendt emailed the ATF regarding the transactions in several instances. (R. Doc. 350-1–350-4.) Moreover, the ATF knew of all the guns that it had approved because it tracks the information in the National Firearms Registration and Transfer Record. (Trial TR. Vol. II 277:16-278:7.)

### E. Wendt Sought Demonstrations And Purchases Of The Machineguns.

In July 2018, Wendt purchased a machinegun from Johnathan Marcum, the owner of an FFL-SOT business. (Trial TR. Vol. II 368:17-369:21.) To facilitate the transfer of this machinegun, Wendt wrote a demonstration law letter from the APD to BWO. (*Id.*) After this transaction, Marcum began soliciting demonstration law letters from Wendt to facilitate the transfer of machineguns to Marcum's FFL-SOT business. (Trial TR. Vol. V 1021:17-23.)

Wendt is a gun enthusiast who had a genuine interest in purchasing machineguns for the APD. (Trial TR. Vol. V 1022:22-24.) Therefore, it made sense for Wendt to want to see several types of machineguns before making a purchase, particularly because it did not cost Wendt anything to demonstrate the various machineguns through

Marcum. (*Id.*) Unbeknownst to Wendt, Marcum was a target in a federal case where a different police chief wrote law letters to gun dealers, including Marcum, so the gun dealers could acquire the machineguns to resell them for profit and provide a kickback to the police chief. (Trial TR. Vol. II 395:20-396:8.) Marcum was cooperating with the Government in that case and started attempting to implicate Wendt. (Trial TR. Vol. II 365:13-23.)

Marcum offered to show Wendt machineguns to help him with his future purchase decisions. (Trial TR. Vol. V 1021:15-1022:3.) However, the police chief writing the letter does not receive notice or any information from the ATF regarding whether the dealer has acquired the requested machinegun. (Trial TR. Vol. V 1021:6-14; 1022:4-11.) Marcum never followed up with Wendt on the demonstrations because, again unbeknownst to Wendt, the ATF told Marcum not to communicate with Wendt. (Trial TR. Vol. V 1027:22-24.) Wendt had no control over and could not force Marcum to conduct the demonstrations.

Because Marcum did not conduct the demonstrations, Wendt began relying on himself and other individuals that Wendt knew to conduct the demonstrations. One of those individuals was former co-defendant Robert Williams ("Williams"), who owned an FFL-SOT. Wendt received no improper benefit from writing demonstration law letters to Marcum and Williams. (Trial TR. Vol. V 1030:19-1031:1; 1053:19-22.)[2]

---

[2] Wendt was acquitted on two of the Marcum letters. (R. Doc. 341.)

5

In total, Wendt purchased ten machineguns for the APD and 13 machineguns for BWO. (Trial TR. Vol. III 680:18-20; 685:22-24.) Every APD machinegun was at the APD when federal law enforcement conducted a raid on August 31, 2022. (Trial TR. Vol. III 685:8-19.) Wendt sold only four machineguns for a total profit of less than $50,000.00. (Trial TR. Vol. II 460:1-6; 465:18-23.) He attempted to sell two more for a total of approximately $30,000.00, but those sales never went through and Wendt returned the money. (Trial TR. Vol. III 611:3-11; 616:6-8.) At trial, the Government did not call Williams; and Marcum testified that he did not believe either himself or Wendt ever made a false statement to the ATF or intended to break the law. (Trial TR. Vol. II 406:1-407:2.) The Government relied heavily on cutting and pasting together Facebook messages from Wendt's 45,000-page Facebook Account. (*See* Trial TR. Vol. III 668:2-672:21; Vol. V 1067:4-9; R. Doc. 349-4, 349-6, 349-7, 349-8.) But the messages constituted a handful of offhand, informal conversations. (*Id.*) Many were conversations between law enforcement officers and included jokes between friends. (Trial TR. Vol. V 1067:13-1070:22.)

### F. On April 16, 2022, Wendt Hosted A Public Machinegun Shoot.

This machinegun shoot was the basis for the illegal possession of a machinegun charge. (R. Doc. 1, at 22.) The Government alleged Wendt illegally possessed a machinegun that he purchased for the APD by bringing it to the machinegun shoot. (*Id.*) But both the Mayor and the City Council members testified that the machinegun shoot and the use of machineguns registered to the APD was consistent with their

6

understanding of Wendt's authority and the permission they gave him. (Trial TR. Vol. IV 739:17-25; 746:23-747:3; 758:4-7.) This was underscored by other witnesses, including the City Attorney and current Mayor, who testified that Wendt was always the Police Chief. (Trial TR. Vol. IV 781:4-21; 537:19-20.)

### G. After Almost Ten Hours Of Deliberations, The Jury Returned A Split Verdict.

The Government charged Wendt with one count of conspiracy to either (a) make false statements to the ATF or (b) defraud the ATF in relation to machine guns, in violation of 18 U.S.C. § 371; 13 counts of false statements concerning the acquisition or transfer of machineguns, in violation of 18 U.S.C. § 1001(a)(2); and one count of illegal possession of a machinegun, in violation of 18 U.S.C. § 922(o). (R. Doc. 1.) After trial, the jury returned a split verdict.

The jury found Wendt not guilty on four false statement counts and guilty on the remaining counts. (R. Doc. 341.) Specifically, the jury found Wendt guilty of conspiracy to make false statements to the ATF (finding that the conspiracy included Marcum and Williams), but not guilty to conspiring to deceive or defraud the ATF. (*Id.*) On the two "purchase law letter" false statement counts, the jury acquitted Wendt of one and found him guilty of the other. (*Id.*) On the "demonstration law letter" false statement counts, the jury found Wendt guilty of eight counts and not guilty of three counts. (*Id.*) Notably, Wendt was found not guilty of all counts regarding alleged behavior occurring before early 2019.

### H.  Wendt Moved For Release Pending Appeal And The District Court Wrongfully Denied It.

Following the jury's verdict, the Government did not move to detain Wendt. (Tr. at 1237.) In fact, the District Court went so far as to put on the record *sua sponte* that Wendt was not a flight risk and did not pose a danger to any other person or the community:

> MS. SHOTWELL: Your Honor, the Government is not moving for detention pending sentencing.
>
> THE COURT: All right. So, Mr. Wendt, what that means is you will be allowed to stay on release. And, candidly, even if the Government had moved for detention, I probably would have allowed you to be released anyway because you've been under investigation for, as far as you knew, at least 18 months now, under indictment for more than a year. I haven't heard of any issues that have come up during that time, and so I would have found by clear and convincing evidence that you're not likely to flee or pose a danger to the safety of any other person or the community.

(Id.) This is significant because, regardless of the Government's position, the District Court is required to make its own decision under 18 U.S.C. § 3143(a)(1). As such, regardless of the way it was worded, this represents an order and finding of the District Court.

As part of his Sentencing Memorandum, Wendt then moved for release pending appeal. (ECF 392, at 29-35.) Wendt briefed this issue but both the Government and District Court appeared confused on the law. (Sent. Tr. at 89-102.) The District Court explained: "I cannot conclude that reversal on those issues is likely." (Sent. Tr. at 94.)

8

Further, the Government did not understand the statute or the application of it. (Sent. Tr. at 96.) Then, after defense counsel clarified the legal standard, the District Court—on the spot—held that there was no substantial question of law or fact. (Sent. Tr. 99-101.). Whether Wendt was a flight risk or a danger to the community was not at issue, because the Government had already conceded he was not and the District Court had already found he was not . (Id. at 94.)

## STANDARD FOR RELEASE PENDING APPEAL

A criminal defendant is entitled to release pending appeal if (i) he is "not likely to flee or pose a danger to the safety of any other person or the community"; and (ii) his appeal is "not for the purpose of delay and raises a substantial question of law or fact" that, if resolved in his favor, will "likely" result in reversal, a new trial, or at least a reduced sentence wherein the "term of imprisonment [is] less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b). The first element is not disputed here. Mr. Wendt's entitlement to release thus turns on the nature of his appeal.

With respect to the second element, the standard is not demanding. The "substantial question" standard "does not require the district court to find that it committed reversible error." *United States v. Pollard*, 778 F.2d 1177, 1181–82 (6th Cir. 1985). Rather, a "substantial question" is "a close question or one that could go either way." *United States v. Powell*, 761 F.2d 1227, 1231 (8th Cir. 1985) (internal quotation marks omitted). This Court has explained:

> [A] defendant who wishes to be released on bail after the imposition of a sentence including a term of imprisonment must first show that the question presented by the appeal is substantial, in the sense that it is a close question or one that could go either way. It is not sufficient to show simply that reasonable judges could differ (presumably every judge who writes a dissenting opinion is still "reasonable") or that the issue is fairly debatable or not frivolous. **On the other hand, the defendant does not have to show that it is likely or probable that he or she will prevail on the issue on appeal.** If this part of the test is satisfied, the defendant must then show that the substantial question he or she seeks to present is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur **if the question is decided in the defendant's favor.** In deciding whether this part of the burden has been satisfied, the court or judge to whom application for bail is made must **assume that the substantial question presented will go the other way on appeal and then assess the impact of such assumed error on the conviction.**

*Id.* at 1233–34 (emphasis added) (adopting *United States v. Giancola*, 754 F.2d 898, 900 (11th Cir. 1985)).

Most Circuit courts, including the Eighth Circuit,

> [H]ave held that § 3143(b)(1)(B) does not mean what it seems to say. "Read literally, this subsection might be taken to condition bail upon a district court's finding that its own judgment is likely to be reversed on appeal." However, as Judge Sloviter warned, such a construction would put federal judges "in the position of 'bookmakers' who trade on the probability of ultimate outcome." Such a role being undesirable, the correct approach is to ask whether a new trial or reversal would likely result, assuming the appellate court rules in defendant's favor. This interpretation has been universally adopted by the circuit courts of appeal.

*Hart*, 906 F. Supp. at 106 (internal citations omitted) (citing, among others, *Powell*, 761 F.2d at 1231).

As the Eleventh Circuit explained, "[we] are unwilling to attribute to Congress the intention to deny bail pending appeal unless a district court judge found that he or she had committed error but was obstinately unwilling to grant a new trial or other relief to correct the error." *Giancola*, 754 F.2d at 900; *see also Affleck*, 765 F.2d at 953 n.14. Rather, the Court must "evaluate the difficulty of the question" on appeal, and grant release pending appeal if it determines that the question is a close one or one that "very well could be" decided in the defendant's favor. *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986) (quoting *Giancola*, 754 F.2d at 901); *Powell*, 761 F.2d at 1233–34.

Therefore, this Court must assume, for the purposes of analysis, that it committed error "and then assess the impact of such assumed error on the conviction." *Powell*, 761 F.2d at 1234. This standard does not require the Court to find that Mr. Wendt's appeal establishes a likelihood of reversal. *See United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985). In other words, Mr. Wendt does not have to show that it is substantially likely that his conviction will be reversed or that this Court would nonetheless grant him a shorter sentence that the duration of the appeal. Here, Mr. Wendt meets this standard for the reasons set forth below.

## LEGAL ARGUMENT

## I.  WENDT IS NEITHER A FLIGHT RISK NOR A DANGER TO THE COMMUNITY

It has been undisputed in this case that Wendt is neither a flight risk nor a danger to the community. The Government conceded he was not and the District

Court found he was not. Nor could there be any argument that Wendt is a risk to flee or poses a danger to the safety of any other person or the community. Wendt has no criminal history. He was not charged with any crime of violence or other charge with a presumption of detention. More importantly, Wendt spent his career protecting his community. He served as the Chief of Police in Adair and continued in that role per the desire of that community during the entirety of this case until the time of his conviction. Further, he has deep and significant of ties to his community: he has a business there; his family, including two young children, are there; and his parents and siblings are there. (R. Doc 392-3-10.) His entire life is there. And he had problems or issues while on pretrial supervision; in fact, it was Probation's recommendation that Wendt be allowed to self-report to prison. (

## II.    WENDT RAISES SUBSTANTIAL QUESTIONS ON APPEAL

A "substantial question" is "a close question or one that could go either way." *United States v. Powell*, 761 F.2d 1227, 1231 (8th Cir. 1985) (internal quotation marks omitted). "[T]he defendant does not have to show that it is likely or probable that he or she will prevail on the issue on appeal." *Id.* at 1233-34. Wendt easily meets this standard and, therefore, his appeal is clearly not for purposes of delay.

As set forth in Appellant's Opening Brief and supported by the amicus brief filed on behalf of three major firearms associations, eight different States, and two companies that design, produce, and sell firearms, Wendt has established the following substantial questions:

12

1.      **The District Court allowed the ATF to create and then retroactively enforce new legal requirements for machine guns**. It did this in two independently erroneous but related ways.

*First*, the District Court provided erroneous jury instructions on the law. Specifically, the District Court allowed the ATF to establish (1) the requirement that any machine gun purchased on behalf of a government entity is limited to "official use'" and (2) the requirement that any machine gun authorized for purchase by a dealer be limited to a "demonstration for potential purchase."[3] These new requirements were not in the statute or even the regulation or ATF guidance. In fact, even the ATF branch chief who testified as an expert witness did not even testify that they were requirements. Further, these new requirements are inconsistent with state law and recent U.S. Supreme Court precedent. And no court has ever applied an "official use" restriction; relied upon the violation of a registration requirement under § 922(o); or upheld a prosecution of a police officer under § 922(o).

*Second*, the District Court erroneously denied Wendt's request for a *Harra* ambiguity instruction. (R. Doc. 291, at 25 ("The government must prove beyond a reasonable doubt that Mr. Wendt's statement was actually false and that Mr. Wendt

---

[3] The District Court used the terms "possible future purchase" and "potential future purchase" interchangeably and conflated the two in the jury instructions and then elevated every statement Wendt made to "potential future purchase." For shorthand, Wendt uses the term "potential purchase" here. However, this distinction is important.

knew it was actually false at the time he made it. To do this, the government has the burden to prove beyond a reasonable doubt that Mr. Wendt's statement was false under any reasonable interpretation of the statement.").) As such, not only did the District court get the law wrong in the jury instructions, but it then imposed these new requirements that turned a false statements case into a case wherein Wendt was required to prove he met those new requirements. In other words, Wendt was not allowed to challenge the falsity or materiality of his alleged false statements. Because the District Court determined this is what the law ought to be and that Wendt should retroactively be held accountable to it, the District Court refused to consider another interpretation of Wendt's statements and ignored the purpose of a *Harra* instruction.

The District Court denied the *Harra* instruction, finding that the statute was not ambiguous. (Trial TR. Vol. V 904:2-23.) But the District Court erred because it is not the statute that is ambiguous in this context, it is the statement itself. The Court did not directly address the statement ambiguity issue or the proof problem of "possible" versus "potential." Wendt testified that he believed his statements were true when he made them. (Trial TR. Vol. V 1072:11-16.) Even Wendt's alleged co-conspirator, who testified on behalf of the Government, testified that he believed Wendt thought his statements were true. (Trial TR. Vol. II 406:1-407:2.) The statements were a matter of legal interpretation. Even the District Court acknowledged this case was not about a dispute of the facts, but rather a dispute about the law. (R. Doc. 381, at 3 n.1.)

2.    **The Illegal Possession of a Machine Gun Charge is unconstitutional**. Specifically, 18 U.S.C. § 922(o) is unconstitutionally vague as applied to Wendt. The only court to have addressed the prosecution of a police officer for illegal possession of a machine gun under § 922(o) dismissed the case as unconstitutionally vague. *United States v. Vest*, 448 F. Supp. 2d 1002, 1004 (S.D. Ill. 2006). This case included an extensive review of the legislative history. Further, as recently held by a federal district court in Kansas, when properly analyzed under current Supreme Court precedent § 922(o) violates Wendt's Second Amendment rights. See *United States v. Morgan*, No. 23-10047, 2024 WL 3936767 (D. Kan. Aug. 26, 2024).

3.    **The District Court erred by sentencing Wendt based on a charge that was neither alleged nor proven**. The Government ended its prosecution with a "back door" sentencing of Wendt whereby the Government was able to punish Wendt for violations of federal firearms laws under a new theory. This completed the Government's wholesale amendment of federal firearms laws. But Wendt was not convicted of such violations, and the Government maintained throughout the prosecution that Wendt was not being charged with violating federal firearms laws. The District Court then incorrectly calculated the Guideline range based on this and the previously identified misinterpretations of the law.

15

## III. WENDT WILL END UP SERVING UNWARRANTED TIME IN PRISON

### A. Wendt Is Entitled To A New Trial

If Wendt prevails on establishing the ATF's new requirements were contrary to the law, he will be entitled to a new trial on all counts. 18 U.S.C. § 3143(b). Specifically, the counts of conviction were as follows:[4]

**Count 1: Conspiracy to Make False Statements** – This count was based on the same substantive law set forth in the jury instructions as the false statement counts. The jury acquitted Wendt of the alternative theory of attempting to defraud the ATF. As such, the jury's determination on this count rested squarely on whether Wendt intended to make a false statement to the ATF which was set forth in the same jury instructions as the false statement counts. (R. Doc. 330, at 18, 19, 28.)

**Count 3: False Statements ("Purchase Law Letters")** – This count was based on the "official use" requirement. The jury instructions on "Law Letters," the false statement "purchase law letters," and the illegal possession of a machine gun count combined to instruct the jury that the machine gun could only be purchased exclusively for official use and effectively that if Wendt ever intended to possess it outside such official use he was making a false statement when he purchased it. (R. Doc. 330, at 18, 28, 35.) It would be impossible to arrive at the conclusion that there is no "official use"

---

[4] These are the renumbered counts used at trial after the Government dismissed five of the twenty counts in the Indictment prior to trial. Wendt was found not guilty of Count 1 (with respect to attempting to defraud the ATF), Counts 2, 4-5, and 7.

Appellate Case: 24-2458     Page: 19     Date Filed: 10/23/2024 Entry ID: 5449458

restriction the ATF can impose and then turn around and say this count was not affected.

**Counts 6 & 8-14: False Statements ("Demonstration Law Letters")** – These counts were based on the "demonstration for potential purchase" requirement. As set forth above, not only did the jury instructions set forth this new requirement but they then turned Wendt's statements into essentially an affirmation of meeting that requirement. As such, because there was no such requirement and ATF could not impose such requirement, these counts require retrial.

**Count 15: Illegal Possession of a Machine Gun** – This count was based on the "official use" requirement. With respect to the illegal possession of a machine gun, the District Court instructed the jury that Wendt's possession of the M60 machinegun purchased by him and registered to the APD was illegal unless Wendt proved by a preponderance of the evidence that it was under the authority of the APD and, in making that decision, the jury "must consider whether his possession on the date in question was within the scope of his official duties as an officer of the [APD]." (R. Doc. 330, at 35.)

## B.  At Minimum, Wendt Is Entitled To A Reduced Sentence

At minimum, if Wendt prevails on one or more of these substantial questions, he will be entitled to a new trial or, at least, end up with a reduced sentence that would still be less than the amount of time necessary for this Court to decide his appeal. 18 U.S.C. § 3143(b).

17

*First*, although both the "official use" requirement and "demonstration for purchase" requirements are inaccurate and require a new trial on the conspiracy and all false statement counts, if the Court found only one of them was inaccurate it would still require a new trial on some of the false statement counts as well as the conspiracy count.

*Second*, in addition to the incorrect statement of the law in the jury instructions, Wendt was entitled to a *Harra* ambiguity instruction and would separately require a new trial on both the conspiracy and "demonstration law letter" false statement counts.

*Third*, in addition to the "official use" requirement, the illegal possession of a machine gun charge was both vague and in violation of Wendt's Second Amendment rights. This was the only violation of the federal firearms laws Wendt was charged with in this case. Importantly, this would be the only charge subject to the higher base offense level under USSG §2K2.2.

*Fourth*, the District Court incorrectly calculated Wendt's Guideline range. This has multiple effects on the sentence. As an initial matter, as set for above, the base offense level should have been at least four levels lower for the false statements and conspiracy counts, under USSG §2B1.1(c)(3). In addition, because of this error, the District Court also incorrectly calculated the enhancements. The District Court should have found two groups of charges under the Guidelines: (1) conspiracy & false statements; and (2) illegal possession of a machine gun. Then, it should have made individual determinations about the enhancements as to each group. USSG § 3G1.2, 3. The number of firearms enhancements therefore would not apply. Further, the

18

enhancements abuse of trust and obstruction of justice should not have applied to the illegal possession of a machine gun group. *Id.* In addition, Wendt should have received an acceptance of responsibility reduction for the illegal possession of a machine gun group. Further, even if just the I illegal possession of a machine gun count was reversed that would mean there would be only one group for purposes of the base offense level and no group under USSG §2K2.2.

Wendt received a sentence of 60 months in prison. After good time (15% equals 9 months) and FSA credits (Wendt will be eligible and likely receive the full 12 months) are applied, he is expected to serve 39 months. This appeal, especially given the complex nature of it, could take two years or more. As such, any change in his sentence of just a little over a year (just two or three levels) would mean he would end up serving unwarranted time in prison. Any of the above changes would easily make the difference.

## CONCLUSION

In conclusion, Mr. Wendt respectfully requests that he be released from custody and the execution of his sentence be stayed pending appeal.

Appellate Case: 24-2458    Page: 22    Date Filed: 10/23/2024 Entry ID: 5449458

Dated: October 23, 2024

**FAEGRE DRINKER BIDDLE &
REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
Rachel A. Yaggi, AT0014994
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
Email: *rachel.yaggi@faegredrinker.com*

***ATTORNEYS FOR APPELLANT***

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because this document contains 4964 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/ Nick Klinefeldt*

Dated: October 23, 2024                     Nick Klinefeldt

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Nick Klinefeldt*