IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | APPEAL NO. 24-2458 |
| Plaintiff - Appellee, | ) | |
| | ) | GOVERNMENT'S |
| v. | ) | RESISTANCE TO |
| | ) | RELEASE PENDING |
| BRADLEY EUGENE WENDT, | ) | APPEAL |
| | ) | |
| Defendant - Appellant. | ) | |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................ 2

FACTUAL BACKGROUND ........................................................... 2

LAW & ARGUMENT ................................................................... 6
    I.    Wendt bears the burden of showing he should not be detained pending appeal ........................................................ 6
    II.   Wendt does not demonstrate any "close question" entitling him to release pending appeal ............................... 8
        A.    Wendt does not show an abuse of discretion in the jury instructions describing the process to obtain machineguns ............................ 8
        B.    Wendt does not show a constitutional violation involving his personal use of machineguns ........................................................ 14
        C.    Wendt does not show that his sentencing challenge will shorten his prison term ............... 17

CONCLUSION ............................................................................. 20

CERTIFICATE OF COMPLIANCE ......................................... 21

CERTIFICATE OF SERVICE ................................................... 22

## INTRODUCTION

Brad Wendt abused his position as police chief by lying to the ATF to obtain machineguns for his personal use and enrichment. A jury convicted him of conspiracy to make a false statement to the ATF, in violation of 18 U.S.C. § 371, nine counts of making a false statement to the ATF, in violation of 18 U.S.C. § 1001(a)(2), and illegal possession of a machinegun, in violation of 18 U.S.C. § 922(o). (R. Doc. 395, pp. 1-2.) The district court (Hon. Stephen H. Locher, Judge) sentenced him to a below-guideline sentence of sixty months' imprisonment and denied his request for release pending appeal. (Sent. Tr. 48, 86, 93-95.)

Wendt now renews his request for release from custody pending his appeal. This Court should deny relief because he does not meet his burden of demonstrating a close question likely to require reversal or a reduced sentence.

## FACTUAL BACKGROUND

In July 2018, Wendt became police chief for Adair, Iowa, a rural town of less than 1,000 residents that employed only two full-time officers. (R. Doc. 381, pp. 3, 24.) That title allowed him to write "law letters" necessary for the ATF to authorize transfers of restricted

2

machineguns. (*Id.* at 3.) Between 2018 and 2022, Wendt wrote dozens of law letters claiming the department wanted demonstrations of more than fifty machineguns. (*Id.* at 24.)

Wendt wrote some of his earliest law letters for Jonathan Marcum, a gun dealer in Indiana. (*Id.* at 3.) Those three letters requested demonstrations of twenty-three machineguns, with Wendt affirming the demonstrations were to evaluate the machineguns "for possible purchase for official duties of our department." (*Id.* at 3-4, 24.) However, Marcum testified their agreement was for Marcum to resell the machineguns in his shop and share a portion of the profits with the City of Adair. (*Id.* at 4, 24.)

Wendt also wrote law letters for his own gun store, BW Outfitters. (*Id.* at 4.) One such letter requested a demonstration of a .50-caliber M2 "Ma Deuce" machinegun, purportedly to determine if it was "suitable for future purchase, and official use by the sworn officers within Adair Police Dept." (*Id.* at 6, 25.) His law letter asserted the "Ma Deuce" was "ideal" for the department's "special operations," but months later he admitted to a friend that there was "no reason" for the small-town department to have a "deuce." (*Id.* at 6, 25-26.)

3

Similarly, Wendt wrote a law letter for a GAU-2B, also known as a "minigun," which fires thousands of rounds per minute and is usually mounted to a military helicopter. (*Id.* at 6, 26-27.) His letter sought a demonstration "for future possible purchase and use of our Officers in the performance of their official duties," claiming the machinegun was "particularly suitable for use as a law enforcement weapon." (*Id.* at 6-7, 27.) Yet when an acquaintance said there was no "legit reasoning" for a minigun, Wendt answered that there was "no reason for deuce either lol" and that he would just change the model from the letter he had used to obtain the M2. (*Id.* at 27.)

In two "particularly audacious" law letters, Wendt requested demonstrations of an MP5SD3 and an MP7A2 from a gun dealer in Alabama. (*Id.* at 27.) His letters asserted the police department needed demonstrations to determine if those machineguns were "suitable for future purchase, and official use by the sworn officers." (*Id.* at 27-28.) However, "[t]hese statements are remarkable because the machine guns in question *were already owned by the Adair Police Department*." (*Id.* at 28 (emphasis original).) This false statement allowed Wendt to sell the

4

city-registered machineguns to the Alabama dealer "at substantial profit to himself." (*Id.*)

Wendt wrote so many law letters for coconspirator Robert Williams that he could not keep track of "which is which." (*Id.* at 22.) At least one of those law letters purportedly sought a demonstration of an AK-47 style machinegun that Williams had already purchased. (*Id.* at 28.) This process was "backwards" because "the government agency should be the one expressing interest to the gun dealer, not the other way around." (*Id.* at 28-29.) The arrangement allowed Williams to "backfill" machinegun purchases for his own gun store. (*Id.* at 22, 28.)

On Facebook, Wendt bragged how the police chief job permitted him to "[s]end machine guns to my own store lol" and how "chief status lets me sign for machine guns for my indoor range." (*Id.* at 5.) He told friends he was "building [a] machine gun arsenal" and was spending his final year as chief "buying [as] many machine guns as I can" before "bailing." (*Id.* at 4, 5.) Wendt explained "that machine guns are worth bank money" because he could resell them when he retired or turned in his FFL. (*Id.* at 23.)

Appellate Case: 24-2458    Page: 5    Date Filed: 10/31/2024 Entry ID: 5452243

One of the machineguns Wendt bought and registered "for the Adair Police Department" was a U.S. Ordinance M60. (*Id.* at 8.) On April 16, 2022, his gun store (BW Outfitters) hosted a machinegun shoot where members of the public could pay to shoot the police department's machineguns, including the M60. (*Id.* at 9.) Wendt advertised the event on his personal Facebook page, and no signage at the event suggested it was sponsored by the Adair Police Department. (*Id.*) In fact, the event was held more than fifty miles away from Adair, Wendt did not wear his police uniform, and payroll records showed he was off duty. (*Id.*) All proceeds for the event went to Wendt's business, not the city. (*Id.* at 29.)

## LAW & ARGUMENT

## I. Wendt bears the burden of showing he should not be detained pending appeal.

A convicted person sentenced to imprisonment must be detained pending appeal unless the person shows:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> (i) reversal,

6

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b).

To demonstrate a "substantial question" meriting release, the defendant must present an issue that "will more probably than not, if decided in defendant's favor, lead to a reversal or an order for new trial on all counts on which imprisonment has been imposed." *United States v. Powell*, 761 F.2d 1227, 1233 (8th Cir. 1985).

The defendant "must first show that the question presented by the appeal is substantial, in the sense that it is a close question or one that could go either way." *Id.* at 1233-34. This standard does not require proof that the defendant is "likely or probable" to win. *Id.* But it demands more than showing "simply that reasonable judges could differ . . . or that the issue is fairly debatable or not frivolous." *Id.*

If the defendant satisfies the first portion of the test, "the defendant must then show that the substantial question he or she seeks to present is so integral to the merits of the conviction that it is more probable than

7

not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Id.*

## II. Wendt does not demonstrate any "close question" entitling him to release pending appeal.

Wendt makes radical arguments that are not likely to result in reversal on all counts. First, his disagreement with ATF's legal interpretation did not permit him to make false statements to obtain machineguns. Second, the Constitution did not grant him the right to possess machineguns for his personal use. Third, his sentencing challenge, even if successful, would not reduce his sentence enough to require immediate release.

### A. Wendt does not show an abuse of discretion in the jury instructions describing the process to obtain machineguns.

Wendt primarily attacks jury instruction 24, which explained the legal process to obtain machineguns. (Br. 10-12 (quoting R. Doc. 330, p. 28).) In particular, he challenges (1) whether the import and transfer of a machinegun to a government entity "is restricted to official use by the law enforcement agency" and (2) whether the transfer of a

8

machinegun to a dealer as a sales sample "must be for possible future purchase and not for some other purpose." (Br. 11.)

To begin, Wendt overlooks the context of this instruction. He was not charged with illegally purchasing or transferring machineguns; rather, he was charged with *lying to the ATF*. The jury convicted him for conspiring to make false statements and for making nine specific false statements to the ATF. (R. Doc. 340, pp. 2-3.) These charges invoked 18 U.S.C. § 1001(a), which criminalizes knowingly making a materially false statement in any matter within the jurisdiction of the federal government (here, the ATF). Although Wendt may disagree with how ATF has interpreted and applied the relevant statutes and regulations, that disagreement did not give him permission to make materially false statements to obtain machineguns. As the district court recognized, this is "a straightforward false statements case." (R. Doc. 381, p. 29.)

The false-statement offenses revolve around the materiality of Wendt's assertions in the law letters. "[I]n general, a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it was addressed." *United States v. Robinson*, 809 F.3d 991, 999 (8th Cir. 2016)

9

(quotation omitted). Under both the law and the evidence, Wendt's false assertions in law letters were material because they were capable of influencing whether ATF would approve the machinegun transfers he desired.

The instruction correctly stated the law surrounding machinegun imports and transfers to law enforcement agencies "for official use." Courts around the country recognize that 18 U.S.C. § 922(o)(A)'s exception for transfer or possession of machineguns by government agencies is limited to official use. *See, e.g.*, *United States v. Warner*, 5 F.3d 1378, 1381 (10th Cir. 1993) ("[Section] 922(o)(2)(A) is properly read to permit only lawful possession of machine guns by federal or state agents acting in an official capacity."); *United States v. Neuner*, 535 F. App'x 373, 374 n.1 (5th Cir. 2013) (unpublished) ("Clear statutory language and Congressional intent limited lawful transfer and possession of machine guns to authorized governmental personnel for use in their official capacities."). Consistent with this commonsense interpretation, the relevant ATF regulation restricts the registration and transfer of machineguns to "the official use of Federal, State or local

10

governmental entities." 27 C.F.R. § 479.105(c). Wendt's jury instructions correctly incorporated this "official use" aspect of machinegun transfers.

Similarly, the instruction correctly stated the law surrounding dealer demonstrations "for possible future purchase." The relevant regulation—titled "Dealer sales samples"—permits machinegun transfers to qualified dealers. *Id.* at § 479.105(d). Such a dealer must submit information about "the expected governmental customers," including letters from the governmental entity "expressing a need for a particular model or interest in seeing a demonstration of a particular weapon." *Id.* This regulation's discussion of "sales samples" and "governmental customers" supports the district court's instruction that machinegun demonstrations must be for the possible or potential future purchase by the police agency.

ATF's guidance in place at the time reflected the materiality of Wendt's false statements. Wendt finds ambiguity in an open letter issued by the ATF in 1999. (Br. 21.) But he ignores more recent official guidance. In 2009, the ATF published the National Firearms Act Handbook, dubbed the "bible" of ATF's NFA division. (Trial Tr. Vol. II, p. 297.) The

handbook is posted on the ATF's public website.[1] (Trial Tr. Vol. II, p. 301.) It contains a sample law letter for importation and transfer to law enforcement, including the assertion that the machineguns "are not being acquired for the purpose of resale or transfer, and they will be used to carry out its official responsibilities and duties." (R. Doc. 349-123 (Gov't Ex. 807).) Likewise, the NFA Handbook includes a sample law letter for a dealer demonstration, which includes the agency's assertion that it would like a demonstration "for possible future purchase and use of our officers in the performance of their official duties." (R. Doc. 349-122 (Gov't Ex. 806).) Thus, the "official duties" and "possible future purchase" elements of Wendt's jury instructions matched ATF's guidance in place when he wrote the false law letters.

Next, Wendt does not show entitlement to an instruction modeled after *United States v. Harra*, 985 F.3d 196 (3d Cir. 2021). The district court correctly noted it was not bound by the Third Circuit's *Harra* decision; instead, it applied binding Eighth Circuit precedent. (Trial Tr. Vol. V, pp. 898-99, 902.) That binding precedent imposes a

---

[1] https://www.atf.gov/firearms/docs/guide/atf-national-firearms-act-handbook-atf-p-53208/download (last visited 10/29/2024).

12

"burden of negating literally truthful interpretations of statements in a fraud case when the statements (1) are ambiguous and (2) are subject to *reasonable* interpretations." *United States v. Parker*, 364 F.3d 934, 945 (8th Cir. 2004) (emphasis original) (citations omitted). Wendt does not present a reasonable alternative interpretation of "official use" that would include obtaining machineguns for the purpose of resale for substantial personal profit. Nor does he offer a reasonable alternative interpretation of "possible future purchase" to permit dealers to obtain sales samples when the law enforcement agency has no bona fide interest in buying the machinegun. "[T]he government did not have the burden to negate [Wendt's] stretched interpretations," *id.*, so the district court did not abuse its discretion when declining to give a *Harra* instruction.

In sum, Wendt does not present a close question regarding the jury instructions. The law only permitted obtaining machineguns for the official use of the police department or for dealers demonstrating sales samples for possible purchase by the department. It did not permit Wendt to build a machinegun arsenal for his personal use and profit. Because the district court did not abuse its discretion when instructing the jury, this issue does not entitle Wendt to release pending appeal.

13

**B.   Wendt does not show a constitutional violation involving his personal use of machineguns.**

First, Wendt fails to present a close question with his vagueness complaint. He invokes § 922(o)(A)'s exception allowing machinegun "possession by or under the authority of, . . . a State, or a . . . political subdivision thereof." He claims this provision gave him "inherent authority" as a police chief to possess machineguns, making the statute unconstitutionally vague. (Br. 39.) To prevail on this sort of vagueness claim, Wendt "must show that the statute 'is vague as applied to his particular conduct.'" *United States v. Deng*, 104 F.4th 1052, 1054 (8th Cir. 2024) (quotation omitted). He cannot meet that burden based on his conduct.

Wendt misplaces reliance on *United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006). That case involved a state trooper who served as lead rifle instructor and purchased a single machinegun while serving as equipment officer for the SWAT team. *Id.* at 1004. He was charged with violating § 922(o) under the theory that he did not have permission to use state police letterhead to order the weapon. *Id.* The district court found the statute unconstitutionally vague as applied, questioning how a

14

reasonable officer would know when he lacked authority for "his possession of a machine guns as part of his employment." *Id.* at 1008-10. The court further emphasized, "there is no evidence to support the notion that Vest ever possessed or used the machine gun at issue in this case for anything other than law enforcement purposes." *Id.* at 1011-12.

Wendt's case presents a much different scenario. He was not convicted for possessing machineguns while patrolling Adair in a squad car or by storing those machineguns at the police department. Instead, the district court succinctly summarized the evidence that Wendt possessed a city-registered M60 machinegun "in his *personal* capacity and not as part of his official duties" during the public machinegun shoot on April 16, 2022. (R. Doc. 381, p. 29 (emphasis original).) "Wendt was off duty and not in uniform; Woodbine is more than fifty miles from Adair; the event was sponsored by Wendt's business, not the City of Adair; and all proceeds from the event went to the business, not the City." (*Id.*) *Vest* does not apply to such situations when state or local officials possessed machineguns in their personal capacities. *See, e.g.*, *United States v. Theunik*, 651 F.3d 578, 585-87 (6th Cir. 2011) (rejecting a vagueness claim by county officials and a police chief who made false statements to

15

obtain machineguns and "possessed the weapons exclusively in a personal capacity, without any legitimate law enforcement purpose"). Wendt's misappropriation of a city-registered machinegun to generate revenue for this gun store does not present a close question on his as-applied vagueness challenge.

Second, this Court's precedent precludes his Second Amendment challenge. In *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008), the Court rejected a Second Amendment challenge, explaining, "Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." *See also District of Columbia v. Heller*, 554 U.S. 570, 627 (2008) (recognizing "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'"). Wendt does not present a close question by requesting to overrule *Fincher* in a manner that an overwhelming majority of courts have rejected. *See United States v. Chan*, No. 22-CR-00109-DKW, 2024 WL 4028019, at *6 & n.16 (D. Haw. Sept. 3, 2024) (collecting post-*Bruen* cases reaffirming § 922(o)'s prohibition of machineguns).

16

Next, to the extent Wendt adds a new spin to his Second Amendment challenge on appeal, it is not preserved. For the first time on appeal, he contends *Fincher* conflicts with the recent decision in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). (Br. 40-42.) But neither Wendt's motion to dismiss nor the court's ruling analyzed *Rahimi*, which was decided just days before Wendt's sentencing. An "insufficiently preserved" argument does not meet Wendt's burden of demonstrating an issue "likely to require reversal." *Powell*, 761 F.2d at 1231.

Because Wendt's constitutional claims do not present close questions likely to result in reversal, they do not support his request for release pending appeal.

### C. Wendt does not show that his sentencing challenge will shorten his prison term.

As to Wendt's sentencing challenge, his request for release is premature. He guesses that this appeal "could take two years or more to resolve"[2] and thinks he can shave "a little over a year" off the 39 months he expects to actually serve. (Motion, p. 19.) But his hope of reducing his

---

[2] The government does not anticipate the appeal will linger so long. Wendt has filed his principal brief, and the government's brief is in progress.

17

sentence does not warrant his release *now*. Instead, if he could demonstrate an issue likely to reduce his sentence, his detention must continue until "the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b).

Additionally, Wendt does not show clear error in the district court's application of the cross reference. For the false-statement counts, the court followed USSG §2B1.1(c)(3)'s cross reference, which applies when "the conduct alleged in the count of the indictment of which the defendant is convicted establishes the elements of another offense." *United States v. Bah*, 439 F.3d 423, 427 (8th Cir. 2006) (quotation omitted). It concluded at least some of Wendt's false law letters violated 18 U.S.C. § 922(a)(6) by deceiving dealers of material facts bearing on the lawfulness of the machinegun transfers. (Sent. Tr. 24-28.) Thus, the court properly grouped all of Wendt's offenses under chapter 2K2.1 of the guidelines.

Finally, Wendt's expectations of significantly reducing his guideline range hinge on dubious challenges. In a footnote, he summarily asserts that without the cross reference, the group for illegal possession of a machinegun would not get enhancements for abuse of trust or obstruction and that it would receive a reduction for acceptance of responsibility.

18

(Br. 43 n.7.) Each contention lacks merit. Wendt exploited his title as police chief to obtain machineguns he used to generate revenue for his gun store, which amounted to an abuse of his position of trust under USSG §3B1.3. (Sent. Tr. 43-44.) Next, he testified falsely about the truthfulness of his law letters used to obtain machineguns, which obstructed justice for an offense "closely related" to the illegal-possession conviction as provided in USSG §3C1.1. (Sent. Tr. 46-48.) And he put the government to its burden of proof at a seven-day trial, so he did not qualify for a reduction for acceptance of responsibility under USSG §3E1.1. (Sent. Tr. 48.)

In the end, Wendt's sentencing challenges do not qualify for release pending appeal. The district court did not clearly err in any of its guideline calculations. And even if it did, Wendt's sixty-month sentence is already eighteen months below the bottom of the guidelines (Sent. Tr. 48), which amounts to a downward variance of approximately four levels. His hope for further reductions does not satisfy his burden of showing any likelihood that his appeal will last longer than the prison sentence he deserves.

19

## CONCLUSION

This Court should deny Wendt's motion for release pending appeal.

Respectfully submitted,

United States of America

Richard D. Westphal
United States Attorney

By:   /s/ Kyle P. Hanson
Kyle P. Hanson
Assistant United States Attorney

Neal Smith Federal Building
210 Walnut Street, Suite 455
Des Moines, Iowa  50309
Tel:  (515) 473-9300
Fax:  (515) 473-9292

20

## CERTIFICATE OF COMPLIANCE
## WITH RULES 27(d)(2)(A), 32(a), and 32(g)

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) and the word limit of Fed. R. App. P. 32(g)(1) because it contains 3563 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft 365 Word in Century Schoolbook font, 14 point.

Dated: October 31, 2024.

By:   */s/ Kyle P. Hanson*
Kyle P. Hanson
Assistant United States Attorney

Neal Smith Federal Building
210 Walnut Street, Suite 455
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292

21

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Dawn Thomas*
Paralegal Specialist

Appellate Case: 24-2458   Page: 22   Date Filed: 10/31/2024 Entry ID: 5452243