No. 24-2458

**In the United States Court of Appeals
for the Eighth Circuit**

United States of America,

Plaintiff-Appellee,

v.

Bradley Eugene Wendt,

Defendant-Appellant.

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
No. 4:22-cr-00199-SHL-HCA
Hon. Stephen H. Locher

**Appellant's Reply in Support of Motion for Release Pending Appeal**

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

FACTUAL BACKGROUND .....................................................................................2

LEGAL ARGUMENT .................................................................................................4

I. THE GOVERNMENT MISCHARACTERIZES WENDT'S ARGUMENTS ON THE JURY INSTRUCTIONS..............................................4

II. THE GOVERNMENT MISCHARACTERIZES WENDT'S ARGUMENTS ON THE *HARRA* AMBIGUITY INSTRUCTION...............6

III. THE GOVERNMENT MISCHARACTERIZES WENDT'S ARGUMENTS ON VAGUENESS. .............................................................7

IV. THE GOVERNMENT MISCHARACTERIZES WENDT'S ARGUMENT ON THE SECOND AMENDMENT.........................................8

CONCLUSION ............................................................................................................9

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page(s)**

*United States v. Anderson*, 879 F.2d 369 (8th Cir. 1989) ................................................6

*United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008) ....................................................8

*United States v. Harra*, 985 F.3d 196 (3d Cir. 2021) .......................................................6

*United States v. Parker*, 364 F.3d 934 (8th Cir. 2004) ....................................................6

*United States v. Rahimi*, 144 S. Ct. 1889 (2024) ..............................................................8

*United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006) .......................................7, 8

*United States v. Wisecarver*, 598 F.3d 982 (8th Cir. 2010) ..........................................4, 5

**Statutes, Rules & Regulations**

18 U.S.C. § 3143(b) .............................................................................................................1

Fed. R. App. P. 9(b) ............................................................................................................1

# INTRODUCTION

Bradley Eugene Wendt ("Wendt") submits this reply in support of his Motion for Release Pending Appeal. Specifically, Wendt raises three points with respect to the Government's response:

*First*, the Government does not contest that Wendt is neither a flight risk nor a danger to the community.

*Second*, the Government does not contest that if Wendt wins a retrial on any of the counts that he would then meet the standard for release.

*Third*, the Government's response is a white flag on the only remaining issue—whether Wendt raises a substantial question on appeal. In particular, the Government resorts to misrepresenting the facts and mischaracterizing Wendt's legal arguments on this issue. Wendt raises substantial questions of law in Appellant's Opening Brief, which is supported by an amicus brief filed on behalf of Firearms Regulatory Accountability Coalition, Inc.; Gun Owners of America, Inc.; Gun Owners Foundation; Palmetto State Armory, LLC; B&T USA, LLC; and the States of West Virginia, Missouri, Arkansas, Kansas, Montana, New Hampshire, South Carolina, and Utah. The Government does not even request that this Court wait to review its appellate brief; nor does it address the tremendous importance of the amicus brief.

Accordingly, Wendt respectfully requests that this Court release him pending appeal, pursuant to Federal Rule of Appellate Procedure 9(b) and 18 U.S.C. § 3143(b).

## FACTUAL BACKGROUND

Instead of relying on the actual facts, the Government misrepresents the evidence at trial in several aspects.[1]

As an initial matter, the Government asserts that "[Jonathan] Marcum testified their agreement was for Marcum to resell the machine guns in his shop and share a portion of the profits with the City of Adair." (Govt's Resistance, at 3 (citing R. Doc. 381, at 4, 24).) However, that misrepresents what occurred. The Government relies on the District Court's order, which was written prior to receipt of the trial transcripts. (R. Doc. 381, at 3 n.1.) The evidence at trial established that, unbeknownst to Wendt, Marcum became the target in an unrelated federal case, was cooperating with the ATF, and that the ATF concocted a false story in an attempt to implicate Wendt. (Trial TR. Vol. II 365:13-23.) When the ATF directed Marcum to conduct a recorded call to Wendt, it was clear Wendt did not know what Marcum was talking about, and that any donation Marcum wanted to make would go to the City of Adair Clerk's Office. (R. Doc. 349-70.) In fact, Marcum testified that he did not believe that he or Wendt ever made a false statement to the ATF or intended to break the law. (Trial TR. Vol. II 406:1-407:2.) Even with the inaccurate statement of the law in the jury instructions, Wendt was acquitted of the first two out of the three letters he wrote for Marcum and acquitted

---

[1] Wendt only points out the more egregious examples of the Government mischaracterizing and misstating the evidence in this case. In doing so, he does not in any way concede the accuracy of the other statements of the evidence relied upon by the Government.

2

of conspiring with Marcum to attempt to defraud the ATF—which completely belies any purported scheme to receive a kickback.

Next, the Government asserts that it was "particularly audacious" that Wendt wrote demonstration letters for an MP5SD3 and an MP7A2 because the machineguns were already owned by the Adair Police Department. (Gov't Resistance, at 4.) The record demonstrated that the purpose of the demonstration was to have the recipient conduct ballistics testing. (Trial TR. Vol. V 1064:10-1065:10.)

Further, the Government asserts that Wendt could not keep track of the law letters he wrote to former Co-Defendant Williams because he wrote so many letters. (Gov't Resistance, at 5.) However, the record demonstrates that this was due to the short period that Williams was purchasing the machineguns. (Trial TR. Vol. V 1080:11-23.) For example, the Government cites the AK-47 demonstration and asserts it was "backwards" because Williams had already purchased it. (Gov't Resistance, at 5.) That is incorrect. The record showed that Wendt and Williams spoke in-person frequently and discussed which machineguns Wendt wanted a demonstration of ahead of time— and that specifically included the AK-47 which Wendt was interested in and did demonstrate. (Trial TR. Vol. 1042:10-1045:13.) It made sense for Williams to follow up on the required letter after he determined he was going to be able to acquire the machinegun. And it was not purchased and transferred to Williams unless and until Wendt wrote the letter.

3

The truth is that Wendt had proper and legal explanations for every machinegun purchase and transfer. As such, the Government relied on misapplications of the law and off-hand jokes cobbled together from Wendt's Facebook account.

Finally, the Government completely mischaracterizes the machinegun shoot. Wendt explains the machinegun shoot in his motion and appellate brief. (Br. of Appellant, at 7-8; Mot. for Release Pending Appeal, at 6-7.) In addition, the U.S. Ordinance M60 involved here was not subject to any false statement charge, and there was no allegation that it was wrongfully obtained by Wendt. Rather, the Government relies on ridiculous, minor facts that do not prove anything. The Government also states that "[a]ll proceeds for the event went to Wendt's business, not the city." (Govt's Resistance, at 6.) The undisputed record in this regard, though, was that all proceeds went solely to pay for the ammunition, that law enforcement officers shot for free, that Wendt lost money on it, and that Wendt was clearly not trying to make any profit from it. (Trial TR. Vol. IV 787:18-791:8.)

## LEGAL ARGUMENT

### I. THE GOVERNMENT MISCHARACTERIZES WENDT'S ARGUMENTS ON THE JURY INSTRUCTIONS.

The District Court per se abuses its discretion when it inaccurately states the law in a jury instruction. S*ee United States v. Wisecarver*, 598 F.3d 982, 989 (8th Cir. 2010). The Government tries to narrow Wendt's arguments to avoid addressing them because it does not have a valid response. For example, the Government tries to falsely limit

4

Wendt's argument to only the "Law Letters" jury instruction and, even within that, to only certain aspects of that jury instruction. (Gov't Resistance, at 8-12.) In doing so, the Government completely mischaracterizes the nature and extent of Wendt's arguments. Wendt's arguments on the jury instructions—as properly set forth—are set out in his appellate brief and now supported by an amicus brief.

If anything, the Government's resistance concedes the very merits of Wendt's appeal. The Government admits that the "ATF's legal interpretation" is at issue. (Gov't Resistance, at 8.) The Government emphasizes that Wendt "was not charged with illegally purchasing or transferring machineguns." (*Id.*) Further, the Government acknowledges that the jury instructions turned on "how ATF has interpreted and applied the relevant statutes and regulations." (*Id.*) This underscores and concedes the very problem Wendt brings to this Court's attention in his appeal.

Another highlight of the weakness of the Government's position is that it relies solely upon a "sample letter" in the back of the ATF's NFA Handbook as its lone statement of its version of the law. However, the letter is merely a "sample letter" and, as admitted by the Government's own witness and ATF NFA Branch Chief, was not required. (Trial TR. Vol. II 300:14-25.) This is in spite of the fact that the sample letter was in direct contravention of the actual guidance put out by the ATF on this subject, as well as the regulation. Not to mention, this is now how criminal law is created. But that is exactly what the District Court did when it not only got the law wrong, but imposed that inaccurate version of the law as requirements as opposed to the typical

5

false statements case where the falsity and materiality of the statements are left completely to the jury.

## II. THE GOVERNMENT MISCHARACTERIZES WENDT'S ARGUMENTS ON THE *HARRA* AMBIGUITY INSTRUCTION.

The Government's response to Wendt's clear entitlement to an ambiguity instruction is that the Eighth Circuit is not bound by *United States v. Harra*, 985 F.3d 196 (3d Cir. 2021) ("*Harra*"), and rather is bound by *United States v. Parker*, 364 F.3d 934, 945 (8th Cir. 2004) ("*Parker*"). While it is true that this Court is not bound by *Harra*, its precedent in *Parker* does not negate *Harra's* application here. This Court, in *Parker*, cites a list of cases, including *United States v. Anderson*, that stand for the proposition that:

> [W]hen the statement alleged to be false is facially ambiguous, "it [is] incumbent upon the government to introduce proof sufficient to establish the falsity of the statements as well as the defendant's knowing and willful submission of the statements. In carrying out that burden the government must negative any reasonable interpretation that would make the defendant's statement factually correct."

*Parker*, 364 F.3d at 945 (citing 879 F.2d 369, 376-77 (8th Cir. 1989)).

Thus, *Parker* is not conflicting with *Harra* or *Anderson*. This Court simply found that the statements at issue in *Parker*—"never been in force" and "null and void"—had accepted meanings. *Id.* The exact dispute here is that the statements at issue do not have accepted meanings. The District Court incorrectly found that the statements were not facially ambiguous. The dispute over the application of *Parker*, *Harra*, and *Anderson*, is another example of a close question on the law.

6

Additionally, the Government mischaracterizes Wendt's arguments on the alternative interpretations of Wendt's statements. Specifically, Wendt was never allowed to proffer an alternative explanation because the District Court tied his hands in the jury instructions. But Wendt testified he believed his statements were true. (Trial TR. Vol. V 1072:11-16.) Further, as mentioned above, anything beyond requesting a demonstration (i.e., for possible or potential purchase) is per se immaterial because the regulation prohibits the ATF from relying on such a representation. Likewise, a city government can purchase a machinegun for any purpose it wishes under the statute and, in any event, this false statement count was infected with the jury instruction that there was a subsequent use restriction on the machinegun beyond the reason for its purchase.

## III. THE GOVERNMENT MISCHARACTERIZES WENDT'S ARGUMENTS ON VAGUENESS.

The Government relies only on attempting to distinguish the facts in *United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006) ("*Vest*"). But the ruling in *Vest* was not limited to the specific set of facts at issue there. The defendant in *Vest* contended, and the court agreed that the phrase "under the authority" is capable of differing interpretations and thus failed to give law enforcement officers proper notice of what behavior is prohibited. *Id.* at 1005. The court held that the "lack of a structured definition for what constitutes proper 'authority' under the law enforcement exception is what makes the statutes susceptible to arbitrary enforcement." *Id.* That analysis

7

applies here, regardless of any attempt to make a factual distinction. And the Government fails to address the court's analysis in *Vest* or explain why it should not apply here. The court's analysis in *Vest* applies here regardless of any purported differences in the facts because *Vest* turned on the lack of a definition for the phrase "under the authority." *Id.* at 1005. Further, as set forth in Wendt's appellate brief, Wendt has an even stronger vagueness argument than presented in *Vest*.

## IV. THE GOVERNMENT MISCHARACTERIZES WENDT'S ARGUMENT ON THE SECOND AMENDMENT.

The Government asserts that Wendt cannot prevail on a Second Amendment challenge here because doing so would require this Court to overrule *United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008) ("*Fincher*"). However, the Supreme Court has clarified the Second Amendment analysis since *Fincher* was decided. When properly analyzed under the Supreme Court's decisions in *United States v. Rahimi*, Wendt has a valid as-applied challenge to the possession charge. 144 S. Ct. 1889 (2024). The Government challenges Wendt's reliance on *Rahimi* by arguing that Wendt's motion to dismiss does not analyze *Rahimi*. (Gov't Resistance, at 17.) But *Rahimi* was not decided until June 21, 2024, ten months after the District Court's August 17, 2023, ruling on the motion to dismiss. (R. Doc. 260.) Wendt could not have cited *Rahimi* in his motion to dismiss because it had not been decided. The Government fails to substantively address *Rahimi*, which raises a close question and is sufficient here to support a release pending appeal.

# CONCLUSION

In conclusion, the fact that the Government was forced to rely on misrepresentations of the evidence and mischaracterizations of Wendt's legal arguments demonstrates the strength of Wendt's appeal. There can be no doubt that Wendt raises multiple substantial questions on this unique appeal.[2] As such, the only just result here is to grant Wendt immediate release from custody.

Dated: November 7, 2024

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
Rachel A. Yaggi, AT0014994
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
Email: *rachel.yaggi@faegredrinker.com*

***ATTORNEYS FOR APPELLANT***

---

[2] Wendt does not respond to the Government's arguments on whether he would receive a sentence of less than the appeal time, even if he did not receive a new trial on one or more counts, because it is obvious that he has established a substantial question that would entitle him to a new trial and the Government concedes that would be sufficient to meet the standard for release pending appeal.

9

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(C) because this document contains 2,167 (limit 2,600) words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

Dated: November 7, 2024

*/s/ Nick Klinefeldt*
Nick Klinefeldt

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/Nick Klinefeldt*