No. 24-2458
_____

**In the United States Court of Appeals
for the Eighth Circuit**
_____


United States of America,


Plaintiff-Appellee,

v.

Bradley Eugene Wendt,

Defendant-Appellant.

_____

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
No. 4:22-cr-00199-SHL-HCA
Hon. Stephen H. Locher

_____

**Appellant's Reply Brief**

_____

Nicholas A. Klinefeldt
Rachel A. Yaggi
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
(515) 248-9000


Counsel for Appellant Bradley Eugene Wendt

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................. 2

I.    THE DISTRICT COURT'S JURY INSTRUCTIONS WERE
      ERRONEOUS ................................................................................ 2

      A.    The New Requirements ..................................................... 2

      B.    The Law Does Not Support These New "Requirements" ......................... 3

      C.    The District Court Further Imposed These Requirements By
            Erroneously Failing to Provide an Ambiguity Instruction ....................... 15

      D.    The Official Use Restriction Is Unconstitutionally Vague ...................... 17

II.   WENDT IS ENTITLED TO A NEW TRIAL ON ALL CHARGES ............. 18

      A.    Standard of Review ......................................................... 19

      B.    The District Court's Erroneous Instructions Were Not Harmless
            Beyond a Reasonable Doubt ............................................. 19

III.  THE ILLEGAL POSSESSION OF A MACHINEGUN CHARGE MUST
      BE DISMISSED ............................................................................ 21

      A.    Standard of Review ......................................................... 21

      B.    The Illegal Possession of A Machinegun Charge Must Be Dismissed .... 21

CONCLUSION ....................................................................................... 22

Appellate Case: 24-2458    Page: 2    Date Filed: 12/20/2024 Entry ID: 5468718

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Chapman v. California,*
    386 U.S. 18 (1967) ................................................................4

*Ricks v. D.C.,*
    414 F.2d 1097 (D.C. Cir. 1968) .......................................21

*Sullivan v. Louisiana,*
    508 U.S. 275 (1993) ............................................................4

*United States v. Anderson,*
    879 F.2d 369 (8th Cir. 1989) ...........................................15

*United States v. Benton,*
    890 F.3d 697 (8th Cir. 2018) .............................................3

*United States v. Carn,*
    No. 13CR000346, 2018 WL 1413971 (D. Nev. Mar. 20, 2018) .................................8

*United States v. Harra,*
    985 F.3d 196 (3d Cir. 2021) ............................................15

*United States v. Lozier,*
    No. 24-1200, 2024 WL 4984505 (8th Cir. Dec. 5, 2024) ..........................................3, 4

*United States v. Neuner,*
    535 F. Appx. 373 (5th Cir. 2013) ...............................9, 10

*United States v. Parker,*
    364 F.3d 934 (8th Cir. 2004) ...........................................15

*United States v. Pereyra-Gabino,*
    563 F.3d 322 (8th Cir. 2009) .............................................4

*United States v. Petrovic,*
    701 F.3d 849 (8th Cir. 2012) .............................................3

*United States v. Raether,*
    82 F.3d 192 (8th Cir. 1996) .............................................19

Appellate Case: 24-2458    Page: 3    Date Filed: 12/20/2024 Entry ID: 5468718

*United States v. Rahimi*,
144 S. Ct. 1889 (2024) ................................................................................18

*United States v. Salisbury*,
983 F.2d 1369 (6th Cir. 1993) .....................................................................21

*United States v. Theunick*,
651 F.3d 578 (6th Cir. 2011) .........................................................................8

*United States v. Vest*,
448 F. Supp. 2d 1002 (S.D. Ill. 2006) .............................................8, 17, 21

*United States v. Warner*,
5 F.3d 1378 (10th Cir. 1993) .......................................................................8, 9

## Statutes, Rules & Regulations

27 C.F.R. § 479.105(a) ......................................................................... 10, 11

27 CFR § 479.105(d) ..................................................................................11

18 U.S.C. § 922(o) ................................................................................*passim*

18 U.S.C. § 925 ............................................................................................7

26 U.S.C. § 5812 ..........................................................................................6

26 U.S.C. § 5844(1) ...................................................................................6, 7

## Other Authorities

4 Am. Jur. 2d Amicus Curiae § 6 (2011) ....................................................7

Appellate Case: 24-2458     Page: 4     Date Filed: 12/20/2024 Entry ID: 5468718

## INTRODUCTION

The Government prosecuted Wendt based on false legal requirements and is now trying to pull a bait-and-switch—just as it did at Wendt's sentencing. The Government continues to emphasize that Wendt was not charged with violating federal firearms laws with respect to the machinegun transactions. However, at trial, the Government relied on the District Court telling the jury that Wendt needed to meet certain requirements for the machinegun transactions to be legal. The Government cannot now argue that even if the District Court incorrectly instructed the jury on law, it does not matter because this is a false statements case. The District Court's erroneous jury instructions took away Wendt's ability to fairly contest falsity and materiality. Likewise, the charge against Wendt for illegal possession of a machinegun was unconstitutionally vague.

Wendt's position is now supported by an amicus brief filed on behalf of Firearms Regulatory Accountability Coalition, Inc.; Gun Owners of America, Inc.; Gun Owners Foundation; Palmetto State Armory, LLC; B&T USA, LLC; and the States of West Virginia, Missouri, Arkansas, Kansas, Montana, New Hampshire, South Carolina, and Utah.

For the reasons set forth below, Wendt is entitled to a new trial on the conspiracy and false statement charges and dismissal of the illegal possession of a machinegun charge.

1

**ARGUMENT**

## I.   THE DISTRICT COURT'S JURY INSTRUCTIONS WERE ERRONEOUS

### A.   The New Requirements

The main problem in this case is that—at the request of the Government and in reliance on the ATF's faulty interpretation of the law—the Government imposed two new requirements on Wendt via its jury instructions:

#### 1.   The "Future Potential Purchase" Requirement

A dealer may only purchase a machinegun if a law enforcement agency requests a demonstration of the machinegun for "future potential purchase." (R. Doc. 330, at 19, 28.) In other words, the law letter must not just request a demonstration or even demonstrate the authority of the law enforcement officer writing the letter to subsequently purchase it, but instead the law enforcement agency must have "a bona fide interest in purchasing" the machinegun. (*Id.*, Appellee Br., at 40.) In sum, the District Court not only added the "future purchase" language to the requirement but it elevated the requirement to "potential future purchase" by way of it drawing an equivalence of the two terms in the jury instructions despite Wendt never using the term "future potential purchase" with respect to any of the charges.

#### 2.   The "Official Use Restriction" Requirement

The purchase of machineguns by a law enforcement agency is limited to the "official use" of those machineguns by the law enforcement agency. (R. Doc. 330, at 28.) Not only must the law enforcement agency purchase the machinegun for the

2

purpose of official use of the agency, but the subsequent "possession of that machine gun is restricted to official use by the law enforcement agency." (*Id.* at 28, 35.) Further, the burden of demonstrating that the "possession" was within the agency's "official use" rests on the law enforcement officer who possessed it. (*Id.*) In other words, a law enforcement agency may only purchase a machinegun legally if its subsequent possession is going to be limited solely to "official duties" as subsequently determined by a jury. (*Id.*) In sum, the District Court linked the false statement charges with the illegal possession charge by conflating the requirements for both.

## B.    The Law Does Not Support These New "Requirements"

### 1.    Standard of Review

The first step is for the Court to determine if the jury instructions misstated the law. The application of the standard of review here requires a de novo review of the jury instructions because (1) the error involves statutory interpretation; and (2) the instructions denied a legal defense to Wendt. Generally, this Court reviews the trial court's jury instructions for abuse of discretion. *United States v. Lozier*, No. 24-1200, 2024 WL 4984505, at *2 (8th Cir. Dec. 5, 2024). "The test is whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury. When review of jury instructions requires statutory interpretation, our review is de novo." *United States v. Benton*, 890 F.3d 697, 714 (8th Cir. 2018), *judgment corrected* (May 15, 2018) (cleaned up); *United States v. Petrovic,* 701 F.3d 849, 858 (8th Cir. 2012) ("We typically review district courts' rulings

3

concerning contested jury instructions for an abuse of discretion, and we reverse only when any error was prejudicial. However, when our review requires statutory interpretation, it is an issue of law that we consider de novo.") (cleaned up). De novo review is also warranted when the jury instruction simultaneously denies a legal defense. *Lozier*, 2024 WL 4984505, at *2.

This Court will reverse a jury verdict "when the errors misled the jury or had a probable effect on the jury's verdict." *United States v. Pereyra-Gabino*, 563 F.3d 322, 328 (8th Cir. 2009) (citation omitted). The jury instructions must "inform the jury of the essential elements of the offense charged and the government's burden of proof." *Id.* at 329 (citation omitted). This Court will evaluate most constitutional instructional errors under a harmless error standard. *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993); *see, e.g.*, *Lozier*, 2024 WL 4984505, at *4. The Government must show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Sullivan*, 508 U.S. at 279 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

## 2.     The Statute Did Not Include These Requirements

There is no "official use restriction" or "future potential purchase" requirement in 18 U.S.C. § 922(o) (the "Statute"). The Statute exempts from the prohibition on machineguns the "a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof." 18 U.S.C. § 922(o).

4

First, it is undisputed that Wendt had that authority as Adair Police Chief. It is undisputed that the Adair Police Department ("APD") had the authority to purchase machineguns. (*See* R. Doc. 223, at 6.) It is also undisputed that, as Police Chief, Wendt exercised the authority of the APD. (*Id.*) The Government takes issue with a potential conflict of interest that may have existed between Wendt acting as both the Police Chief and a licensed dealer in the same transactions. However, it is undisputed that Wendt disclosed this fact from the very outset in both his letters as well as a discussion directly with the ATF NFA Branch—and that the ATF approved it. (*See, e.g.*, R. Docs. 350-1- 350-4.) As such, the Government has waived and forfeited any such complaint.

Second, the City of Adair had the right to purchase <u>and</u> sell machineguns. Section 922(o) specifically exempts the transfer of machineguns "to or by" the political subdivision of a political subdivision. The Statute places no restrictions on the APD after the machinegun is transferred to it. And it does not place any restrictions on the reason for the purchase. The Statute mentions nothing about "authority" regarding the ability to obtain machineguns, let alone "official use."

Third, the Government completely ignores that the Statute exempts possession not just "by" the APD but also "under the authority" of the APD. The Government's interpretation of the Statute completely reads this portion out of it. As explained below, the Government also ignores that the State of Iowa, as well as the APD, had the authority to authorize the possession of a machinegun.

5

Further, the Government provides no support for its assertion that not only must the *purchase* be intended for "official use," but also that the machinegun must only ever be *used* or *possessed* within the scope of what the ATF subsequently deems the proper "official use" of the State or local agency.

Likewise, there is no mention at all in the Statute about when or how dealers are permitted to obtain machineguns. This is another glaring hole in the Government's attempt to let the ATF synthesize the law as it sees fit. The Government claims that when a dealer obtains a machinegun under a demonstration law letter, it does so "'under the authority of' that agency." (Appellee Br., at 35.) However, it is undisputed that when a dealer obtains a machinegun under a demonstration law letter, it is not merely possessed by that dealer but is transferred to that dealer. The Statute does not provide for the transfer of a machinegun to a dealer, and, instead, appears to outright prohibit it. Again, the ATF's contorted regime simply makes no sense. And if the Government is correct, then Wendt had the authority to allow himself or any other dealer to possess machineguns. Specifically, a law enforcement agency would have the authority to permit possession unrelated to the purchase—like a dealer allowing non-government purchasers to fire dealer sample machineguns.

Fourth, in a desperate attempt to find a statutory basis for its actions in this case, the Government cites 26 U.S.C. § 5812 and 26 U.S.C. § 5844(1). However, the law letter is not part of the "written application" and, in any event, the proposition for which the Government attempts to use the statute is a tautology. The Government never relied

6

on 26 U.S.C. § 5844(1) in the District Court, and for good reason. It is in a completely different chapter of the U.S. Code and it does not mention any subsequent, ongoing restriction. Again, Wendt is not asserting in any way that machineguns that were purchased for the APD did not have to be for the ADP. Rather, he is asserting that the ATF went too far when it purported to police their subsequent use. Instead, the ATF's authority under the law ends at the point of purchase by the APD.

Rather, as set forth in the amicus brief, 18 U.S.C. § 925 provides support for Wendt's interpretation of the law. This blanket exception of firearms "imported for, sold [to,] or shipped to" a local government agency, including the APD, further demonstrates that Congress did not intend for the federal government to be in the business of determining or policing the "official use" of machineguns like the ATF is attempting to do here. And the Government is wrong that Wendt has "waived" any reliance on that statute. Wendt is not claiming it as an independent basis for his appeal, rather he is pointing out the remaining statutory context. *See* 4 Am. Jur. 2d Amicus Curiae § 6 (2011) ("The function of an amicus curiae is to call the court's attention to law, facts, or circumstances in a matter then before it that may otherwise escape its consideration.").

Fifth, the Government claims that other courts have recognized that the exception to the Statute applies only to officers acting in their official capacity. However, no court has ever applied an "official use" restriction to 18 U.S.C. § 922(o). Nor has any court ever relied upon the violation of a registration requirement under 18

U.S.C. § 922(o). And no court has ever upheld the prosecution of a police officer under 18 U.S.C. § 922(o). The cases the District Court and the Government relied upon do not involve police officers and do not actually rely on an official use requirement for a particular machine. (*See* R. Doc. 361, at 4-6.) The only case to address the prosecution of a police officer was *Vest*, and it held it unconstitutionally vague. *United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006). And *Vest* is not distinguished by the cases the Court cites: *United States v. Theunick*, 651 F.3d 578 (6th Cir. 2011); *United States v. Carn*, No. 13CR000346, 2018 WL 1413971 (D. Nev. Mar. 20, 2018). Neither of those cases involved a section 922(o). As the *Theunick* court itself explained: "By contrast, § 922(o) is not charged in this case, and the law enforcement defense in § 922(o)(2)(A) does not appear in the statutes charged." *Theunick*, 651 F.3d at 587.

Additionally, the Government cites *United States v. Warner*, 5 F.3d 1378 (10th Cir. 1993), for the unremarkable propositions that machineguns can only be possessed by law enforcement representatives in an official capacity. (Appellee Br., at 30.) *Warner* is inapposite. There is no discussion, analysis, or even mention of anyone's "use" of a machinegun, whether official or otherwise, in *Warner*. Warner was a private individual, not a Chief of Police, in possession of a homemade, unregistered machinegun, not a machinegun duly registered to a police department. He challenged his conviction under Section 922(o) by ridiculously claiming that a Utah statute permitting a firearm in a motor vehicle somehow constituted "authority" from the state for him to possess an

8

illegal machinegun since the gun happened to be in his car when the police found it. *Warner*, 5 F.3d at 1380.

The Government next responds to Wendt's detailed and thorough legal analysis of the nonexistent "official use" requirement in Section 922(o)(2) by citing the unpublished decision in *United States v. Neuner*, 535 F. Appx. 373 (5th Cir. 2013). (Appellee Br., at 30-31.) *Neuner* is even more inapplicable to Wendt's argument than *Warner*. Neuner was a gang member who was convicted of manufacturing illegal machineguns. While there was overwhelming evidence that Neuner was eager to provide illegal machineguns to a drug dealer who would use them against the police, Neuner comically raised an entrapment defense based on his testimony that he made the machineguns at the behest of a higher-ranking gang member with gang "authority" over him who was working as a police informant and an undercover federal agent posing as the drug dealer. *Id.* at 375. Thus, in Neuner's world, he somehow had double, secret governmental "authority" within the meaning of § 922(o)(2) to make illegal machineguns to kill police officers.

Again, the court did not agree with Neuner's argument:

> Neuner also argues that he should be given, as the target of an undercover government operation, the exemption afforded to those acting under the authority of the government to legally possess a machinegun. That argument is rejected as utterly meritless. Clear statutory language and Congressional intent limited lawful transfer and possession of machineguns to authorized governmental personnel for use in their official capacities. [citation omitted]. The statute and legislative history do not except unwary targets of undercover operations, like Neuner, from criminal

9

liability for possessing machineguns. There is no official capacity use of such weapons when the declared purpose, as explained to Neuner, is to harm law enforcement personnel. To find otherwise would be absurd.

*Id.* at 371 n.1 (emphasis added). Thus, a fuller and fairer recitation of *Neuner* easily reveals the weakness of the Government's arguments.

In sum, there was no legitimate contention that Warner and Neuner were not authorized to possess machineguns on behalf of a law enforcement agency. Even so, "capacity" is not "use," and there is no "official use" requirement in Section 922(o)(2) to come within the statutory protection regarding the possession of a machinegun registered to a police department by a Chief of Police "under the authority" of the police department. That is all that is required, nothing more, and the Court erred in concluding otherwise.

### 3. The Regulation Does Not Include These Requirements

The Government claims that the regulation at issue, 27 C.F.R. § 479.105(a) (the "Regulation"), somehow imposed these new requirements. As explained in Appellant's Opening Brief, the Regulation does not and cannot impose an ongoing official use restriction on the possession or use of a machinegun. (Appellant Br., at 16-21.) Likewise, the Regulation does not impose a "potential future purchase" requirement onto § 922(o). Again, as explained in Appellant's Opening Brief, the Regulation does not say anything about a possible or potential future purchase. (Appellant Br., at 17.)

10

To the contrary, the Regulation expressly and explicitly prohibits the ATF from requiring or considering anything beyond the law enforcement agency merely "expressing a need for a particular model or interest in seeing a demonstration of a particular weapon." 27 CFR § 479.105(d). As such, any purported requirement is per se immaterial to the transaction because the ATF is expressly forbidden from considering it and cannot override the Regulation.

Moreover, the Regulation sets forth two bases for a dealer obtaining a machinegun through a demonstration law letter: "a need for a particular model or interest in seeing a demonstration of a particular weapon." 27 CFR § 479.105(d). However, the Government's interpretation of "demonstration" as requiring a potential future purchase or bona fide interest in purchasing would read the "need for" language out of the Regulation.

### 4. The ATF's Guidance Did Not Include These Requirements.

The Government cannot show that anything in its guidance supported the requirements. First, the original guidance and the guidance in place at the time was consistent with the language of the Regulation and only required "a need for" or "interest in seeing a demonstration of a particular machinegun." (R. Doc. 350-5.) Importantly, the actual guidance the ATF issued limited the requirements of transfers to dealers to the exact language of the Regulation. And nowhere does the ATF purport to enact an official use restriction requirement.

11

Second, the guidance changed after Wendt's transactions. In 2023, the ATF guidance changed from simply requiring a need or interest in a demonstration to requiring information on how the machinegun is suitable for use by an agency. *Open Letter To All Federal Firearms Licensees Regarding Machinegun Dealer Sales Sample Letters* (Jan. 11, 2023), https://www.atf.gov/firearms/docs/open-letter/all-ffls-jan-2023-open-letter-machinegun-dealer-sales-sample-letters/download.

Third, the registration did not impose any restrictions and the ATF's position on this issue is internally completely inconsistent. The Government conceded, as it must, that there is no ongoing use restriction on dealer sales samples. It is illogical that a law enforcement agency would have an ongoing restriction, policed by the ATF, on its purchases but that dealers can use the machineguns for whatever they wish. Further, this position is contradictory to the ATF's position that it is the registration stamp that identifies the use restriction because the registration stamp does not differ between imported machineguns for a law enforcement, machineguns transferred to a dealer, or anything else. (*Compare* R. Doc. 348-83, at 3 *with* R. Doc. 348-80, at 11.)

Fourth, the only purported guidance the Government clings to is a sample letter. The Government attempts to aggrandize this sample letter by claiming it was part of the "bible" of ATF's NFA branch. However, despite the 208-page ATF NFA Handbook addressing transfers to both dealers and law enforcement agencies extensively, nowhere does it purport to identify either requirement. The only place the language the Government so heavily relies upon is a sample letter attached at the last

Appellate Case: 24-2458     Page: 16     Date Filed: 12/20/2024 Entry ID: 5468718

three pages of the ATF NFA Handbook. Sample letters typically pose an ideal but not required scenario. This was corroborated by the ATF's NFA Branch Chief at trial. (Trial TR. Vol. II 300:14-301:17.)

Lastly, the Government's position that a sample letter somehow imposes guidance is further belied by the "suitability" issue. In the same letter, the law enforcement official not only identifies a so-called "possible future purchase" but also purportedly certifies the "suitability" of the machinegun for law enforcement use. Again, during this case, the Government was forced to relent and concede that the ATF does not and cannot make a "suitability" determination. (Trial TR. Vol. II 295:24-296:6.)

### 5. The Trial Testimony Did Not Support These Requirements

The Government fails to identify any ATF trial testimony that supports the so-called requirements. In fact, the Government's ATF expert witness testified that these were not requirements. ATF Branch Chief William Swift's testimony regarding the requirements was only that they "could" impact the ATF's decision. If they were requirements, then the ATF reviewers would not have discretion to ignore them.

Moreover, the testimony of defense expert, Rick Vasquez, clearly establishes there was no such requirement. Vasquez effectively testified that if a law enforcement agency confirms it wants the machinegun, then it can have the machinegun. (Trial TR. Vol. V 951:15-19.) Therefore, the ATF's practices changed without a change in the law. And then the ATF implemented the changes through vague, ambiguous practices—

13

and, worst of all, through criminal statutes. Yet, the law did not change between Vasquez's departure from the ATF and Wendt's transactions.

### 6. These Requirements Are Inconsistent With State Law

The Government completely fails to recognize the authority of the States that the Statute carved out. The Government fundamentally misunderstands § 922(o) by taking the position: "Congress carved out limited exceptions covering machineguns 'for the use of' or 'by or under the authority of' a city." (Appellee Br., at 33-34.) What the Government fails to acknowledge or understand is that it misses the authority of a State to "authorize" the "possession" of machineguns. And that is exactly what Iowa did here.

### 7. These Requirements Run Afoul of Fundamental Principles of Criminal Law and Recent Supreme Court Precedent

The Government fails to address that its position in this violates fundamental principles of law. First, imposing these new requirements runs afoul of fundamental principles of criminal law. Crimes must be defined by Congress and provide fair and sufficient notice. (Appellant Br., at 19, 37-39.) Plus, under 18 U.S.C. § 922(o) the District Court placed the burden on Wendt to demonstrate official use.

Second, imposing these new requirements runs afoul of recent Supreme Court precedent. As set forth in Appellant's Opening Brief, the Supreme Court has made it clear that federal agencies cannot make up the law and that courts should not be

14

deferring to a federal agency's interpretation of the law. Yet, that is exactly what happened here.

### C. The District Court Further Imposed These Requirements By Erroneously Failing to Provide an Ambiguity Instruction

The Government's response to Wendt's clear entitlement to an ambiguity instruction is that the Eighth Circuit is not bound by *United States v. Harra*, 985 F.3d 196 (3d Cir. 2021), and rather is bound by *United States v. Parker*, 364 F.3d 934, 945 (8th Cir. 2004). While it is true that this Court is not bound by *Harra*, its precedent in *Parker* does not negate *Harra's* application here. This Court, in *Parker*, cites a list of cases, including *United States v. Anderson*, and states:

> [W]hen the statement alleged to be false is facially ambiguous, "it [is] incumbent upon the government to introduce proof sufficient to establish the falsity of the statements as well as the defendant's knowing and willful submission of the statements. In carrying out that burden the government must negative any reasonable interpretation that would make the defendant's statement factually correct."

*Parker*, 364 F.3d at 945 (citing *United States v. Anderson*, 879 F.2d 369, 376-77 (8th Cir. 1989)). Thus, *Parker* is not conflicting with *Harra* or *Anderson*. This Court simply found that the statements at issue in *Parker*—"never been in force" and "null and void"—had accepted meanings. *Id.* The exact dispute here is that the statements at issue do not have accepted meanings. The District Court incorrectly found that the statements were not facially ambiguous.

Appellate Case: 24-2458     Page: 19     Date Filed: 12/20/2024 Entry ID: 5468718

Here, the District Court failed to conduct a proper ambiguity analysis. (Appellant Br., at 35.) If it had done so, there would have been no escaping the conclusion that the statements in the law letters were ambiguous for all the same reasons concerning why there were no such requirements. The Government mischaracterizes Wendt's arguments on the alternative interpretations of Wendt's statements. Specifically, Wendt was never allowed to proffer an alternative explanation because the District Court tied his hands in the jury instructions. But Wendt testified he believed his statements were true. (Trial TR. Vol. V 1072:11-16.)

The Government claims that Wendt used the terms "potential" and "possible" interchangeably. (Appellee Br., at 39.) But only one letter that Wendt wrote to BW Outfitters used the term "potential," and Wendt was not charged with a false statement in that letter. (R. Doc. 348-83.) Moreover, that letter was not included in the conspiracy charge as it the conspiracy was limited to Williams and Marcum, and Wendt cannot be in a conspiracy with himself. Regardless, the language Wendt used was language that was provided in many cases from the dealers. (Trial TR. Vol. V 106:5-11; 1018:24-25; R. Doc. 349-122.) Wendt was not coming up with the language on his own.

Further evidence of the immateriality of the statement is the fact that there is one letter in which the ATF first denied, stating "ONE PART OF THE LAW LETTER STATES THE DEMO IS FOR POTENTIAL PURCHASE. ANOTHER PART

16

STATES THE DEMO IS FOR OFFICER FAMILIARIZATION [. . .]."[1] (R. Doc. 348-67 at 4.) Following the denial, Wendt emailed the ATF reiterating his position and submitting the same documents. (R. Doc. 350-2.) Texts between Wendt and Jonathan Marcum show that Marcum provided Wendt with the language to include in his email. (R. Doc. 349-13, at 13.) Two days later, the ATF changed its ruling and approved the exact same request it previously denied. *Id.* at 5. Wendt was acquitted of making any false statements in that letter.

### D. The Official Use Restriction Is Unconstitutionally Vague

There simply is no official use restriction that applies to machinegun purchases and any attempt to impose such a requirement is unconstitutionally vague. As set forth in Appellant's Opening Brief, the only court to address the prosecution of a police officer dismissed it as unconstitutionally vague. *See Vest*, 448 F. Supp. 2d at 1003. In addition, Wendt notes the following:

First, the Government conflates "use" with "possession." The Eighth Circuit Model Jury Instructions comments define use of a firearm as "mean[ing] that the firearm was actively employed in the course of the commission" of a crime, for example, if the firearm is brandished, displayed, or fired. Instruction 6.18.924C-1, Eighth Circuit Committee on Model Criminal Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* (2023). In contrast, possession is defined more

---

[1] The letter actually states, "possible purchase." (R. Doc. 348-67 at 1.)

broadly, including constructive possession where a person "knowingly has direct physical control over a thing, at a given time." Instruction 8.02, Eighth Circuit Committee on Model Criminal Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* (2023).

Second, the burden to prove use within official duties was placed on Wendt at trial as an affirmative defense.

Finally, this affected the false statement (and thus conspiracy) charges in that the District Court imposed this official use restriction in both the possession and false statement charges. As such, Wendt was required to prove that he used and always intended to use any machinegun within the bounds of official duties.[2]

## II.   WENDT IS ENTITLED TO A NEW TRIAL ON ALL CHARGES

Wendt is entitled to a new trial on all the false statements charges and the conspiracy charge.

---

[2] Finally, Wendt preserves his challenge to the constitutionality of the machinegun possession charge under the Second Amendment considering the changing legal landscape and the application of the machinegun possession charge to Wendt as a police officer. The Government challenges Wendt's reliance on *United States v. Rahimi*, 144 S. Ct. 1889 (2024) by arguing that Wendt's motion to dismiss does not analyze *Rahimi*. (Appellee Br., at 59.) But *Rahimi* was not decided until June 21, 2024, ten months after the District Court's August 17, 2023, ruling on the motion to dismiss. (R. Doc. 260.) Further, Wendt filed an emergency motion to continue the July 1, 2024 sentencing which the District Court denied. (R. Doc. 393, 394.) Even so, the District Court addressed *Rahimi* at Wendt's sentencing. (R. Doc. 409.)

## A. Standard of Review

The next step for this Court is to determine whether the Government has met its burden of demonstrating that any error was harmless. Because there was legal error in the jury instructions, the Government has the burden to establish beyond a reasonable doubt that the jury would have convicted Wendt of the charges regardless of the errors. When an instructional error is not harmless beyond a reasonable doubt, the Court will grant a new trial. *See, e.g.*, *United States v. Raether*, 82 F.3d 192, 195 (8th Cir. 1996).

## B. The District Court's Erroneous Instructions Were Not Harmless Beyond a Reasonable Doubt

The effect of the erroneous jury instructions was clear and obvious. The Government attempts to explain away the problems here by simply saying: "[Wendt] was not charged with illegally purchasing or transferring machineguns—he was charged with lying to the ATF." (Appellee Br., at 26.) However, the Government is attempting to pull a bait-and-switch.[3] The Government cannot seek out and obtain the benefit of the District Court imposing new legal requirements on Wendt, make the trial about whether he met those new requirements, and then back-pedal and say it was about whether the statements were false and material. The Government even admits that Jury

_____

[3] This is the same type of bait-and-switch tactic the Government pulled at sentencing. (Appellant Br., at 43-46.) Wendt does not further address the Government's argument on sentencing because the Government failed to refute Wendt's arguments, the sentencing error was clear, and, in any event, this Court does not need to address it because a new trial is necessary.

Appellate Case: 24-2458     Page: 23     Date Filed: 12/20/2024 Entry ID: 5468718

Instruction No. 24 "helped the jury understand how his statements were material to ATF's decision-making process." (Appellee Br., at 26.)

Wendt was entitled to a fair trial with legally correct jury instructions; the Government facing its burden of proving the elements of the offense without any presumptions; and the ability to provide a defense. However, in the jury instructions, the District Court adopted the ATF's new legal requirements and then imposed them on Wendt. The trial was then about whether Wendt met these new requirements as opposed to whether he made materially false statements. The District Court essentially told the jury what the statements meant and that those statements were material to the ATF's decision-making.

In addition, the District Court's erroneous adoption of the ATF's new legal requirements prevented Wendt from receiving a fair trial in other ways. First, it prevented Wendt from receiving proper discovery on the ATF's interpretations of similar statements in other transactions (falsity) and the ATF's approval of transactions without that language (materiality). Second, Wendt was prevented from presenting evidence at trial, including the subsequent ATF guidance showing the ATF's position changed after Wendt's transactions, internal ATF communications about the statements, as well as the ATF granting Wendt a license to manufacture machineguns (including miniguns). This was because the District Court incorrectly decided what the law required and effectively treated falsity and materiality as legal issues rather than factual issues.

## III. THE ILLEGAL POSSESSION OF A MACHINEGUN CHARGE MUST BE DISMISSED

### A. Standard of Review

The final step is for the Court to determine whether any charge that was subject to error that was not harmless should be remanded for retrial or dismissal. When the conviction is based on an unconstitutionally applied statute, the Court may remand for dismissal rather than grant a new trial. *Ricks v. D.C.*, 414 F.2d 1097, 1110 (D.C. Cir. 1968); *United States v. Salisbury*, 983 F.2d 1369, 1380 (6th Cir. 1993).

### B. The Illegal Possession of A Machinegun Charge Must Be Dismissed

The illegal possession of a machinegun charge is unconstitutionally vague and must be dismissed. The only court to ever address the prosecution of a police officer for illegal possession of a machinegun dismissed it as unconstitutionally vague. *See Vest*, 448 F. Supp. 2d at 1003. Further, the District Court not only confused use with possession, but put the burden on Wendt to prove that he used the machinegun within his official duties.

Here, Wendt unquestionably had the legal authority to possess the machinegun. First, he was the police chief. It is undisputed that he had the authority vested in the APD as given to it by the City of Adair. As such, he had the authority to possess the machinegun under 18 U.S.C. § 922(o). Second, he was a police officer. Under Iowa law, he therefore had the authority to possess the machinegun. Third, he was a licensed dealer. Again, under Iowa law, he had the authority to possess the machinegun. This is

Appellate Case: 24-2458     Page: 25     Date Filed: 12/20/2024 Entry ID: 5468718

important because even under the Government's theory that Wendt was at the machinegun shoot to promote his dealership, he had authority to possess the machinegun as a dealer.

## **<u>CONCLUSION</u>**

In conclusion, Wendt's convictions on the conspiracy and false statements charges should be reversed and remanded for new trial and the illegal possession of a machinegun charge should be reversed and remanded for entry of a judgment of acquittal.

Dated: December 19, 2024

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt
Rachel A. Yaggi
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000

*Counsel for Appellant Bradley Eugene Wendt*

Appellate Case: 24-2458    Page: 26    Date Filed: 12/20/2024 Entry ID: 5468718

## CERTIFICATE OF COMPLIANCE AND VIRUS SCANNING

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the reply brief contains 5,402 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Garamond.

Pursuant to Local Rule 28A(h)(2), I certify that the Reply Brief has been scanned for viruses and are virus-free.

Respectfully submitted,

/s/ Nick Klinefeldt
Nicholas A. Klinefeldt
Counsel for Appellant Bradley Eugene Wendt

**CERTIFICATE OF SERVICE**

In accordance with Rule 25 of the Federal Rules of Appellate Procedure and Circuit Rule 28A(d), I hereby certify that on the 19th day of December, 2024, I served a copy of the foregoing **Appellant's Reply Brief** by filing a copy on the Court's CM/ECF system, which will serve electronic copies on all registered counsel.

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt
Counsel for Appellant Bradley Eugene Wendt